IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | | |
|---|---|---|
| WINDSOR WINDOW COMPANY and WOODGRAIN MILLWORK, INC., | ) ) ) | Case No. 16CV41455 |
| Plaintiffs, | ) ) | SUMMONS |
| v. | ) ) | |
| ALEA NORTH AMERICAN INSURANCE COMPANY, ARCH SPECIALTY INSURANCE COMPANY, COLUMBIA CASUALTY COMPANY, HARTFORD FIRE INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., SAFECO INSURANCE COMPANY OF AMERICA, STARR INDEMNITY AND LIABILITY COMPANY, TECHNOLOGY INSURANCE COMPANY, INC., WESCO INSURANCE COMPANY, AND ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

TO:   **Safeco Insurance Company of America**
**c/o Corporation Service Company, Registered Agent**
**1127 Broadway Street NE Ste 310**
**Salem, OR 97301**

*You are hereby required to appear and defend the complaint filed against you in the above entitled action within thirty (30) days from the date of service of this summons upon you, and in case of your failure to do so, for want thereof, plaintiff(s) will apply to the court for the relief demanded in the complaint.*

/ / /

/ / /

/ / /

Page   1 - SUMMONS

O:\0001060\Woodgrain Millwork, Inc. and Windsor Window Co\0005 pam summons - Safeco.wpd

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison
Portland, Oregon 97205
(503) 222-1812

**NOTICE TO DEFENDANTS:**
**READ THESE PAPERS CAREFULLY!**

You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal paper called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within thirty (30) days along with the required filing fee. It must be in proper form and have proof of service on the plaintiff's attorney or, if the plaintiff does not have an attorney, proof of service on the plaintiff.

If you have questions, you should see an attorney immediately. If you need help in finding an attorney, you may contact the Oregon State Bar's Lawyer Referral Service online at www.oregonstatebar.org or by calling (503) 684-3763 (in the Portland metropolitan area) or toll-free elsewhere in Oregon at (800) 452-7636.

PARSONS FARNELL & GREIN, LLP

By: _____
Michael E. Farnell, OSB # 922996
E-mail Address: mfarnell@pfglaw.com
Paul A. Mockford, OSB #105729
E-mail Address: pmockford@pfglaw.com
PARSONS FARNELL & GREIN, LLP
1030 SW Morrison Street
Portland, Oregon 97205
Telephone: (503) 222-1812
Facsimile: (503) 274-7979
*Of Attorneys for Plaintiff*

Page   2 - SUMMONS

O:\0001050\Woodgrain Millwork, Inc. and Windsor Window Co\0005 pam summons - Safeco.wpd

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison
Portland, Oregon 97205
(503) 222-1812

1

2

3

4                    IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                         FOR THE COUNTY OF MULTNOMAH

6   WINDSOR WINDOW COMPANY and          )    Case No.
    WOODGRAIN MILLWORK, INC.,            )
7                                        )
                Plaintiffs,              )    COMPLAINT
8                                        )
          v.                             )    (Declaratory Judgment; Breach of Contract)
9                                        )
    ALEA NORTH AMERICAN INSURANCE        )    CLAIMS NOT SUBJECT TO
10  COMPANY, ARCH SPECIALTY              )    MANDATORY ARBITRATION
    INSURANCE COMPANY, COLUMBIA          )
11  CASUALTY COMPANY, HARTFORD           )    Amount Prayed For: $618,924.36
    FIRE INSURANCE COMPANY, LIBERTY      )
12  MUTUAL INSURANCE COMPANY,            )    Fee Authority:  ORS 21.160(1)(c)
    NATIONAL UNION FIRE INSURANCE        )
13  COMPANY OF PITTSBURGH, PA.,          )
    SAFECO INSURANCE COMPANY OF          )    JURY TRIAL REQUESTED
14  AMERICA, STARR INDEMNITY AND         )
    LIABILITY COMPANY, TECHNOLOGY        )
15  INSURANCE COMPANY, INC., WESCO       )
    INSURANCE COMPANY, AND ZURICH        )
16  AMERICAN INSURANCE COMPANY,          )
                                         )
17              Defendants.              )

18

19                              **COMPLAINT**

20        Plaintiffs Woodgrain Millwork, Inc. ("Woodgrain") and Windsor Window Company

21  ("Windsor") (collectively, "Plaintiffs") by and through their undersigned counsel, file this

22  Complaint against Defendants National Union Fire Insurance Company of Pittsburgh, Pa.

23  ("National Union"), ALEA North American Insurance Company ("ALEA"), Arch Specialty

24  Insurance Company ("Arch"), Columbia Casualty Company ("CNA"), Hartford Fire Insurance

25

26

Page 1 - COMPLAINT

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812 FAX: (503) 274-7979

O:\0001060\WOODGRAIN MILLWORK, INC. AND WINDSOR WINDOW CO\0001 PAM COMPLAINT.DOCX

1   Company ("Hartford"), Liberty Mutual Insurance Company ("Liberty"), Safeco Insurance

2   Company of America ("Safeco"), Starr Indemnity & Liability Company ("Starr"), Technology

3   Insurance Company, Inc. ("TIC"), Wesco Insurance Company ("Wesco"), Zurich American

4   Insurance Company ("Zurich")  (collectively, "Defendants") and allege:

5                           **NATURE OF THE ACTION**

6                                   1.

7          This Complaint is for declaratory relief and breach of contract.

8                                   2.

9          Defendants are insurance companies that sold primary or umbrella/excess commercial

10  general liability policies covering Plaintiffs for time periods that collectively span from January

11  1, 1996 to July 1, 2017 (the "Insurance Policies").

12                                  3.

13         Plaintiffs' complaint seeks declaratory relief, pursuant to Or. Rev. Stat. § 28.010 et

14  seq., concerning the Defendants' obligations to Plaintiffs under the Insurance Policies, as well

15  as damages for certain Defendants' breaches of contractual duties owed to Plaintiffs under the

16  Insurance Policies, with respect to various class-action lawsuits in which Plaintiffs have been

17  named, and may continue to be named, as defendants (the "Underlying Claims"). The

18  Underlying Claims seek damages and other relief allegedly arising out of windows that were

19  manufactured and/or sold by Windsor, and include the following lawsuits: (1) *Cathy L. Ritchie*

20  *v. Windsor Window Co., et. al.*, No. 9:14-cv-4734-SB, filed in the United States District Court

21  for the District of South Carolina, Beaufort Division ("Ritchie Action"); (2) *Patricia Hillestad,*

22  *et. al. v. Windsor Window Co., et. al.*, No. 3:15-cv-215, filed in the United States District Court

23  for the Western District of Wisconsin ("Hillestad Action"); (3) *Anthony Schiller, et. al. v.*

24  *Windsor Window Co., et. al.*, No. 15-cv-01932-DSD-FLN, filed in the United States District

25  Court for the District of Minnesota ("Schiller Action"); (4) *Eric L. Koty, et. al. v. Windsor*

26

Page 2 - COMPLAINT

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812 FAX: (503) 274-7979

O:\0001060\WOODGRAIN MILLWORK, INC. AND WINDSOR WINDOW CO\0001 PAM COMPLAINT.DOCX

1   *Window Co., et. al.*, No. 1:15-cv-5343, filed in the United States District Court for the Northern

2   District of Illinois ("Koty Action"); (5) *Thomas Davia, et. al. v. Windsor Window Co., et. al.*,

3   No. 2:15-cv-01041-LA, filed in the United States District Court for the Eastern District of

4   Wisconsin ("Davia Action"); (6) *Shawn S. Gengler, v. Windsor Window Co., et. al.*, No. 2:16-

5   cv-00180, filed in the United States District Court for the Eastern District of Wisconsin,

6   Milwaukee Division ("Gengler Action"); (7) *Todd Forster, et. al. v. Windsor Window Co., et.*

7   *al.*, No. 1:16-cv-00257-LJV, filed in the United States District Court for the Western District of

8   New York, Buffalo Division ("Forster Action"); (8) *Walter Clark, et. al. v. Windsor Window*

9   *Co., et. al.*, No. 1:16-cv-00721-SEB-MJD, filed in the United States District Court for the

10   Southern District of Indiana, Indianapolis Division ("Clark Action"); and (9) *Charles Pledger,*

11   *et. al. v. Windsor Window Co., et. al.*, No. 2:16-cv-00938-EAS-TPK, filed in the United States

12   District Court for the Southern District of Ohio, Columbus Division ("Pledger Action").  With

13   the Exception of the Hillestad Action, which has been resolved, the Underlying Claims are now

14   subject to MDL jurisdiction, under the caption *In re Windsor Wood Clad Window Product*

15   *Liability Litigation*, in the United States District Court for the Eastern District of Wisconsin.

16                                    **PARTIES**

17                                    4.

18       Woodgrain is an Oregon corporation with its principal place of business in

19   Fruitland, Idaho.

20                                    5.

21       Windsor is an Idaho corporation with its principal place of business in West Des

22   Moines, Iowa.  Windsor is a subsidiary of Woodgrain.

23                                    6.

24       On information and belief, Defendant National Union is a Pennsylvania corporation

25   with its principal place of business in New York, New York, and is an insurance company that

26

Page 3 - COMPLAINT

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812 FAX: (503) 274-7979

O:\0001060\WOODGRAIN MILLWORK, INC. AND WINDSOR WINDOW CO\0001 PAM COMPLAINT.DOCX

1  transacts business in the state of Oregon and/or is licensed to do business in the state of Oregon,

2  among other states.

3                                    7.

4           On information and belief, Defendant ALEA is a New York corporation with its

5  principal place of business in Hartford, Connecticut, and is an insurance company that transacts

6  business in the state of Oregon and/or is licensed to do business in the state of Oregon, among

7  other states.

8                                    8.

9           On information and belief, Defendant Arch is a Missouri corporation with its principal

10  place of business in Jersey City, New Jersey, and is an insurance company that transacts

11  business in the state of Oregon and/or is licensed to do business in the state of Oregon, among

12  other states.

13                                   9.

14          On information and belief, Defendant CNA is an Illinois corporation with its principal

15  place of business in Chicago, Illinois, and is an insurance company that transacts business in

16  the state of Oregon and/or is licensed to do business in the state of Oregon, among other states.

17                                  10.

18          On information and belief, Defendant Hartford is a Connecticut corporation with its

19  principal place of business in Hartford, Connecticut, and is an insurance company that transacts

20  business in the state of Oregon and/or is licensed to do business in the state of Oregon, among

21  other states.

22                                  11.

23          On information and belief, Defendant Liberty is a Massachusetts corporation with its

24  principal place of business in Boston, Massachusetts, and is an insurance company that

25

26

Page 4 - COMPLAINT

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812 FAX: (503) 274-7979

O:\0001060\WOODGRAIN MILLWORK, INC. AND WINDSOR WINDOW CO\0001 PAM COMPLAINT.DOCX

1  transacts business in the state of Oregon and/or is licensed to do business in the state of Oregon,

2  among other states.

3                                                    12.

4          On information and belief, Defendant Safeco is a New Hampshire corporation with its

5  principal place of business in Seattle, Washington, and is an insurance company that transacts

6  business in the state of Oregon and/or is licensed to do business in the state of Oregon, among

7  other states.

8                                                    13.

9          On information and belief, Defendant Starr is a Texas corporation with its principal

10  place of business in New York, New York, and is an insurance company that transacts business

11  in the state of Oregon and/or is licensed to do business in the state of Oregon, among other

12  states.

13                                                   14.

14          On information and belief, Defendant TIC is a New Hampshire corporation with its

15  principal place of business in Cleveland, Ohio, and is an insurance company that transacts

16  business in the state of Oregon and/or is licensed to do business in the state of Oregon, among

17  other states.

18                                                   15.

19          On information and belief, Defendant Wesco is a Delaware corporation with its

20  principal place of business in Bridgewater, New Jersey, and is an insurance company that

21  transacts business in the state of Oregon and/or is licensed to do business in the state of Oregon,

22  among other states.

23  / / /

24  / / /

25  / / /

26

Page 5 - COMPLAINT

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812 FAX: (503) 274-7979

O:\0001060\WOODGRAIN MILLWORK, INC. AND WINDSOR WINDOW CO\0001 PAM COMPLAINT.DOCX

16.

On information and belief, Defendant Zurich is an Illinois corporation with its principal place of business in Schaumberg, Illinois, and is an insurance company that transacts business in the state of Oregon and/or is licensed to do business in the state of Oregon, among other states.

**JURISDICTION AND VENUE**

17.

This Court has jurisdiction over this action under Rule 4 of the Oregon Rules of Civil Procedure, Or. Rev. Stat. § 28.010 et seq., and Or. Rev. Stat. § 14.030 et seq.

18.

This Court has personal jurisdiction over the Defendants pursuant to Rule 4 of the Oregon Rules of Civil Procedure. At all relevant times, Defendants transacted insurance in Oregon within the meaning of the Oregon Insurance Code, Or. Rev. Stat. § 731.146, and claims giving rise to this lawsuit arose out of promises by Defendants to provide coverage for person, property and/or risk located within Oregon.

19.

This Court has the power to declare the parties' respective rights under Or. Rev. Stat. 28.010 et seq.

20.

Because Plaintiffs and Defendants disagree about the scope of any duty that Defendants have to pay Plaintiffs' defense costs and to pay Plaintiffs' losses, including judgments and settlements, resulting from the Underlying Claims, an actual controversy exists between the parties that cannot be resolved absent relief from this Court.

/ / /

/ / /

Page 6 - COMPLAINT

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812 FAX: (503) 274-7979

O:\0001060\WOODGRAIN MILLWORK, INC. AND WINDSOR WINDOW CO\0001 PAM COMPLAINT.DOCX

1          21.

2          Venue is proper in this Court under Or. Rev. Stat. § 14.030 et seq.  Upon information

3     and belief, Defendants conducted regular, sustained business in Multnomah County.

4                              **FACTUAL BACKGROUND**

5          **(a) DEFENDANTS' INSURANCE POLICIES**

6          22.

7          The Defendants, in consideration of premiums paid, issued the Insurance Policies, which

8     provide insurance coverage to Woodgrain and/or Windsor for various time periods that,

9     collectively, span the period covering approximately January 1, 1996 to July 1, 2017.

10    Defendants ALEA, CNA, Hartford, National Union, Safeco, TIC, Wesco, and Zurich issued

11    primary or first-layer coverage (collectively, the "Primary Insurers").  Certain of these

12    Defendants—National Union and Safeco—also issued umbrella or excess layer coverage, as

13    did Defendants Arch, Liberty, and Starr (collectively, the "Umbrella/Excess Insurers").   Upon

14    information and belief, and to the extent the information currently is available to Plaintiffs, the

15    policy number and coverage period of each of the Insurance Policies is shown on the attached

16    Exhibit A, which is incorporated herein by reference.

17         23.

18         Upon information and belief, and to the extent the information currently is available to

19    Plaintiffs, each of the Insurance Policies generally provides coverage, subject to applicable

20    policy limits, conditions, and exclusions, for those sums that an insured is legally obligated to

21    pay as damages because of, among other things, "property damage" that takes place during its

22    policy period and is caused by an "occurrence."  Each of the Insurance Policies also generally

23    requires the insurer to defend and/or to pay defense costs for civil proceedings or lawsuits

24    seeking covered damages.

25    ///

26

Page 7 - COMPLAINT

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812 FAX: (503) 274-7979

O:\0001060\WOODGRAIN MILLWORK, INC. AND WINDSOR WINDOW CO\0001 PAM COMPLAINT.DOCX

1                                              24.

2          Upon information and belief, and to the extent the information currently is available to

3   Plaintiffs, the Insurance Policies generally define "property damage" to include, among other

4   things, "physical injury to tangible property, including all resulting loss of use of that property"

5   or contain a materially similar definition.  The Insurance Policies generally define "occurrence"

6   to include "an accident, including continuous or repeated exposure to substantially the same

7   general harmful conditions," or contain a materially similar definition.

8                                              25.

9          Some of the Insurance Policies require satisfaction of a self-insured retention before

10  defense and/or indemnity costs are paid.

11         **(b) Windsor's Window products**

12                                             26.

13         Windsor manufactures and sells windows and doors.

14                                             27.

15         Among other products, Windsor has manufactured and/or sold two product lines of

16  windows:  Pinnacle Series windows and Legend Series windows (together, "Windows").

17                                             28.

18         Legend Series windows were first manufactured and sold in the United States beginning

19  in or around July 1996.

20                                             29.

21         Pinnacle Series windows were first manufactured and sold in the United States

22  beginning in or around June 2000.

23  / / /

24  / / /

25  / / /

26

Page 8 - COMPLAINT

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812 FAX: (503) 274-7979

O:\0001060\WOODGRAIN MILLWORK, INC. AND WINDSOR WINDOW CO\0001 PAM COMPLAINT.DOCX

1    **(c)  The Underlying Claims**

2                                              30.

3         The Underlying Claims all seek damages because of property damage during the policy

4    periods of Defendants' Insurance Policies caused by a common "occurrence," or accident, and

5    thus trigger Defendants' obligations to defend against and/or to pay defense costs incurred in

6    connection with those claims under the Insurance Policies.

7                                              31.

8         More specifically, the Underlying Claims generally allege that the Windows all contain

9    a common and latent design and manufacturing defect that allows water to leak through them

10   and to cause continuous and repeated damage to the Windows, to the structures in which the

11   Windows were placed and/or to other property.   All of the Underlying Claims allege the

12   possibility that the claimed damage was the result of Plaintiffs' negligence or was otherwise

13   unintentional and accidental.

14                                             32.

15        The Underlying Claims are all class action lawsuits that are brought on behalf of both

16   the named plaintiffs and a class of individuals alleged to be similarly situated.

17                                             33.

18        None of the Underlying Claims limits the time period for which relief is sought, and

19   each of the Underlying Claims alleges the possibility that named plaintiffs or other class

20   members bought Windows before or during the policy periods covered by the Insurance

21   Policies and experienced water-related damage during such policy periods.

22                                             34.

23        The first underlying claim was the Ritchie Action.  The original complaint in the

24   Ritchie Action was filed against Plaintiffs on or about December 15, 2014.  A First Amended

25

26

Page 9 - COMPLAINT

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812 FAX: (503) 274-7979

O:\0001060\WOODGRAIN MILLWORK, INC. AND WINDSOR WINDOW CO\0001 PAM COMPLAINT.DOCX

1   Class Action Complaint was filed thereafter on or about December 1, 2015 (the "Ritchie

2   Amended Complaint").  A copy of the Ritchie Amended Complaint is attached as Exhibit B.

3                                          35.

4           The complaint in the Hillestad Action was filed against Plaintiffs on or about April 9,

5   2015 (the "Hillestad Complaint").  A copy of the Hillestad Complaint is attached as Exhibit C.

6                                          36.

7           The original complaint in the Schiller Action was filed against Plaintiffs on or about

8   April 14, 2015.  A First Amended Class Action Complaint was filed thereafter on or about

9   January 21, 2016 (the "Schiller Amended Complaint").  A copy of the Schiller Amended

10  Complaint is attached as Exhibit D.

11                                         37.

12          The original complaint in the Koty Action was filed against Plaintiffs on or about June

13  17, 2015.  A First Amended Complaint was filed shortly thereafter on or about December 9,

14  2015, the ("Koty Amended Complaint").  A copy of the Koty Amended Complaint is attached

15  as Exhibit E.

16                                         38.

17          The complaint in the Davia Action was filed against Plaintiffs on or about August 26,

18  2015 (the "Davia Complaint").  A copy of the Davia Complaint is attached as Exhibit F.

19                                         39.

20          The complaint in the Gengler Action was filed against Plaintiffs on or about February

21  17, 2016 (the "Gengler Complaint").  A copy of the Gengler Complaint is attached as Exhibit

22  G.

23                                         40.

24          The complaint in the Forster Action was filed against Plaintiffs on or about March 29,

25  2016 (the "Forster Complaint").  A copy of the Forster Complaint is attached as Exhibit H.

26

Page 10 - COMPLAINT

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812 FAX: (503) 274-7979

O:\0001060\WOODGRAIN MILLWORK, INC. AND WINDSOR WINDOW CO\0001 PAM COMPLAINT.DOCX

1                                        41.

2        The complaint in the Clark Action was filed against Plaintiffs on or about March 31,

3    2016 (the "Clark Complaint").  A copy of the Clark Complaint is attached as Exhibit I.

4                                        42.

5        The complaint in the Pledger Action was filed against Plaintiffs on or about September

6    29, 2016 (the "Pledger Complaint").  A copy of the Pledger Complaint is attached as Exhibit J.

7        **(d)  Defendant's refusal to pay past or future defense costs**

8                                        43.

9        Plaintiffs timely notified Defendants of the Underlying Claims.

10                                      44.

11        In response to notification of the Underlying Claims, most of the Primary Insurers

12    denied coverage, reserved the right to deny coverage at a later time, and/or requested additional

13    information.  Defendant Zurich acknowledged Plaintiffs' notice of loss, but neither confirmed

14    nor denied coverage.  No Defendant acknowledged its independent obligation to pay all

15    defense costs arising from the Underlying Claims.  Moreover, although some Defendants

16    suggested a willingness to pay a "share" of defense costs, no Defendant actually has made any

17    payment toward the defense of the Underlying Claims.

18                                        45.

19        Between November 21, 2016 and November 28, 2016, Plaintiffs wrote to each of the

20    Primary Insurers, providing them with an update on the status of the Underlying Claims and

21    documentation of the costs incurred in defending against those claims.  These letters also

22    reiterated Plaintiffs' request that the Primary Insurers provide defense funding for the

23    Underlying Claims.   The costs documentation that was provided to the Primary Insurers

24    / / /

25    / / /

26

Page 11 - COMPLAINT

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812 FAX: (503) 274-7979

O:\0001060\WOODGRAIN MILLWORK, INC. AND WINDSOR WINDOW CO\0001 PAM COMPLAINT.DOCX

1  showed that Plaintiffs had paid significant defense costs toward the Underlying Claims, and

2  that these costs were well in excess of any Primary Insurance Policy's applicable self-insured

3  retention.

4                                              46.

5        Despite these facts, to date, the Primary Insurers still have not paid any of Plaintiffs'

6  defense costs incurred in connection with the Underlying Claims, and Plaintiffs continue to

7  incur defense costs in connection with the Underlying Claims.

8                              **FIRST CAUSE OF ACTION**

9                    **(DECLARATORY RELIEF - DUTY TO PAY DEFENSE COSTS)**

10                                              47.

11        Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 46 of this

12  Complaint as if fully set forth herein.

13                                              48.

14        Pursuant to the terms of their Insurance Policies, each Defendant has an independent

15  obligation to fully pay Plaintiffs for, and/or to pay on Plaintiffs' behalf, all costs of defense of

16  the Underlying Claims, until any applicable liability limits of its Insurance Policy(ies) are

17  exhausted, either from the first dollar incurred or, upon satisfaction of any applicable self-

18  insured retention or, in the case of an Umbrella/Excess Insurer, upon exhaustion of a directly

19  underlying primary layer Insurance Policy.

20                                              49.

21        Upon information and belief, Defendants dispute their legal obligations to fully pay for

22  the costs of the defense of the Underlying Claims.

23  / / /

24  / / /

25  / / /

26

Page 12 - COMPLAINT

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812 FAX: (503) 274-7979

O:\0001060\WOODGRAIN MILLWORK, INC. AND WINDSOR WINDOW CO\0001 PAM COMPLAINT.DOCX

1    50.

2        An actual controversy of a justiciable nature presently exists between Plaintiffs and

3    Defendants concerning the proper construction of the Insurance Policies, and the rights and

4    obligations of the parties thereto, with respect to the costs of defense of the Underlying Claims.

5    51.

6        The issuance of prompt declaratory relief by this Court is desirable and necessary to

7    resolve the existing controversy between the parties.

8    52.

9        Pursuant to Or. Rev. Stat. § 742.061, Plaintiffs are entitled to recover their attorneys'

10    fees in pursuing coverage in this action.

11    **SECOND CAUSE OF ACTION**

12    **(BREACH OF CONTRACT – PRIMARY INSURERS' FAILURE**

13    **TO PAY DEFENSE COSTS)**

14    53.

15        Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 52 of this

16    Complaint as if fully set forth herein.

17    54.

18        Pursuant to the terms of their Insurance Policies, each Defendant Primary Insurer is

19    independently obligated to fully pay Plaintiffs for, and/or to pay on Plaintiffs' behalf, all costs

20    of defense of the Underlying Claims, until any applicable liability limits of its Insurance

21    Policy(ies) are exhausted, either from the first dollar incurred or, upon satisfaction of any

22    applicable self-insured retention.

23    55.

24        The Primary Insurers have breached their obligations under their primary-layer

25    Insurance Policies by failing to pay any of the costs of defense of the Underlying Claims.

26

Page 13 - COMPLAINT

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812 FAX: (503) 274-7979

O:\0001060\WOODGRAIN MILLWORK, INC. AND WINDSOR WINDOW CO\0001 PAM COMPLAINT.DOCX

1          56.

2          Plaintiffs have complied with all terms, conditions and prerequisites to coverage set

3    forth in the Insurance Policies.

4          57.

5          As a result of the Primary Insurers' breach, Plaintiffs have suffered damages in an

6    amount to be determined at trial, but not less than $618,924.36.

7          58.

8          As a result of the Primary Insurers' breach, Plaintiffs are also entitled to (1) an award of

9    attorney fees incurred in pursuit of coverage pursuant to Or. Rev. Stat. § 742.061; and (2)

10   prejudgment interest on the full amount of the costs of defense paid by Plaintiffs from the date

11   those costs were incurred until the date the Primary Insurers pay the amounts they owe.

12                              **THIRD CAUSE OF ACTION**

13                    **(DECLARATORY RELIEF - DUTY TO INDEMNIFY)**

14         59.

15         Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 58 of this

16   Complaint as if fully set forth herein.

17         60.

18         Pursuant to the terms of their Insurance Policies, each Defendant has an independent

19   obligation to fully pay Plaintiffs for, and/or to pay on Plaintiffs' behalf, all sums that Plaintiffs

20   become legally obligated to pay as damages, through judgment, settlement or otherwise, in the

21   Underlying Claims, up to the applicable liability limits of its Insurance Policy(ies).

22         61.

23         Upon information and belief, Defendants dispute their legal obligations to indemnify

24   Plaintiffs for damages incurred in the Underlying Claims.

25

26

Page 14 - COMPLAINT

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812 FAX: (503) 274-7979

O:\0001060\WOODGRAIN MILLWORK, INC. AND WINDSOR WINDOW CO\0001 PAM COMPLAINT.DOCX

1          62.

2          An actual controversy of a justiciable nature presently exists between Plaintiffs and

3    Defendants concerning the proper construction of the Insurance Policies, and the rights and

4    obligations of the parties thereto, with respect to any damages payable in the Underlying

5    Claims.

6          63.

7          The issuance of prompt declaratory relief by this Court is desirable and necessary to

8    resolve the existing controversy between the parties.

9          64.

10         Pursuant to Or. Rev. Stat. § 742.061, Plaintiffs are entitled to recover their attorneys'

11   fees in pursuing coverage in this action.

12                                    **PRAYER FOR RELIEF**

13         WHEREFORE, Plaintiffs pray for relief as follows:

14         (a) On the First Cause of Action, Plaintiffs request that this Court enter a declaratory

15   judgment in favor of Plaintiffs and against each Defendant, declaring that (1) each Defendant

16   has an independent obligation to fully pay Plaintiffs for, and/or to pay on Plaintiffs' behalf, all

17   costs of defense of the Underlying Claims, until any applicable liability limits of its Insurance

18   Policy(ies) are exhausted, either from the first dollar incurred, upon satisfaction of any

19   applicable self-insured retention, or, in the case of an Umbrella/Excess Insurer, upon

20   exhaustion of a directly underlying primary layer Insurance Policy; and (2) Plaintiffs have

21   satisfied any self-insured retention applicable to the Underlying Claims.

22         (b) On the Second Cause of Action, Plaintiffs request that this Court award Plaintiffs

23   damages in an amount to be determined at trial, but no less than $618,924.36.

24         (c) On the Third Cause of Action, Plaintiffs request that this Court enter a declaratory

25   judgment in favor of Plaintiffs and against each Defendant, declaring that each Defendant has

26

Page 15 - COMPLAINT

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812 FAX: (503) 274-7979

O:\0001060\WOODGRAIN MILLWORK, INC. AND WINDSOR WINDOW CO\0001 PAM COMPLAINT.DOCX

1  an independent obligation to fully pay Plaintiffs for, and/or to pay on Plaintiffs' behalf, all

2  sums that Plaintiffs become legally obligated to pay as damages, through judgment, settlement

3  or otherwise, in the Underlying Claims, up to the applicable liability limits of its Insurance

4  Policy(ies).

5       (d) Plaintiffs request that this Court enter a judgment in favor of Plaintiffs and against

6  each Defendant jointly and severally for all costs incurred in bringing this action, including

7  attorneys' fees, and pre-judgment and post-judgment interest to the extent permitted by law.

8       (e) Additionally, Plaintiffs requests such other and further relief as this Court may deem

9  just and proper.

10      DATED this 15th day of December, 2016.

11

12                              PARSONS FARNELL & GREIN, LLP

13

14                              s/ Michael E. Farnell
                                _____
15                              Michael E. Farnell, OSB # 922996
                                E-mail Address: mfarnell@pfglaw.com
16                              Paul A. Mockford, OSB #105729
                                E-mail Address: pmockford@pfglaw.com
17                              PARSONS FARNELL & GREIN, LLP
                                1030 SW Morrison Street
18                              Portland, Oregon 97205
                                Telephone: (503) 222-1812
19                              Facsimile: (503) 274-7979

20                              *Of Attorneys for Plaintiffs*

21

22

23

24

25

26

Page 16 - COMPLAINT

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
TELEPHONE (503) 222-1812 FAX: (503) 274-7979

O:\0001060\WOODGRAIN MILLWORK, INC. AND WINDSOR WINDOW CO\0001 PAM COMPLAINT.DOCX

EXHIBIT A
Primary Policies

| CARRIER | POLICY# | FROM | TO |
|---|---|---|---|
| Safeco | CP 8636740 | 1/1/1996 | 1/1/1997 |
| Safeco | CP 8636740A | 1/1/1997 | 1/1/1998 |
| Safeco | CP 8636740B | 1/1/1998 | 1/1/1999 |
| Safeco | CP 8636740C | 1/1/1999 | 1/1/2000 |
| Safeco | CP 8636740D | 1/1/2000 | 5/1/2000 |
| CNA | 223466581 | 6/30/2003 | 6/30/2004 |
| ALEA | CPP 2010813 01 | 6/30/2004 | 6/30/2005 |
| ALEA | CPP 2010813 02 | 6/30/2005 | 5/8/2006 |
| TIC | TPP1001034 00 | 5/8/2006 | 6/30/2007 |
| TIC | TPP1001034 01 | 6/30/2007 | 6/30/2008 |
| Wesco | WPP1011375 00 | 6/30/2008 | 1/1/2009 |
| National Union | 650-62-96 | 1/1/2009 | 7/1/2009 |
| National Union | 650-62-96 | 7/1/2009 | 7/1/2010 |
| National Union | 650-62-96 | 7/1/2010 | 7/1/2011 |
| Hartford | 34 UEN OH2070 | 7/1/2011 | 7/1/2012 |
| Hartford | 34 UEN OH2070 | 7/1/2012 | 7/1/2013 |
| Hartford | 34 UEN OH2070 | 7/1/2013 | 7/1/2014 |
| National Union | 713-30-75 | 7/1/2014 | 7/1/2015 |
| Zurich | GLO0381753-00 | 7/1/2015 | 7/1/2016 |
| Zurich | GLO0381753-01 | 7/1/2016 | 7/1/2017 |

EXHIBIT A
Page 1 of 2

EXHIBIT A
Umbrella/Excess Policies

| CARRIER | POLICY# | FROM | TO |
|---|---|---|---|
| Safeco | UL 8636740 | 1/1/1996 | 1/1/1997 |
| Safeco | UL 8636740A | 1/1/1997 | 1/1/1998 |
| Safeco | UL 8636740B | 1/1/1998 | 1/1/1999 |
| National Union | BE 701-02-11 | 1/1/1999 | 3/1/2000 |
| National Union | BE 701-02-12 | 3/1/2000 | 5/1/2000 |
| National Union | BE 9329698 | 5/1/2000 | 5/1/2001 |
| Arch | 12 ULP 1405300 | 6/30/2003 | 6/30/2004 |
| National Union | 2681618 | 6/30/2004 | 6/30/2005 |
| National Union | 4953531 | 6/30/2005 | 6/30/2006 |
| National Union | BE 6799168 | 6/30/2006 | 6/30/2007 |
| National Union | BE 9835067 | 6/30/2007 | 6/30/2008 |
| National Union | BE 6081760 | 6/30/2008 | 6/30/2009 |
| National Union | BE 20000383 | 6/30/2009 | 7/1/2010 |
| National Union | BE 20000471 | 7/1/2010 | 7/1/2011 |
| National Union | BE 9999820 | 7/1/2011 | 7/1/2012 |
| National Union | BE 21421235 | 7/1/2012 | 7/1/2013 |
| National Union | BE 025066116 | 7/1/2013 | 7/1/2014 |
| National Union | BE 044156672 | 7/1/2014 | 7/1/2015 |
| Liberty | TH7-6610066788-015 | 7/1/2015 | 7/1/2016 |
| Starr | 1000706004161 | 7/1/2016 | 7/1/2017 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## BEAUFORT DIVISION

|  |  |
|---|---|
| ) | Civil Action No.: 9:14-cv-4734 |
| **CATHY L. RITCHIE, individually and on behalf of all others similarly situated,** ) ) | |
| ) | |
| **Plaintiff,** ) | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| ) | |
| **vs.** ) | **(Re: Defective Products)** |
| ) | **Jury Trial Demanded** |
| **WINDSOR WINDOW COMPANY d/b/a WINDSOR WINDOWS AND DOORS, and WOODGRAIN MILLWORK, INC.,** ) ) ) | |
| **Defendants.** ) ) | |

The Plaintiff, Cathy L. Ritchie, individually, and on behalf of all others similarly situated, complaining of the Defendants named herein, would respectfully allege and show the Court as follows:

### NATURE OF ACTION

1.    This is a class action asserting negligence/gross negligence, breach of express warranty, breach of implied warranties of merchantability and fitness for particular purpose, negligent misrepresentation, strict products liability and seeking damages in connection with defective windows designed, manufactured, marketed, advertised, distributed, and sold by Defendants, Windsor Window Company d/b/a Windsor Windows and Doors, and Woodgrain Millwork, Inc.

### THE PARTIES

2.    Plaintiff Ritchie is a natural person and citizen of South Carolina. Ritchie owns a home in Beaufort, South Carolina (Beaufort County), in which Defendants' windows are installed.

3.     Defendant Windsor Window Company d/b/a Windsor Windows and Doors was and is a company organized and existing under the laws of the State of Idaho, with a principal place of business in the State of Iowa.  At all times relevant herein, Windsor Windows and Doors transacted and conducted business in South Carolina.

4.     Defendant Woodgrain Millwork, Inc. was and is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business in the State of Idaho.

5.     At all times relevant herein, Woodgrain Millwork, Inc. was the parent company of Windsor Windows and Doors, and jointly transacted and conducted business in South Carolina.

6.     Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the windows at issue.

7.     At all times relevant herein, the Defendants were actual and/or de facto joint venturers in the design, development, manufacture, marketing, and sales of the windows at issue.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that: (i) there is complete diversity as Plaintiff is a citizen of South Carolina and Defendants are domiciled, incorporated, and headquartered in Idaho, Iowa, and Oregon; (ii) the amount in controversy exceeds $5,000,000.00 (Five Million Dollars), exclusive of interest and costs; and (iii) there are 100 or more members of the proposed Plaintiff class.

9.     Venue lies in this District pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.  Additionally, at all times relevant herein, Defendants conducted

2

and/or transacted business in this Judicial District, and therefore, is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

10.     Defendants hold themselves out to both the construction industry and the public at large as being providers of superior, quality, and durable products, including the windows that are the subject of this litigation.

11.     At all times relevant herein, Defendants were engaged in the marketing, sale, supply, and delivery of windows in the State of South Carolina.

12.     At all times relevant herein, Defendants designed, manufactured, marketed, sold, supplied and distributed wood and wood clad windows ("the Windows").

13.     In 2009, Plaintiff purchased land and contracted for the construction of a home with the property address of 11 Belle Isle Farms Drive, Beaufort, South Carolina.

14.     The Windows were installed in Plaintiff's home during construction.

15.     After moving into her home, Plaintiff began experiencing problems with her windows.

16.     Plaintiff contacted the company that supplied the Windows during construction, who made several visits to the site to repair.

17.     When the supplier was unable to repair the windows, the Plaintiff contacted the Windsor branch/distributor in Columbia, South Carolina.

18.     Defendants' representative made two or three visits to the home to repair the problems Plaintiff was experiencing.

19.     The subject of the majority of the repairs was the operability of the window. Plaintiff believed all other repairs were completed.

3

20.     The Plaintiff continued to have operability problems, and eventually Defendants' representative stopped returning Plaintiff's phone calls.

21.     Approximately a year later, in October of 2014, Plaintiff sought assistance with investigating the ongoing problems with the operability of her windows.

22.     During the investigation, latent rot and water damage was discovered on and around her windows.

23.     Engineering testing was conducted in November of 2014, and several leaks through the glazing pocket and at the frame corner occurred.

24.     As a result, Plaintiff had no other alternative than to file suit.

25.     The Windows are defective and fail to perform at Plaintiff's residence and at class members' residences by permitting water intrusion through unsealed or inadequately sealed areas of the Windows' frame and sashes, and into the interior of the residences.

26.     The Windows are defective and fail to perform at Plaintiff's residence and at class members' residences by permitting water to penetrate the window components, wherein it is absorbed by wood members, and causes rot, premature degradation, leaking, and failure of the wood.

27.     Degradation of the wood components permits additional water infiltration into the home in an accelerated cycle.

28.     The water intrusion and above-described damages resulting from the Windows constitutes "occurrences" resulting in "property damage" to property other than Defendants' "product" as those are terms commonly defined and used in the typical commercial general liability insurance policy.

29.     The above-described defects are due to fundamental design, engineering, and manufacturing errors, which should have been within Defendants' expertise.

30.     Because the Windows rot, prematurely degrade, otherwise fail, and permit water intrusion, they violate the building codes and industry standards.

31.     The above-described deficiencies exist at the time the Windows leave the factory.

32.     Failure of the Windows begins upon installation, and continues during repeated and prolonged exposure to weather and ordinary use.

33.     Defendants knew or should have known that the defects were present at the time the products left their control.

34.     Defendants knew or should have known the potential for leakage, rot, premature degradation, and failure of their Windows, but failed to adequately correct the defective design or formulation that resulted in said damage.

35.     Defendants knew or should have known the potential for leakage, rot, premature degradation, and failure of their Windows, but failed to adequately correct the defective manufacture and that resulted in said damage.

36.     Defendants failed to warn purchasers, installers, or users of the above-described risks of failures.

37.     The purchase of Defendants' Windows includes a written express warranty, which forms part of the basis of the bargain between Defendants and the purchaser at the time of sale.

38.     The Windows' written express warranty also forms part of the basis of the bargain between the seller of the home and home buyers, including Plaintiff Ritchie and class members.

5

**EXHIBIT B**
**Page 5 of 24**

9:14-cv-04734-SB   Date Filed 12/01/15   Entry Number 39   Page 6 of 24

39.     The typical purchase agreement for the sale and/or construction of class members' homes likely contains one or more provisions transferring or assigning manufacturers' and suppliers' warranties to them at the time of purchase or conveyance.

40.     The transfer or assignment of the manufacturers' and suppliers' warranties, which would include the window warranties, forms part of the basis of the bargain at the time Plaintiff and class members purchased the homes.

41.     Even where a manufacturer or supplier warranty transfer provision is not present, the average homeowner expects at the time of purchase, his or her home comes with such warranties, including a window warranty against defects.

42.     Defendants also expressly and implicitly represents in documents available to the public that their warranty is part of the product being sold, and that the written warranties apply to the owners of the homes containing the Windows.

43.     Defendants represent in their express warranty and documents available to the public that the Windows would be free from defective materials and workmanship for at least 10 years.

44.     Plaintiff Ritchie and putative class members relied upon these representations when Plaintiff Ritchie purchased the Windows and/or structures containing the Windows.

45.     Plaintiff Ritchie and putative class members reasonably expected and expect that the Windows would last longer than 10 years.

46.     Defendants' representations, expressly and impliedly, through their website, brochures, and marketing materials that the Windows are suitable and free from defects, were intended to and likely did affect the market by inducing builders, contractors, suppliers, and others to purchase the Windows.

6

47.    Plaintiff put the installer/supplier of the Windows and Defendants on notice of the defects and damages; and Defendants were also put on notice of defects and damages by the installer/supplier of the Windows.

48.    Defendants and/or their representatives purportedly attempted to repair or replace the defective Windows and components.

49.    Defendants and/or their representatives failed to adequately remedy the defects and damages, and subsequently ceased all communications with Plaintiff.

50.    Defendants were put on notice of defects and resultant damages in the Windows by other homeowners in South Carolina and other states across the country.

51.    Defendants' shipping of the Windows with actual or constructive knowledge of the defects, or with negligent or reckless disregard of the presence of defects constituted a breach of their express warranty, and makes the limitations of the express warranty unconscionable in all respects, and therefore void *ab initio*.

52.    The published written warranties include the following limitations and exclusions:

(a)    The warranty is ambiguous with regard to coverage of the windows' wood components;

(b)    The warranty limits coverage of wood warping;

(c)    The warranty purports to exclude damages caused by design limitations and design defects;

(d)    The warranty excludes the cost of labor for removal, repair, or replacement of defective parts, products, or glass;

(e)    The warranty excludes the cost of repainting or refinishing, associated with the repair or replacement of defective parts or products.

7

(f)     The warranty requires that the homeowner be able to identify a "defect" in the Windows;

(g)     The warranty places unreasonable time limitations on notifying Defendants of defects, including Defendants' unilateral determination of when the homeowner should have "reasonably" discovered a defect.

(h)     The warranty shortens the warranty period by beginning from the date of manufacture, regardless of when the window is installed and put into use and operation.

(i)     The warranty makes Defendants the final determiners of whether or not a defect exists;

(j)     The warranty potentially requires payment of a field service fee for inspecting the windows;

(k)     The warranty requires the homeowner to produce information that may not be accessible or otherwise readily understandable, including IGU and/or glass codes;

(l)     The warranty purports to limit Defendants' responsibility by providing a remedy of repair, replacement, or refund a portion of the original purchase price, solely at Defendants' option;

(m)     The warranty purports to exclude any liability for consequential, incidental, or punitive damages;

(n)     The warranty purports to exclude any liability in excess of the original purchase price of the product;

8

9:14-cv-04734-SB   Date Filed 12/01/15   Entry Number 39   Page 9 of 24

(o)    The warranty limits repair and replacement parts and products to the remainder of the original warranty period;

(p)    The warranty purports to disclaim all warranties, expressed or implied, including implied warranties of merchantability or fitness for a particular purpose;

(q)    The warranty purports to disclaim performance ratings identified by the AAMA and NFRC ratings affixed to the Windows by the Defendants;

(r)    The warranty purports to disclaim future performance of the Windows;

(s)    The warranty purports to disclaim any obligation to comply with building standards, including applicable building codes;

(t)    The warranty purports to allow Defendants to inconsistently apply the warranty at their own discretion;

(u)    The warranty's 10 year limitation is in and of itself unconscionable; and

(v)    In other such ways revealed during discovery, and/or otherwise determined at trial.

53.    The warranty is not a negotiated contract and is so one-sided that no reasonable person would ever knowingly agree to its terms if properly disclosed.

54.    Further, Defendants have engaged in a pattern and practice of failing to honor or discouraging warranty claims by failing to respond to the homeowner, requiring the owner to pay for an inspection of the Windows, and/or requiring the homeowner to pay for all costs associated with repair or replacement of the Windows, including the labor for such repair or replacement.

**EXHIBIT B**
**Page 9 of 24**

55.     The above described pattern and practice by Defendants have the effect of discouraging defect claims by class members or continuing to pursue remedies through the Defendants.

56.     Moreover, during contact with class members, Defendants conceal their knowledge of defects in the Windows in the class members' residences.

57.     As Defendants have known or should have known of their Windows' defects and have failed to timely honor their warranty, the warranty has failed of its essential purpose and the limitations therein are null and void, and the Plaintiff and class members have otherwise not received the value for which they, their builders or contractors bargained for at the time the Windows were purchased or transferred to homeowners.

58.     The defects in Defendants' Windows also make the Windows unfit for their intended use.

59.     Given the leaking, rotting, premature degradation, and failure of the Windows, the Windows have a reduced life expectancy, and require unexpected maintenance, repair, and replacement by Plaintiff and class members.

60.     The Windows' defects and resultant damages have caused a diminution of the value of the homes.

61.     Defendants knew or should have known that the Windows did and do not satisfy industry standards.

62.     Defendants knew or should have known that their Windows were defective in design and manufacture, not fit for their ordinary and intended use, not merchantable, and failed to perform in accordance with the advertisements, brochures, representations, marketing materials, and warranties disseminated by Defendants.

10

63.    Defendants' Windows failed to conform to the reasonable expectations of ordinary consumers such as Plaintiff Ritchie and class members.

64.    Because the Windows leak, and allow for increased water absorption, water penetration, rot, degradation, cause reduced life expectancy, and otherwise fail, the Windows are neither durable nor suitable for use as an exterior building product.

65.    The above-described defective conditions of the Windows and resultant damages are present in Plaintiff Ritchie's home and are common among class members.

66.    The Plaintiff and class members have been proximately damaged by the Windows' above-described defective condition and Defendants' above-described conduct.

## CLASS ACTION ALLEGATIONS

67.    Plaintiff Ritchie brings this action individually and as representative of all those similarly situated pursuant to Rule 23, F.R.C.P., on behalf of the Class.  The Class is defined as follows:

> All persons and entities that own structures located within the State of South Carolina in which Windsor's wood or wood clad windows are installed.
>
> This class excludes:
>
> a)    any Judge or Magistrate presiding over this action and members of their families;
>
> b)    any employees of Defendants;
>
> c)    any entity in which Windsor has a controlling interest or which has a controlling interest in Windsor and its legal representatives, assigns, and successors;
>
> d)    any person who has released Windsor or is currently in litigation with Windsor related to Windsor's wood or wood clad windows; and
>
> e)    all persons who properly execute and file a timely request for exclusion from the Class.

11

9:14-cv-04734-SB   Date Filed 12/01/15   Entry Number 39   Page 12 of 24

Plaintiff proposes that the class be divided into subclasses if and as necessary to align class interests.

68.     *Numerosity*: The Class is composed of a thousand or more persons geographically dispersed throughout the State of South Carolina, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Class is ascertainable and identifiable from Defendants' records or identifying marks on the Windows.

69.     *Commonality*: The critical question of law and fact common to the Class that will materially advance the litigation is whether the Windows are inherently defective, contrary to the expectations imparted by Defendants through their warranties, representations and omissions.

70.     Furthermore, other questions of law and fact common to the Class that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class include the following:

(a)     Whether the Windows are defective;

(b)     Whether Defendants were negligent in their design and manufacture of the Windows;

(c)     Whether Defendants knew or should have known about the defective condition of the Windows;

(d)     Whether Defendants concealed and/or failed to disclose the defective condition of the Windows to consumers;

(e)     Whether Defendants breached their express and implied warranties;

(f)     Whether the Plaintiffs are entitled to prejudgment interest, attorneys' fees, and costs from Defendants; and

9:14-cv-04734-SB   Date Filed 12/01/15   Entry Number 39   Page 13 of 24

     (g)    Whether Defendants' conduct was negligent, reckless, willful, wanton, intentional, fraudulent or the like, entitling Plaintiffs to statutory or punitive damages from Defendants.

61.    *Typicality*: Plaintiff Ritchie's claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective Windows and Defendants' conduct in concealing the defects in the Windows to owners, contractors, developers, and suppliers.

62.    *Adequate Representation*: Plaintiff Ritchie will fairly and adequately protect the interests of the members of the Class and has no interests antagonistic to those of the Class given the Plaintiff is a member of the Class she also seeks to represent.  The Plaintiff has retained counsel experienced and competent in construction litigation, product liability, complex litigation and consumer class actions.

63.    *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class members be required to bring separate actions, this Court and/or courts throughout South Carolina would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

64.     Moreover, Plaintiff envisions no unusual difficulty in the management of this action as a class action and the amount of money at stake for each member is not sufficient for each member to hire their own counsel and experts and to bring their own action.

### ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

65.     Plaintiff and class members are within the applicable statute of limitations for the claims presented hereunder because Plaintiff and class members did not discover the defect, and could not reasonably have discovered the defect.

66.     Due to the concealed location of rot and other primary leak points, Plaintiffs are often unaware of the wood rot, degradation, and other failures until the end or expiration of Defendants' warranty period.

67.     Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts of concealment, which include Defendants' concealment from Plaintiff, class members, and the general public that their Windows were defective, while continually marketing the Windows as a durable and suitable product.

68.     Defendants had a duty to disclose that their Windows were defective, unreliable, and inherently flawed in design and/or manufacture.

69.     Plaintiff and class members had no knowledge of, and no reasonable way of discovering, the latent defects found in Defendants' Windows at the time they purchased the product or their homes, residences, buildings, and other structures.

70.     Defendants did not notify, inform, or disclose to Plaintiff and class members that there were defects in the Windows.

71.     Because Defendants failed in their duty to notify Plaintiff and class members that their product was defective, the statute of limitations should be tolled on Plaintiff's and class members' claims.

**ESTOPPEL FROM PLEADING WARRANTY LIMITATIONS AND DISCLAIMERS**

72.     Defendants are also estopped from relying on any warranty limitation or disclaimer as a defense to Plaintiff's and class members' claims.

73.     By virtue of Defendants' acts, the Windows installed in Plaintiff's and class members' residences have not lived up to Defendants' warranties and representations, and given the defective condition of the Windows and the premature deterioration the Windows that require unexpected maintenance, wear and/or replacement, the Windows have not proven to be of the value bargained for and/or of that compared to other windows.

74.     Defendants knew or should have known that their Windows were defective in design and/or manufacture, and said Windows were not fit for their ordinary and intended use, were not merchantable, and failed to perform in accordance with the advertisements, marketing materials and warranties disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiff and class members.

75.     Accordingly, any warranty provided by Defendants fails its essential purpose because its purports to warrant that the Windows will be free from defects for a prescribed period of time when in fact said Windows fall far short of the applicable warranty period.

76.      Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available under Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

9:14-cv-04734-SB   Date Filed 12/01/15   Entry Number 39   Page 16 of 24

77.     As a result, any time limitations, exclusions, or disclaimers which restrict the remedies encompassed within Defendants' warranties are unconscionable and unenforceable, and therefore, Defendants are estopped from relying on the same.

## FOR A FIRST CAUSE OF ACTION
### Negligence/Gross Negligence

78.     The above allegations are incorporated as fully as if stated verbatim herein.

79.     At all times material hereto, Defendants designed and manufactured the Windows.

80.     Defendants had a duty to Plaintiff and class members to design and manufacture Windows that were free of latent defects that would cause the Windows to leak, rot, prematurely degrade, and otherwise fail.

81.     Defendants had a duty to Plaintiff and class members to test the Windows to ensure adequate performance of the Windows for a reasonable period of use.

82.     Defendants had a duty to Plaintiff and class members to ensure that the Windows' components were suitable as an exterior product, either by testing or by verifying third-party test results.

83.     Defendants had a duty to Plaintiff and class members to ensure their Windows complied with industry standards.

84.     Defendants had a duty to Plaintiff and class members to forewarn purchasers, installers, and users regarding the known risk of product failures.

85.     Defendants failed to exercise ordinary and reasonable care in the design and manufacture of the Windows.

86.     The Plaintiff and class have been damaged as a direct and proximate result of the negligence, carelessness, recklessness, willfulness, and wantonness of Defendants as above-described.

87.     As Defendants' conduct was grossly negligent, reckless, willful, wanton, intentional, fraudulent, or the like, Plaintiff class is entitled to an award of punitive damages against Defendants.

## FOR A SECOND CAUSE OF ACTION
### Breach of Implied Warranty

88.     The above allegations are incorporated as fully as if stated verbatim herein.

89.     Defendants are designers, manufacturers, and suppliers of the Windows, and for a number of years, marketed, warranted, distributed, and/or sold the Windows in South Carolina.

90.     Defendants manufactured and sold their Windows to Plaintiff, class members, and/or Plaintiff's and class members' agents, and in so doing, impliedly warranted to them that the product was of merchantable quality and fit for its intended use.

91.     Defendants' Windows were not of merchantable quality and not fit for intended use when they left the factory due to the defects in the Windows described herein.

92.     The numerous and serious defects described herein make the Windows unfit and inappropriate for its intended use within structures.

93.     The Windows are also unfit for their particular purpose. Defendants manufactured and distributed their Windows in climates with multiple seasons and geographic locations. Defendants knew, or should have known, that its Windows would be subjected to varying temperatures and weather conditions, including rain cycles, throughout each year.  Due to the defects and resultant leakage, rot, premature degradation, and other failures, the Windows are unfit for their particular purpose.

17

9:14-cv-04734-SB    Date Filed 12/01/15    Entry Number 39    Page 18 of 24

94.     Despite having knowledge of the Windows' defects, have failed to provide an adequate remedy.

95.     As Defendants' express warranty (and warranty claims process thereunder) has been breached and/or is unconscionable and/or fails of its essential purpose, as described above, the limitations on implied warranties contained within the express warranty should be deemed null and void and of no effect or limitation.

96.     As a result, Defendants breached their implied warranties to Plaintiff and class members by producing, manufacturing, distributing and selling them a defective product that was unfit for its intended use and for a particular purpose.

97.     Plaintiff and class members suffered and will continue to suffer losses as alleged herein, in an amount to be determined at trial.

98.     As a direct and proximate result of Defendants' breach of the implied warranty on the Windows, the Plaintiff and class members have suffered actual and consequential damages.

## FOR A THIRD CAUSE OF ACTION
### Breach of Express Warranty

99.     The above allegations are incorporated as fully as if stated verbatim herein.

100.     Defendants marketed and sold Windows into the stream of commerce with the intent that the Windows would be purchased by Plaintiff and class members.

101.     The representations and warranties made by Defendants in marketing and selling their Windows formed part of the basis of the bargain between Defendants and the purchasers of the Windows at the time of the sale.

102.     Purchase agreements for the construction or sale of residences or structures, including Plaintiff Ritchie's purchase agreement, contained provisions transferring or assigning

18

the manufacturers' warranties, including window warranties.  Such provisions are valid transfers and assignments, and the transferred and assigned warranties formed part of the basis of the bargain at the time the home was purchased.

103.    The Defendants' warranty certifies that they will replace or repair components of their products found to be defective for at least ten (10) years.

104.    Upon information and belief, all of Defendants' written warranties applicable to class members contain the same or similar provisions.

105.    Through their written warranties, brochures, marketing materials, website, and other representations regarding the performance, durability, and quality of the Windows, Defendants created express warranties for the benefit of Plaintiff and class members.

106.    Thus, Defendants' express warranties and representations are applicable to the Windows installed in Plaintiff's and class members' residences and/or structures.

107.    Specifically, Defendants expressly warranted to Plaintiff and class members that the Windows purchased by Plaintiff and class members were free from defects in materials and workmanship that substantially impair their operation or performance and that they would last at least 10 years.

108.    However, Defendants' warranties fail their essential purpose because they purport to warrant that the Windows will be free from manufacturer defects for at least 10 years when in fact the Windows fall far short of the applicable warranty period. To the contrary, due to the leakage in the Windows, Defendants' Windows begin failing after only several years' or less use.

109.    Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available in Defendants'

9:14-cv-04734-SB    Date Filed 12/01/15    Entry Number 39    Page 20 of 24

warranties are limited to such an extent that they do not provide a minimum adequate remedy. Further, the warranty is inadequate because by its 10-year limitation alone, Defendant seeks to reduce the reasonable expected life of the product.

110.    Defendants have denied, failed to pay in full, and/or failed to respond to warranty claims.

111.    Accordingly, the limitations on remedies and the exclusions in Defendants' warranties are unconscionable and unenforceable.

112.    As a result of Defendants' breaches of express warranties, Plaintiff and class members have suffered actual damages in that they purchased homes, residences, buildings, and other structures containing defective Windows that have failed or are failing prematurely due to leakage and increased moisture absorption problems. This failure has required or is requiring Plaintiff and class members to incur significant expense in repairing or replacing their Windows. Replacement is required to prevent on-going and future damage to the underlying structures or interiors of Plaintiff's and class members' residences.

113.    Thus, as a direct and proximate result of Defendants' breach of the express warranty on the Windows, the Plaintiff and class has suffered actual and consequential damages.

### FOR A FOURTH CAUSE OF ACTION
**Negligent Misrepresentation**

114.    The above allegations are incorporated as fully as if stated verbatim herein.

115.    Defendants, through their marketing materials, website, brochures, product literature, warranties and agents, made representations to the Plaintiff and class members, builders, suppliers and the public about the superior quality and durability of their Windows and components.

9:14-cv-04734-SB   Date Filed 12/01/15   Entry Number 39   Page 21 of 24

116.    Specifically, Defendants have represented that their windows are durable, of "superior construction;" "constructed with the highest grade materials, hardware, and glass;" and that Defendants "carefully monitor every product throughout the entire manufacturing process;" and have made similar representations throughout various time periods in which the Windows have been sold.

117.    Defendants transmitted said representations to the Plaintiff and class members, builders, suppliers and the public while failing to disclose the defective condition of their Windows, including the substantial leakage and consequential damages that would or could likely result from their Windows' defects.

118.    Defendants have a pecuniary interest in making these representations and non-disclosures and had a duty to communicate truthful information to the Plaintiff and class members, builders, suppliers and the public.

119.    Defendants breached their duties by failing to exercise due care in making the above-described representations and non-disclosures and the Plaintiff and class members, builders, suppliers and the public relied on these representations and non-disclosures.

120.    The Plaintiff and class members have suffered a pecuniary loss as a direct and proximate result of their reliance upon these representations and non-disclosures.

## FOR A FIFTH CAUSE OF ACTION
### Strict Liability

121.    The above allegations are incorporated as fully as if stated verbatim herein.

122.    At all times relevant to this Complaint, Defendants were in the business of designing, manufacturing, marketing, distributing and/or selling Windows and had a statutory duty of care.

123.    Defendants breached this duty because their Windows are defectively designed and manufactured and are unreasonably dangerous in that they allow water to intrude into the interior of the residence, resulting in damage to the Windows and consequential damage to the structure into which the Windows are installed.

124.    Defendants breached their duty because their Windows are defectively designed and manufactured and are unreasonably dangerous in that they rot, degrade, and otherwise fail, thereby allowing air and water to intrude into the interior of the residence and cause damage to the Windows and consequential damage to the structure into which the Windows are installed.

125.    Were the defects known at the time of design and manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed and manufactured in that manner.

126.    Feasible alternatives existed to make the Windows safer for intended use at the time of design. Defendants were knowledgeable about the products and aware or should have been aware that feasible alternatives existed which would maintain the usefulness of the Windows and eliminate the harm.

127.    The Windows reached the Plaintiff and class members, and were intended to reach the Plaintiff and class members, without substantial change in the condition in which they were sold.

128.    Defendants are in violation of South Carolina Code §15-73-10, for having designed, manufactured, marketed, distributed, and sold the Windows, which were defective, to the Plaintiff and class members.

129.    As a direct, foreseeable, and proximate result of the sale of the defective Windows to Plaintiff and class members, the Plaintiff and class members have suffered

22

significant physical damage to their properties, other contamination and deterioration, as well as diminution in the value of the properties.

130.    Plaintiffs demand a trial by jury.

WHEREFORE, Plaintiff prays that this Court will certify a class and for judgment against Defendants, for:

1)    Plaintiff's and class members' actual and consequential damages as found by the jury; statutory or punitive damages against Defendants; reasonable attorneys' fees; costs of suit; and prejudgment interest;

2)    For such other and further relief at law or equity, both in general and special, as to which Plaintiff and class members by this Complaint show themselves to be entitled.

By:    /s Harper Todd Segui
Harper Todd Segui
Federal ID No. 10841
P.O. Box 1483
Mount Pleasant, South Carolina 29465
Telephone (843) 494-5576

AND

Jonathan Shub
Kohn, Swift & Graf, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: 215-238-1700

Daniel K. Bryson
Matthew E. Lee
Whitfield Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Telephone: 919-600-5000

*Attorneys for Plaintiff*

November December 1, 2015
Charleston, South Carolina

9:14-cv-04734-SB   Date Filed 12/01/15   Entry Number 39   Page 24 of 24

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and current copy of the foregoing has been electronically filed with the Clerk of Court this December 1, 2015, by using the CM/ECF system, which will send notice of electronic filing to all parties of record.

By: /s Harper Todd Segui
Harper Todd Segui
Federal ID No. 10841
P.O. Box 1483
Mount Pleasant, SC 29465
Telephone (843) 494-5576

24

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| PATRICIA HILLESTAD and JEFF KLUIN, On Behalf of Themselves and All Others Similarly Situated. | ) ) ) | |
| | ) | Case No. 15-cv-215 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WINDSOR WINDOW COMPANY d/b/a WINDSOR WINDOWS AND DOORS, and WOODGRAIN MILLWORK, INC., | ) ) ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | **CLASS ACTION** |
| _____ | ) | |

### CLASS ACTION COMPLAINT

Plaintiffs, Patricia Hillestad and Jeff Kluin (collectively "Plaintiffs"), by and through their undersigned counsel, individually and on behalf of all other persons and entities similarly situated, allege against Defendant Windsor Window Company d/b/a Windsor Windows and Doors ("Windsor") and Defendant Woodgrain Millwork, Inc. ("Woodgrain") (collectively "Defendants") the following facts and claims upon knowledge as to matters relating to themselves and upon information and belief as to all other matters and, by way of this Class-Action Complaint, aver as follows:

### INTRODUCTION

1.      This is a class action brought by Plaintiffs individually and on behalf of the below-defined Classes against Defendants to obtain damages and injunctive relief arising from and relating to their purchase and installation of  defective wood and wood clad windows ("the Windows") designed, manufactured, marketed, advertised, distributed, and sold by Defendants.

**EXHIBIT C**
**Page 1 of 44**

EXHIBIT A - Page 45 of 349

2.      This class action arises out of Defendants' attempt to design, manufacture advertise, and sell Windows that have a propensity to leak, rot, prematurely degrade, and otherwise fail. Defendants' Windows fail to comply with relevant and applicable building codes and standards, and they have breached their express and implied warranties with respect to these products.

3.      Defendants' negligent and fraudulent behavior with respect to its manufacturing, marketing, and sale of the defective Windows has caused Plaintiffs and the other Class members (defined below) to suffer direct financial harm.  Defendants' failure to comply with the plain warranties of the Windows renders them markedly less valuable because of their propensity to leak, rot, cause premature degradation, and otherwise fail, thus causing severe damage to the Windows and other property in Plaintiffs' and Class members' homes, residences, and buildings. Plaintiffs would have paid significantly less for the Windows, or not purchased them at all, had they known the material facts that the products contained the above described defects and caused severe damage to other property.

## **PARTIES**

4.      Plaintiff, Patricia Hillestad ("Plaintiff Hillestad"), is a resident of Lodi, Wisconsin and, thus, a citizen of Wisconsin.  In March 2006, Plaintiff Hillestad purchased a condominium in which Defendants' Windows are installed.  As a result of Defendants' conduct described herein, Plaintiff Hillestad has been injured.

5.      Plaintiff, Jeff Kluin ("Plaintiff Kluin") is a resident of Sioux Falls, South Dakota, and, thus, a citizen of South Dakota.  Plaintiff Kluin owns a home in which Defendants' Windows are installed.  In the spring of 1999, Plaintiff Kluin installed Defendants' Windows in his home. As a result of Defendants' conduct, Plaintiff Kluin has been injured.  Pictures of the current condition of Plaintiff Kluin's Windows are included below:

**EXHIBIT C**
**Page 2 of 44**

EXHIBIT A - Page 46 of 349





3

EXHIBIT C
Page 3 of 44



6. Defendant, Windsor, was and is a company organized and existing under the laws of the State of Idaho, with a principal place of business located at 900 S. 19th St., West Des Moines, Iowa, 50265. Windsor, thus, is a citizen of Idaho and Iowa. At all times relevant herein, Windsor transacted and conducted business in Wisconsin and South Dakota.

7. Defendant, Woodgrain, was and is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business located at 300 Northwest 16th Street in Fruitland, ID 83619. Woodgrain, thus, is a citizen of Oregon and Idaho.

8. At all times relevant herein, Woodgrain was the parent company of Windsor, and jointly transacted and conducted business in Wisconsin and South Dakota.

9. Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the Windows at issue.

10. At all times relevant herein, Defendants were actual, and/or *de facto*, joint ventures in the design, development, manufacture, marketing, and sales of the Windows at issue.

4

**EXHIBIT C**
**Page 4 of 44**

EXHIBIT A - Page 48 of 349

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that: (i) there is

complete diversity, as Plaintiffs are citizens of Wisconsin and South Dakota and Defendants are

domiciled, incorporated, and headquartered in Idaho, Iowa, and Oregon; (ii) the amount in

controversy exceeds $5,000,000.00 (Five Million Dollars), exclusive of interest and costs; and (iii)

there are 100 or more members of the proposed Class.

12.     Venue lies in this District pursuant to 28 U.S.C. § 1391 because Plaintiff Hillestad

resides in this Judicial District, and a substantial part of the events or omissions giving rise to

Plaintiffs' claims occurred in this District.  Additionally, at all times relevant herein, Defendants

conducted and/or transacted business in this Judicial District and, therefore, are subject to personal

jurisdiction in this District and reside here for venue purposes.

## FACTUAL ALLEGATIONS

13.     Defendants hold themselves out to both the construction industry and the public at

large as being providers of superior, quality, and durable products, including the Windows that are

the subject of this litigation.

14.     At all times relevant herein, Defendants were engaged in the marketing, sale, supply

and delivery of windows in the States of Wisconsin and South Dakota and elsewhere.

15.     At all times relevant herein, Defendants designed, manufactured, marketed, sold,

supplied, and distributed the Windows.

16.     Unknown to Plaintiffs and Class members, the Windows are defective and fail to

perform at Plaintiffs' residences and at Class members' residences by permitting water intrusion

**EXHIBIT C**
**Page 5 of 44**

through unsealed or inadequately sealed areas of the Windows' frame and sashes, and into the interior of the residences.

17.     The Windows are also defective and fail to perform at Plaintiffs' residences and at Class members' residences by permitting water to penetrate the window components, wherein it is absorbed by wood members, and causes rot, premature degradation, leaking, and failure of the wood.  This routinely occurs well in advance of the expected useful lives of the Windows.

18.     Degradation of the wood components permits additional water infiltration into the home in an accelerated cycle.

19.     The water intrusion and above-described damage resulting from the Windows constitutes "occurrences" resulting in "property damage" to property other than Defendants' "product" as those are terms commonly defined and used in the typical commercial general liability insurance policy.

20.     The above-described defects are due to fundamental design, engineering, and manufacturing errors, which should have been within Defendants' expertise.

21.     Because the Windows rot, prematurely degrade, otherwise fail, and permit water intrusion, they violate the building codes and industry standards, and amount to a breach of the Windows' warranties.

22.     The above-described deficiencies exist at the time the Windows leave the factory.

23.     Failure of the Windows begins upon installation, and continues during repeated and prolonged exposure to weather and ordinary use.

24.     Because of their expertise in window design and manufacturing, Defendants knew or should have known that the defects were present at the time the products left their control.

**EXHIBIT C**
**Page 6 of 44**

25.     Defendants knew or should have known the potential for leakage, rot, premature degradation, and failure of their Windows, but failed to adequately correct the defective design or formulation that resulted in said damage.

26.     Defendants knew or should have known the potential for leakage, rot, premature degradation, and failure of their Windows, but failed to adequately correct the defective manufacture and that resulted in said damage.

27.     Defendants failed to warn purchasers, installers, or users of the above-described risks of failures.  This omitted information is material to the purchasing decision.

28.     The purchase of Defendants' Windows is covered by a written express warranty, which forms part of the basis of the bargain between Defendants and the purchaser.

29.     The Windows' written express warranty also forms part of the basis of the bargain between the seller of the home and home buyers, including Plaintiffs and Class members.

30.     The typical purchase agreement for the sale and/or construction of Class members' homes likely contains one or more provisions transferring or assigning manufacturers' and suppliers' warranties to them at the time of purchase or conveyance.

31.     The transfer or assignment of the manufacturers' and suppliers' warranties, which would include the Window warranties, forms part of the basis of the bargain at the time Plaintiffs and Class members purchased the homes.

32.     Even where a manufacturer or supplier warranty transfer provision is not present, the average homeowner expects at the time of purchase, his or her home comes with such warranties, including window warranty against defects.

**EXHIBIT C**
**Page 7 of 44**

33.     Defendants also expressly and implicitly represent in documents available to the public that their warranty is part of the product being sold, and that the written warranties apply to the owners of the homes containing the Windows.

34.     Defendants represent in their express warranty and documents available to the public that the Windows would be free from defective materials and workmanship for at least 10 years.

35.     Plaintiffs and putative Class members relied upon these representations when they purchased the Windows and/or structures containing the Windows.

36.     Plaintiffs and putative Class members reasonably expected and expect that the Windows would actually last longer than 10 years.

37.     Defendants' representations, expressly and impliedly, through their website, brochures, and marketing materials, that the Windows are suitable and free from defects, were intended to and likely did affect the market by inducing builders, contractors, suppliers, and others to purchase the Windows.

38.     Upon information and belief, Defendants were put on notice of defects and resultant damages in the Windows by other homeowners across the country.

39.     Defendants' shipping of the Windows with actual or constructive knowledge of the defects, or with negligent or reckless disregard of the presence of defects, constituted a breach of their express warranty, and makes the limitations of the express warranty unconscionable in all respects, and therefore void *ab initio*.

40.     The published written warranties include the following limitations and exclusions:

(a)     The warranty is ambiguous with regard to coverage of the Windows' wood components;

(b)     The warranty limits coverage of wood warping;

8

**EXHIBIT C**
**Page 8 of 44**

EXHIBIT A - Page 52 of 349

(c)     The warranty purports to exclude damages caused by design limitations and design defects;

(d)     The warranty excludes the cost of labor for removal, repair, or replacement of defective parts, products, or glass;

(e)     The warranty excludes the cost of repainting or refinishing, associated with the repair or replacement of defective parts or products;

(f)     The warranty requires that the homeowner be able to identify a "defect" in the Windows;

(g)     The warranty places unreasonable time limitations on notifying Defendants of defects, including Defendants' unilateral determination of when the homeowner should have "reasonably" discovered a defect;

(h)     The warranty shortens the warranty period by beginning from the date of manufacture, regardless of when the window is installed and put into use and operation;

(i)     The warranty gives Defendants the final determination of whether or not a defect exists;

(j)     The warranty potentially requires payment of a field service fee for inspecting the Windows;

(k)     The warranty requires the homeowner to produce information that may not be accessible or otherwise readily understandable, including IGU and/or glass codes;

(l)     The warranty purports to limit Defendants' responsibility by providing a remedy of repair, replacement, or refund a portion of the original purchase price, solely at Defendants' option;

(m)     The warranty purports to exclude any liability for consequential, incidental, or punitive damages;

(n)     The warranty purports to exclude any liability in excess of the original purchase price of the product;

(o)     The warranty limits repair and replacement parts and products to the remainder of the original warranty period;

(p)     The warranty purports to disclaim all warranties, expressed or implied, including implied warranties of merchantability or fitness for a particular purpose;

9

**EXHIBIT C**
**Page 9 of 44**

(q)    The warranty purports to disclaim performance ratings identified by the AAMA and NFRC ratings affixed to the Windows by the Defendants;

(r)    The warranty purports to disclaim future performance of the Windows;

(s)    The warranty purports to disclaim any obligation to comply with building standards, including applicable building codes;

(t)    The warranty purports to allow Defendants to inconsistently apply the warranty at their own discretion;

(u)    The warranty's 10-year limitation is in and of itself unconscionable; and

(v)     In all other such ways revealed during discovery, and/or otherwise determined at trial.

41.    The warranty is not a negotiated contract and is so one-sided that no reasonable person would ever knowingly agree to its terms if properly disclosed.

42.    Further, upon information and belief, Defendants have engaged in a pattern and practice of failing to honor or discouraging warranty claims by failing to respond to the homeowner, requiring the owner to pay for an inspection of the Windows, and/or requiring the homeowner to pay for all costs associated with repair or replacement of the Windows, including the labor for such repair or replacement.

43.    The above described pattern and practice by Defendants has the effect of discouraging defect claims by Class members or continuing to pursue remedies through Defendants.

44.    Moreover, during contact with Class members, Defendants conceal their knowledge of defects in the Windows in the Class members' residences.

45.    As Defendants have known or should have known of their Windows' defects and have failed to timely honor their warranty, the warranty has failed its essential purpose and the limitations therein are null and void, and Plaintiffs and Class members have otherwise not received

10

EXHIBIT C
Page 10 of 44

EXHIBIT A - Page 54 of 349

the value for which they, their builders, or their contractors bargained for at the time the Windows were purchased or transferred to homeowners.

46.   The defects in Defendants' Windows also make the Windows unfit for their intended use.

47.   Given the leaking, rotting, premature degradation, and failure of the Windows, the Windows have a reduced life expectancy, and require unexpected maintenance, repair, and replacement by Plaintiffs and Class members.

48.   The Windows' defects and resultant damages have caused a diminution in the value of the homes.

49.   Defendants knew or should have known that the Windows did not and do not satisfy industry standards.

50.   Defendants knew or should have known that their Windows (a) were defective in design and manufacture, (b) not fit for their ordinary and intended use, (c) not merchantable, and (d) failed to perform in accordance with the advertisements, brochures, representations, marketing materials, and warranties disseminated by Defendants.

51.   Defendants' Windows failed to conform to the reasonable expectations of ordinary consumers such as Plaintiffs and Class members.

52.   Because the Windows leak, and allow for increased water absorption, water penetration, rot, degradation, cause reduced life expectancy, and otherwise fail, the Windows are neither durable nor suitable for use as an exterior building product.

53.   The above-described defective conditions of the Windows and resultant damages are present in Plaintiffs' home and are common among Class members.

**EXHIBIT C**
**Page 11 of 44**

54.     Plaintiffs and Class members have been proximately harmed by the Windows'

above-described defective condition(s) and Defendants' above-described conduct.

## CLASS ALLEGATIONS

55.     Plaintiffs bring this action individually and as representatives of all those similarly

situated pursuant to Fed. R. Civ. P. 23.  The requirements of Fed. R. Civ. P. 23(a), (b)(2), (b)(3)

and (c)(4) are met with respect to the Classes (collectively, "Class" or "Classes") defined below:

> INJUNCTIVE RELIEF CLASS:
> All persons and entities that own structures in which Windsor's
> wood or wood clad windows are installed.
>
> DAMAGES CLASS:
> All persons and entities that own structures in which Windsor's
> wood or wood clad windows are installed.
>
> (ALTERNATIVE) WISCONSIN DAMAGES CLASS:
> All persons and entities that own structures located within the State
> of Wisconsin in which Windsor's wood or wood clad windows are
> installed.
>
> (ALTERNATIVE) SOUTH DAKOTA DAMAGES CLASS:
> All persons and entities that own structures located within the State
> of South Dakota in which Windsor's wood or wood clad windows
> are installed.
>
> These Classes exclude:
>
> a)   any Judge or Magistrate presiding over this action and
>      members of their families;
>
> b)   any employees of Defendants;
>
> c)   any entity in which Windsor has a controlling interest or
>      which has a controlling interest in Windsor and its legal
>      representatives, assigns, and successors;
>
> d)   any person who has released Windsor or is currently in
>      litigation with Windsor related to Windsor's wood or
>      wood clad windows; and

**EXHIBIT C**
**Page 12 of 44**

e) all persons who properly execute and file a timely request for exclusion from the Class.

Plaintiffs propose that the Class be divided into subclasses if and as necessary to align Class interests.

56.     *Numerosity*: The Class is composed of a thousand or more persons geographically dispersed throughout the State of Wisconsin and South Dakota, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Class is ascertainable and identifiable from Defendants' records or identifying marks on the Windows.

57.     *Commonality*: The critical question of law and fact common to the Class that will materially advance the litigation is whether the Windows are inherently defective, contrary to the expectations imparted by Defendants through their warranties, representations, and omissions.

58.     Furthermore, other questions of law and fact common to the Class that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class include the following:

(a)     Whether Defendants were negligent in their design and manufacture of the Windows;

(b)     Whether (and when) Defendants knew or should have known about the defective condition of the Windows;

(c)     Whether Defendants concealed and/or failed to disclose the defective condition of the Windows to consumers;

(d)     Whether Defendants breached express and implied warranties;

(e)     Whether Plaintiffs are entitled to prejudgment interest, attorneys' fees, and costs from Defendants; and

13

**EXHIBIT C**
**Page 13 of 44**

(f)    Whether Defendants' conduct was negligent, reckless, willful, wanton,

intentional, fraudulent, or the like, entitling Plaintiffs to statutory or punitive

damages from Defendants.

59.    *Typicality*: Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting, and selling the defective Windows and Defendants' conduct in concealing the defects in the Windows to owners, contractors, developers, and suppliers.

60.    *Adequate Representation*: Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to members of the Class they seek to represent. Plaintiffs have retained counsel experienced and competent in construction litigation, product liability, complex litigation, and consumer class actions.

61.    *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable.  Should individual Class members be required to bring separate actions, this Court and/or courts throughout Wisconsin (and/or South Dakota) would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court.

14

**EXHIBIT C**
**Page 14 of 44**

EXHIBIT A - Page 58 of 349

62.     Moreover, Plaintiffs envision no unusual difficulty in the management of this action as a class action and the amount of money at stake for each member is not sufficient for each member to hire their own counsel and experts and to bring their own action.

## ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

63.     Plaintiffs and Class members are within the applicable statute of limitations for the claims presented hereunder because Plaintiffs and Class members did not discover the defect, and could not reasonably have discovered the defect.

64.     Due to the concealed location of rot and other primary leak points, Plaintiffs and members of the Class are often unaware of the wood rot, degradation, and other failures until the end or expiration of Defendants' warranty period.

65.     Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts of concealment, which include Defendants' concealment from Plaintiffs, Class members, and the general public that their Windows were (and are) defective, while continually marketing the Windows as a durable and suitable product.

66.     Defendants had a duty to disclose that their Windows were defective, unreliable, and inherently flawed in design and/or manufacture.

67.     Plaintiffs and Class members had no knowledge of, and no reasonable way of discovering, the latent defects found in Defendants' Windows at the time they purchased the product or their homes, residences, buildings, and other structures.

68.     Defendants did not notify, inform, or disclose to Plaintiffs and Class members that there were defects in the Windows.

**EXHIBIT C
Page 15 of 44**

69.     Because Defendants failed in their duty to notify Plaintiffs and Class members that their product was defective, the statute of limitations should be tolled on Plaintiffs' and Class members' claims.

**ESTOPPEL FROM PLEADING WARRANTY LIMITATIONS AND DISCLAIMERS**

70.     Defendants are also estopped from relying on any warranty limitation or disclaimer as a defense to Plaintiffs' and Class members' claims.

71.     By virtue of Defendants' acts, the Windows installed in Plaintiffs' and Class members' residences have not lived up to Defendants' warranties and representations, and given the defective condition of the Windows and the premature deterioration of the Windows that require unexpected maintenance, wear and/or replacement, the Windows have not proven to be of the value bargained for and/or of that compared to other windows.

72.     Defendants knew or should have known that their Windows were defective in design and/or manufacture, and said Windows were not fit for their ordinary and intended use, were not merchantable, and failed to perform in accordance with the advertisements, marketing materials and warranties disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiffs and Class members.

73.     Accordingly, any warranty provided by Defendants fails its essential purpose because its purports to warrant that the Windows will be free from defects for a prescribed period of time when in fact said Windows fall far short of the applicable warranty period.

74.     Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product.  The remedies available under Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

16

**EXHIBIT C**
**Page 16 of 44**

75.     As a result, any time limitations, exclusions, or disclaimers which restrict the remedies encompassed within Defendants' warranties are unconscionable and unenforceable, and therefore, Defendants are estopped from relying on the same.

## COUNT I
## NEGLIGENCE/GROSS NEGLIGENCE

76.     Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

77.     At all times material hereto, Defendants designed and manufactured the Windows.

78.     Defendants had a duty to Plaintiffs and Class members to design and manufacture Windows that were free of latent defects that would cause the Windows to leak, rot, prematurely degrade, and otherwise fail.

79.      Defendants had a duty to Plaintiffs and Class members to test the Windows to ensure adequate performance of the Windows for a reasonable period of use.

80.     Defendants had a duty to Plaintiffs and Class members to ensure that the Windows' components were suitable as an exterior product, either by testing or by verifying third-party test results.

81.     Defendants had a duty to Plaintiffs and Class members to ensure their Windows complied with industry standards and all applicable building codes throughout Wisconsin and South Dakota.

82.     Defendants had a duty to Plaintiffs and Class members to forewarn purchasers, installers, and users regarding the known risk of product failures or the existence of a material defect.

83.     Defendants failed to exercise ordinary and reasonable care in the design and manufacture of the Windows and in determining whether the Windows that they sold, and

17

EXHIBIT C
Page 17 of 44

EXHIBIT A - Page 61 of 349

continued to sell, contained a latent defect that would result in the failure of the Windows to perform as reasonably expected.

84.    Defendant failed to exercise ordinary and reasonable care in the design and manufacture of the Windows and breached their foregoing duties.

85.    Defendants breached their duty to Plaintiffs and Class members to test the Windows to ensure adequate performance of the Windows for a reasonable period of use.

86.    Defendants breached their duty to Plaintiffs and to Class members to ensure that the Window components were suitable, either by testing or by verifying third-party test results.

87.    Defendants breached their duty to Plaintiffs and to members of the Class to ensure that the Windows complied with industry standards and applicable building codes.

88.    Defendants breach their duty to Plaintiffs and to members of the Class to forewarn purchasers, installers, and users regarding the known risk of product failures.

89.    The negligence of Defendants, their agents, servants, and/or employees, includes the foregoing, as well as the following acts and/or omissions:

> (a)    designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Windows without adequately and thoroughly testing them to all applicable standards and building codes;
>
> (b)    designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Windows without adequately testing long term performance;
>
> (c)    negligently failing to ensure that the Windows conformed to all applicable standards and building codes; and
>
> (d)    concealing information concerning the defects inherent in the Windows from Plaintiffs and the Class members, while knowing that Defendants' Windows were defective and non-conforming with accepted industry standards and building codes.

**EXHIBIT C**
**Page 18 of 44**

90.     Plaintiffs and the members of the Class have been damaged because the defective Windows do not perform their ordinary purpose of sealing homes against the elements.

91.     Plaintiffs and Class have been damaged as a direct and proximate result of the negligence, carelessness, recklessness, willfulness, and wantonness of Defendants as above-described.

92.     As Defendants' conduct was grossly negligent, reckless, willful, wanton, intentional, fraudulent, or the like, Plaintiffs and Class members are entitled to an award of punitive damages against Defendants.

**COUNT II**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

93.     Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

94.     Defendants are designers, manufacturers, and suppliers of the Windows, and for a number of years, marketed, warranted, distributed, and/or sold the Windows in Wisconsin and South Dakota.

95.     Defendants entered into contracts with retailers, suppliers and/or contractors to sell the Windows that were to be installed at Plaintiffs' and the Class members' properties.

96.     Plaintiffs and the Class members are intended third party beneficiaries of those contracts because it was the clear and manifest intent of Defendants that the contracts were to primarily and directly benefit Plaintiffs and the Class members.

97.     Defendants impliedly warranted to Plaintiffs, Class members and/or their agents that the Windows were merchantable and reasonably fit for their ordinary purpose, and would not cause damage as set forth herein.

19

**EXHIBIT C**
**Page 19 of 44**

98.    Defendants breached the implied warranty of merchantability by selling Windows that were defective and not fit for their ordinary purpose.

99.    Defendants' Windows were not of merchantable quality and not fit for their intended use when they left the factory due to the defects in the Windows described herein.

100.    The numerous and serious defects described herein make the Windows unfit and inappropriate for their intended use within structures.

101.    The Windows are also unfit for their particular purpose.  Due to the defects and resultant leakage, rot, premature degradation, and other failures, the Windows are unfit for their particular purpose.

102.    Despite having knowledge of the Windows' defects, Defendants have failed to provide an adequate remedy.

103.    As a result, Defendants have breached their implied warranties to Plaintiffs and Class members by producing, manufacturing, distributing, and selling them a defective product that was unfit for their intended use and for a particular purpose.

104.    As a direct and proximate result of Defendants' breach of the implied warranty on the Windows, Plaintiffs and Class members have suffered actual and consequential damages.

105.    Plaintiffs and Class members have suffered and will continue to suffer losses as alleged herein, in an amount to be determined at trial.


## COUNT III
## BREACH OF EXPRESS WARRANTY

106.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

EXHIBIT C
Page 20 of 44

107.    After putting their Windows into the stream of commerce, Defendants expressly represented and warranted that the Windows were appropriate for their intended use and were free from defects and that they conformed to all applicable building codes and industry standards.

108.    Defendants entered into contracts with retailers, Plaintiffs, Class members, Plaintiffs' builders, Class members' builders, suppliers and/or contractors to sell their Windows to be installed at Plaintiffs' and Class members' properties.

109.    Plaintiffs and Class members were intended third party beneficiaries of the contract between Windsor and their respective builders.

110.    The representations and warranties made by Defendants in marketing and selling their Windows formed part of the basis of the bargain between Defendants and the purchasers of the Windows at the time of the sale.

111.    Purchase agreements for the construction or sale of residences or structures contained provisions transferring or assigning the manufacturers' warranties, including Window warranties.  Such provisions are valid transfers and assignments, and the transferred and assigned warranties formed part of the basis of the bargain at the time the home was purchased.

112.    Defendants' warranty certifies that they will replace or repair components of their products found to be defective for at least 10 years.

113.    Upon information and belief, all of Defendants' written warranties applicable to Class members contain the same or similar provisions.

114.    Through their written warranties, brochures, marketing materials, website, and other representations regarding the performance, durability, and quality of the Windows, Defendants created express warranties for the benefit of Plaintiffs and Class members.

**EXHIBIT C**
**Page 21 of 44**

115.    Thus, Defendants' express warranties and representations are applicable to the Windows installed in Plaintiffs' and Class members' residences and/or structures.

116.    Specifically, Defendants expressly warranted to Plaintiffs and Class members that the Windows purchased by Plaintiffs and Class members were free from defects in materials and workmanship that substantially impair their operation or performance and that they would last at least 10 years.

117.    However, despite Defendants' assurances, as described in detail *supra*, the Windows contain the aforementioned defects and do not conform to all applicable building codes and industry standards and are not free from defects.

118.    These aforementioned defects are present when the Windows leave Defendants' control.

119.    Defendants breached the express warranty by selling Windows that were defective and not reasonably fit for their ordinary and intended purpose and did not conform to Defendants' express representations and/or warranties. Further, contrary to Defendants' representations and warranties, the Windows were not free from design and material defects for at least 10 years.

120.    By their conduct and defective products, Defendants have breached their express warranty with Plaintiffs and members of the Class.

121.    In addition, Defendants have breach their express warranties by not providing Plaintiffs and Class members with Windows which were free from defects and/or by suppressing warranty claims.

122.    Defendants' written warranties are also unconscionable and fail their essential purpose because they purport to warrant that the Windows will be free from manufacturer defects for at least 10 years when in fact the Windows fall far short of the applicable warranty period.  To

**EXHIBIT C**
**Page 22 of 44**

the contrary, due to the leakage in the Windows, Defendants' Windows begin failing after only a few years or less of use.

123. Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the Windows. The remedies available in Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy. Further, the warranty is inadequate because, by its 10-year limitation alone, Defendants seek to reduce the reasonable expected life of the product.

124. Defendants have denied, failed to pay in full, and/or failed to respond to warranty claims.

125. Accordingly, the limitations on remedies and the exclusions in Defendants' warranties are unconscionable and unenforceable.

126. As a result of Defendants' breaches of express warranties, Plaintiffs and Class members have suffered actual damages in that they purchased homes, residences, buildings, and other structures containing defective Windows that have failed or are failing prematurely due to leakage and increased moisture absorption problems. This failure has required or is requiring Plaintiffs and Class members to incur significant expenses in repairing or replacing their Windows. Replacement is required to prevent on-going and future damage to the underlying structures or interiors of Plaintiffs' and Class members' residences.

127. Thus, as a direct and proximate result of Defendants' breach of the express warranty on the Windows, Plaintiffs and Class members have suffered actual and consequential damages.

**COUNT IV**
**VIOLATION OF WISCONSIN DECEPTIVE TRADE PRACTICES ACT ("WDTPA")**
**Wis. Stat. § 100.18, *et seq.***

23

**EXHIBIT C**
**Page 23 of 44**

EXHIBIT A - Page 67 of 349

128.     Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

129.     Wis. Stat. § 100.18(1) provides:

> No person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, . . . shall make, publish, disseminate, circulate, or place before the public, . . . in this state, . . . an advertisement, announcement, statement or representation of any kind to the public relating to such . . . sale . . . of such real estate, merchandise, securities, service or employment . . . , which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

*Id.*

130.     Defendants made, published, disseminated, circulated, and/or placed before the public, and/or caused to be made, published, disseminated, circulated, or placed before the public, advertisements, announcements, statements, and representations to the public relating to their Windows that contained assertions, representations, and statements of fact concerning the qualities and characteristics of such products.

131.     Such advertisements, announcements, statements, and representations were made, published, disseminated, circulated, and/or placed before the public pursuant to Defendants' intent: 1) to sell, distribute and increase the consumption of their Windows; and/or 2) to induce the public to enter into contracts and/or obligations relating to the purchase, sale, hire, use, or lease of their Windows.

24

**EXHIBIT C**
**Page 24 of 44**

132.    Defendants' aforementioned assertions, representations, and statements of fact concerning the qualities and characteristics of their Windows were untrue, deceptive, and misleading, in violation of the WDTPA.

133.    Defendants' untrue, deceptive, and misleading assertions, representations, and statements of fact concerning the qualities and characteristics of their Windows materially induced Plaintiffs and other members of the Class to purchase Defendants' Windows.

134.    Defendants' business practices, in manufacturing, warranting, advertising, marketing and selling their Windows, of misrepresenting that their Windows would be free from defects even though Defendants knew and had substantial evidence to the contrary, constitute "advertisement[s], announcement[s], statement[s] or representation[s] contain[ing] . . . assertion[s], representation[s] or statement[s] of fact which [are] untrue, deceptive or misleading" and, thus, constitute multiple, separate violations of Wis. Stat. § 110.18.

135.    Defendants' business practices, in manufacturing, warranting, advertising, marketing and selling their Windows while concealing, failing to disclose, suppressing or omitting material information, including the defects in the Windows and Defendants' knowledge of the defects, while continuing to misrepresent their Windows as products that are free of defects, constitute "advertisement[s], announcement[s], statement[s] or representation[s] contain[ing] . . . assertion[s], representation[s] or statement[s] of fact which [are] untrue, deceptive or misleading" and, thus, constitute multiple, separate violations of Wis. Stat. § 110.18.

136.    Defendants concealed the defective nature of their Windows even after members of the Class began to report problems. Indeed, Defendants continue to affirmatively misrepresent and conceal from their dealers, distributors, and the public, the true nature of their Windows. These omissions and misrepresentations constitute "advertisement[s], announcement[s], statement[s] or

**EXHIBIT C**
**Page 25 of 44**

representation[s] contain[ing] . . . assertion[s], representation[s] or statement[s] of fact which [are]

untrue, deceptive or misleading" and, thus, constitute multiple, separate violations of Wis. Stat. §

110.18.

137.    Defendants knew or should have known that their Windows were defectively

designed and/or manufactured, would fail prematurely, were not suitable for their intended use,

and otherwise were not as warranted and represented by Defendants.  The fact that Defendants'

Windows fail prematurely is a material fact, the omission of which has the tendency or capacity

or is likely to mislead or deceive Plaintiffs and Class members, and is a fact which could not

reasonably be known by Plaintiffs and Class members. These omissions constitute the use of fraud,

false promises, misrepresentations, misleading statements and deceptive practices, and as such are

"advertisement[s], announcement[s], statement[s] or representation[s] contain[ing] . . .

assertion[s], representation[s] or statement[s] of fact which [are] untrue, deceptive or misleading"

and, thus, constitute multiple, separate violations of Wis. Stat. § 110.18.

138.    In connection with the manufacturing, warranting, advertising, marketing and sale

of Defendants' Windows, Defendants made the material omissions and misrepresentations set

forth in this Complaint in their warranty, advertising and other promotional materials disseminated

by or on behalf of Defendants in Wisconsin.

139.    Defendants' omissions and misrepresentations set forth in this Complaint are

material in that they relate to information that would naturally affect the purchasing decisions or

conduct of purchasers, including Plaintiffs and Class members, regarding Defendants' Windows.

140.    Defendants had a duty to disclose to Plaintiffs and members of the Class the latent

defects in their Windows, as the facts were material to Plaintiffs' and the Class members'

transactions; because they made contrary representations and statements, including that the

26

EXHIBIT C
Page 26 of 44

EXHIBIT A - Page 70 of 349

Windows were defect free; because Defendants, as the parties with knowledge of the defect, knew that Plaintiffs and members of the Class were entering transactions under a mistake as to the fact of the defective design of the Windows; because the fact of the defective nature of the design was peculiarly and exclusively within Defendants' knowledge and the mistaken parties, Plaintiffs and Class members, could not reasonably be expected to discover it; and on account of the objective circumstances, Plaintiffs and the members of the Class reasonably expected disclosure of the fact of the defect.

141.    The facts concealed and/or not disclosed by Defendants to Plaintiffs and the Class are material facts in that such facts would naturally affect the conduct of purchasers and a reasonable person would have considered those facts to be important in deciding whether or not to purchase Defendants' Windows.

142.    Had Plaintiffs and the Class known of the defective nature of Defendants' Windows, they would not have purchased the Windows or would have paid less for their Windows.

143.    If Plaintiffs had known their Windows were defective, or that they would be required to replace their Windows prematurely, Plaintiffs would not have paid the price they did to purchase the Windows.

144.    Defendants possessed knowledge of the Windows' defective nature prior to bringing the product to market.   Defendants fraudulently, negligently, recklessly and/or intentionally concealed and/or failed to disclose the true nature of the design and/or manufacturing defect in their Windows for the purpose of inducing Plaintiffs and the Class to rely thereon, and Plaintiffs and the Class justifiably relied to their detriment upon the truth and completeness of Defendants' representations about their Windows.   Plaintiffs and the Class members relied on Defendants disclosing all materials facts and not omitting any material information regarding

**EXHIBIT C**
**Page 27 of 44**

Defendants' Windows.   This is evidenced by Plaintiffs' and Class members' purchase of Defendants' Windows.

145.   Defendants' fraudulent and deceptive practices repeatedly occurred in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

146.   As a direct and proximate cause of Defendants' false and deceptive misrepresentations and omissions regarding their Windows, Plaintiffs have suffered actual injuries in that their Windows have failed prematurely. Class members have also suffered actual injury in that their Windows have failed prematurely and/or Class members are reasonably certain to suffer actual injury well in advance of the warranted and expected life of their Windows as the failure process has commenced in their Windows.

147.   Separate from, and in addition to, their actual damages, Plaintiffs' and Class members' expectations were frustrated as a result of Defendants' omissions and misrepresentations, and Plaintiffs and Class members did not receive what they expected to receive, which injury constitutes a loss.  Plaintiffs and Class members are thus entitled to recover the difference between the actual value of the Windows and the value the Windows would have possessed had Defendants' representations about the quality of the Windows been true.

148.   Plaintiffs and other members of the Class suffered pecuniary loss as result of Defendants' untrue, deceptive, and misleading assertions, representations, and statements of fact concerning the qualities and characteristics of its Windows.

149.   Plaintiffs and other members of the Class are entitled to damages equal to their pecuniary loss and costs, including reasonable attorneys' fees and costs of investigation, as well as injunctive relief and other equitable relief, including restitution, as determined by the Court, pursuant to Wisconsin law, including Wis. Stat. § 110.18.

## COUNT V
## VIOLATIONS OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES
## AND CONSUMER PROTECTION ACT ("SDCPA")
### S.D. Code Ann. § 39-5-10, *et seq.*

150.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

151.    The SDCPA makes it an unlawful, deceptive act or practice to "[k]nowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby." S.D. CODIFIED LAWS § 37-24-6.

152.    Defendants' sale of the Windows and misleading statements, advertising, or other representations about the Windows in this case constitutes "sale or advertisement of . . . merchandise" under the SDCPA. S.D. CODIFIED LAWS § 37-24-1.

153.    In the course of Defendants' business, they knowingly and intentionally failed to disclose and actively concealed material facts and made false and misleading statements regarding the qualities and characteristics of the Windows.  In addition, Defendants engaged in other unfair or deceptive trade practices, including advertising, marketing, offering, or representing their Windows as being defect-free; making representations about the Windows in a manner calculated or intended to deceive customers; omitting material facts in describing the quality and characteristics of their Windows; knowingly making false and misleading statements of fact regarding the Windows; misrepresenting to customers the rights, remedies, or obligations of the agreement between them; and obtaining and retaining monies paid by Plaintiffs and Class members that Defendants knew was not rightfully owed under their agreements, thereby obtaining money through false and fraudulent representations.

29

EXHIBIT C
Page 29 of 44

154.   Defendants' untrue, deceptive, and misleading assertions, representations, and statements of fact concerning the qualities and characteristics of their Windows materially induced Plaintiffs and other members of the Class to purchase Defendants' Windows.

155.   Defendants' knowing and intentional actions as set forth herein occurred in the conduct of trade or commerce, and constitute deceptive trade practices under the SDCPA.

156.   Plaintiffs and the Class were injured as a result of Defendants' conduct, and suffered ascertainable monetary losses.  Plaintiffs and members of the Class overpaid for the Windows when, had they known the truth about the Windows, they would have paid much less for the Windows (if they would have purchased the Windows at all) and did not receive the benefit of their bargain.

157.   Plaintiffs seek an award of actual damages, attorney's fees, costs, and all other remedies as permitted by the SDCPA.  S.C. CODE ANN. § 39-5-140.


**COUNT VI**
**FRAUDULENT MISREPRENTATION**

158.   Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

159.   Defendants falsely and fraudulently represented to Plaintiffs, Class members, and/or the consuming public in general that Defendants' Windows would be free from defects and fit for their customary and normal use.

160.   Defendants falsely represented to purchasers, consumer, and Window owners that the Windows were warranted against defects in material and workmanship when in fact the

**EXHIBIT C**
**Page 30 of 44**

Limited Warranty was so limited as to prevent and preclude any warranty protection against the known defect in the Windows.

161.    When said representations were made by Defendants, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

162.    These representations were made by Defendants with the intent of defrauding and deceiving Plaintiffs, Class members and/or the consuming public, all of which evinced reckless, willful, indifference to the safety and welfare of Plaintiffs and Class members.

163.    At the time the aforesaid representations were made by Defendants, Plaintiffs and Class members were unaware of the falsity of said representations and reasonably believed them to be true.

164.     In reliance upon said representations, Defendants' Windows were installed and used on the Plaintiffs' and the Class members' properties, thereby causing Plaintiffs and the Class members to sustain damages and injury to their property and/or to be at an increased risk of sustaining damage and injury in the future.

165.    Defendants knew and were aware, or should have been aware, that Defendants' Windows were defective and not fit for their customary and normal use.

166.    Defendants knew, or should have known, that their Windows had a potential to, could, and would cause severe damage and injury to property owners.

167.    Defendants brought their Windows to the market and acted fraudulently, wantonly, and maliciously, to the detriment of Plaintiffs and Class members.

168.    By reason of the foregoing, Plaintiffs and Class members suffered, and continue to suffer, financial damage and injury.

**EXHIBIT C**
**Page 31 of 44**

## COUNT VII
## FRAUDULENT CONCEALMENT

169.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

170.    Defendants knew or should have known that the Windows were defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Defendants nor the reasonable expectations of ordinary consumers.

171.    Defendants fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that the Windows were and are defective.

172.    Defendants had exclusive knowledge of the defective nature of the Windows at the time of sale.  The defect is latent and not something that Plaintiffs or Class members, in the exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible.

173.    Defendants had the capacity to, and did, deceive Plaintiffs and Class members into believing that they were purchasing Windows free from defects.

174.    Defendants undertook active and ongoing steps to conceal the defect.  Plaintiffs are aware of nothing in Defendants advertising, publicity, or marketing materials that disclosed the truth about the defect, despite Defendants' awareness of the problem.

175.    The facts concealed and/or not disclosed by Defendants to Plaintiffs and the Class members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Windows from their builders.

176.    Defendants intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiffs and the Class to act thereon.

EXHIBIT C
Page 32 of 44

177. Plaintiffs and the Class justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchase of the Windows.

178. Plaintiffs and Class members suffered a loss of money in an amount to be proven at trial as a result of Defendants' fraudulent concealment and nondisclosure because: (a) they would not have purchased the Windows on the same terms if the true facts concerning the defective Windows had been known; (b) they paid a price premium due to Defendants' representations that they would be free from defects; and (c) the Windows did not perform as promised. Plaintiffs also would have initiated this suit earlier had the defect been disclosed to them.

179. By reason of the foregoing, Plaintiffs and the Class members suffered, and continue to suffer, financial damage and injury.

## COUNT VIII
## NEGLIGENT MISREPRESENTATION

180. Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

181. Defendants, through their marketing materials, website, brochures, product literature, warranties and agents, made representations to Plaintiffs and Class members, builders, suppliers, and the public about the superior quality and durability of their Windows and components.

182. Specifically, Defendants have represented that their Windows are durable, of "superior construction;" "constructed with the highest grade materials, hardware, and glass;" and that Defendants "carefully monitor every product throughout the entire manufacturing process;" and have made similar representations throughout various time periods in which the Windows have been sold.

EXHIBIT C
Page 33 of 44

183.    Defendants transmitted said representations to Plaintiffs and Class members, builders, suppliers, and the public while failing to disclose the defective condition of their Windows, including the substantial leakage and consequential damages that would or could likely result from their Windows' defects.

184.    Defendants have a pecuniary interest in making these representations and nondisclosures and had a duty to communicate truthful information to Plaintiffs and Class members, builders, suppliers, and the public.

185.    Defendants breached their duties by failing to exercise due care in making the above-described representations and non-disclosures, and Plaintiffs and Class members, builders, suppliers, and the public relied on these representations and non-disclosures.

186.    Plaintiffs and Class members have suffered a pecuniary loss as a direct and proximate result of their reliance upon these representations and non-disclosures.

## COUNT IX
## STRICT LIABILITY

187.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

188.    At all times relevant to this Complaint, Defendants were in the business of designing, manufacturing, marketing, distributing and/or selling the Windows and had a statutory duty of care.

189.     Defendants breached this duty because their Windows are defectively designed and manufactured and are unreasonably dangerous in that they allow water to intrude into the

**EXHIBIT C**
**Page 34 of 44**

interior of the residence, resulting in damage to the Windows and consequential damage to the structure into which the Windows are installed.

190.    Defendants breached their duty because their Windows are defectively designed and manufactured and are unreasonably dangerous in that they rot, degrade, and otherwise fail, thereby allowing air and water to intrude into the interior of the residence and cause damage to the Windows and consequential damage to the structure into which the Windows are installed.

191.    Were the defects known at the time of design and manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed and manufactured in that manner.

192.    Feasible alternatives existed to make the Windows safer for intended use at the time of design. Defendants were knowledgeable about the products and aware or should have been aware that feasible alternatives existed which would maintain the usefulness of the Windows and eliminate the harm.

193.    The Windows reached Plaintiffs and Class members, and were intended to reach Plaintiffs and Class members, without substantial change in the condition in which they were sold.

194.    The defect in the Windows was present when they left Defendants' control.

195.    Defendants are strictly liable for having designed, manufactured, marketed, distributed, and sold the Windows, which were defective, to Plaintiffs and Class members.

196.    As a direct, foreseeable, and proximate result of the sale of the defective Windows to Plaintiffs and Class members, Plaintiffs and Class members have suffered significant physical damage to their properties, other contamination and deterioration, as well as diminution in value of their properties.

**COUNT X**
**UNJUST ENRICHMENT**

**EXHIBIT C**
**Page 35 of 44**

197.   Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegation as through fully set forth herein.  This count is pleaded in the alternative to Plaintiffs' contract-based claims.

198.   Plaintiffs and Class members conferred a benefit on Defendants when they purchased the Windows.

199.   Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the Windows, the retention of which under these circumstances is unjust and inequitable because Defendants' Windows were (and are) defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials, and warranties disseminated by Defendants nor the reasonable expectations of ordinary consumers and caused  Plaintiffs and Class members to lose money as a result thereof.

200.    Plaintiffs and Class members suffered a loss of money as a result of Defendants' unjust enrichment because: (a) they would not have purchased the Windows on the same terms if the true facts concerning the defective Windows had been known; (b) they paid a price premium due to the fact the Windows would be free from defects; and (c) the Windows did not perform as promised.

201.   Because Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

202.   Plaintiffs and the Class members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by the Defendants from their deceptive, misleading, and unlawful conduct.

**EXHIBIT C**
**Page 36 of 44**

## COUNT XI
## DECLARATORY RELIEF 28 U.S.C. § 2201

203.     Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

204.     Defendants have acted or refused to act on grounds that apply generally to the Injunctive Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).

205.     Plaintiffs seek a ruling that:

(a)     the Windows have a defect which results in a premature failure and premature rotting of wood component of the sash.  The rotting of the wood component may not be detectable until after the warranty provided by Defendants has expired.  The Court finds that this defect is material and requires disclosure for all of these Windows;

(b)     the Windows have a defect in workmanship and material that allows water to penetrate behind the aluminum clad sash component of the Window resulting in premature rotting of the wood component, which rot may progress to adjacent wood components, and that the rotting of the wood component may not be detectable until after the existing warranty provided by Defendants has expired.  The Court declares that all persons who own structures containing Windows are to be provided the best practicable notice of the defect, which cost shall be borne by Defendants;

(c)     certain provisions of Defendants' warranty are void as unconscionable;

(d)     any limitation on the warranty is removed;

(e)     the limitation of the warranty to the date of manufacture, rather than the date of installation, is removed;

(f)     Defendants shall re-audit and reassess all prior warranty claims, including claims previously denied in whole or in part, where the denial was based on warranty or on other grounds, of claims related to wood rot, and pay the full cost of repairs and damages; and

(g)     Defendants will establish an inspection program and protocol, under Court supervision, to be communicated to Class members, which will require Defendants to inspect, upon request, a Class member's structure to determine whether wood rot is manifest.  Any disputes over coverage shall

EXHIBIT C
Page 37 of 44

be adjudicated by a Special Master appointed by the Court and/or agreed to by the parties.

WHEREFORE, Plaintiffs, individually and on behalf of others similarly situated, pray for a judgment against Defendants as follows:

1.   For an Order certifying the Classes, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiffs as representatives of the Classes, and appointing the law firms representing Plaintiffs as counsel for the Classes;

2.   For compensatory damages sustained by Plaintiffs and the Damages Class;

3.   For equitable and/or injunctive relief for the Declaratory Relief Class;

4.   For payment of costs of suit herein incurred;

5.   For both pre-judgment and post-judgment interest on any amounts awarded;

6.   For punitive damages;

7.   For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

8.   For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs, individually and on behalf of the Class members, hereby demand a trial by jury as to all issues so triable.

Dated: April 9, 2015                    Respectfully submitted,

                                         /s/ James C. Shah
                                        **SHEPHERD, FINKELMAN, MILLER**
                                        **& SHAH, LLP**
                                        James C. Shah (SBN 1083846)
                                        735 N. Water Street

**EXHIBIT C**
**Page 38 of 44**

Suite 1222
Milwaukee, WI 53202
Telephone: (414) 226-9900
Facsimile: (866) 300-7367
Email: jshah@sfmslaw.com

Benjamin F. Johns
Joseph B. Kenney
Andrew W. Ferich
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Ave.
Haverford, PA 19041
bfj@chimicles.com
jbk@chimicles.com
awf@chimicles.com

*Attorneys for Plaintiffs and Proposed Class
Members*

**EXHIBIT C
Page 39 of 44**

JS 44  (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Patricia Hillestad and Jeff Kluin | Windsor Window Company, d/b/a Windsor Windows and Doors, and Woodgrain Mill Work, Inc. |

**(b)** County of Residence of First Listed Plaintiff   Columbia County WI
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
James C. Shah
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
735 N. Water Street, Suite 1222, Milwaukee, WI 53202 Ph 414-226-9900

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
        Plaintiff

☐ 3  Federal Question
        *(U.S. Government Not a Party)*

☐ 2  U.S. Government
        Defendant

☒ 4  Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)*   and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | ☐ 690 Other | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excl. Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | Leave Act | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 790 Other Labor Litigation | | Act |
| | Med. Malpractice | | ☐ 791 Empl. Ret. Inc. | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate | | or Defendant) | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | Sentence | | ☐ 871 IRS—Third Party | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | **Habeas Corpus:** | | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | ☐ 530 General | | | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | |
| | Other | ☐ 560 Civil Detainee - | (Prisoner Petition) | | |
| | ☐ 448 Education | Conditions of | ☐ 465 Other Immigration | | |
| | | Confinement | Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
        Proceeding

☐ 2  Removed from
        State Court

☐ 3  Remanded from
        Appellate Court

☐ 4  Reinstated or
        Reopened

☐ 5  Transferred from
        another district
        *(specify)*

☐ 6  Multidistrict
        Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332(d)(2)
Brief description of cause:
Defective wood and wood clad windows designed, manufactured, marketed, distributed and sold by Defendants.

| VII. REQUESTED IN COMPLAINT: | ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** 5,000,000.00 | CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes   ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions)* | JUDGE | DOCKET NUMBER |
|---|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 04/09/2015 | |

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**EXHIBIT C**
**Page 40 of 44**

EXHIBIT A - Page 84 of 349

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Western District of Wisconsin

| | |
|---|---|
| Patricia Hillestad and Jeff Kluin, On Behalf of Themselves and All Others Similarly Situated | ) ) ) |
| *Plaintiff* | ) |
| v. | )  Civil Action No. |
| Windsor Window Company d/b/a Windsor Windows and Doors, and Woodgrain Millwork, Inc. | ) ) ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Windsor Window Company d/b/a Windsor Windows and Doors
900 S. 19th Street
West Des Moines, Iowa 50265

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  James C. Shah
Shepherd, Finkelman, Miller & Shah, LLP
735 N. Water Street, Suite 1222
Milwaukee, WI 53202

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

**EXHIBIT C**
**Page 41 of 44**

EXHIBIT A - Page 85 of 349

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒  I returned the summons unexecuted because _____ ; or

❒  Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

**EXHIBIT C**
**Page 42 of 44**

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

_____ District of _____

|  |  |  |
|---|---|---|
| _____ | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| _____ | ) | |
| *Defendant* | ) | |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                              *Signature of Clerk or Deputy Clerk*

**EXHIBIT C
Page 43 of 44**

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

**EXHIBIT C**
**Page 44 of 44**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| ANTHONY SCHILLER and<br>STEVE LIBSACK, on behalf of<br>themselves and all others similarly<br>situated, | ) ) ) ) | |
| | ) | Case No. 0:15-cv-01932-DSD-FLN |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| WINDSOR WINDOW COMPANY d/b/a<br>WINDSOR WINDOWS AND DOORS,<br>and WOODGRAIN MILLWORK, INC., | ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Anthony Schiller and Steve Libsack (collectively "Plaintiffs"), by and through their undersigned counsel, individually and on behalf of all other persons and entities similarly situated, allege against Defendant Windsor Window Company d/b/a Windsor Windows and Doors ("Windsor") and Defendant Woodgrain Millwork, Inc. ("Woodgrain") (collectively "Defendants") the following facts and claims upon knowledge as to matters relating to themselves and upon information and belief as to all other matters and, by way of this Class-Action Complaint, aver as follows:

## INTRODUCTION

1.      This is a proposed class action brought by Plaintiffs individually and on behalf of other consumers who own structures containing Windsor wood or wood clad windows ("Windows") as described more fully herein.

2.      Unknown to Plaintiffs and the Class, the Windows contain a latent defect that allows water to penetrate and leak behind the aluminum cladding, resulting in premature wood rot and other physical damage to both the Windows and main structure.

3.      Windsor's acts and omissions in connection with its design, manufacture, warrant, sale and delivery of these defective Windows constitute fraud, negligent misrepresentation, breach of implied warranty, breach of express warranty and unjust enrichment, and declaratory relief as appropriate.

## THE PARTIES

4.      Plaintiff Anthony Schiller is a natural person and citizen of Minnesota. Schiller owns a home in Lakeville, Dakota County, Minnesota, in which Defendants' Windows are installed. In December 2006, Schiller constructed his home and installed Defendants' Windows. As a result of Defendants' conduct, Schiller has been injured.

5.      Plaintiff Steve Libsack is a natural person and citizen of Minnesota. Libsack owns a home in Burnsville, Dakota County, Minnesota, in which Defendants' Windows are installed. In 2006, Libsack's home was constructed and Defendants' Windows were installed. As a result of Defendants' conduct, Plaintiff has been injured.

6.      Defendant Windsor was and is a company organized and existing under the laws of the State of Idaho, with a principal place of business in the State of Iowa. At all times relevant herein, Windsor transacted and conducted business in Minnesota.

7.      Defendant Woodgrain was and is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business in the State of Idaho.

8.      At all times relevant herein, Woodgrain was the parent company of Windsor, and jointly transacted and conducted business in Minnesota.

2

9.      Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the Windows at issue.

10.     At all times relevant herein, the Defendants were actual and/or de facto joint ventures in the design, development, manufacture, marketing, and sales of the Windows at issue.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that: (i) there is complete diversity as Plaintiffs are citizens of Minnesota and Defendants are domiciled, incorporated, and headquartered in Idaho, Iowa, and Oregon; (ii) the amount in controversy exceeds $5,000,000.00 (Five Million Dollars), exclusive of interest and costs; and (iii) there are 100 or more members of the proposed Plaintiff Class.

12.     Venue lies in this District pursuant to 28 U.S.C. § 1391 because Plaintiffs reside in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Additionally, at all times relevant herein, Defendants conducted and/or transacted business in this Judicial District, and therefore, is subject to personal jurisdiction in this District and resides here for venue purposes.

## OVERVIEW

13.     This case concerns Defendants' failure to disclose to purchasers of its Windows, the builders of the purchaser's structures, and owners of the Windows, that the windows were defective in material and workmanship as a result of the design and manufacturing practices of Defendants. As a result of the defect there is a high probability those Windows will fail, and likely already have developed wood rot in the Window sashes. The wood rot will progress to the frames and adjoining structure unless repaired and replaced before the rot progresses to those

3

components. The defect is the product of Defendants' design and manufacturing process: (a) the resulting wood rot is masked by the aluminum cladding of the Windows; (b) the wood rot is incipient and takes an extended period to advance to the stage in which it becomes visible upon ordinary inspection; and (c) because of its incipient nature and masking by the exterior cladding, the wood rot will likely not exhibit itself until it is so advanced as to become apparent upon ordinary inspection but not until after the Defendants' limited warranty period has expired.

14.     The Windows have been tested by experts in the field. Those experts found defects in the design and manufacturing of the Windows that permit water penetration in the Windows and cause the damage experienced by Plaintiffs and Class members.

15.     The Windows cladding permits water penetration to expose the interior wood components without adequate wood preservative, drainage or evaporation, as such the cladding causes and contributes to cause an increase in the moisture content of the wood components beyond their capacity to resist wood rot and microbial colonization.

16.     Because the wood rot resulting from the defective design and manufactures does not become visible upon ordinary inspection until after years after installation, it is not detectable in spite of its presence within the Windows.

17.     Rather than acknowledge the existence of this defect, and its incipient consequences, Defendants unilaterally drafted a limited warranty which is not calculated to provide any protection for this defect in material and workmanship, but to the contrary, is written so as to provide no meaningful remedy to consumers and owners of these Windows.

18.     In spite of its knowledge regarding the defect in the windows Defendants use the limited warranty to profit from the premium price charged for defective windows.

4

19.     At all relevant times, Defendants had knowledge that the Windows were defective but took no action to: (1) inform purchasers or owners of the Windows of the defects; (2) recall the Windows; or (3) honor warranty claims or otherwise repair or replace Windows that had already been purchased. Instead, Defendants concealed this knowledge.

20.     At all relevant times, Defendants knew, or should have known, the Windows were (a) defective; (b) would experience wood rot to the sash components of the Windows; (c) would need to be repaired and replaced well short of the reasonably expected useful life of the Windows; (d) the defect, if known, would have failed to meet the reasonable expectations of purchasers, and would not be sold at the premium price Defendants charge for the Windows; and (e) that the limitation in its warranty, did and was calculated to shield liability for a known, material defect in the Windows.

21.     Rather than provide warranty protection, Defendants chose to conceal, suppress or omit knowledge of the defect, and the material facts related to the defect, all the while distributing, marketing and selling the Windows which purported to be warranted to unsuspecting consumers, builders, and homeowners across Minnesota and the United States.

22.     Defendants presented the warranty to consumers as protection for defects in material and workmanship all the while knowing that it provided no warranty protection for the Window defect as alleged herein, provided no meaningful, or at best only illusory, benefits when in fact it was calculated to not provide warranty benefits, and as such was deceptive and unconscionable.

23.     Defendants knew, or negligently should have known, prior to sale to Plaintiffs and the Class that, for the indefinite future, there was a substantial risk that its Windows would rot

behind the aluminum cladding, failed to disclose that risk, and presented the Windows as a high

quality product free of defects which Defendants knew was false.

24.     Defendants' conduct thereby deprived consumers of the opportunity to negotiate

additional warranty coverage, negotiate a lower price to reflect the risk posed by the defect, or

simply avoid the risk altogether by purchasing a different manufacturer's windows. Thereafter,

the undisclosed risk occurred – Plaintiffs' Windows (and thousands of others) have rotted – and

Plaintiffs and the Class have been damaged in the amount it will cost, or they paid, to repair,

install, and replace the Windows.

25.     Consumers reasonably expected that their Windows would not rot behind the

cladding, and that their Windows would last for their reasonable useful life without rotting.

26.      The reasonable expectation is that the Windows will last without rot to their

interior components, as long as the exterior wall into which they are installed, conservatively 20

years.

27.     Consumers, like Plaintiffs and the proposed class, have a reasonable expectation:

a.  that a manufacturer such as Defendants would make a disclosure to consumers if it determined there was a significant evidence of wood deterioration in their cladded windows;

b.  that a manufacturer such as Defendants would repair the latent defect – even if the defect did not exhibit itself until after the warranty period expired – because the potential causes of the defect are within the control and responsibility of the manufacturer (not the consumer); and

c.  that had there been evidence of wood deterioration in their clad Windows, either because the wood preservative was inadequate protection for the reasonable life of the Windows; or that the cladding was contributing to increased moisture retention in the wood components of the Windows, that Defendants would extend replacement repair and the costs associated therewith to owners of the Windows.

**EXHIBIT D**
**Page 6 of 37**

28.     Defendants have been aware, or but for its negligence should have been aware, that its Windows were manufactured with wood components which needed to be protected from exposure to water penetrating behind the cladding of its windows and that the failure to do so significantly increased the moisture retention of those interior wooden components under circumstances where they could not dry in sufficient time to prevent the initiation of progressive wood rot.

29.     Defendants knew, or but for its negligence or reckless indifference would have known, that it, or its distribution channels were receiving, going to continue to receive, or did receive reports of wood rot in the Windows. Defendants also knew, or should have known, that even if diligently inspected Window owners would not (a) be capable of detecting wood rot until it was significantly advanced, likely years after the rot began; (b) be able to determine the cause of the problem as a defect in material and workmanship; and (c) would not be able to determine the steps to be taken to remediate the wood deterioration.

30.     Thus, Defendants knew, or but for its negligence, or reckless indifference would have known, that for the indefinite future: (a) the risk of wood rot was substantial; (b) Defendants' customers were unaware of that substantial risk; (c) those customers had a reasonable expectation that Defendants would disclose that risk and cure the latent defect, even if the defect did not exhibit itself until after the warranty period had expired; and (d) that it did not intend to honor warranty claims for the known defective Windows.

31.     Despite such knowledge, or as a result of its negligence or reckless indifference, Defendants did not disclose to the market or otherwise that: there was a substantial risk their Windows would manifest the defect late in, or after the warranty period; and, that Defendants'

7

warranty, as they drafted it, would provide no warranty benefits for the known risk of their defective Windows.

32.     Furthermore, when questioned about wood rot, Defendants would claim faulty installation, excessive moisture in the home, or would deny claims as "out of warranty" without disclosing the defect.

33.     At all relevant times, Defendants had knowledge that the Windows were defective but took no action to: (1) inform owners of the Windows of the defects; (2) recall the Windows; or (3) otherwise repair the Windows that had already been purchased. Instead, Windsor concealed this knowledge.

34.     At all relevant times, Defendants knew its Windows were defective, but chose to conceal, suppress, or omit this material fact while distributing, marketing, and selling the Windows to unsuspecting consumers, builders, and homeowners in Minnesota and throughout the United States.

## **PLAINTIFFS' EXPERIENCE**

### A. **Plaintiff Anthony Schiller**

35.     Defendants' Windows were installed in Plaintiff Schiller's home when it was constructed in 2006. Schiller's builder, D.R. Horton ordered the windows on his behalf.

36.     In purchasing Defendants' Windows over all other brands of windows, Schiller and D.R. Horton relied on the statements and representations made by Defendants and Defendants' representatives that the Windows were high quality and free from defects and had a twenty year warranty on the glass and ten year warranty on the workmanship.

8

37.     Schiller first saw signs of moisture in one of his Windows in or around 2007. Schiller contacted D.R. Horton regarding the moisture. D.R. Horton contacted Defendants on behalf of Schiller.

38.     Defendants came to Schiller's home to inspect the Windows and advised that the Windows' seals were installed incorrectly and needed to be reinstalled. Defendants performed this work and assured Schiller that the problem was fully resolved.

39.     Schiller believed in good faith and relied on Defendants' promise that it had fully resolved the issues in 2007.

40.     In or around November 2014, Schiller again noticed signs of moisture in his Windows and notified Defendants of his warranty claim.

41.     Defendants came to Schiller's home to inspect the Windows again. Defendants informed Schiller that the windows needed to be refinished and that the issue was caused by homeowner maintenance and, therefore, not covered under the Windows' warranty.

42.     For the first time, Plaintiff began to suspect that there was a design defect in the Windows.

43.     Unknown to Plaintiff at the time, the Windows he purchased were defective in that they allowed water penetration, which caused condensation, wood rot, leaks, mold and other failures as described herein.

44.     Defendants knew of the defect in the Windows in 2007 but wrongfully concealed it from Schiller.

45.     When Defendants affirmatively represented to Schiller that the problem with his Windows was resolved in 2007, they misled him. They were aware Schiller's problem was

caused by an inherent design defect in the Windows but represented to Schiller it was a problem with installation of the seals and concealed the Windows' design defect.

46.     The characteristics of the Windows' defects (that allowed for the water to penetrate the aluminum cladding and failed to protect the wood from rot) were present in the Windows when they left the factory, and were part of the Windows by design and manufacture.

47.     The Windows allowed water to intrude into Plaintiff's home resulting in other property damage to his home including, but not limited to, surround walls, floors and ceiling.


**B. Plaintiff Steve Libsack**

48.     Defendants' Windows were installed in Plaintiff Libsack's home when it was constructed in 2006. Libsack's builder, Butler Custom Homes ("Butler") purchased the Windows on behalf of Libsack and installed them in Libsack's home.

49.     In purchasing Defendants' Windows over all other brands of windows, Libsack and his builder relied on the statements and representations made by Defendants and Defendants' representatives that the Windows were high quality and free from defects and had a twenty year warranty on the glass and ten year warranty on the workmanship.

50.     After seeing moisture in a window, Libsack had his windows refinished in or around 2013 and hoped this would resolve the issue but it did not.

51.     In or around March 2014, Libsack noticed additional moisture and contacted Defendants about his warranty claim.

52.     Defendants referred Libsack to Sandstrom Window ("Sandstrom"), a Windsor distributor in St. Paul, Minnesota. Sandstrom came to Libsack's home to inspect the Windows

**EXHIBIT D**
**Page 10 of 37**

and advised that the windows needed to be refinished. Sandstrom did not address the leaking. Having recently refinished the Windows, Libsack knew this response was insufficient.

53.    At all times relevant hereto, Sandstrom was an agent of Defendants.

54.    Unsatisfied with Sandstroms' response, Libsack again contacted Defendants in or around June 2014.

55.    Defendants sent a field technician to perform an inspection of the Windows at the Libsacks' home. Defendants concluded that a defect in the window was causing the moisture issue but refused to repair and/or replace the windows and then denied Libsack's warranty claim.

56.    Moisture continues to appear on the Windows.

57.    Unknown to Libsack, the Windows purchased in 2006 were defective in that they allowed water to penetrate the aluminum cladding, which caused condensation, wood rot, and other failures as described.

58.    The characteristics of the Window defect (that allowed for the water to penetrate the aluminum cladding and failed to protect the wood from rot) were present in the Windows when they left the factory, and were part of the Window by design and manufacture.

59.    Windsor knew of the defect in the windows but wrongfully concealed it from Libsack.

60.    Libsack now has wood rot to this Windows which damages other property through his home, including but not limited to walls, floors, and ceilings.

## CLASS ALLEGATIONS

61.    Plaintiffs bring this action individually and as representatives of all those similarly situated pursuant to Rule 23, F.R.C.P., on behalf of the Class. The requirements of Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4) are met with respect to the classes defined below:

INJUNCTIVE RELIEF CLASS:

All persons and entities that own structures in which Windsor's wood or wood clad windows are installed.

DAMAGES CLASS:

All persons and entities that own structures in which Windsor's wood or wood clad windows are installed.

(ALTERNATIVE) DAMAGES CLASS:

All persons and entities that own structures located within the State of Minnesota in which Windsor's wood or wood clad windows are installed.

These Classes excludes:

a) any Judge or Magistrate presiding over this action and members of their families;

b) any employees of Defendants;

c) any entity in which Windsor has a controlling interest or which has a controlling interest in Windsor and its legal representatives, assigns, and successors;

d) any person who has released Windsor or is currently in litigation with Windsor related to Windsor's wood or wood clad windows; and

e) all persons who properly execute and file a timely request for exclusion from the Class.

Plaintiffs propose that the Class be divided into subclasses if and as necessary to align Class interests.

62.    *Numerosity*: The Class is composed of a thousand or more persons geographically dispersed throughout the State of Minnesota, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Class is ascertainable and identifiable from Defendants' records or identifying marks on the Windows.

63.    *Commonality*: The critical question of law and fact common to the Class that will materially advance the litigation is whether the Windows are inherently defective, contrary to the expectations imparted by Defendants through their warranties, representations and omissions.

64.    Furthermore, other questions of law and fact common to the Class that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class include the following:

    (a)    Whether the Windows are defective;

    (b)    Whether Defendants were negligent in their design and manufacture of the Windows;

    (c)    Whether Defendants knew or should have known about the defective condition of the Windows;

    (d)    Whether Defendants concealed and/or failed to disclose the defective condition of the Windows to consumers;

    (e)    Whether Defendants breached their express and implied warranties;

    (f)    Whether the Plaintiffs are entitled to prejudgment interest, attorneys' fees, and costs from Defendants; and

    (g)    Whether Defendants' conduct was negligent, reckless, willful, wanton, intentional, fraudulent or the like, entitling Plaintiffs to statutory or punitive damages from Defendants.

65.    *Typicality*: Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective Windows and Defendants' conduct in concealing the defects in the Windows to owners, contractors, developers, and suppliers.

66.    *Adequate Representation*: Plaintiffs will fairly and adequately protect the interests of the members of the Class and has no interests antagonistic to those of the Class given the Plaintiffs are a member of the Class he also seeks to represent. Plaintiffs have retained counsel

experienced and competent in construction litigation, product liability, complex litigation and consumer class actions.

67.     *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class members be required to bring separate actions, this Court and/or courts throughout Minnesota would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

68.     Moreover, Plaintiffs envision no unusual difficulty in the management of this action as a class action and the amount of money at stake for each member is not sufficient for each member to hire their own counsel and experts and to bring their own action.

### <u>ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS</u>

69.     Plaintiffs and Class members are within the applicable statute of limitations for the claims presented hereunder because Plaintiffs and Class members did not discover the defect, and could not reasonably have discovered the defect.

70.     Due to the concealed location of rot and other primary leak points, Plaintiffs are often unaware of the wood rot, degradation, and other failures until the end or expiration of Defendants' warranty period.

14

71.     Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts of concealment, which include Defendants' concealment from Plaintiffs, Class members, and the general public that their Windows were defective, while continually marketing the Windows as a durable and suitable product.

72.     Defendants had a duty to disclose that their Windows were defective, unreliable, and inherently flawed in design and/or manufacture.

73.     Plaintiffs and Class members had no knowledge of, and no reasonable way of discovering, the latent defects found in Defendants' Windows at the time they purchased the product or their homes, residences, buildings, and other structures.

74.     Defendants did not notify, inform, or disclose to Plaintiffs and Class members that there were defects in the Windows.

75.     Because Defendants failed in their duty to notify Plaintiffs and Class members that their product was defective, the statute of limitations should be tolled on Plaintiffs' and Class members' claims.

## ESTOPPEL FROM PLEADING WARRANTY LIMITATIONS AND DISCLAIMERS

76.     Defendants are also estopped from relying on any warranty limitation or disclaimer as a defense to Plaintiffs' and Class members' claims.

77.     By virtue of Defendants' acts, the Windows installed in Plaintiffs' and Class members' residences have not lived up to Defendants' warranties and representations, and given the defective condition of the Windows and the premature deterioration the Windows that require unexpected maintenance, wear and/or replacement, the Windows have not proven to be of the value bargained for and/or of that compared to other windows.

78.     Defendants knew or should have known that their Windows were defective in design and/or manufacture, and said Windows were not fit for their ordinary and intended use, were not merchantable, and failed to perform in accordance with the advertisements, marketing materials and warranties disseminated by Defendants or with the reasonable expectations of ordinary consumes such as Plaintiffs and Class members.

79.     Accordingly, any warranty provided by Defendants fails its essential purpose because its purports to warrant that the Windows will be free from defects for a prescribed period of time when in fact said Windows fall far short of the applicable warranty period.

80.     Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available under Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

81.     As a result, any time limitations, exclusions, or disclaimers which restrict the remedies encompassed within Defendants' warranties are unconscionable and unenforceable, and therefore, Defendants are estopped from relying on the same.

## COUNT I
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

82.     Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

83.     Defendants are designers, manufacturers, and suppliers of the Windows, and for a number of years, marketed, warranted, distributed, and/or sold the Windows in Minnesota.

84.     Defendants entered into contractors with retailers, suppliers and/or contractors to sell its Windows that were to be installed at Plaintiffs' and the Class members' properties.

16

85.     Plaintiffs and the Class members are intended third party beneficiaries of those contracts because it was the clear and manifest intent of Defendants that the contracts were to primarily and directly benefit Plaintiffs and the Class members.

86.     Defendants impliedly warranted to Plaintiffs, the Class members and/or their agents that the Windows were merchantable and reasonably fit for their ordinary purpose, and would not cause damage as set forth herein.

87.     Defendants breached the implied warranty of merchantability by selling its Windows that were defective and not fit for their ordinary purpose.

88.     Defendants' Windows were not of merchantable quality and not fit for intended use when they left the factory due to the defects in the Windows described herein.

89.     The Windows have been tested by experts in the field. Those experts found defects in the design and manufacturing of the Windows that permit water penetration in the Windows.

90.     The numerous and serious defects described herein make the Windows unfit and inappropriate for its intended use within structures.

91.     The Windows are also unfit for their particular purpose. Defendants manufactured and distributed their Windows in climates with multiple seasons and geographic locations. Defendants knew, or should have known, that its Windows would be subjected to varying temperatures and weather conditions, including rain cycles, throughout each year. Due to the defects and resultant leakage, rot, premature degradation, and other failures, the Windows are unfit for their particular purpose.

92.     Despite having knowledge of the Windows' defects, have failed to provide an adequate remedy.

93.     As a result, Defendants breached their implied warranties to Plaintiffs and Class members by producing, manufacturing, distributing and selling them a defective product that was unfit for its intended use and for a particular purpose.

94.     As a direct and proximate result of Defendants' breach of the implied warranty on the Windows, the Plaintiffs and Class members have suffered actual and consequential damages.

95.     Plaintiffs and Class members suffered and will continue to suffer losses as alleged herein, in an amount to be determined at trial.

## COUNT II
## BREACH OF EXPRESS WARRANTY

96.     Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

97.     After putting their Windows into the stream of commerce, Defendants expressly represented and warranted that the Windows were appropriate for their intended use and were free from defects and that they conformed to all applicable building codes and industry standards.

98.     Defendants entered into contracts with retailers, Plaintiffs, Class members, Plaintiffs' Builders, Class members' Builders, suppliers and/or contractors to sell its Windows that were to be installed at Plaintiffs' and Class member's properties.

99.     Plaintiffs and Class members were intended third party beneficiaries of the contract between Windsor and their respective builders.

100.    The representations and warranties made by Defendants in marketing and selling their Windows formed part of the basis of the bargain between Defendants and the purchasers of the Windows at the time of the sale.

18

101. Purchase agreements for the construction or sale of residences or structures, including Plaintiffs' purchase agreement, contained provisions transferring or assigning the manufacturers' warranties, including window warranties. Such provisions are valid transfers and assignments, and the transferred and assigned warranties formed part of the basis of the bargain at the time the home was purchased.

102. The Defendants' warranty certifies that they will replace or repair components of their products found to be defective for at least ten (10) years.

103. Upon information and belief, all of Defendants' written warranties applicable to Class members contain the same or similar provisions.

104. Through their written warranties, brochures, marketing materials, website, and other representations regarding the performance, durability, and quality of the Windows, Defendants created express warranties for the benefit of Plaintiffs and Class members.

105. Thus, Defendants' express warranties and representations are applicable to the Windows installed in Plaintiffs' and Class members' residences and/or structures.

106. Specifically, Defendants expressly warranted to Plaintiffs and Class members that the Windows purchased by Plaintiffs and Class members were free from defects in materials and workmanship that substantially impair their operation or performance and that they would last at least 10 years.

107. However, despite Defendant's assurances, as described in detail *supra*, the Windows contain the aforementioned defects and do not conform to all applicable building codes and industry standards and are not free from defects.

EXHIBIT D
Page 19 of 37

EXHIBIT A - Page 107 of 349

108.    The Windows have been tested by experts in the field. Those experts found the aforementioned defects in the design and manufacturing of the Windows that permit water penetration in the Windows.

109.    These aforementioned defects are present when the Windows leave Defendants' control.

110.    Defendants breached the express warranty by selling its Windows that were defective and not reasonably fit for their ordinary and intended purpose and did not conform to Defendants' express representations and/or warranties. Further, contrary to Defendant's representations and warranties, the Windows were not free from design and material defects for at least 10 years.

111.    By its conduct and defective products, Defendants have breached their express warranty with Plaintiffs and members of the Class.

112.    In addition, Defendants have breach their express warranties by not providing Plaintiffs and Class members with Windows which were free from defects and/or by suppressing warranty claims.

113.    Defendants' written warranties are also unconscionable and fail their essential purpose because they purport to warrant that the Windows will be free from manufacturer defects for at least 10 years when in fact the Windows fall far short of the applicable warranty period. To the contrary, due to the leakage in the Windows, Defendants' Windows begin failing after only a few years' or less use.

114.    Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available in Defendants'

warranties are limited to such an extent that they do not provide a minimum adequate remedy. Further, the warranty is inadequate because by its 10-year limitation alone, Defendant seeks to reduce the reasonable expected life of the product.

115.    Plaintiffs and Class members contacted Defendants regarding their warranty claims and the issues with their Windows.

116.    Defendants refused Plaintiffs' and Class members' warranty claims and refused to repair or replace the Windows or damage.

117.    Plaintiffs and Class members adequately met all pre-suit notice requirements for their warranty claims.

118.    Defendants have denied, failed to pay in full, and/or failed to respond to warranty Claims.

119.    Accordingly, the limitations on remedies and the exclusions in Defendants' warranties are unconscionable and unenforceable.

120.    As a result of Defendants' breaches of express warranties, Plaintiffs and Class members have suffered actual damages in that they purchased homes, residences, buildings, and other structures containing defective Windows that have failed or are failing prematurely due to leakage and increased moisture absorption problems. This failure has required or is requiring Plaintiffs and Class members to incur significant expense in repairing or replacing their Windows. Replacement is required to prevent on-going and future damage to the underlying structures or interiors of Plaintiffs' and Class members' residences.

121.    Thus, as a direct and proximate result of Defendants' breach of the express warranty on the Windows, Plaintiffs and Class members have suffered actual and consequential damages.

## COUNT III
## <u>VIOLATION OF MINNESOTA CONSUMER FRAUD ACT</u>
### Minn. Stat. § 325F.69

122.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

123.    Minn. Stat. § 325F.69, subdivision 1 (2013) provides:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in Section 325F.70.

124.    Defendants sold merchandise in the form of their Windows to Plaintiffs and Class members.

125.    Defendants' business practices, in manufacturing, warranting, advertising, marketing and selling their Windows, of misrepresenting that their Windows would be free from defects even though Defendants knew and had substantial evidence to the contrary, constitute the use of fraud, false promises, misrepresentations, misleading statements and deceptive practices and, thus, constitute multiple, separate violations of Minn. Stat. § 325F.69.

126.    Defendants' business practices, in manufacturing, warranting, advertising, marketing and selling their Windows while concealing, failing to disclose, suppressing or omitting material information, including the defects in the Windows and Defendants' knowledge of the defects, while continuing to misrepresent their Windows as products that are free of defects, constitute the use of fraud, false promises, misrepresentations, misleading statements and deceptive practices and, thus, constitute multiple, separate violations of Minn. Stat. § 325F.69.

22

127.    Defendants concealed the defective nature of their Windows even after members of the Class began to report problems. Indeed, Defendants continue to affirmatively misrepresent and conceal from their dealers, distributors, and the public, the true nature of its Windows. These omissions and misrepresentations constitute the use of fraud, false promises, misrepresentations, misleading statements and deceptive practices and, thus, constitute multiple, separate violations of Minn. Stat. § 325F.69.

128.    Defendants knew or should have known their Windows were defectively designed and/or manufactured, would fail prematurely, were not suitable for their intended use, and otherwise were not as warranted and represented by Defendants. The fact that Defendants' Windows fail prematurely is a material fact, the omission of which has the tendency or capacity or is likely to mislead or deceive Plaintiffs and Class members, and is a fact which could not reasonably be known by Plaintiffs and Class members. These omissions constitute the use of fraud, false promises, misrepresentations, misleading statements and deceptive practices and, thus, constitute multiple, separate violations of Minn. Stat. § 325F.69.

129.    In connection with the manufacturing, warranting, advertising, marketing and sale of Defendants' Windows, Defendants made the material omissions and misrepresentations set forth in this Complaint in its warranty, advertising and other promotional materials disseminated by or on behalf of Defendants in Minnesota.

130.    Defendants' omissions and misrepresentations set forth in this Complaint are material in that they relate to information that would naturally affect the purchasing decisions or conduct of purchasers, including Plaintiffs and Class members, regarding Defendants' Windows.

131.    Defendants had a duty to disclose to Plaintiffs and members of the Class the latent defects in their Windows as the facts were material to Plaintiffs and the Class members'

transactions; because they made contrary representations and statements, including that the Windows were defect free; because Defendants, as the parties with knowledge of the defect, knew that Plaintiffs and members of the Class were entering transactions under a mistake as to the fact of the defective design of the Windows; because the fact of the defective nature of the design was peculiarly and exclusively within Defendants' knowledge and the mistaken parties, Plaintiffs and Class members, could not reasonably be expected to discover it; and on account of the objective circumstances, Plaintiffs and the members of the Class reasonably expected disclosure of the fact of the defect.

132.    The facts concealed and/or not disclosed by Defendants to Plaintiffs and the Class are material facts in that such facts would naturally affect the conduct of purchasers and a reasonable person would have considered those facts to be important in deciding whether or not to purchase Defendant's Windows.

133.    Had Plaintiffs and the Class known of the defective nature of Defendants' Windows, they would not have purchased the Windows or would have paid less for their Windows.

134.    If Plaintiffs here had known their Windows were defective, or that they would be required to replace his Windows prematurely, Plaintiffs would not have paid the price they did to purchase their Windows.

135.    Defendants possessed knowledge of the Windows' defective nature prior to bringing the product to market. Defendants fraudulently, negligently, recklessly and/or intentionally concealed and/or failed to disclose the true nature of the design and/or manufacturing defect in their Windows for the purpose of inducing Plaintiffs and the Class to rely thereon, and Plaintiffs and the Class justifiably relied to their detriment upon the truth and

completeness of Defendants' representations about their Windows. Plaintiffs and the Class members relied on Defendants disclosing all materials facts and not omitting any material information regarding Defendants' Windows. This is evidenced by Plaintiffs and Class members' purchase of Defendants' Windows.

136.    Defendants' fraudulent and deceptive practices repeatedly occurred in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

137.    As a direct and proximate cause of Defendants' false and deceptive misrepresentations and omissions regarding their Windows, Plaintiffs have suffered actual injuries in that his Windows have failed prematurely. Class members have also suffered actual injury in that their Windows have failed prematurely and/or Class members are reasonably certain to suffer actual injury well in advance of the warranted and expected life of their Windows as the failure process has commenced in their Windows.

138.    Separate from, and in addition to, their actual damages, Plaintiffs and Class members' expectations were frustrated as a result of Defendants' omissions and misrepresentations, and Plaintiffs and Class members did not receive what they expected to receive, which injury constitutes a loss. Plaintiffs and Class members are thus entitled to recover the difference between the actual value of the Windows and the value the Windows would have possessed had Defendants' representations about the quality of the Windows been true.

139.    As a result of Defendant's unlawful conduct, Plaintiffs and Class members were injured and suffered damages. Plaintiffs and Class members are entitled to recover their actual damages, and costs and disbursements, including costs of investigation and reasonable attorneys' fees, as well as injunctive relief and other equitable relief, including restitution, as determined by

the Court, pursuant to Minnesota law, including Minn. Stat. §§ 8.31, subd. 1 and 3a. and 325F.69.

## COUNT IV
## VIOLATION OF THE MINNESOTA UNIFORM
## DECEPTIVE TRADE PRACTICES ACT
### Minn. Stat. § 325D.44

140.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

141.    Minn. Stat. § 325D.44, subdivision 1 provides, in part, as follows:

Subdivision 1. A person engages in a deceptive trade practice when, in the course
of business, vocation, or occupation, the person:
…

(5)      represents that goods or services have sponsorship, approval,
characteristics, ingredients, uses, benefits or quantities that they do not have…;
…

(7) represents that goods are of a particular standard, quality, or grade, or that
goods are of a particular style or model, if they are of another . . .; or
…

(13) engages in any other conduct which similarly creates likelihood of
confusion or of misunderstanding.

142.    Defendants' business practices, in manufacturing, warranting, advertising, marketing and selling their Windows, in misrepresenting material facts, including that the Windows are defect free, and constitute multiple, separate violations of Minn. Stat. § 325D.44, subd. 1 (5), (7) and (13), including:

a.      Falsely representing that their Windows have characteristics, uses, benefits

26

or quantities of being defect free, when, in fact, they are not, and expected
to last for the warranted and represented lifetimes of the products, when,
in fact, they do not;

b.    Falsely representing that their Windows are of a particular standard, quality or grade when, in fact, they are not;

c.    Creating the likelihood of confusion or of misunderstanding among
consumers about the nature and quality of their Windows, including that they are defect free and will last their warranted and represented product lifetimes, when, in fact, they are not and do not.

143.    Defendants' business practices, in manufacturing, warranting, advertising, marketing and selling their Windows while misrepresenting material facts, including that the Windows are defect free, and failing to disclose, concealing, suppressing, and omitting material information concerning the defects in its Windows and the true, lower life expectancy of the products, constitute multiple, separate violations of Minn. Stat. § 325D.44, subd. 1 (5), (7) and (13)

144.    Defendants engaged in the above conduct in the course of Defendants' business.

145.    As a result of Defendants' unlawful conduct, Plaintiffs and Class members were injured and suffered damages, and are entitled to recover their actual damages, costs, and disbursements, including costs of investigation and reasonable attorneys' fees, as well as injunctive relief and other equitable relief, including restitution, as determined by the Court, pursuant to Minnesota law, including Minn. Stat. §§ 8.31, subd. 1 and 3a. and 325D.45.

## COUNT V
## VIOLATION OF THE MINNESOTA UNLAWFUL
## UNLAWFUL TRADE PRACTICES ACT
### Minn. Stat. § 325D.13

146.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

147.    Minn. Stat. § 325D.13 provides, in part, as follows:

> No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise.

148.    Defendants knowingly misrepresented and concealed the true quality of their Windows in connection with the sale of that merchandise.

149.    Defendants knowingly misrepresented that their Windows are defect free and the life expectancy of their Windows.

150.    Defendants knowingly concealed from and failed to disclose to Plaintiffs and Class members, in connection with the sale of their Windows, material information, including the defective nature of the products, the defective ingredients used in manufacturing the Windows including but not limited to the wood preservative treatment used on the Windows, and the true, lower life expectancy of Defendants' Windows.

151.    Defendants' omissions and misrepresentations had the tendency or capacity to deceive or mislead Plaintiffs, Class members and a substantial segment of consumers.

152.    Defendants' omissions and misrepresentations were material because they related to facts that would naturally affect the conduct of purchasers and that a reasonable person, including Plaintiffs and Class members, would have considered important in deciding whether to purchase Defendants' Windows.

153.    Defendants caused their Windows to enter into interstate commerce.

154.   As a result of Defendants' unlawful conduct, Plaintiffs and Class members were injured and suffered damages, and are entitled to recover their actual damages, costs and disbursements, including costs of investigation and reasonable attorneys' fees, as well as injunctive relief and other equitable relief, including restitution, as determined by the Court, pursuant to Minnesota law, including Minn. Stat. §§ 8.31, subd. 1 and 3a. and 325D.15.x.

## COUNT VI
## VIOLATION OF MINN. STAT. § 325G.19

155.   Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

156.   Minn. Stat. § 325G.19 provides, in part, as follows:

> The maker of an express warranty arising out of a consumer sale in this state shall honor the terms of the express warranty.

157.   Defendants expressly warranted its Windows to be free from material and design defects for at least ten (10) years. Despite this, Defendants are aware that their Windows, as designed, will fail well before that time period.

158.   Defendants' express warranties were written statements arising out of the sale of its Windows purchased by Plaintiffs and Class members primarily for personal, family, or household purposes.

159.   Defendants have violated Minn. Stat. § 325G.19 by failing to honor its express warranties that their Windows are free of defects for at least ten (10) years.

160.   As a result of Defendants' unlawful conduct, Plaintiffs and Class members were injured and suffered damages, and are entitled to recover their actual damages, costs and disbursements, including costs of investigation and reasonable attorneys' fees, as well as

injunctive relief and other equitable relief, including restitution, as determined by the Court, pursuant to Minnesota law, including Minn. Stat. §§ 8.31 subd. 1 and 3a. and 325G.20.

## COUNT VII
## FRAUDULENT MISREPRENTATION

161.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

162.    Defendants falsely and fraudulently represented to Plaintiffs, the Class members, and/or the consuming public in general that Defendants' Windows would be free from defects and fit for their customary and normal use.

163.    Defendants falsely represented to purchasers, consumer, and Window owners that the Windows were warranted against defects in material and workmanship when in fact the Limited Warranty was so limited as to prevent and preclude any warranty protection against the known defect in the Windows.

164.    When said representations were made by Defendants, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

165.    These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiffs, the Class members and/or the consuming public, all of which evinced reckless, willful, indifference to the safety and welfare of the Plaintiffs and the Class members.

166.    At the time the aforesaid representations were made by Defendants, Plaintiffs and the Class members were unaware of the falsity of said representations and reasonably believed them to be true.

167.    In reliance upon said representations, Defendants' Windows were installed and used on the Plaintiffs' and the Class members' properties, thereby causing Plaintiffs and the

30

Class members to sustain damages and injury to their property and/or to be at an increased risk of sustaining damage and injury in the future.

168.    Defendants knew and was aware, or should have been aware, that Defendants' Windows were defective and not fit for their customary and normal use.

169.    Defendants knew, or should have known, that Defendants' Windows had a potential to, could, and would cause severe damage and injury to property owners.

170.    Defendants brought their Windows to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiffs and the Class members.

171.    By reason of the foregoing, Plaintiffs and the Class members suffered, and continue to suffer, financial damage and injury.

## COUNT VIII
## FRAUDULENT CONCEALMENT

172.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

173.    Defendants knew or should have known that the Windows were defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Defendants nor the reasonable expectations of ordinary consumers.

174.    Defendants fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that the Windows are defective.

175.    Defendants had exclusive knowledge of the defective nature of the Windows at the time of sale. The defect is latent and not something that Plaintiffs or Class members, in the exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible.

176.    Defendants had the capacity to, and did, deceive Plaintiffs and Class members into believing that they were purchasing Windows free from defects.

177.    Defendants undertook active and ongoing steps to conceal the defect. Plaintiffs are aware of nothing in Defendants advertising, publicity or marketing materials that disclosed the truth about the defect, despite Defendants' awareness of the problem.

178.    The facts concealed and/or not disclosed by Defendants to Plaintiffs and the Class members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Windows from their builders.

179.    Defendants intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiffs and the Class to act thereon.

180.    Plaintiffs and the Class justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchase of the Windows.

181.    Plaintiffs and Class members suffered a loss of money in an amount to be proven at trial as a result of Defendants' fraudulent concealment and nondisclosure because: (a) they would not have purchased the Windows on the same terms if the true facts concerning the defective Windows had been known; (b) they paid a price premium due to they would be free from defects; and (c) the Windows did not perform as promised. Plaintiffs also would have initiated this suit earlier had the defect been disclosed to him.

182.    By reason of the foregoing, Plaintiffs and the Class members suffered, and continue to suffer, financial damage and injury.

## COUNT IX
## NEGLIGENT MISREPRESENTATION

183.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

184.    Defendants, through their marketing materials, website, brochures, product literature, warranties and agents, made representations to the Plaintiffs and Class members, builders, suppliers and the public about the superior quality and durability of their Windows and components.

185.    Specifically, Defendants have represented that their windows are durable, of "superior construction;" "constructed with the highest grade materials, hardware, and glass;" and that Defendants "carefully monitor every product throughout the entire manufacturing process;" and have made similar representations throughout various time periods in which the Windows have been sold.

186.    Defendants transmitted said representations to the Plaintiffs and class members, builders, suppliers and the public while failing to disclose the defective condition of their Windows, including the substantial leakage and consequential damages that would or could likely result from their Windows' defects.

187.    Defendants have a pecuniary interest in making these representations and nondisclosures and had a duty to communicate truthful information to the Plaintiffs and Class members, builders, suppliers and the public.

188.    Defendants breached their duties by failing to exercise due care in making the above-described representations and non-disclosures and the Plaintiffs and Class members, builders, suppliers and the public relied on these representations and non-disclosures.

189.    The Plaintiffs and Class members have suffered a pecuniary loss as a direct and proximate result of their reliance upon these representations and non-disclosures.

33

## COUNT X
## UNJUST ENRICHMENT

190.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegation as through fully set forth herein. This count is plead in the alternative to Plaintiffs' contract-based claims.

191.    Plaintiffs and Class members conferred a benefit on Defendants when they purchased the Windows.

192.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the Windows, the retention of which under these circumstances is unjust and inequitable because Defendants' Windows were defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Defendants nor the reasonable expectations of ordinary consumers and caused  Plaintiffs and Class members to lose money as a result thereof.

193.    Plaintiffs and Class members suffered a loss of money as a result of Defendants' unjust enrichment because: (a) they would not have purchased the Windows on the same terms if the true facts concerning the defective Windows had been known; (b) they paid a price premium due to the fact the Windows would be free from defects; and (c) the Windows did not perform as promised.

194.    Because Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

195.     Plaintiffs and the Class members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by the Defendants from its deceptive, misleading, and unlawful conduct.

## COUNT XI
## DECLARATORY RELIEF 28 U.S.C. § 2201

196.     Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

197.     Defendants have acted or refused to act on grounds that apply generally to the Declaratory Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).

198.     Plaintiffs seek a ruling that:

    a.  the Windows have a defect which results in a premature failure and premature rotting of wood component of the sash. The rotting of the wood component may not be detectable until after the warranty provided by Defendants has expired. The Court finds that this defect is material and requires disclosure for all of these windows;

    b.  the Windows have a defect in workmanship and material that allows water to penetrate behind the aluminum clad sash component of the window resulting in premature rotting of the wood component, which rot may progress to adjacent wood components, and that the rotting of the wood component may not be detectable until after the existing warranty provided by Defendants has expired. The Court declares that all persons who own structures containing Windows are to be provided the best practicable notice of the defect, which cost shall be borne by Defendants;

    c.  certain provisions of Defendants' warranty are void as unconscionable;

    d.  any limitation on the warranty is removed;

    e.  the limitation of the warranty to the date of manufacture, rather than the date of installation, is removed;

    f.  Defendants shall re-audit and reassess all prior warranty claims, including claims previously denied in whole or in part, where the denial was based on

35

warranty or on other grounds, of claims related to wood rot, and pay the full cost of repairs and damages; and

g.    Defendants will establish an inspection program and protocol, under Court supervision, to be communicated to Class members, which will require Defendants to inspect, upon request, a Class member's structure to determine whether wood rot is manifest. Any disputes over coverage shall be adjudicated by a Special Master appointed by the Court and/or agreed to by the parties.

WHEREFORE, Plaintiffs, individually and on behalf of others similarly situated, pray for a judgment against Defendants as follows:

1.    For an order certifying the Classes, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiffs as representatives of the Classes, and appointing the law firms representing Plaintiffs as counsel for the Classes;

2.    For compensatory damages sustained by Plaintiffs and the Damages Class;

3.    For equitable and/or injunctive relief for the Declaratory Relief Class;

4.    For payment of costs of suit herein incurred;

5.    For both pre-judgment and post-judgment interest on any amounts awarded;

6.    For punitive damages;

7.    For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

8.    For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs, individually and on behalf of the Plaintiff Class members, hereby demand a trial by jury as to all issues so triable.

36

This the 21st day of January, 2016

Respectfully submitted,

/s/ Matthew E. Lee
Matthew E. Lee (Admitted Pro Hac Vice)
Daniel K. Bryson
**WHITFIELD BRYSON & MASON, LLP**
900 W. Morgan Street
Raleigh, North Carolina 27603
Tel: (919) 600-5000
Fax: (919) 600-5035
matt@wbmllp.com
dan@wbmllp.com

Rhett A. McSweeney (269542)
David M. Langevin (329563)
**MCSWEENEY/LANGEVIN**
2116 2nd Avenue South
Minneapolis, MN 55404
Tel: (612) 746-4646
Fax: (612) 454-2678
ram@westrikeback.com
dave@westrikeback.com

OF COUNSEL:

Jordan L. Chaikin
**PARKER WAICHMAN LLP** 27300 Riverview Center
Blvd., Suite 103 Bonita Springs, Florida 34134
Tel: (239) 390-1000
Fax: (239) 390-0055 jchaikin@yourlawyer.com

*Attorneys for Plaintiffs Anthony Schiller and Steve Libsack*

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| ERIC L. KOTY, STACY L. KOTY, and JOHN GEORGE, individually and on behalf of all others similarly situated, | Civil Action No. 1:15-cv-5343 |
| Plaintiffs, | Honorable Andrea R. Wood |
| vs. | |
| WINDSOR WINDOW COMPANY d/b/a WINDSOR WINDOWS AND DOORS and WOODGRAIN MILLWORK, INC., Defendants. | |

## FIRST AMENDED COMPLAINT

Plaintiffs, Eric L. Koty, Stacy L. Koty and John George, individually, and on behalf of all others similarly situated, by their undersigned attorneys, for their complaint against the Defendants named herein, allege as follows:

## INTRODUCTION AND SUMMARY OF ACTION

1.      This is a proposed class action brought by Plaintiffs on behalf of themselves and other consumers who own structures containing defective aluminum wood clad windows designed, manufactured, marketed, advertised, distributed, and sold by Defendants, Windsor Window Company d/b/a Windsor Windows and Doors, and Woodgrain Millwork, Inc.  The windows contain latent defects that allow water and moisture to penetrate through the cladding of the window and wood preservative, resulting in premature wood rot, leaking, and other collateral damage to the windows and homes.  Defendants' acts and omissions in connection with the design, manufacture, and sale of defective windows constitute fraud, negligence, breach

of implied warranty, breach of express warranty, and unjust enrichment. Declaratory relief is also appropriate.

## THE PARTIES

2.      Plaintiffs are natural persons and citizens of Illinois. They own and reside in single-family homes Illinois in which Defendants' windows are installed.

3.      Defendant, Windsor Window Company d/b/a Windsor Windows and Doors, was and is a company organized and existing under the laws of the State of Idaho, with a principal place of business in the State of Iowa.  At all times relevant herein, Windsor Windows and Doors transacted and conducted business in Illinois.

4.      Defendant, Woodgrain Millwork, Inc., was and is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business in the State of Idaho.

5.      At all times relevant herein, Defendant, Woodgrain Millwork, Inc., was the parent company of Windsor Windows and Doors, and jointly transacted and conducted business in Illinois.

6.      Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the windows at issue.

7.      At all times relevant herein, the Defendants were actual and/or de facto joint venturers in the design, development, manufacture, marketing, and sales of the windows at issue.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that: (i) there is complete diversity as Plaintiffs are citizens of Illinois and Defendants are citizens of states other

2

than Illinois, as they are domiciled, incorporated, and headquartered in Idaho, Iowa, and Oregon; (ii) the amount in controversy exceeds $5,000,000.00 (Five Million Dollars), exclusive of interest and costs; and (iii) there are 100 or more members of the proposed Plaintiff class.

9.      Venue lies in this District pursuant to 28 U.S.C. § 1391 because Plaintiffs reside in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  Additionally, at all times relevant herein, Defendants conducted and/or transacted business in this Judicial District and, therefore, are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

10.      Defendants hold themselves out to both the construction industry and the public at large as being providers of superior, quality, and durable products, including the windows that are the subject of this litigation.

11.      At all times relevant herein, Defendants were engaged in the marketing, sale, supply, and delivery of windows in the State of Illinois.

12.      At all times relevant herein, Defendants designed, manufactured, marketed, sold, supplied and distributed wood and wood clad windows ("the Windows").

13.      In May of 2007, Eric and Stacy Koty purchased a home with the property address of 15922 S. Selfridge Circle, Plainfield, Illinois.

14.      In 2007, John George completed construction on his custom home with the property address of 10115 W. Tall Grass Lane, Monee, Illinois.

15.      The Windows were installed in the Plaintiffs' homes during construction.

16.    The Windows are defective and fail to perform at Plaintiffs' residences and at class members' residences by permitting water intrusion through unsealed or inadequately sealed areas of the Windows' frame and sashes, and into the interior of the residences.

17.    The Windows are defective and fail to perform at Plaintiffs' residences and at class members' residences by permitting water to penetrate the window components, wherein it is absorbed by wood members, and causes rot, premature degradation, leaking, and failure of the wood.

18.    Degradation of the wood components permits additional water infiltration into the home in an accelerated cycle.

19.    The wood degradation, rot, and leaking are latent damages masked by the Windows' cladding, jamb liners, and other window components, as well as by other building components such as trim and drywall.

20.    The water intrusion and above-described damages resulting from the Windows constitutes "occurrences" resulting in "property damage" to property other than Defendants' "product" as those are terms commonly defined and used in the typical commercial general liability insurance policy.

21.    The above-described defects are due to fundamental design, engineering, and manufacturing errors, which should have been within Defendants' expertise.

22.    Because the Windows rot, prematurely degrade, otherwise fail, and permit water intrusion, they violate the building codes and industry standards.

23.    The above-described deficiencies exist at the time the Windows leave the factory.

24.    Failure of the Windows begins upon installation, and continues during repeated and prolonged exposure to weather and ordinary use.

EXHIBIT E
Page 4 of 33

EXHIBIT A - Page 129 of 349

25.      Defendants knew or should have known that the defects were present at the time the Windows left their control.

26.      Defendants knew or should have known the potential for leakage, rot, premature degradation, and failure of their Windows, but failed to adequately correct the defective design, manufacturing, or formulation that resulted in said damage.

27.      Defendants knew or should have known the potential for leakage, rot, premature degradation, and failure of their Windows, but failed to adequately correct the defective manufacture and that resulted in said damage.

28.      Defendants failed to warn purchasers, installers, or users of the above-described risks of failures.

29.      The purchase of Defendants' Windows includes a written express warranty, which forms part of the basis of the bargain between Defendants and the purchaser at the time of sale.

30.      The Windows' written express warranty also forms part of the basis of the bargain between the seller of the home and home buyers, including Plaintiffs and class members.

31.      The typical purchase agreement for the sale and/or construction of class members' homes likely contains one or more provisions transferring or assigning manufacturers' and suppliers' warranties to them at the time of purchase or conveyance.

32.      The transfer or assignment of the manufacturers' and suppliers' warranties, which would include the window warranties, forms part of the basis of the bargain at the time Plaintiffs and class members purchased their homes.

33.     Even where a manufacturer or supplier warranty transfer provision is not present, the average homeowner expects at the time of purchase, his or her home comes with such warranties, including a window warranty against defects.

34.     Defendants also expressly and implicitly represent in documents available to the public that their warranty is part of the product being sold, and that the written warranties apply to the owners of the homes containing the Windows.

35.     Defendants represent in their express warranty and documents available to the public that the Windows would be free from defective materials and workmanship for at least 10 years.

36.     Plaintiffs and putative Class members relied upon these representations when Plaintiffs purchased the Windows and/or structures containing the Windows.

37.     Plaintiffs and putative Class members reasonably expected and expect that the Windows would last longer than 10 years.

38.     Defendants also expressly represented that the Windows conformed to all AAMA standards and were rated in accordance with NFRC 100.

39.     These representations, described herein, became a part of the basis of the bargain when Plaintiffs, Plaintiffs' builders and construction managers, Class Members and/or Class Members' builders purchased the Windows and/or purchased the homes containing the Windows.

40.     In addition, these representations became part of the basis of the bargain when Plaintiffs and/or Class Members purchased the homes with Defendants' express representations concerning the standards to which the Windows conformed because the labels were on the

6

**EXHIBIT E**
**Page 6 of 33**

EXHIBIT A - Page 131 of 349

Windows at the time of purchase, and all manufactures warranties were assigned to Plaintiffs upon purchase of the window products or the home.

41.    Defendants', their representatives, and/or agents representations, expressly and impliedly, through their website, brochures, and marketing materials that the Windows are suitable and free from defects, were intended to and likely did affect the market by inducing builders, contractors, suppliers, and others to purchase the Windows.

42.    Plaintiffs and Class members put Defendants on notice of the defects and damages.

43.    Defendants directed Plaintiffs and Class members to pay for an independent contractor to evaluate the Windows.

44.    Defendants failed and refused to respond to Plaintiffs' notice in accordance with their own warranty and representations, including failing and refusing to investigate the Windows.

45.    Defendants and/or their representatives failed to adequately remedy the defects and damages.

46.    Defendants were put on notice of defects and resultant damages in the Windows by other homeowners in Illinois and other states across the country.

47.    Defendants were put on notice of defects and resultant damages in the Windows through the filing of lawsuits across the country.

48.    Defendants' shipping of the Windows with actual or constructive knowledge of the defects, or with negligent or reckless disregard of the presence of defects, constituted a breach of their express warranty, and makes the limitations of the express warranty unconscionable in all respects, and therefore void *ab initio*.

**EXHIBIT E**
**Page 7 of 33**

EXHIBIT A - Page 132 of 349

49.    The published written warranties include the following limitations and exclusions:

a.    The warranty is ambiguous with regard to coverage of the Windows' wood components;

b.    The warranty limits coverage of wood warping;

c.    The warranty purports to exclude damages caused by design limitations and design defects;

d.    The warranty excludes the cost of labor for removal, repair, or replacement of defective parts, products, or glass;

e.    The warranty excludes the cost of repainting or refinishing associated with the repair or replacement of defective parts or products.

f.    The warranty requires that the homeowner be able to identify a "defect" in the Windows;

g.    The warranty places unreasonable time limitations on notifying Defendants of defects, including Defendants' unilateral determination of when the homeowner should have "reasonably" discovered a defect.

h.    The warranty shortens the warranty period by beginning from the date of manufacture, regardless of when the window is installed and put into use and operation.

i.    The warranty makes Defendants the final determiners of whether or not a defect exists;

j.    The warranty potentially requires payment of a field service fee for inspecting the Windows;

8

k.   The warranty requires the homeowner to produce information that may not be accessible or otherwise readily understandable, including IGU and/or glass codes;

l.   The warranty purports to limit Defendants' responsibility by providing a remedy of repair, replacement, or refund a portion of the original purchase price, solely at Defendants' option;

m.   The warranty purports to exclude any liability for consequential, incidental, or punitive damages;

n.   The warranty purports to exclude any liability in excess of the original purchase price of the product;

o.   The warranty limits repair and replacement parts and products to the remainder of the original warranty period;

p.   The warranty purports to disclaim all warranties, expressed or implied, including implied warranties of merchantability or fitness for a particular purpose;

q.   The warranty purports to disclaim performance ratings identified by the AAMA and NFRC ratings affixed to the Windows by the Defendants;

r.   The warranty purports to disclaim future performance of the Windows;

s.   The warranty purports to disclaim any obligation to comply with building standards, including applicable building codes;

t.   The warranty purports to allow Defendants to inconsistently apply the warranty at their own discretion;

u.   The warranty's 10-year limitation is in and of itself unconscionable; and

v.   In other such ways revealed during discovery, and/or otherwise determined at trial.

9

50.     The warranty is not a negotiated contract and is so one-sided that no reasonable person would ever knowingly agree to its terms if properly disclosed.

51.     Further, Defendants have engaged in a pattern and practice of failing to honor or discouraging warranty claims by directing the homeowner to pay for independent contractor evaluation, failing to adequately respond to the homeowner, and/or requiring the homeowner to pay for all costs associated with repair or replacement of the Windows, including the labor for such repair or replacement.

52.     The above described pattern and practice by Defendants have the effect of discouraging defect claims by class members or continuing to pursue remedies through the Defendants.

53.     Moreover, during contact with class members, Defendants conceal their knowledge of defects in the Windows in the class members' residences.

54.     As Defendants have known or should have known of their Windows' defects and have failed to timely honor it, the warranty has failed of its essential purpose and the limitations therein are null and void, and the Plaintiffs and class members have otherwise not received the value for which they, their builders, or contractors bargained for at the time the Windows were purchased or transferred to homeowners.

55.     The defects in Defendants' Windows also make the Windows unfit for their intended use.

56.     Given their leaking, rotting, premature degradation, and failure, the Windows have a reduced life expectancy, and require unexpected maintenance, repair, and replacement by Plaintiffs and class members.

**EXHIBIT E**
**Page 10 of 33**

57.    The Windows' defects and resultant damages have caused a diminution of the value of the homes.

58.    Defendants knew or should have known that the Windows did and do not satisfy industry standards.

59.    Defendants knew or should have known that their Windows were defective in design and manufacture, not fit for their ordinary and intended use, not merchantable, and failed to perform in accordance with the advertisements, brochures, representations, marketing materials, and warranties disseminated by Defendants.

60.    Defendants' Windows failed to conform to the reasonable expectations of ordinary consumers such as Plaintiffs and Class members.

61.    Because they leak, and allow for increased water absorption, water penetration, rot, degradation, cause reduced life expectancy, and otherwise fail, the Windows are neither durable nor suitable for use as an exterior building product.

62.    The above-described defective conditions of the Windows and resultant damages are present in Plaintiffs' home and are common among Class members.

63.    Plaintiffs and Class members have been proximately damaged by the Windows' above-described defective condition and Defendants' above-described conduct.

## KOTY PLAINTIFFS' EXPERIENCE

64.    Eric L. and Stacy L. Koty own a home located at 15922 S. Selfridge Circle, Plainfield, Illinois in which Defendants' Windows are installed.

65.    Defendants' Windows were installed in Plaintiffs' home during its construction in the spring of 2007.

11

66.     Plaintiffs' builder, Checkmate Custom Homes ("Checkmate"), ordered the Windows on their behalf.

67.     In purchasing Defendants' Windows over all other brands of windows, Plaintiffs and Checkmate relied on the representations made by Defendants and Defendants' representatives that the Windows were high quality and free from defects.

68.     Plaintiffs first saw signs of moisture in or around 2010 and contacted Defendants.

69.     Defendants assured Plaintiffs that the moisture was a result of high winds and rain and not related to the Windows themselves. Plaintiffs believed in good faith and relied on Defendants' assurances that the Windows were not defective.

70.     In or around January 2015, Plaintiffs again noticed signs of moisture in their Windows and notified Defendants of their warranty claim for the defects and damages with the Windows, including window leaking and damage to the windows and other property.

71.     Defendants referred Plaintiffs to a third-party contractor who came out and inspected the Windows. However, Defendants refused to pay for the labor required to address the issues with the Windows.

72.     Thus, Defendants failed and refused to respond to Plaintiffs' notice in accordance with their own warranty and representations, including failing and refusing to remedy the defects and damages.

73.     Unknown to Plaintiffs at the time, the Windows purchased were defective in that they allowed water penetration, which caused condensation, wood rot, leaks, mold and other failures as described herein.

74.     Defendants knew of the defect in the Windows in 2007, but wrongfully concealed it from Plaintiffs and Checkmate.

75.     The characteristics of the Windows' defects (that allowed for the water to penetrate the aluminum cladding and failed to protect the wood from rot) were present in the Windows when they left the factory, and were part of the Windows by design and manufacture.

76.     The Windows allowed water to intrude into Plaintiffs' home resulting in other property damage to the home including, but not limited to, surrounding drywall, molding, floors and ceiling.

77.     Further, when notified of the issues with the Windows, Defendants and/or their representatives have failed to adequately remedy the defects and damages with the Windows.

### GEORGE PLAINTIFF'S EXPERIENCE

78.     John George owns a custom-built home located at 10115 W. Tall Grass Lane, Monee, Illinois in which Defendants' Windows are installed.

79.     John George hired Laurence Builders, Inc. ("Laurence") to manage and supervise the construction of the custom-built home.

80.     John George selected and purchased separately the various components for his custom-built home.

81.     John George paid Laurence a fee for the management and supervision services rendered.

82.     John George paid the contractors and subcontractors directly for the work performed.

83.     Windsor Windows and Doors submitted a quote to furnish the windows for the home through Absolute Windows, Inc. ("Absolute").

84.     John George selected the Pinnacle Series windows from Defendants to be installed in the home.

13

85.     The Defendants' windows were installed by a carpentry contractor during construction in 2006-2007.

86.     In total, 39 of Defendants' windows were installed in the George residence which included 11 casement windows, 6 fixed windows, 21 double-hung windows and 1 egress.

87.     The Windows contained a label which provided that they satisfied AAMA standards and were rated in accordance with NFRC 100.

88.     In purchasing Defendants' Windows over all other brands of windows, Plaintiff relied on the representations made by Defendants and Defendants' representatives that the Windows were high quality, free from defects and met all codes and standards.

89.     After noting signs of internal moisture, John George contacted Defendants.

90.     Defendants advised John George that the moisture was a result of a maintenance issue, and not a warranty issue.  Defendants referred John George to a professional window installer to inspect the windows at John George's expense.

91.     Defendants refused to pay for any inspection of the windows to determine the cause of the problem.

92.     Defendants failed and refused to respond to John George's notice in accordance with their own warranty and representations, including failing and refusing to remedy the defects and damages.

93.     Unknown to John George at the time, the Windows purchased were defective in that they allowed water penetration, which caused condensation, wood rot, leaks, mold and other failures as described herein.

94.     Defendants knew of the defect in the Windows in 2006-2007, but wrongfully concealed it from John George and Laurence.

**EXHIBIT E**
**Page 14 of 33**

95.    The characteristics of the Windows' defects (that allowed for the water to penetrate the aluminum cladding and failed to protect the wood from rot) were present in the Windows when they left the factory, and were part of the Windows by design and manufacture.

96.    The Windows allowed water to intrude into John George's home resulting in other property damage to the home including, but not limited to, surrounding drywall, molding, floors and ceiling.

97.    Further, when notified of the issues with the Windows, Defendants and/or their representatives have failed to adequately remedy the defects and damages with the Windows.

## CLASS ACTION ALLEGATIONS

98.    Plaintiffs bring this action individually and as representative of all those similarly situated pursuant to Rule 23, F.R.C.P., on behalf of the Class.  The Class is defined as follows:

DAMAGES CLASS:

All persons and entities that own structures located within the State of Illinois in which Defendants' wood or wood clad windows are installed.

INJUNCTIVE RELIEF CLASS:

All persons and entities who are current or former owners of a structure in which Defendants' wood or wood clad windows are installed.

Excluded from the Classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Windsor and any entity in which Windsor has a controlling interest or  which has a controlling interest in Windsor and its legal representatives, assigns and successors of  Windsor; and (c) all persons who properly execute and file a timely request for exclusion from the  Classes.

15

**EXHIBIT E**
**Page 15 of 33**

EXHIBIT A - Page 140 of 349

Plaintiffs propose that the Class be divided into subclasses if and as necessary to align class interests.

99.    *Numerosity*: The Class is composed of a thousand or more persons geographically dispersed throughout the State of Illinois, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Class is ascertainable and identifiable from Defendants' records or identifying marks on the Windows.

100.    *Commonality*: The critical question of law and fact common to the Class that will materially advance the litigation is whether the Windows are inherently defective, contrary to the expectations imparted by Defendants through their warranties, representations, and omissions.

101.    Furthermore, other questions of law and fact common to the Class that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class include the following:

a.    Whether the Windows are defective;

b.    Whether Defendants were negligent in their design and manufacture of the Windows;

c.    Whether Defendants knew or should have known about the defective condition of the Windows;

d.    Whether Defendants concealed and/or failed to disclose the defective condition of the Windows to consumers;

e.    Whether Defendants breached their express warranties;

f.    Whether the Plaintiffs are entitled to prejudgment interest, attorneys' fees, and costs from Defendants; and

**EXHIBIT E**
**Page 16 of 33**

g. Whether Defendants' conduct was negligent, reckless, willful, wanton, intentional, fraudulent or the like, entitling Plaintiffs to statutory or punitive damages from Defendants.

102. *Typicality*: Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective Windows and Defendants' conduct in concealing the defects in the Windows to owners, contractors, developers, and suppliers.

103. *Adequate Representation*: Plaintiffs will fairly and adequately protect the interests of the members of the Class and has no interests antagonistic to those of the Class given that Plaintiffs are members of the Class they also seek to represent. Plaintiffs have retained counsel experienced and competent in construction litigation, product liability, complex litigation and consumer class actions.

104. *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class members be required to bring separate actions, this Court and/or courts throughout Illinois would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

Moreover, Plaintiffs envision no unusual difficulty in the management of this action as a class action and the amount of money at stake for each member is not sufficient for each member to hire their own counsel and experts and to bring their own action.

## ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

105.    Plaintiffs and Class members are within the applicable statute of limitations for the claims presented hereunder because Plaintiffs and Class members did not discover the defect, and could not reasonably have discovered the defect.

106.    Due to the concealed location of rot and other primary leak points, Plaintiffs are often unaware of the wood rot, degradation, and other failures until the end or expiration of Defendants' warranty period.

107.    Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts of concealment, which include Defendants' concealment from Plaintiffs, Class members, and the general public that their Windows were defective, while continually marketing the Windows as a durable and suitable product.

108.    Defendants had a duty to disclose that their Windows were defective, unreliable, and inherently flawed in design and/or manufacture.

109.    Plaintiffs and Class members had no knowledge of, and no reasonable way of discovering, the latent defects found in Defendants' Windows at the time they purchased the product or their homes, residences, buildings, and other structures.

110.    Defendants did not notify, inform, or disclose to Plaintiffs and Class members that there were defects in the Windows. Because Defendants failed in their duty to notify Plaintiffs and Class members that their product was defective, the statute of limitations should be tolled on Plaintiffs' and Class members' claims.

111.     Pursuant to the doctrine of Equitable Tolling and/or Equitable Estoppel, the period for bringing claims shall not be barred due to the statute of limitations or statute of repose. The interest of justice requires equitable tolling in this case. In applying this doctrine the relevant factors include the claimant's diligence, the claimant's knowledge of the relevant facts and whether these statements misled the claimant. Accordingly, with respect to each and every cause of action and/or Count asserted herein, Plaintiffs expressly plead Equitable Tolling and/or Equitable Estoppel and their application thereto.

**ESTOPPEL FROM PLEADING WARRANTY LIMITATIONS AND DISCLAIMERS**

112.     Defendants are also estopped from relying on any warranty limitation or disclaimer as a defense to Plaintiffs' and Class members' claims.

113.     By virtue of Defendants' acts, the Windows installed in Plaintiffs' and Class members' residences have not lived up to Defendants' warranties and representations, and given the defective condition of the Windows and the premature deterioration the Windows that require unexpected maintenance, wear and/or replacement, the Windows have not proven to be of the value bargained for and/or of that compared to other windows.

114.     Defendants knew or should have known that their Windows were defective in design and/or manufacture, and said Windows were not fit for their ordinary and intended use, were not merchantable, and failed to perform in accordance with the advertisements, marketing materials, and warranties disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiffs and Class members.

115.     Accordingly, any warranty provided by Defendants fails its essential purpose because its purports to warrant that the Windows will be free from defects for a prescribed period of time when in fact said Windows fall far short of the applicable warranty period.

116.   Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available under Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

117.   As a result, any time limitations, exclusions, or disclaimers which restrict the remedies encompassed within Defendants' warranties are unconscionable and unenforceable and, therefore, Defendants are estopped from relying on the same.

### COUNT I
### (NEGLIGENCE)

118.   The allegations set forth in paragraphs 1 through 117 are incorporated as fully as if stated verbatim herein as paragraph 118.

119.   At all times material hereto, Defendants designed and manufactured the Windows.

120.   Defendants had a duty to Plaintiffs and Class members to design and to manufacture Windows that were free of latent defects that would cause the Windows to leak, rot, prematurely degrade, and otherwise fail.

121.   Defendants had a duty to Plaintiffs and Class members to test the Windows to ensure adequate performance of the Windows for a reasonable period of use.

122.   Defendants had a duty to Plaintiffs and Class members to ensure that the Windows' components were suitable as an exterior product, either by testing or by verifying third-party test results.

123.   Defendants had a duty to Plaintiffs and Class members to ensure their Windows complied with industry standards and all applicable building codes throughout Illinois.

124.    Defendants had a duty to Plaintiffs and Class members to forewarn purchasers, installers, and users regarding the known risk of product failures.

125.    Defendants failed to exercise ordinary and reasonable care in the design and manufacture of the Windows and in determining whether the Windows that they sold, and continue to sell, contained a defect that would result in failure of the Windows to perform as reasonably expected.

126.    The negligence of Defendants, their agents, servants, and/or employees, include the  foregoing, as well as the following acts and/or omissions:

    a.    designing, manufacturing, processing, distributing, delivering, supplying,  inspecting, marketing and/or selling Windows without adequately and  thoroughly testing them to all applicable standards and building code;

    b.    designing, manufacturing, processing, distributing, delivering, supplying,  inspecting, marketing and/or selling Windows without adequately testing  long-term performance;

    c.    negligently failing to ensure that the Windows conformed to all applicable  standards and building codes; and

    d.    concealing information concerning the defects inherent in the Windows  from Plaintiffs and the Class members, while knowing that its Windows were defective and non-conforming with accepted industry standards and building codes.

21

127.    Plaintiffs and Class have been damaged as a direct and proximate result of the negligence, carelessness, recklessness, willfulness, and wantonness of Defendants as above-described.

128.    As Defendants' conduct was negligent, careless, reckless, willful, wanton, intentional, fraudulent, or the like, the Plaintiff class is entitled to an award of punitive damages against Defendants.

## COUNT II
## BREACH OF EXPRESS WARRANTY

129.    The allegations set forth in paragraphs 1 through 128 are incorporated as fully as if stated verbatim herein as paragraph 129.

130.    Defendants marketed and sold Windows into the stream of commerce with the intent that the Windows would be purchased by Plaintiffs and Class members.

131.    The representations and warranties made by Defendants in marketing and selling their Windows formed part of the basis of the bargain between Defendants and the purchasers of the Windows at the time of the sale.

132.    Purchase agreements for the construction or sale of residences or structures, including Plaintiffs' purchase agreement, contained provisions transferring or assigning the manufacturers' warranties, including window warranties.  Such provisions are valid transfers and assignments, and the transferred and assigned warranties formed part of the basis of the bargain at the time the home was purchased.

133.    Defendants' warranty certifies that they will replace or repair components of their products found to be defective for at least ten (10) years.

134.    Upon information and belief, all of Defendants' written warranties applicable to Class members contain the same or similar provisions.

22

135.    Through their written warranties, brochures, marketing materials, website, and other representations regarding the performance, durability, and quality of the Windows, Defendants created express warranties for the benefit of Plaintiffs and Class members.

136.    Thus, Defendants' express warranties and representations are applicable to the Windows installed in Plaintiffs' and Class members' residences and/or structures.

137.    Specifically, Defendants expressly warranted to Plaintiffs and Class members that the Windows purchased by Plaintiffs and Class members were free from defects in materials and workmanship that substantially impair their operation or performance and that they would last at least 10 years.

138.    However, Defendants' warranties fail their essential purpose because they purport to warrant that the Windows will be free from manufacturer defects for at least 10 years when in fact the Windows fall far short of the applicable warranty period. To the contrary, due to the leakage in them, Defendants' Windows begin failing after only several years' or less use.

139.    Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available in Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy. Further, the warranty is inadequate because by its 10-year limitation alone, Defendant seeks to reduce the reasonable expected life of the product.

140.    Defendants have denied, failed to pay in full, and/or failed to respond to warranty claims.

141.    Accordingly, the limitations on remedies and the exclusions in Defendants' warranties are unconscionable and unenforceable.

**EXHIBIT E**
**Page 23 of 33**

142.    As a result of Defendants' breaches of express warranties, Plaintiffs and Class members have suffered actual damages in that they purchased homes, residences, buildings, and other structures containing defective Windows that have failed or are failing prematurely due to leakage and increased moisture absorption problems. This failure has required or is requiring Plaintiffs and Class members to incur significant expense in repairing or replacing their Windows. Replacement is required to prevent on-going and future damage to the underlying structures or interiors of Plaintiffs' and Class members' residences.

143.    Thus, as a direct and proximate result of Defendants' breach of the express warranty on the Windows, Plaintiffs and  Class members have suffered actual and consequential damages.

## COUNT III
## (VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT)
### 815 ILCS 505/1, *et seq.*
### (On behalf of Plaintiffs and Illinois Class Members)

144.    Plaintiffs on behalf of themselves and similarly situated residents of Illinois, adopt and incorporate by reference the allegations in paragraphs 1 through 143 as though fully set forth herein as paragraph 144.

145.    The conduct described above and throughout this Complaint took place within the State of Illinois and constitutes unfair and deceptive business practices in violation of the Illinois Consumer Fraud  and Deceptive Business Practices Act, 815 ILCS 505/1, et seq. (hereinafter the "CFA").

146.    The CFA applies to the claims of Plaintiffs and all Illinois Class members because the conduct which constitutes violations of the ICFA by the Defendants occurred within the State of  Illinois.

147.    The CFA prohibits unfair methods of competition and unfair and deceptive acts or practices, including among other things, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, . . . whether any person has in fact been misled, deceived or damaged thereby."

148.    Defendants' engaged in concealment, suppression, or omission in violation of the CFA when, in selling and advertising the Windows, they knew that there were defects in the Windows which would result in water damage and ensuing other property damage.

149.    Defendants engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that others, such as Plaintiffs, Plaintiffs' Builders, Class members, Class member's Builders, and/or the general public would rely upon the concealment, suppression, or omission of such material facts and purchase their Windows containing said design defect.

150.    Plaintiffs, Plaintiffs' Builder, Class members, and/or Class member's builders would not have purchased the Windows had they known or become informed of the material defects in the Windows.

151.    Defendants' concealment, suppression, or omissions of material facts as alleged herein constitute unfair and deceptive business practices within the meaning of the  I CFA.

152.    Defendants have acted unfairly and deceptively by misrepresenting the quality of the  Windows.

153.    Defendants either knew, or should have known, that the Windows were defectively designed and/or manufactured and would allow water intrusion, which would result in severe  damages to the structures, such that the structures were not as represented to be as alleged herein.

154.    Upon information and belief, Defendants knew that, at the time Windows left their control, the Windows contained the defect described herein resulting in water intrusion and wood rot.  At the time of sale, the Windows contained design and construction defects. The defects reduced the effectiveness and performance of the Windows and rendered the Windows unable to perform the ordinary purposes for which it was used as well as cause the resulting damage described herein.

155.    Once these defects became known, consumers (such as Plaintiffs) were entitled to disclosure of that fact because: (a) a significant risk of water leakage would be a material fact in the consumer's decision-making process; and (b) without Defendants' disclosure, consumers would not know that there is any risk of water leakage.

156.    Defendants' misrepresentations of the quality of the Windows violated the ICFA.

157.    Further, Defendants also engaged in an unfair act or practice in violation of the ICFA when it failed to provide an express warranty to all owners of home with its defective Windows.

158.    Despite the plain language of Defendants' express warranty which extends to the initial homeowner, by denying warranty claims by asserting that the express warranty does not cover the damages between the parties, Defendants have committed an unfair act or practice.

159.    As a direct and proximate cause of the violation of the ICFA, described above, Plaintiffs and members of the Class have been injured, in that they have purchased homes or other structures with the defective Windows based on nondisclosure of material facts alleged above. Had Plaintiffs and Class members known the defective nature of the Windows used on  their structures, they would not have purchased their structures, or would have paid a lower price  for

their structures

160.    Defendants used unfair methods of competition and unfair and/or deceptive acts or  practices in conducting their businesses. This conduct constitutes fraud within meaning of the CFA. This unlawful conduct is continuing, with no indication that Defendants will cease.

161.    As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiffs and the other members of the Class will suffer damages, which include, without limitation, costs to inspect, repair or replace their Windows and other property, in an amount to be determined at trial.

162.    As a result of the acts of consumer fraud described above, Plaintiffs and the Class have suffered ascertainable loss in the form of actual damages that include the purchase price of the products for which Defendants are liable to the Plaintiffs and the Class for treble their ascertainable  losses, plus attorneys' fees and costs, along with equitable relief prayed for herein in this  Complaint.

**COUNT IV**
**(FRAUDULENT CONCEALMENT)**

163.    Plaintiffs on behalf of themselves and all others similarly situated, adopt and  incorporate by reference the  allegations set forth in paragraphs 1 through 162 above as though fully set forth herein as paragraph 163.

164.    Defendants knew or should have known that the Windows were defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the  advertisements, marketing materials and warranties disseminated by Windsor nor the  reasonable  expectations of ordinary consumers.

165.    Defendants fraudulently concealed from and/or intentionally failed to disclose to  Plaintiffs and the Class that the Windows are defective.

27

166.    Defendants  had exclusive knowledge of the defective nature of the Windows at the time of sale. The defect is latent and not something that Plaintiffs or Class members, in the exercise of  reasonable diligence, could have discovered independently prior to purchase, because it is not feasible.

167.    Defendants had the capacity to, and did, deceive Plaintiffs and Class members into believing that they were purchasing Windows free from defects.

168.    Defendants undertook active and ongoing steps to conceal the defect. Plaintiffs are aware of nothing in their advertising, publicity or marketing materials that disclosed the truth  about the defect, despite their awareness of the problem.

169.    The facts concealed and/or not disclosed by Windsor to Plaintiffs and the Class members are material facts in that a reasonable person would have considered them important in  deciding whether to purchase (or to pay the same price for) the Windows from their builders.

170.    Defendants intentionally concealed and/or failed to disclose material factors for the  purpose of inducing Plaintiffs and the Class to act thereon.

171.    Plaintiffs and the Class justifiably acted or relied upon the concealed and/or non- disclosed facts to their detriment, as evidenced by their purchase of the Windows.

172.    Plaintiffs and Class members suffered a loss of money in an amount to be proven  at trial as a result of Defendants' fraudulent concealment and nondisclosure because: (a) they would not have purchased the Windows on the same terms if the true facts concerning the defective Windows had been known; (b) they paid a price premium due to they would be free from defects; and (c) the Windows did not perform as promised. Plaintiffs also would have initiated  this suit earlier had the defect been disclosed to them.

173.    By reason of the foregoing, Plaintiffs and the Class members suffered, and continue to suffer, financial damage and injury.

## COUNT V
## (UNJUST ENRICHMENT)

174.    Plaintiffs on behalf of themselves and all others similarly situated, adopt and incorporate by reference the allegations set forth in paragraphs 1 through 173 as though fully set forth herein as paragraph 174.

175.    Plaintiffs and Class members conferred a benefit on Defendants when they purchased the Windows.

176.    Defendants have been unjustly enriched in retaining the revenues derived from Class members' purchases of the Windows, the retention of which under these circumstances is unjust and inequitable because the Windows were defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Defendants nor the reasonable expectations of ordinary consumers and caused the Plaintiffs and Class Members to lose money as a result thereof.

177.    Plaintiffs and Class members suffered a loss of money as a result of Defendants' unjust enrichment because: (a) they would not have purchased the Windows on the same terms if the true facts concerning the defective Windows had been known; (b) they paid a price premium due to the fact the Windows would be free from defects; and (c) the Windows did not perform as promised.

178.    Because their retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

29

179.    Plaintiffs and the Class members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct.

## COUNT VI
## (DECLARATORY RELIEF 28 U.S.C. § 2201)

180.    Plaintiffs on behalf of themselves and all others similarly situated, adopt and incorporate by reference allegations set forth in paragraphs 1 through 179 as though fully set forth herein as paragraph 180.

181.    Defendants have acted or refused to act on grounds that apply generally to the Declaratory Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).  Plaintiffs seeks a ruling that:

> a.  the Windows have a defect which results in a premature failure and premature rotting of wood component of the sash.  The rotting of the wood component may not be detectable until after the warranty has expired. The Court finds that this defect is material and requires disclosure for all of these windows;
>
> b.  the Windows have a defect in workmanship and material that allows water to penetrate behind the aluminum clad sash component of the window resulting in premature rotting of the wood component, which rot may progress to adjacent wood components, and that the rotting of the wood component may not be detectable until after the existing warranty provided has expired.  The Court declares that all persons who own structures containing Windows are to be provided the best practicable notice of the defect, which cost shall be borne by Defendants;
>
> c.  certain provisions of Defendants' warranty are void as unconscionable;
>
> d.  the 10-year limitation on the warranty is removed;
>
> e.  the limitation of the warranty to the date of manufacture, rather than the date of installation, is removed;
>
> f.  Defendants shall re-audit and re-assess all prior warranty claims, including claims previously denied in whole or in part, where the denial was

based on warranty or on other grounds, of claims related to wood rot, and pay the full cost of repairs and damages; and

g.  Defendants will establish an inspection program and protocol, under Court supervision, to be communicated to Class members, which will require inspection, upon request, o f a Class member's structure to determine whether wood rot is manifest. Any disputes over coverage shall be adjudicated by a Special Master appointed by the Court and/or agreed to be the parties.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray

for a judgment against Defendants as follows:

a.  For an order certifying the Classes, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiffs as representative of the Classes, and appointing the law firms representing Plaintiffs as Class Counsel;

b.  For compensatory damages sustained by Plaintiffs and the Damages Class;

c.  For equitable and/or injunctive relief for the Declaratory Relief Class;

d.  For payment of costs of suit herein incurred;

e.  For both pre-judgment and post-judgment interest on any amounts awarded;

f.  For punitive damages;

g.  For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

h.  For such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs on behalf of themselves and on behalf of the Class members, hereby demand a

trial by jury as to all issues so triable.

_____/s/ Edward Eshoo, Jr._____

Edward Eshoo, Jr.

Michael W. Duffy

Christina M. Philips

31

Childress Duffy, Ltd.
500 North Dearborn Street, Suite 1200
Chicago, Illinois 60654
eeshoo@childresslawyers.com
mduffy@childresslawyers.com
cphillips@childresslawyers.com

Panagiotis "Pete" V. Albanis, Esq.
Morgan & Morgan – Complex Litigation Group
12800 University Drive Suite 600
Fort Myers, FL 33907
239-432-6605 – tel
239-433-6836 – fax
palbanis@forthepeople.com

Frank M. Petosa, Esq.
Morgan & Morgan – Complex
Litigation Group
600 North Pine Island Road
Suite 400
Plantation, FL 33324
954-318-0268 - tel
954-333-3515 - fax
fpetosa@forthepeople.com

Jonathan Shub
Jshub@kohnswift.com
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107-3304

32

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the aforementioned document, First Amended Complaint, was served on December 9, 2015 in accordance with the General Order on Electronic Case Filing (ECF) pursuant to the District Court's system as the ECF filers:

Matthew S. Ryan
Theodore T. Poulos
Cotsirilos, Tighe, Streicker, Poulos & Campbell, Ltd.
33 North Dearborn Street
Suite 600
Chicago, IL 60602
mryan@cotsiriloslaw.com
tpoulos@cotsiriloslaw.com

Michael P. North
Sarah E. Bushnell
Arthur, Chapman, Kettering, Smetak & Pikala, P.A.
500 Young Quinlan Building
81 South Ninth Street
Minneapolis, MN 55402-3214
mnorth@ArthurChapman.com
sebushnell@ArthurChapman.com

Respectfully submitted,

/s/ Edward Eshoo, Jr.
_____

Edward Eshoo, Jr.
Michael W. Duffy
Christina M. Philips
Childress Duffy, Ltd.
500 North Dearborn Street, Suite 1200
Chicago, Illinois 60654

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

THOMAS DAVIA and JEANNE DAVIA,  )
on behalf of themselves and all others  )
similarly situated,  )
  )   Case No. _____
         Plaintiffs,  )
  )
         v.  )
  )
WINDSOR WINDOW COMPANY d/b/a  )   JURY TRIAL DEMANDED
WINDSOR WINDOWS AND DOORS,  )
and WOODGRAIN MILLWORK, INC.,  )
  )
         Defendants.  )
_____  )

## CLASS ACTION COMPLAINT

Plaintiffs, Thomas Davia and Jeanne Davia (collectively, the "Davias" or "Plaintiffs"), by and through their undersigned counsel, individually and on behalf of all other persons and entities similarly situated, allege against Defendants, Windsor Window Company d/b/a Windsor Windows and Doors ("Windsor") and Woodgrain Millwork, Inc. ("Woodgrain") (collectively, "Defendants") the following facts and claims upon knowledge as to matters relating to themselves and upon information and belief as to all other matters and, by way of this class action Complaint, aver as follows:

## INTRODUCTION

1.     This is a proposed class action brought by Plaintiffs, individually and on behalf of the below-defined Classes against Defendants, to obtain damages and injunctive relief arising from and relating to their purchase and installation of defective wood and wood clad windows

("Window" or "Windows") designed, manufactured, advertised, distributed and sold by Defendants.

    2.    This class action arises out of Defendants' attempt to design, manufacture, advertise and sell Windows that have a propensity to leak, prematurely degrade, and otherwise fail. Defendants' Windows fail to comply with relevant and applicable building codes and standards, and they have breached their express and implied warranties with respect to these products.

    3.    Unknown to Plaintiffs and the Class, the Windows contain a latent defect that allows water to penetrate and leak behind the aluminum cladding, resulting in premature wood rot and other physical damage to both the Windows and main structure.

    4.    Defendants' negligent and fraudulent behavior with respect to their design, manufacture, warrant, sale and delivery of these defective Windows has caused Plaintiffs and the other Class members (defined below) to suffer direct financial harm. Defendants' failure to comply with the plain warranties of the Windows renders them markedly less valuable because of their propensity to leak, rot, cause premature degradation and otherwise fail, thus causing severe damage to the Windows and other property in the Plaintiffs' and Class members' homes, residences, and buildings. Plaintiffs would have paid significantly less for the Windows, or not purchased them at all, had they known the material facts that the products contained the above described defects and caused severe damage to other property.

## PARTIES

    5.    Plaintiffs are citizens and residents of Wisconsin. The Davias own a home in Green Lake, Green Lake County, Wisconsin, in which Defendants' Windows are installed.

2

6.      Defendant Windsor was and is a company organized and existing under the laws of the State of Idaho, with a principal place of business in the State of Iowa. At all times relevant herein, Windsor transacted and conducted business in Wisconsin.

7.      Defendant Woodgrain was and is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business in the State of Idaho.

8.      At all times relevant herein, Woodgrain was the parent company of Windsor, and jointly transacted and conducted business in Wisconsin.

9.      Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the Windows at issue.

10.     At all times relevant herein, the Defendants were actual and/or *de facto* joint ventures in the design, development, manufacture, marketing, and sales of the Windows at issue.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that: (i) there is complete diversity, as Plaintiffs are citizens of Wisconsin and Defendants are domiciled, incorporated, and headquartered in Idaho, Iowa, and Oregon; (ii) the amount in controversy exceeds $5,000,000.00 (Five Million Dollars), exclusive of interest and costs; and (iii) there are 100 or more members of the proposed Class.

12.     Venue lies in this District pursuant to 28 U.S.C. § 1391 because Plaintiffs reside in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Additionally, at all times relevant herein, Defendants conducted and/or transacted business in this Judicial District and, therefore, are subject to personal jurisdiction in this District and reside here for venue purposes.

3

## COMMON FACTUAL ALLEGATIONS

13.    This case concerns Defendants' failure to disclose to purchasers of their Windows, the builders of the purchasers' structures, and owners of the Windows, that the Windows were defective in material and workmanship as a result of the design and manufacturing practices of Defendants. As a result of the defect, there is a high probability the Windows will fail, and likely already have developed wood rot in the Window sashes. The wood rot will progress to the frames and adjoining structure unless repaired and replaced before the rot progresses to those components. The defect is the product of Defendants' design and manufacturing process: (a) the resulting wood rot is masked by the aluminum cladding of the Windows; (b) the wood rot is incipient and takes an extended period to advance to the stage in which it becomes visible upon ordinary inspection; and (c) because of its incipient nature and masking by the exterior cladding, the wood rot will likely not exhibit itself until it is so advanced as to become apparent upon ordinary inspection, but not until after Defendants' limited warranty period has expired.

14.    Defendants hold themselves out to both the construction industry and the public at large as being providers of superior, quality, and durable products, including the Windows that are the subject of this litigation.

15.    At all times relevant herein, Defendants were engaged in the marketing, sale, supply and delivery of windows in the State of Wisconsin and elsewhere in the United States.

16.    Unknown to Plaintiffs and Class members, the Windows are defective and fail to perform at Plaintiffs' residence and at Class members' residences by permitting water intrusion through unsealed or inadequately sealed areas of the Windows' frames and sashes, and into the interior of the residences.

17.     The Windows are also defective and fail to perform at Plaintiffs' residence and at Class members' residences by permitting water to penetrate the Window components, wherein it is absorbed by wood members, and causes rot, premature degradation, leaking, and failure of the wood. This routinely occurs well in advance of the expected useful lives of the Windows.

18.     Degradation of the wood components permits additional water infiltration into the home in an accelerated cycle.

19.     The water intrusion and above-described damage resulting from the defective Windows constitutes "occurrences" resulting in "property damage" to property other than Defendants' "product" as those terms are commonly defined and used in the typical commercial general liability insurance policy.

20.     The above-described defects are due to fundamental design, engineering, and manufacturing errors, which should have been within Defendants' expertise.

21.     Because the Windows rot, prematurely degrade, otherwise fail, and permit water intrusion, they violate the building codes and industry standards, and amount to a breach of the Windows' warranties.

22.     The above-described deficiencies exist at the time the Windows leave the factory.

23.     Failure of the Windows begins upon installation and continues during repeated and prolonged exposure to weather and ordinary use.

24.     Because of their expertise in window design and manufacturing, Defendants knew or should have known that the defects were present at the time the products left their control.

25.     Defendants knew or should have known the potential for leakage, rot, premature degradation, and failure of their windows, but failed to adequately correct the defective design or formulation that resulted in said damage.

26.    Defendants knew or should have known the potential for leakage, rot, premature degradation, and failure of their Windows, but failed to adequately correct the defective manufacture that resulted in said damage.

27.    Defendants failed to warn purchasers, installers or users of the above-described risks of failures. This omitted information is material to the purchasing decision.

28.    The purchase of Defendants' Windows is covered by a written express warranty, which forms part of the basis of the bargain between Defendants and the purchaser.

29.    The Windows' written express warranty also forms part of the basis of the bargain between the seller of the home and home buyers, including Plaintiffs and Class members.

30.    The typical purchase agreement for the sale and/or construction of Class members' homes likely contains one or more provisions transferring or assigning manufacturers' and suppliers' warranties to them at the time of purchase or conveyance.

31.    The transfer or assignment of the manufacturers' and suppliers' warranties, which would include the Window warranties, forms part of the basis of the bargain at the time Plaintiffs and Class members purchased their homes.

32.    Even where a manufacturer or supplier warranty transfer provision is not present, the average homeowner expects, at the time of purchase, his or her home comes with such warranties, including a window warranty against defects.

33.    Defendants also expressly and implicitly represent in documents available to the public that their warranty is part of the product being sold, and that the written warranties apply to the owners of the homes containing the Windows.

6

34.    Defendants represent in their express warranty and documents available to the public that the Windows will be free from defective materials and workmanship for at least 10 years.

35.    Plaintiffs and putative Class members relied upon these representation when they purchased the Windows and/or structures containing the Windows.

36.    Plaintiffs and putative Class members reasonably expected and expect that the Windows would actually last longer than ten (10) years.

37.    Defendants' representations, expressly and impliedly, through their website, brochures and marketing materials, that the Windows are suitable and free from defects, were intended to, and likely did, affect the market by inducing builders, contractors, suppliers and others to purchase the Windows.

38.    Upon information and belief, Defendants were put on notice of defects and resultant damage in the Windows by homeowners across the country.

39.    Defendants' shipping of the Windows with actual or constructive knowledge of the defects, or with negligent or reckless disregard of the presence of defects, constituted a breach of their express warranty, and makes the limitations of the express warranty unconscionable in all respects, and, therefore, void *ab initio*.

40.    The published written warranties include the following limitations and exclusions:

   a)    The warranty is ambiguous with regard to coverage of the Windows' wood components;

   b)    The warranty limits coverage of wood warping;

   c)    The warranty purports to exclude damages caused by design limitations and design defects;

   d)    The warranty excludes the cost of labor for removal, repair or replacement of defective parts, products or glass;

e)      The warranty excludes the cost of repainting or refinishing associated with the repair or replacement of defective parts or products;

f)      The warranty requires that the homeowner be able to identify a "defect" in the Windows;

g)      The warranty places unreasonable time limitations on notifying Defendants of defects, including Defendants' unilateral determination of when the homeowner should have "reasonably" discovered a defect;

h)      The warranty shortens the warranty period by beginning from the date of manufacture, regardless of when the Window is purchased, installed and put into use and operation;

i)      The warranty gives Defendants the final determination of whether or not a defect exists;

j)      The warranty potentially requires payment of a field service fee for inspecting the Windows;

k)      The warranty requires the homeowner to produce information that may not be accessible or otherwise readily understandable, including IGU and/or glass codes;

l)      The warranty purports to limit Defendants' responsibility by providing a remedy of repair, replacement, or refund a portion of the original purchase price, solely at Defendants' option;

m)     The warrant purports to exclude any liability for consequential, incidental, or punitive damages;

n)      The warranty purports to exclude any liability in excess of the original purchase price of the product;

o)      The warranty limits repair and replacement parts and products to the remainder of the original warranty period;

p)      The warranty purports to disclaim all warranties, expressed or implied, including implied warranties of merchantability or fitness for a particular purpose;

q)      The warranty purports to disclaim performance ratings identified by the AAMA and NFRC ratings affixed to the Windows by the Defendants;

r)      The warranty purports to disclaim future performance of the Windows;

s)      The warranty purports to disclaim any obligation to comply with building standards, including applicable building codes;

t)      The warranty purports to allow Defendants to inconsistently apply the warranty at their own discretion;

u)      The warranty's 10-year limitation is in and of itself unconscionable; and

v)      In all other ways revealed during discovery, and/or otherwise determined at trial.

41.    The warranty is not a negotiated contract and is so one-sided that no reasonable person would ever knowingly agree to its terms if properly disclosed.

42.    Further, upon information and belief, Defendants have engaged in a pattern and practice of failing to honor or discouraging warranty claims by failing to respond to homeowners, requiring the owner to pay for an inspection of the Windows, and/or requiring the homeowner to pay for all costs associated with repair or replacement of the Windows, including the labor for such repair or replacement.

43.    The above described pattern and practice by Defendants has the effect of discouraging defect claims by Class members or continuing to pursue remedies through Defendants.

44.    Moreover, during contact with Class members, Defendants conceal their knowledge of the defects in the Windows in the Class members' residences.

45.    As Defendants have known or should have known of their Windows' defects and have failed to timely honor their warranty, the warranty has failed its essential purpose and the limitations therein are null and void, and Plaintiffs and Class members have otherwise not received the value for which they, their builders, or their contractors bargained for at the time the Windows were purchased or transferred to homeowners.

9

46.     The defects in Defendants' Windows also make the Windows unfit for their intended use.

47.     Given the leaking, rotting, premature degradation and failure of the Windows, the Windows have a reduced life expectancy and require unexpected maintenance, repair, and replacement by Plaintiffs and Class members.

48.     The Windows' defects and resultant damages have caused a diminution in the value of the homes.

49.     Defendants knew or should have known that the Windows did not and do not satisfy industry standards.

50.     Defendants knew or should have known that their Windows: (a) were defective in design and manufacture; (b) not fit for their ordinary and intended use; (c) not merchantable; and (d) failed to perform in accordance with the advertisements, brochures, representations, marketing materials, and warranties disseminated by Defendants.

51.     Defendants' Windows failed to conform to the reasonable expectations of ordinary consumers such as Plaintiffs and Class members.

52.     Because the Windows leak, and allow for increased water absorption, water penetration, rot, degradation, cause reduced life expectancy, and otherwise fail, the Windows are neither durable no suitable for use as an exterior building product.

53.     The above-described defective conditions of the Windows and resultant damages are present in Plaintiffs' home and are common among Class members.

54.     Plaintiffs and Class members have been proximately harmed by the Windows' above-described defective condition(s) and Defendants' above-described conduct.

**PLAINTIFFS' EXPERIENCE**

55.     The Davias built a new home in approximately March of 2013, at which time Defendants' Windows were installed on their home.

56.     The home is located at 407 White Oaks Court, Green Lake, Green Lake County, Wisconsin.

57.     In purchasing Defendants' Windows over all other brands of windows, the Davias and their builder relied on the representations made by Defendants and Defendants' representatives that the Windows were high quality and free from defects.

58.     Unknown to the Davias, the Windows were defective in that they allowed water to penetrate the area behind the aluminum cladding, which caused condensation, wood rot, leaks and other failures as described.

59.     The characteristics of the Window defect (that allowed for water to penetrate the cladding and failed to protect the wood from rot) were present in the Windows when they left the factory, and were part of the Window by design and manufacture.

60.     The Davias have wood rot and other damage to the Windows.

61.     In or about December 2013, the Davias first noticed moisture in the Windows. The Windows gradually began to exhibit worsening signs of moisture and wood rot.

62.     In the summer of 2014, the Davias notified Windsor to make a warranty claim. A representative from Windsor, Michael Perrin ("Mr. Perrin"), inspected the Davias' home during the summer of 2014. Mr. Perrin inspected the Windows and removed and replaced the trim and rusted nails. Upon leaving, Mr. Perrin assured the Davias that Windsor would rectify the problem with the Windows.

63.    To date, the Davias have not received a response from Windsor regarding the Windows and Windsor has failed to rectify the problem, despite the Davias reaching out to Windsor repeatedly.

64.    The Davias continue to experience excessive condensation and moisture on their Windows.

65.    The defective Windows allowed water to intrude into the Davias' home, resulting in property damage to their home including, but not limited to, damage to surrounding walls, floors and ceiling, and also damage to other personal property.

66.    Further, Mr. Perrin's actions have caused additional leaking and related problems.

67.    Defendants knew of the defect in the Windows in 2013 because of similar warranty claims and complaints from customers throughout the country, but wrongfully concealed the information about the defect from the Davias.

## CLASS ALLEGATIONS

68.    Plaintiffs bring this action individually and as representatives of all those similarly situated pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4) are met with respect to the Classes (collectively, "Class" or "Classes") defined below:

> INJUNCTIVE RELIEF CLASS:
> All persons and entities who are current or former owners of a structure on which Defendants' wood or wood clad windows are installed.
>
> (ALTERNATIVE) INJUNCTIVE RELIEF CLASS:
> All persons and entities in the State of Wisconsin who are current or former owners of a structure on which Defendants' wood or wood clad windows are installed.

DAMAGES CLASS:

All persons and entities who are current or former owners of a structure in which Defendants' wood or wood clad windows are installed and whose windows have exhibited wood rot.

(ALTERNATIVE) DAMAGES CLASS:

All persons and entities in the State of Wisconsin who are current or former owners of a structure on which Defendants' wood or wood clad windows are installed and whose windows have exhibited wood rot.

These Classes excludes:

    a)  any Judge or Magistrate presiding over this action and members of their families;

    b)  any employees of Defendants;

    c)  any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants and their legal representatives, assigns, and successors;

    d)  any person who has released Defendants or is currently in litigation with Windsor related to Windsor's wood or wood clad windows; and

    e)  all persons who properly execute and file a timely request for exclusion from the Class.

Plaintiffs propose that the Class be divided into subclasses if and as necessary to align Class interests.

69.   *Numerosity*: The Classes are composed of 1,000 or more persons geographically dispersed throughout the State of Wisconsin, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Classes are ascertainable and identifiable from Defendants' records or identifying marks on the Windows.

70.   *Commonality*: The critical question of law and fact common to the Classes that will materially advance the litigation is whether the Windows are inherently defective, contrary to the expectations imparted by Defendants through their warranties, representations and omissions.

71.    Furthermore, other questions of law and fact common to the Classes that exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes include the following:

a)    Whether the Windows are defective;

b)    Whether the Windows have not performed or will not perform in accordance with: (i) the reasonable expectations of ordinary consumers; and (ii) industry expectations of a 30-year useful life;

c)    Whether Defendants were negligent in their design and manufacture of the Windows;

d)    Whether (and when) Defendants knew or should have known about the defective condition of the Windows;

e)    Whether (and when) Defendants concealed from consumers and/or failed to disclose to consumers the defect;

f)    Whether Defendants concealed and/or failed to disclose the defective condition of the Windows to consumers;

g)    Whether Defendants breached their express warranty that the Windows were free of defects in material and workmanship when sold when, in fact, Defendants knew or should have known they were defective by allowing water to penetrate behind the cladding and expose the interior wood components to moisture for prolonged periods without draining, evaporation or adequate preservation to prevent wood rot;

h)    Whether Defendants breached implied warranties of merchantability by designing, manufacturing and selling the Windows when those Windows would not pass without objection in the trade; were not fit for the ordinary purpose of exterior windows; and did not conform with the promises and affirmations of fact Defendants made concerning the Windows;

i)    Whether Defendants' limited warranty contained limitations, exclusions, and disclaimers such as to cause it to fail of its essential purpose;

j)    Whether Defendants' warranty as drafted and implemented to exculpate Defendants from liability for Windows they knew or should have known were defective when designed, manufactured, and sold;

14

k)   Whether Plaintiffs and Class members are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended by members of the Class for replacement of Windows and/or installation costs; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Windows as warranted and the Windows containing the defect; and (iii) the diminution of resale value of the structures containing the Windows resulting from the defect;

l)   Whether Plaintiffs and the Class members are entitled to replacement of their defective Windows with non-defective windows;

m)  Whether Plaintiffs and the Class members are entitled to restitution and/or disgorgement;

n)   Whether Defendants falsely advertised and marketed its products to consumers;

o)   Whether the Windows conform to the applicable Wisconsin building codes and/or applicable industry standards;

p)   Whether the Windows damage other property within Plaintiffs' and Class members' homes;

q)   Whether Defendants concealed the defective nature of the Windows;

r)   Whether Defendants' limited warranty is unconscionable;

s)   Whether Defendants' limited warranty adequately disclaimed its liability;

t)   Whether Plaintiffs are entitled to prejudgment interest, attorneys' fees, and costs from Defendants; and

u)   Whether Defendants' conduct was negligent, reckless, willful, wanton, intentional, fraudulent or the like, entitling Plaintiffs (and Class members) to statutory or punitive damages from Defendants.

72.   *Typicality*: Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective Windows and Defendants' conduct in concealing the defects in the Windows to owners, contractors, developers, and suppliers.

73. *Adequate Representation*: Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class given that Plaintiffs are members of the Class they also seek to represent. Plaintiffs have retained counsel experienced and competent in construction litigation, product liability, complex litigation and consumer class actions.

74. *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class members be required to bring separate actions, this Court and/or courts throughout Wisconsin would be confronted with a multiplicity of lawsuits burdening the court system, while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

75. Moreover, Plaintiffs envision no unusual difficulty in the management of this action as a class action and the amount of money at stake for each Class member is not sufficient for each member to hire his or her own counsel and experts and to bring their own action.

## ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

76. Plaintiffs and Class members are within the applicable statute of limitations for the claims presented hereunder because Plaintiffs and Class members did not discover the defect, and could not reasonably have discovered the defect.

77.    Due to the concealed location of rot and other primary leak points, Plaintiffs are often unaware of the wood rot, degradation, and other failures until the end or expiration of Defendants' warranty period.

78.    Further, Defendants are aware of the defects because of the numerous warranty claims and complaints alleging similar defects and asserted against them throughout the United States.

79.    Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts of concealment, which include Defendants' concealment from Plaintiffs, Class members, and the general public that their Windows were (and are) defective, while continually marketing the Windows as a durable and suitable product.

80.    Defendants had a duty to disclose that their Windows were (and are) defective, unreliable, and inherently flawed in design and/or manufacture.

81.    Plaintiffs and Class members had no knowledge of, and no reasonable way of discovering, the latent defects found in Defendants' Windows at the time they purchased the product or their homes, residences, buildings, and other structures.

82.    Defendants did not notify, inform, or disclose to Plaintiffs and Class members that there were defects in the Windows.

83.    Because Defendants failed in their duty to notify Plaintiffs and Class members that their product was (and is) defective, the statute of limitations should be tolled on Plaintiffs' and Class members' claims.

## ESTOPPEL FROM PLEADING WARRANTY LIMITATIONS AND DISCLAIMERS

84.    Defendants are also estopped from relying on any warranty limitation or disclaimer as a defense to Plaintiffs' and Class members' claims.

85.     By virtue of Defendants' acts, the Windows installed in Plaintiffs' and Class members' residences have not lived up to Defendants' warranties and representations, and given the defective condition of the Windows and the premature deterioration of the Windows that requires unexpected maintenance, wear and/or replacement, the Windows have not proven to be of the value bargained for and/or of that compared to other windows.

86.     Defendants knew or should have known that their Windows were defective in design and/or manufacture, and that said Windows were not fit for their ordinary and intended use, were not merchantable, and failed to perform in accordance with the advertisements, marketing materials and warranties disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiffs and Class members.

87.     Accordingly, any warranty provided by Defendants fails its essential purpose because it purports to warrant that the Windows will be free from defects for a prescribed period of time when, in fact, said Windows fall far short of the applicable warranty period.

88.     Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available under Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

89.     As a result, any time limitations, exclusions, or disclaimers which restrict the remedies encompassed within Defendants' warranties are unconscionable and unenforceable, and, therefore, Defendants are estopped from relying on the same.

## COUNT I
## NEGLIGENCE/GROSS NEGLIGENCE

90.     Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

91.     At all times material hereto, Defendants designed and manufactured the Windows.

92.     Defendants had a duty to Plaintiffs and Class members to design and manufacture Windows that were free of latent defects that would cause the Windows to leak, rot, prematurely degrade, and otherwise fail.

93.     Defendants had a duty to Plaintiffs and Class members to test the Windows to ensure adequate performance of the Windows for a reasonable period of use.

94.     Defendants had a duty to Plaintiffs and Class members to ensure that the Windows' components were suitable as an exterior product, either by testing or by verifying third-party test results.

95.     Defendants had a duty to Plaintiffs and Class members to ensure their Windows complied with industry standards and all applicable building codes throughout Wisconsin.

96.     Defendants had a duty to Plaintiffs and Class members to forewarn purchasers, installers, and users regarding the known risk of product failures or the existence of a material defect.

97.     Defendants failed to exercise ordinary and reasonable care in the design and manufacture of the Windows and in determining whether the Windows that they sold, and continue to sell, contain a latent defect that would result in the failure of the Windows to perform as reasonably expected.

98.     Defendants failed to exercise ordinary and reasonable care in the design and manufacture of the Windows and breached the foregoing duties.

99.     Defendants breached their duty to Plaintiffs and Class members to test the Windows to ensure adequate performance of the Windows for a reasonable period of use.

100.    Defendants breached their duty to Plaintiffs and to Class members to ensure that the Window components were suitable, either by testing or by verifying third-party test results.

101.    Defendants breached their duty to Plaintiffs and to members of the Class to ensure that the Windows complied with industry standards and applicable building codes.

102.    Defendants breached their duty to Plaintiffs and to members of the Class to forewarn purchasers, installers, and users regarding the known risk of product failures.

103.    The negligence of Defendants, their agents, servants, and/or employees, include the foregoing, as well as the following acts and/or omissions:

a)    designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Windows without adequately and thoroughly testing them to all applicable standards and building codes;

b)    designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Windows without adequately testing their long term performance;

c)    negligently failing to ensure that the Windows conformed to all applicable standards and building codes; and

d)    concealing information concerning the defects inherent in the Windows from Plaintiffs and the Class members, while knowing that Defendants' Windows were defective and non-conforming with accepted industry standards and building codes.

104.    The Windows have been tested by experts in the field. Those experts found the aforementioned defects in the design and manufacturing of the Windows that permit water penetration in the Windows.

105.    Plaintiffs and the members of the Class have been damaged because the defective Windows do not perform their ordinary purpose of sealing Plaintiffs' home against the elements.

106.   Plaintiffs and Class have been damaged as a direct and proximate result of the negligence, carelessness, recklessness, willfulness, and wantonness of Defendants as above-described.

107.   Further, Plaintiffs and Class members have suffered damages to other property, including, but not limited to, the surrounding walls, floors, and ceilings and damage to other personal property.

108.   As Defendants' conduct was grossly negligent, reckless, willful, wanton, intentional, fraudulent, or the like, Plaintiffs and Class members are entitled to an award of punitive damages against Defendants.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY

109.   Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

110.   Defendants are designers, manufacturers, and suppliers of the Windows, and for a number of years, marketed, warranted, distributed, and/or sold the Windows in Wisconsin.

111.   Defendants entered into contractors with retailers, suppliers and/or contractors to sell their Windows that were to be installed at Plaintiffs' and the Class members' properties.

112.   Plaintiffs and the Class members are intended third party beneficiaries of those contracts because it was the clear and manifest intent of Defendants that the contracts were to primarily and directly benefit Plaintiffs and the Class members.

113.   Thus, Plaintiffs and Class members are in privity with Defendants.

114.   Defendants impliedly warranted to Plaintiffs, the Class members and/or their agents that the Windows were merchantable and reasonably fit for their ordinary purpose, and would not cause damages as set forth herein.

21

115.    Defendants breached the implied warranty of merchantability by selling their Windows that were defective and not fit for their ordinary purpose.

116.    Defendants' Windows were not of merchantable quality and not fit for intended use when they left the factory due to the defects in the Windows described herein.

117.    The Windows have been tested by experts in the field. Those experts found defects in the design and manufacturing of the Windows that permit water penetration in the Windows.

118.    The numerous and serious defects described herein make the Windows unfit and inappropriate for their intended use within structures.

119.    The Windows are also unfit for their particular purpose. Defendants manufactured and distributed their Windows in climates with multiple seasons and geographic locations. Defendants knew, or should have known, that its Windows would be subjected to varying temperatures and weather conditions, including rain cycles, throughout each year. Due to the defects and resultant leakage, rot, premature degradation, and other failures, the Windows are unfit for their particular purpose.

120.    Despite having knowledge of the Windows' defects, Defendants have failed to provide an adequate remedy.

121.    As a result, Defendants breached their implied warranties to Plaintiffs and Class members by producing, manufacturing, distributing and selling them a defective product that was unfit for its intended use and for a particular purpose.

122.    As a direct and proximate result of Defendants' breach of the implied warranty on the Windows, the Plaintiffs and Class members have suffered actual and consequential damages.

123.    Plaintiffs and Class members suffered and will continue to suffer losses as alleged herein, in an amount to be determined at trial.

## COUNT III
## BREACH OF EXPRESS WARRANTY

124.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

125.    After putting their Windows into the stream of commerce, Defendants expressly represented and warranted that the Windows were appropriate for their intended use and were free from defects and that they conformed to all applicable building codes and industry standards.

126.    Specifically Defendants provided that their Windows would "free from defects in materials and workmanship which significantly impair their operation and proper usage."

127.    Defendants entered into contracts with retailers, Plaintiffs, Class members, Plaintiffs' builders, Class members' builders, suppliers and/or contractors to sell Windows to be installed at Plaintiffs' and Class members' properties.

128.    Plaintiffs and Class members were intended third-party beneficiaries of the contract between Defendants and Plaintiffs' and Class members' respective builders.

129.    The representations and warranties made by Defendants in marketing and selling their Windows formed part of the basis of the bargain between Defendants and the purchasers of the Windows at the time of the sale.

130.    Purchase agreements for the construction or sale of residences or structures, including Plaintiffs' purchase agreement, contained provisions transferring or assigning the manufacturers' warranties, including window warranties. Such provisions are valid transfers and assignments, and the transferred and assigned warranties formed part of the basis of the bargain at the time the home was purchased.

131.    Defendants' warranty certifies that they will replace or repair components of their products found to be defective for at least ten years.

132.    Upon information and belief, all of Defendants' written warranties applicable to Class members contain the same or similar provisions.

133.    Through their written warranties, brochures, marketing materials, website, and other representations regarding the performance, durability, and quality of the Windows, Defendants created express warranties for the benefit of Plaintiffs and Class members.

134.    Thus, Defendants' express warranties and representations are applicable to the Windows installed in Plaintiffs' and Class members' residences and/or structures.

135.    Specifically, Defendants expressly warranted to Plaintiffs and Class members that the Windows purchased by Plaintiffs and Class members were free from defects in materials and workmanship that substantially impair their operation or performance and that they would last at least ten years.

136.    However, despite Defendants' assurances, as described in detail *supra*, the Windows contain the aforementioned defects and do not conform to all applicable building codes and industry standards and are not free from defects.

137.    The Windows have been tested by experts in the field. Those experts found the aforementioned defects in the design and manufacturing of the Windows that permit water penetration in the Windows.

138.    These aforementioned defects are present when the Windows leave Defendants' control.

139.    Defendants breached the express warranty by selling Windows that were defective and not reasonably fit for their ordinary and intended purpose and did not conform to Defendants' express representations and/or warranties. Further, contrary to Defendants' representations and warranties, the Windows were not free from design and material defects for at least ten years.

140.    By their conduct and defective products, Defendants have breached their express warranty with Plaintiffs and members of the Class.

141.    In addition, Defendants have breached their express warranties by not providing Plaintiffs and Class members with Windows which were free from defects and/or by suppressing warranty claims.

142.    Defendants' written warranties are also unconscionable and fail their essential purpose because they purport to warrant that the Windows will be free from manufacturer defects for at least ten years when, in fact, the Windows fall far short of the applicable warranty period. To the contrary, due to the leakage in the Windows, Defendants' Windows begin failing after only a few years' (or less) use.

143.    Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available in Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy. Further, the warranty is inadequate because by its 10-year limitation alone, Defendants seeks to reduce the reasonable expected life of the product.

144.    Plaintiffs and Class members contacted Defendants regarding their warranty claims and the issues with their Windows.

145.    Defendants refused Plaintiffs' and Class members' warranty claims and refused to repair or replace the Windows or damage caused by the defective Windows.

146.    Plaintiffs and Class members adequately met all pre-suit notice requirements for their warranty claims.

147.   Defendants have denied, failed to pay in full, and/or failed to respond to warranty Claims.

148.   Accordingly, the limitations on remedies and the exclusions in Defendants' warranties are unconscionable and unenforceable.

149.   As a result of Defendants' breaches of express warranties, Plaintiffs and Class members have suffered actual damages in that they purchased homes, residences, buildings, and other structures containing defective Windows that have failed or are failing prematurely due to leakage and increased moisture absorption problems. This failure has required or is requiring Plaintiffs and Class members to incur significant expenses in repairing or replacing their Windows. Replacement is required to prevent on-going and future damage to the underlying structures or interiors of Plaintiffs' and Class members' residences.

150.   Thus, as a direct and proximate result of Defendants' breach of the express warranty on the Windows, Plaintiffs and Class members have suffered actual and consequential damages.

**COUNT IV**
**VIOLATION OF WISCONSIN DECEPTIVE TRADE PRACTICES ACT,**
**WIS. STAT. § 100.18**

151.   Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

152.   The conduct described above and throughout this Complaint took place within the State of Wisconsin and constitutes unfair business practices in violation of the Wisconsin Deceptive Trade Practices Act, 100.18 (hereinafter "DTPA").

153.   The DTPA applies to the claims of Plaintiffs and all Wisconsin Class members because the conduct which constitutes violations of the DTPA by Defendants occurred within the State of Wisconsin.

154.    Wis. Stat. § 100.18(1) provides, in relevant part:

> No person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service or anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, . . . shall make, publish, disseminate, circulate, or place before the public, . . . in this state, . . . an advertisement, announcement, statement or representation of any kind to the public relating to such . . . sale . . . or such real estate, merchandise, securities, service or employment . . . , which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

155.    Defendants are a "corporation" under the meaning of the DTPA.

156.    Plaintiffs and Wisconsin Class members constitute the "public" under the meaning of the DTPA.

157.    Defendants' Windows constitute "merchandise" under the meaning of the DTPA.

158.    Defendants engaged in untrue, deceptive or misleading statements of fact in violation of the DTPA when, in selling and advertising the Windows, they knew that there were defects in the Windows which would result in water damage, ensuing other property damage, yet they continued to put their Windows in the stream of commerce.

159.    Defendants engaged in untrue, deceptive or misleading statement of aforementioned material facts with the intent that others, such as Plaintiffs, Plaintiffs' builder, Class members, Class members' builders, and/or the general public would rely upon the untrue, deceptive or misleading statements of material facts and purchase Defendants' Windows containing said design defect.

160.    Plaintiffs, Plaintiffs' builder, Class members, and Class members' builders would not have purchased the Windows had they known or become informed of the material defects in the Windows.

161.    Defendants' untrue, deceptive or misleading statements of material fact as alleged herein constitute fraudulent misrepresentations within the meaning of the DTPA.

162.    Defendants have violated the DTPA by fraudulently misrepresenting the quality of their Windows.

163.    Defendants either knew, or should have known, that the Windows were defectively designed and/or manufactured and would allow water intrusion, which would result in severe damages to the structures, such that the structures were not as represented to be as alleged herein.

164.    Upon information and belief, Defendants knew that, at the time the Windows left their control, the Windows contained the defect described herein resulting in water intrusion and wood rot. At the time of the sale, the Windows contained design and construction defects. The defects reduced the effectiveness and performance of the Windows and rendered the Windows unable to perform the ordinary purpose for which they are used, as well as caused the resulting damage described herein.

165.    Further, as detailed above, upon Plaintiffs' discovery of water intrusion and filing of a warranty claim, Defendants represented and assured Plaintiffs that the problem would be rectified. However, Defendants have failed to act to rectify the problem and/or honor their warranties and, instead, Plaintiffs continue to suffer from water intrusion as a result of the defects.

166.    As a direct and proximate cause of the violation of the DTPA, described above, Plaintiffs and members of the Class have been injured in that they have purchased homes or other structures with the defective Windows based on nondisclosure of material facts alleged above. Had

Plaintiffs and Class members known the defective nature of the Windows used on their structures, they would not have purchased their structures, or would have paid a lower price for their structures.

167.    Defendants engaged in untrue and deceptive methods of advertising and trade practices in conducting their businesses, which violates the DTPA. This unlawful conduct is continuing, with no indication that Defendants will cease.

168.    As a direct and proximate result of Defendants' unfair and deceptive methods of advertising and trade practices, Plaintiffs and other Class members will suffer damages, which include, without limitation, costs to inspect, repair or replace their Windows and other property, in an amount to be determined at trial.

169.    As a direct and proximate result of Defendants' violation of Wis. Stat. § 100.18, Plaintiffs and the Class members have suffered and continue to suffer damages. Plaintiffs and the Class members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

## COUNT V
## FRAUDULENT MISREPRESENTATION

170.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

171.    Defendants falsely and fraudulently represented to Plaintiffs, the Class members, and/or the consuming public in general that Defendants' Windows would be free from defects and fit for their customary and normal use.

172.    Defendants falsely represented to purchasers, consumers, and Window owners that the Windows were warranted against defects in material and workmanship when, in fact, the

limited warranty was so limited as to prevent and preclude any warranty protection against the known defect in the Windows.

173.    When said representations were made by Defendants, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

174.    These representations were made by Defendants with the intent of defrauding and deceiving Plaintiffs, Class members and/or the consuming public, all of which evinced reckless, willful, indifference to the safety and welfare of Plaintiffs and Class members.

175.    At the time the aforesaid representations were made by Defendants, Plaintiffs and the Class members were unaware of the falsity of said representations and reasonably believed them to be true.

176.    In reliance upon said representations, Defendants' Windows were installed and used on Plaintiffs' and Class members' properties, thereby causing Plaintiffs and the Class members to sustain damages and injury to their property and/or to be at an increased risk of sustaining damage and injury in the future.

177.    Defendants knew and were aware, or should have been aware, that their Windows were defective and not fit for their customary and normal use.

178.    Defendants knew, or should have known, that Defendants' Windows had a potential to, could, and would cause severe damage and injury to property owners.

179.    Defendants brought their Windows to the market and acted fraudulently, wantonly and maliciously, to the detriment of the Plaintiffs and the Class members.

180.    By reason of the foregoing, Plaintiffs and the Class members suffered, and continue to suffer, financial damage and injury.

## COUNT VI
## FRAUDULENT CONCEALMENT

181.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

182.    Defendants knew or should have known that the Windows were defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Defendants nor the reasonable expectations of ordinary consumers.

183.    Defendants fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that the Windows were (and are) defective.

184.    Defendants had exclusive knowledge of the defective nature of the Windows at the time of sale. The defect is latent and not something that Plaintiffs or Class members, in the exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible.

185.    Defendants had the capacity to, and did, deceive Plaintiffs and Class members into believing that they were purchasing Windows free from defects.

186.    Defendants undertook active and ongoing steps to conceal the defect. Plaintiffs are aware of nothing in Defendants' advertising, publicity or marketing materials that disclosed the truth about the defect, despite Defendants' awareness of the problem.

187.    The facts concealed and/or not disclosed by Defendants to Plaintiffs and the Class members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Windows from their builders.

188.    Defendants intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiffs and the Class to act thereon.

189.    Further, upon notification from Plaintiffs about water intrusion, Defendants failed to inform Plaintiffs of the defect and failed to rectify the problem despite assurances that they would do so.

190.    Plaintiffs and the Class justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchase of the Windows or propertie with the Windows.

191.    Plaintiffs and Class members suffered a loss of money in an amount to be proven at trial as a result of Defendants' fraudulent concealment and nondisclosure because: (a) they would not have purchased the Windows on the same terms if the true facts concerning the defective Windows had been known; (b) they paid a price premium due to the fact that they would be free from defects; and (c) the Windows did not perform as promised. Plaintiffs also would have initiated this suit earlier had the defect been disclosed to them

192.    By reason of the foregoing, Plaintiffs and Class members suffered, and continue to suffer, financial damage and injury.

## COUNT VII
## STRICT LIABILITY

193.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

194.    At all times relevant to this Complaint, Defendants were in the business of designing, manufacturing, marketing, distributing and/or selling Windows and had a statutory duty of care.

195.    Defendants breached this duty because their Windows are defectively designed and manufactured and are unreasonably dangerous in that they allow water to intrude into the interior

of residences or buildings, resulting in damage to the Windows and consequential damage to the structure into which the Windows are installed.

196.    Defendants breached their duty because their Windows are defectively designed and manufactured and are unreasonably dangerous in that they rot, degrade, and otherwise fail, thereby allowing air and water to intrude into the interior of the residence and cause damage to the Windows and consequential damage to the structure into which the Windows are installed.

197.    Were the defects known at the time of design and manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed and manufactured in that manner.

198.    Feasible alternatives existed to make the Windows safer for intended use at the time of design. Defendants were knowledgeable about the products and aware or should have been aware that feasible alternatives existed which would maintain the usefulness of the Windows and eliminate the harm.

199.    The Windows reached the Plaintiffs and Class members, and were intended to reach the Plaintiffs and Class members, without substantial change in the condition in which they were sold.

200.    The defect in the Windows was present when it left the Defendants' control.

201.    Defendants are strictly liable for having designed, manufactured, marketed, distributed, and sold the Windows, which were defective, to the Plaintiffs and Class members.

202.    As a direct, foreseeable, and proximate result of the sale of the defective Windows to Plaintiffs and Class members, the Plaintiffs and Class members have suffered significant physical damage to their properties, other contamination and deterioration, as well as diminution in the value of the properties.

## COUNT VIII
## UNJUST ENRICHMENT

203.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegation as through fully set forth herein. This count is plead in the alternative to Plaintiffs' contract-based claims.

204.    Plaintiffs and Class members conferred a benefit on Defendants when they purchased the Windows.

205.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the Windows, the retention of which under these circumstances, is unjust and inequitable because Defendants' Windows were (and are) defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Defendants nor the reasonable expectations of ordinary consumers and caused  Plaintiffs and Class members to lose money as a result thereof.

206.    Plaintiffs and Class members suffered a loss of money as a result of Defendants' unjust enrichment because: (a) they would not have purchased the Windows on the same terms if the true facts concerning the defective Windows had been known; (b) they paid a price premium due to the fact that the Windows would be free from defects; and (c) the Windows did not perform as promised.

207.    Because Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

208.    Plaintiffs and the Class members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by the Defendants from their deceptive, misleading, and unlawful conduct.

## COUNT IX
## DECLARATORY RELIEF 28 U.S.C. § 2201

209.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

210.    Defendants have acted or refused to act on grounds that apply generally to the Injunctive Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).

211.    Plaintiffs seek a ruling that:

a) the Windows have a defect which results in a premature failure and premature rotting of wood component of the sash. The rotting of the wood component may not be detectable until after the warranty provided by Defendants has expired. The Court finds that this defect is material and requires disclosure for all of these Windows;

b) the Windows have a defect in workmanship and material that allows water to penetrate behind the aluminum clad sash component of the window resulting in premature rotting of the wood component, which rot may progress to adjacent wood components, and that the rotting of the wood component may not be detectable until after the existing warranty provided by Defendants has expired. The Court declares that all persons who own structures containing Windows are to be provided the best practicable notice of the defect, which cost shall be borne by Defendants;

c) certain provisions of Defendants' warranty are void as unconscionable;

d) any limitation on the warranty is removed;

e) the limitation of the warranty to the date of manufacture, rather than the date of installation, is removed;

    f)   Defendants shall re-audit and reassess all prior warranty claims, including claims previously denied, in whole or in part, where the denial was based on warranty or on other grounds, of claims related to wood rot, and pay the full cost of repairs and damages; and

    g)   Defendants will establish an inspection program and protocol, under Court supervision, to be communicated to Class members, which will require Defendants to inspect, upon request, a Class member's structure to determine whether wood rot is manifest. Any disputes over coverage shall be adjudicated by a Special Master appointed by the Court and/or agreed to by the parties.

WHEREFORE, Plaintiffs, individually and on behalf of others similarly situated, pray for a judgment against Defendants as follows:

1.    For an Order certifying the Classes, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiffs as representatives of the Classes, and appointing the law firms representing Plaintiffs as counsel for the Classes;

2.    For compensatory damages sustained by Plaintiffs and the Damages Class;

3.    For equitable and/or injunctive relief for the Declaratory Relief Class;

4.    For payment of costs of suit herein incurred;

5.    For both pre-judgment and post-judgment interest on any amounts awarded;

6.    For punitive damages;

7.    For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

8.    For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs, individually and on behalf of the Class, hereby demand a trial by jury as to all issues so triable.

Dated: August 26, 2015

Respectfully submitted,

s/James C. Shah
James C. Shah (Bar No. 1083846)
**SHEPHERD, FINKELMAN, MILLER
    & SHAH, LLP**
735 N. Water Street
Suite 1222
Milwaukee, WI 53202
Phone:  (414) 226-9900
Email:  jshah@sfmslaw.com

Jonathan Shub
**Kohn Swift & Graf, P.C.**
One South Broad Street
Suite 2100
 Philadelphia, PA 19107
Phone:  (215) 238-1700
Email:  jshub@kohnswift.com

Daniel K. Bryson
Matthew E. Lee
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan Street
Raleigh, NC 27609
Phone: (919) 600-5000
Email: dan@wbmllp.com
            matt@wbmllp.com

*Attorneys for Plaintiff and Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**(MILWAUKEE DIVISION)**

| | |
|---|---|
| SHAWN S. GENGLER,<br>on behalf of themselves and all others<br>similarly situated,<br><br>                   Plaintiff,<br><br>       v.<br><br>WINDSOR WINDOW COMPANY d/b/a<br>WINDSOR WINDOWS AND DOORS,<br>and WOODGRAIN MILLWORK, INC.,<br><br>                Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. <u>   2:16-cv-00180       </u>

**CLASS ACTION COMPLAINT**
(Product Liability)

JURY TRIAL DEMANDED

Plaintiff, Shawn S. Gengler ("Gengler" or "Plaintiff"), by and through his undersigned counsel, individually and on behalf of all other persons and entities similarly situated, alleges against Defendants, Windsor Window Company d/b/a Windsor Windows and Doors ("Windsor") and Woodgrain Millwork, Inc. ("Woodgrain") (collectively, "Defendants") the following facts and claims upon knowledge as to matters relating to themselves and upon information and belief as to all other matters and, by way of this class action Complaint, aver as follows:

**<u>INTRODUCTION</u>**

1.      This is a proposed class action brought by Plaintiff, individually and on behalf of the below-defined Classes against Defendants, to obtain damages arising from and relating to their purchase and installation of defective wood clad windows ("Windows") designed, manufactured, advertised, sold, and distributed by Defendants.

2.      This class action arises out of Defendants' attempt to design, manufacture, advertise, sell, and distribute Windows that leak, deteriorate, degrade, and otherwise prematurely fail. Defendants' Windows fail to comply with the building codes in place at all times relevant, and industry standards such as AAMA, ASTM, WDMA, I.S.4, and others, and have also breached their express and implied warranties with respect to their Windows.

3.      At the time the Windows leave the manufacturing plant, they contain a defect—undetectable to consumers—that allows water to infiltrate and pass through the Windows' frame corners, glazing pocket, and aluminum cladding, leading to deterioration of the wood components of the window and water and air leakage into the interior of the home damaging the interior wall cavity, trim, drywall, framing components, and other property.   The wood preservative applied to the wood components of the Windows is also inadequate in its composition and application, further accelerating the rate of the deterioration.

4.      Plaintiff, Class Members, or their contractors would not have purchased or installed the Windows if they knew of such defects or that their Windows would prematurely fail.

5.      Defendants' actions related to designing, testing, manufacturing, selling, distributing, and warranting defective wood clad Windows has caused Plaintiff and the other Class Members to suffer property loss, financial harm, loss of use, and other damages.

6.      Defendants have repeatedly failed to comply with the terms of their warranties by denying or otherwise failing to remedy or repair defective Windows in Plaintiff's and Class Members homes.

2

7.     Defendants' failure to comply with the terms of the warranty have made the Windows less valuable, notwithstanding the loss of value resulting from the latent defects leading to premature product failure.

8.     Plaintiff, Class Members, and contractors would have paid significantly less for the Windows, or not purchased them at all, had they known Defendants would not have honored their warranty, or that the products contained defects which cause severe damage to other property.

<u>**PARTIES**</u>

9.     Plaintiff is a citizen and resident of the State of Wisconsin. The home where Defendants' Windows are installed is located at 26123 Muskego Dam Drive, Muskego, Waukesha County, Wisconsin.

10.    Defendant Windsor was and is a company organized and existing under the laws of the State of Idaho, with a principal place of business in the State of Iowa. At all times relevant herein, Windsor transacted and conducted business in Wisconsin.

11.    Defendant Woodgrain was and is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business in the State of Idaho.

12.    At all times relevant herein, Woodgrain was the parent company of Windsor, provided Window components and materials to Windsor, and jointly transacted and conducted business in Wisconsin.

13.    Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the Windows at issue.

14.    At all times relevant herein, the Defendants were actual and/or *de facto* joint ventures in the design, development, manufacture, marketing, and sales of the Windows at issue.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, as there is complete diversity of citizenship and corporate domicile; the amount in controversy exceeds $5,000,000.00, without interest and costs; and there are at least 100 members of the proposed Class.

16.     Venue is proper pursuant to 28 U.S.C. § 1391, as Plaintiff resides in this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. At all times relevant herein, Defendants conducted and/or transacted business in this district and, therefore, are subject to personal jurisdiction in this district and reside here for venue purposes.

## COMMON FACTUAL ALLEGATIONS

17.     This case arises from Defendants' defective design and manufacture of wood clad Pinnacle and Legend Series Windows, and their failure to disclose defects to purchasers and owners of the Windows, or to comply with the terms of the Windows' warranties.  These defects, which exist at the time the Windows leave Defendants' manufacturing facilities, have and will cause the Windows to fail prematurely.  Specifically, the defects allow  water to infiltrate and pass through the windows, causing deterioration and rot of the Windows' wood elements, which is further exacerbated by the fact that the wood preserve is inadequate in its composition and application.  The wood rot has and will progress to other wood components in the window and adjoining structure, as well as permit air and water leakage due to loss of structural integrity unless the Windows are repaired and replaced.  The leakage through window frame corners, at

4

the glazing pockets, and other areas has and will cause damage to areas adjacent to the Window, including the wall cavity, trim, framing, drywall, and other property in the home. Given that the defects are otherwise undetectable to consumers, the deterioration occurs over such a period of time that it does not become visible until it has advanced to irreparable damage, and is also masked by cladding and window components (i.e. back dam, meeting rail, trim, etc.). It is likely that, although the premature failure begins during the warranty period, the symptoms of the defects—i.e. wood deterioration—will not be detectible itself until after Defendants' warranty has expired.

18.    Although this class action concerns different types and/or models of the Windows, the defects in those Windows are substantially similar enough so that the Plaintiff may represent any other individual who purchased defective Windows.

19.    At all times relevant hereto, Defendants and their agents held themselves out to Plaintiff, Class Members, the construction industry, and the public at large as manufacturing superior, quality, and durable products, including the subject Windows.

20.    At all times relevant herein, Defendants were engaged in the marketing, sale, supply and delivery of windows in the State of Wisconsin and elsewhere in the United States.

21.    At all times relevant herein, including at the time the Windows were sold to Plaintiff and Class Members, the Windows are moveable goods as defined by the Uniform Commercial Code. The Windows are shipped as individual units by the manufacturer to the project, and later installed in the home. Windows are capable of being removed from the home after construction.

22.    Unknown to Plaintiff and Class Members, the Windows are defective and fail to perform at Plaintiff's residence and at Class Members' residences by permitting water intrusion

through unsealed or inadequately sealed areas of the Windows' frames and sashes, and into the interior of the residences.

23.     The Windows are defective and prematurely failing at Plaintiff's residence and at Class Members' residences by permitting water to penetrate the wood components of the Windows, wherein it is absorbed by wood members, and causes rot, premature degradation, leaking, and failure of the wood.   The wood preservative applied is defective in its composition and application, which fails to protect the wood components and accelerates the rate of deterioration.

24.     The defects in the Windows lead to failure well in advance of the expected useful lives of the Windows, under both the limited 10-year warranty period and industry standard of 20-25-years.

25.     Degradation of the wood components permits additional water and air infiltration into the home in an accelerated cycle.

26.     The water intrusion and above-described damage resulting from the defective Windows constitutes "occurrences" resulting in "property damage" to property other than Defendants' "product" as those terms are commonly defined and used in the typical commercial general liability insurance policy.

27.     The above-described defects are due to design, engineering, and manufacturing errors, all of which should have been within Defendants' expertise.

28.     Because the Windows prematurely fail and permit water and air intrusion, they violate the building codes, industry and testing standards, and amount to a breach of the Windows' warranties.

6

29.    The defects exist at the time the Windows leave Defendants' manufacturing facilities.

30.    Failure of the Windows begins upon installation and continues during repeated and prolonged exposure to weather.

31.    Because of their touted expertise in window design and manufacturing, Defendants knew or should have known that the defects were present at the time the products left their control.

32.    Defendants knew or should have known the Windows would prematurely fail, but did not adequately correct the defective design or manufacturing process which leads to damage in the homes in which the Windows are installed.

33.    Defendants failed to warn purchasers, installers or users of the above-described risks of failures, which would have been material and instrumental in the decision to purchase the Windows.

34.    The purchase of Defendants' Windows comes with a written express warranty, which forms part of the basis of the bargain between Defendants and the purchaser.

35.    The Windows' written express warranty also forms part of the basis of the bargain between the seller of the home and homebuyers, including Plaintiff and Class Members.

36.    As is typical and universal of purchase agreements for the sale and/or construction of homes, Class Members' purchase agreements for their homes likely contain one or more provisions transferring or assigning manufacturers' and suppliers' warranties to them at the time of purchase or conveyance.

7

37.     The transfer or assignment of the manufacturers' and suppliers' warranties, which would include the Window warranties, forms part of the basis of the bargain at the time Plaintiff and Class Members purchased their homes.

38.     Even where a manufacturer or supplier warranty transfer provision is not present, the average homeowner expects, at the time of purchase, his or her home comes with such warranties, including a window warranty against defects.

39.     Defendants also expressly and implicitly represent in documents available to the public that their warranty is part of the product being sold, and that the written warranties apply to the owners of the homes containing the Windows.

40.     Defendants' warranty expressly applies to subsequent purchasers.

41.     Defendants' warranties apply to future performance, and Defendants represent in their express warranty and documents available to the public that the Windows will be free from defective materials and workmanship for at least 10 years.

42.     Plaintiff and putative Class Members relied upon these representations and would be reasonable in relying on these representations when they purchased the Windows and/or structures containing the Windows.

43.     Plaintiff and putative Class Members reasonably expected and expect that the Windows would last longer than ten (10) years.

44.     Defendants' representations, expressly and impliedly, through their website, brochures and marketing materials, that the Windows are suitable and free from defects, were material and intended to, and likely did, affect the market by inducing builders, contractors, suppliers and others to purchase the Windows.

45.    Upon information and belief, Defendants were put on notice of defects and resultant damage in the Windows by homeowners across the country through warranty claims and customer complaints.

46.    Due to the differences in bargaining power between Plaintiff and the Class Members on one hand, and the Defendants on the other, those who purchased the Windows were unable to negotiate a longer warranty period when they purchased the Windows.  Nor would they have thought to—Defendants had the exclusive knowledge of the defects alleged herein, and otherwise failed to disclose the defects or actively concealed the problems with their Windows. Thus, although Defendants provided warranties on their Windows, they failed of their essential purpose or were otherwise unconscionable in scope and duration, as Plaintiff and the Class Members did not know of the defects until after the warranty periods expired.

47.    Defendants' shipping of the Windows with actual or constructive knowledge of the defects, or with negligent or reckless disregard of the presence of defects, constituted a breach of their express warranty, and makes the limitations of the express warranty unconscionable in all respects, and, therefore, void *ab initio*.

48.    The published written warranties include the following unconscionable limitations and exclusions:

      a)    The warranty requires that the homeowner be able to identify a "defect" in the Windows;

      b)    The warranty is ambiguous with regard to coverage of components;

      c)    The warranty limits coverage of wood warping;

      d)    The warranty excludes damages caused by design of the Windows;

      e)    The warranty excludes the cost of labor for repair or replacement arising from defects;

9

f)      The warranty excludes the cost of repainting or refinishing arising from defects;

g)      The warranty places unreasonable time limitations on notifying Defendants of defects, including Defendants' unilateral determination of when the homeowner should have "reasonably" discovered a defect;

h)      The warranty shortens the warranty period by beginning from the date of manufacture, regardless of when the Window is purchased, installed and put into use and operation;

i)      The warranty gives Defendants the final determination of whether or not a defect exists;

j)      The warranty potentially requires payment of a field service fee for inspecting the Windows;

k)      The warranty requires the homeowner to produce information that may not be accessible or otherwise readily understandable, including IGU and/or glass codes;

l)      The warranty purports to limit Defendants' responsibility by providing a remedy of repair, replacement, or refund a portion of the original purchase price, solely at Defendants' option;

m)      The warrant purports to exclude any liability for consequential, incidental, or punitive damages;

n)      The warranty purports to exclude any liability in excess of the original purchase price of the product;

o)      The warranty limits repair and replacement parts and products to the remainder of the original warranty period;

p)      The warranty purports to disclaim all warranties, expressed or implied, including implied warranties of merchantability or fitness for a particular purpose;

q)      The warranty purports to disclaim performance ratings identified by the AAMA and NFRC ratings affixed to the Windows by the Defendants;

r)      The warranty purports to disclaim any obligation to comply with building standards, including applicable building codes, and industry and testing standards;

10

s)    The warranty purports to allow Defendants to inconsistently apply the warranty at their own discretion;

t)    The warranty's 10-year limitation is in and of itself unconscionable;

u)    The warranty states it is voided by a number of conditions unilaterally determined by Defendants, including "improper" installation; and

v)    In all other ways revealed during discovery, and/or otherwise determined at trial.

49.    The warranty is non-negotiable and is so one-sided that no reasonable person would ever knowingly agree to its terms if properly disclosed.

50.    Further, upon information and belief, Defendants have engaged in a pattern and practice of failing to honor or discouraging warranty claims by representing that damage is not caused by the Windows themselves, by failing to respond to homeowners at all, by requiring the owner to pay for an inspection of the Windows, and/or by requiring the homeowner to pay for all costs associated with repair or replacement of the Windows, including the labor for such repair or replacement.

51.    The above described uniform pattern and practice by Defendants has the effect of discouraging defect claims by Class Members or continuing to pursue remedies through Defendants.

52.    Moreover, during contact with Class Members, Defendants conceal their knowledge of the defects in the Windows in the Class Members' residences and otherwise fail to acknowledge that the Windows themselves cause the damage to the Windows and the homes. In fact, Defendants actively refuse to acknowledge that defects exist in the Windows, instead blaming the symptoms of the defects on improper installation.

53.    As Defendants have known or should have known of their Windows' defects and have failed to timely honor their warranty, the warranty has failed its essential purpose and the

limitations therein are null and void, and Plaintiff and Class Members have otherwise not received the value for which they, their builders, or their contractors bargained for at the time the Windows were purchased or transferred to homeowners.

54.     The defects in Defendants' Windows also make the Windows unfit for their intended use.

55.     Given the leaking, rotting, premature degradation and failure of the Windows, the Windows have a reduced life expectancy and require unexpected maintenance, repair, and replacement by Plaintiff and Class Members.

56.     The Windows' defects and resultant damages have caused a diminution in the value of the homes.

57.     The Plaintiff and Class Members have and will suffer a loss of use related to the Window related damage, and repair or replacement that has or will occur at the Windows.

58.     Defendants knew or should have known that the Windows did not and do not satisfy industry or testing standards.

59.     Defendants knew or should have known that their Windows were defective in design and manufacture; not fit for their ordinary and intended use; not merchantable; and failed to perform in accordance with the advertisements, brochures, representations, marketing materials, and warranties disseminated by Defendants.

60.     The Windows failed to conform to the reasonable life, performance, or other expectations of ordinary consumers such as Plaintiff and Class Members.

61.     Because the Windows leak, and allow for increased water absorption, water penetration, rot, degradation, cause reduced life expectancy, and otherwise fail, the Windows are neither durable no suitable for use as an exterior building product.

62.     The above-described defective conditions of the Windows and resultant damages are present in Plaintiff's home and are common among Class Members.

63.     Plaintiff and Class Members have been proximately harmed by the Windows' above-described defective condition(s) and Defendants' above-described conduct.

## FACTS SPECIFIC TO PLAINTIFF GENGLER

64.     In 2004, Plaintiff Shawn Gengler began construction of his home in Muskego, Wisconsin.  He purchased wood clad, Pinnacle Series Windsor windows in the summer of 2004, and they were later installed in the fall of that year.  Construction of the home was completed in December of 2004.

65.     In early 2004, Mr. Gengler toured the Defendants' Iowa manufacturing plant in order to determine which manufacturer's windows and which window series he wanted to purchase for his home.  During that inspection, Defendants' representatives and agents told Mr. Gengler that the Windsor wood clad windows were a superior product.  This representation is uniform and made about all of the Windows.

66.     Mr. Gengler worked for a local lumberyard where he diligently searched for and reviewed many different window manufacturers' literature before his purchase.

67.     In deciding to purchase and install Defendants' wood clad windows, Mr. Gengler reasonably relied on the material and uniform representations by Defendants at the time of the plant tour and through other methods that the Windows were superior products, the Windows were free of defects, the Windows were suitable for Wisconsin, and that the Windows were compliant with building codes and industry standards.

68.    Unknown to Mr. Gengler, the Windows were defective in that they allowed moisture, water, and air to penetrate through the Window components, causing condensation, leaks, and premature wood deterioration and damage to other property.

69.    The characteristics of the Window defects were present in the Windows when they left the factory, and were part of the Window by design and manufacture.

70.    Mr. Gengler has wood deterioration and other damage to the Windows, and adjacent building components including drywall and trim.

71.    In 2013, Mr. Gengler began noticing ice and condensation forming on the inside of several of his Windows, which was causing the wood to stain.  He submitted a claim with Defendants, but was told by Defendants' representative that the damage was condensation induced by Mr. Gengler's failure to maintain the appropriate interior humidity.

72.    As a result of Defendants' representations, Mr. Gengler continued to believe his Windows were free of defects and began to run dehumidifiers on both floors of the home.  He additionally monitored the interior humidity to prevent additional damage from what he believed (based on the representations of Defendants' representatives) was homeowner-induced condensation.

73.    In November of 2014, believing to still be within the 10-year warranty provided by Defendants, Mr. Gengler notified Defendants that he was then experiencing extreme condensation on all of his windows, causing mold and water staining.  He further indicated that it was the mass failure of all windows that lead to his realization that the windows were defective.  Exhibit A (Warranty Claim Correspondence).

74.    Defendants' representative responded to Mr. Gengler, asked him to respond to her email, send photographs of the damage, and further stated that:

Condensation is not a covered in the warranty.  Condensation is not a defect in the window but is a humidity problem inside your home.

Exhibit A.

75.    Mr. Gengler responded, included photographs of damage, and indicated that he believed the damage to be caused by possible seal failures.  He further indicated to Defendants' representative that he believed the Windows to be unsafe and requested Defendants help resolve the issue.   Exhibit A.

76.    Despite notifying Defendants that he believed the windows to be creating an unsafe or uninhabitable living space, Mr. Gengler never received a response from Windsor regarding the Windows, and Windsor failed and/or refused to resolve the problems.

77.    Defendants routinely and uniformly deny similar warranty claims, and instead blame any resultant damage caused by the Windows' defects on the consumer.

78.    Notwithstanding Mr. Gengler's continuous and good faith efforts to control the interior humidity of the home, Mr. Gengler continued to experience excessive condensation, leakage, mold, and other damage to his windows and home.

79.    In fact, the damage discovered by Mr. Gengler was actually caused by defects in the Windows which allowed moisture, air, and water to intrude into Mr. Gengler's home for years, resulting in property damage to the Windows and their home including, but not limited to, damage to drywall, trim, and likely other areas which are concealed by window and building components.

80.    Defendants knew or should have known of the defect in the Windows at the time Mr. Gengler made his warranty claims because of similar warranty claims and complaints from customers throughout the country.

## CLASS ALLEGATIONS

81.     Plaintiff brings this action individually and as representatives of all those similarly situated pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4) are met with respect to the Classes (collectively, "Class" or "Classes") defined below:

### DAMAGES CLASS

> All persons and entities in the State of Wisconsin who are current or former owners of a structure on which Defendants' wood or wood clad windows are installed and whose windows have exhibited wood rot.

### NATIONAL INJUNCTIVE RELIEF CLASS

> All persons and entities in the United States, who own or owned homes in which Defendants' wood clad windows are installed.

Excluded from the Classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants' companies and their legal representatives, assigns, and successors of Defendants; and (c) all persons who properly execute and file a timely request for exclusion from the Classes.

Plaintiff proposes that the Class be divided into subclasses if and as necessary to align Class interests and to address any issues that may arise with regard to manageability.

82.     The Classes are composed of thousands or more persons geographically dispersed throughout the State of Wisconsin and the Country, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Classes are ascertainable and identifiable from Defendants' sales records, distributor records, identifying marks on the Windows, and AAMA labels.

83.    The critical question of law and fact common to the Classes that will materially advance the litigation is whether the Windows are inherently defective at the time they leave the factory, causing damage to Plaintiff and Class Members' homes, contrary to the representations of Defendants and the expectations of the ordinary homeowner.

84.    Additional questions of law and fact common to the Classes that exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes include the following:

a)    Whether Defendants were negligent in their design and manufacture of the Windows;

b)    Whether the Windows contain design and manufacturing defects;

c)    Whether the Windows have not performed or will not perform in accordance with the reasonable expectations of ordinary consumers; and industry standard defined useful life of 20-25 years;

d)    Whether Defendants knew or should have known about the Window defects;

e)    Whether Defendants concealed from consumers and/or failed to disclose to consumers the defects;

f)    When Defendants knew or should have known about the defects;

g)    Whether Defendants concealed and/or failed to disclose the defective condition of the Windows to consumers;

h)    Whether Defendants' warranties are unconscionable and void *ab initio*;

i)    Whether Defendants' warranties are voidable;

j)    Whether Defendants breached their express warranty that the Windows were free of defects in material and workmanship;

k)    Whether Defendants breached implied warranties of merchantability by designing, manufacturing and selling defective Windows; were not fit for the ordinary purpose of exterior windows; and did not conform with the representations, promises, and affirmations Defendants made concerning the Windows;

l)      Whether Defendants' limited warranty contained limitations, exclusions, and disclaimers such as to cause it to fail of its essential purpose;

m)     Whether Plaintiff and Class Members are entitled to compensatory damages;

n)      Whether Plaintiff and the Class Members are entitled to replacement of their defective Windows with non-defective windows, and damages related to loss of use;

o)      Whether Plaintiff and the Class Members are entitled to restitution and/or disgorgement;

p)      Whether Defendants falsely advertised and marketed its products to consumers;

q)      Whether the Windows conform to the applicable Wisconsin building codes, and industry and testing standards;

r)      Whether the Windows damage other property within Plaintiff's and Class Members' homes;

s)      Whether Defendants concealed the defective nature of the Windows;

t)      Whether Defendants' limited warranty adequately disclaimed its liability;

u)      Whether Plaintiff are entitled to prejudgment interest, attorneys' fees, and costs from Defendants; and

v)      Whether Defendants' conduct was negligent, reckless, willful, wanton, intentional, fraudulent or the like, entitling Plaintiff and Class Members to statutory or punitive damages from Defendants.

85.     Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective Windows and Defendants' conduct in concealing the defects in the Windows to owners, contractors, developers, and suppliers.

86.     Plaintiff will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class given that Plaintiff are members of

the Class they also seek to represent. Plaintiff has retained counsel experienced and competent in product liability, complex litigation, and consumer class actions.

87.     This case is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable.

88.     Should individual Class Members be required to bring separate actions, this Court and/or courts throughout Wisconsin would be confronted with hundreds if not thousands of lawsuits clogging the court system, while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will lead to judicial inefficiency, and undue delay and expense to all parties and the court system, this class action allows for a single adjudication, judicial efficiency, and comprehensive supervision by a single court.

89.     Moreover, Plaintiff does not foresee any difficulty in the management of this action as a class action and the amount of money at stake for each Class Member is not sufficient for each member to hire his or her own counsel, engineering and damage experts, or to incur additional out of pocket expenses to bring their own action.

### EQUITABLE ESTOPPEL
(Statute of Limitations)

90.     Plaintiff and Class Members are within the applicable statute of limitations for the claims presented hereunder because Plaintiff and Class Members did not discover the defect, and could not have discovered the latent defects sooner than when they put Defendants' on notice of defects and damages.

19

91.    Due to the concealed location of deterioration and other leak locations, Plaintiff are often unaware of the wood rot, degradation, and other failures until the end or expiration of Defendants' warranty period.

92.    Observation of damage at a small number or fraction of Windows could not have put Plaintiff or Class Members on notice that *all* windows were suffering from design or manufacturing defects.

93.    Further, because Defendants represented that the damage noticed was caused by things other than the Windows themselves, Plaintiff and Class Members reasonably relied on those representations in attempting remedies other than filing suit against Defendants.

94.    Defendants are aware, or should have been aware of the defects because of the numerous warranty claims and complaints alleging similar defects and asserted against them throughout the United States, including numerous other lawsuits relating to the same Windows.

95.    Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts of concealment, which include Defendants' concealment from Plaintiff, Class Members, and the general public that their Windows were and are defective, while continually marketing the Windows as a durable, suitable, and even superior product.

96.    Defendants had a duty to disclose that their Windows were defective, unreliable, and inherently flawed in design and/or manufacture.

97.    Defendants had a duty to acknowledge damage to homeowner's windows and homes were a result of the Windows themselves.

98.    Plaintiff and Class Members had no knowledge of, and no reasonable way of discovering, the latent defects found in Defendants' Windows at the time they purchased the product or their homes, residences, buildings, and other structures.

99.     Defendants did not notify, inform, or disclose to Plaintiff and Class Members that there were defects in the Windows, or that damage caused to the Windows or homes were caused by defects.

100.    Because Defendants failed in their duty to notify Plaintiff and Class Members that their product was defective, the statute of limitations should be tolled on Plaintiff and Class Members' claims.

### EQUITABLE ESTOPPEL
(Warranty Limitations and Exclusions)

101.    Defendants are estopped from relying on any warranty limitation or disclaimer as a defense to Plaintiff's and Class Members' claims.

102.    By virtue of Defendants' acts, the Windows installed in Plaintiff's and Class Members' residences have not lived up to Defendants' warranties or material representations, and given the defective condition of the Windows and the premature deterioration of the Windows, the Windows are significantly less valuable than what was purchased.

103.    Defendants knew or should have known that their Windows were defective in design and/or manufacture, and that said Windows were not fit for their ordinary and intended use, were not merchantable, and failed to perform in accordance with representations made, marketing materials and warranties disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiff and Class Members.

104.    In fact, Defendants' warranty even purports to disclaim any performance grade (identifying whether the Window complies with applicable building codes) indicated by the labels attached to the Windows.

105.    Accordingly, any warranty provided by Defendants fails its essential purpose because it purports to warrant that the Windows will be free from defects for a prescribed period of time when, in fact, said Windows fall far short of the applicable warranty period.

106.    Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available under Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

107.    As a result, any time limitations, exclusions, or disclaimers, which restrict the remedies encompassed within Defendants' warranties, are unconscionable and unenforceable, and, therefore, Defendants are estopped from relying on the same.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
(Breach of Express Warranty, on behalf of Plaintiff and the Damages Class)

108.    Plaintiff, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

109.    After putting their Windows into the stream of commerce, Defendants expressly represented and warranted that the Windows were appropriate for their intended use and were free from defects and that they conformed to all applicable building codes, and industry and testing standards.

110.    Specifically Defendants provided that their Windows would "free from defects in materials and workmanship which significantly impair their operation and proper usage." Exhibit B.

111.    Defendants' warranty is a warranty of future performance.

112.   Defendants entered into contracts with Plaintiff, Class Members, retailers, builders, suppliers and/or contractors to sell Windows to be installed at Plaintiff and Class Members' properties.

113.   Plaintiff and Class Members were intended third-party beneficiaries of the contract between Defendants and Plaintiff and Class Members' respective builders.

114.   The representations and warranties made by Defendants in marketing and selling their Windows formed part of the basis of the bargain between Defendants and the purchasers of the Windows at the time of the sale.

115.   Plaintiff and other Class Members selected and purchased the Windows being installed in their homes.  Additionally, the typical purchase agreement for the construction or sale of residences or structures contained provisions transferring or assigning the manufacturers' warranties, including window warranties. Such provisions are valid transfers and assignments, and the transferred and assigned warranties formed part of the basis of the bargain at the time the home was purchased.  Further, Defendants' warranty expressly provides for transfer to a subsequent purchaser of a home.

116.   Defendants' warranty certifies that they will replace or repair components of their products found to be defective for at least ten years.

117.   Upon information and belief, all of Defendants' written warranties applicable to Class Members contain the same or similar provisions.

118.   Through their written warranties, brochures, marketing materials, website, and other representations regarding the performance, durability, and quality of the Windows, Defendants created express warranties for the benefit of Plaintiff and Class Members.

119.    Thus, Defendants' express warranties and representations are applicable to the Windows installed in Plaintiff's and Class Members' residences and/or structures.

120.    Specifically, Defendants expressly warranted to Plaintiff and Class Members that the Windows purchased by Plaintiff and Class Members were free from defects in materials and workmanship that substantially impair their operation or performance and that they would last at least ten years.

121.    However, despite Defendants' assurances, as described in detail *supra*, the Windows contain the aforementioned defects and do not conform to all applicable building codes, industry and testing standards, and are not free from defects.

122.    These aforementioned defects are present when the Windows leave Defendants' control.

123.    Defendants breached the express warranty by selling Windows that were defective and not reasonably fit for their ordinary and intended purpose and did not conform to Defendants' express representations and/or warranties. Further, contrary to Defendants' representations and warranties, the Windows were not free from design and material defects for at least ten years.

124.    By their conduct and defective products, Defendants have breached their express warranty with Plaintiff and members of the Class.

125.    In addition, Defendants have breached their express warranties by not providing Plaintiff and Class Members with Windows that were free from defects and/or by suppressing warranty claims.

126.    Defendants' written warranties are also unconscionable and fail their essential purpose because they purport to warrant that the Windows will be free from manufacturer

defects for at least ten years when, in fact, the Windows fall far short of the applicable warranty period. To the contrary, due to the leakage in the Windows, Defendants' Windows begin failing after only a few years' (or less) use.

127.   Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available in Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy. Further, the warranty is inadequate because by its 10-year limitation alone, Defendants seeks to reduce the reasonable expected life of the product.

128.   Plaintiff and Class Members put Defendants on notice of their warranty claims and the issues with their Windows.

129.   Defendants refused Plaintiff and Class Members' warranty claims and refused to repair or replace the Windows or damage caused by the defective Windows.

130.   Defendants even made material misrepresentations to Plaintiff and Class Members about the cause of damages at issue in the warranty claim in an effort to conceal the defects and prevent Plaintiff and Class Members from receiving the benefit of the warranty, and also prevent them from discovering the Windows are defective.

131.   Plaintiff and Class Members adequately met all pre-suit notice requirements for their warranty claims.

132.   Defendants have denied, failed to pay in full, and/or failed to respond to warranty Claims.

133.   Accordingly, the limitations on remedies and the exclusions in Defendants' warranties are unconscionable and unenforceable.

134.    As a result of Defendants' breaches of express warranties, Plaintiff and Class Members have suffered actual damages in that they purchased the Windows, and also homes, residences, buildings, and other structures containing defective Windows that have failed or are failing prematurely due to leakage and premature degradation of the wood components. This failure has required or is requiring Plaintiff and Class Members to incur significant expenses in repairing or replacing their Windows. Repair and replacement is necessary to remedy the damage to the homes, and to prevent on-going and future damage to the underlying structures or interiors of Plaintiff and Class Members' residences.

135.    Thus, as a direct and proximate result of Defendants' breach of the express warranty on the Windows, Plaintiff and Class Members have suffered actual and consequential damages.

## SECOND CAUSE OF ACTION
(Breach of Implied Warranties, on behalf of Plaintiff and the Damages Class)

136.    Plaintiff, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

137.    Defendants are designers, manufacturers, and suppliers of the Windows, and for a number of years, marketed, warranted, distributed, and/or sold the Windows in Wisconsin.

138.    Defendants entered into contracts with Plaintiff, Class Members, retailers, suppliers and/or contractors to sell their Windows.

139.    Plaintiff and the Class Members are intended third party beneficiaries of those contracts because it was the clear and manifest intent of Defendants that the contracts were to primarily and directly benefit Plaintiff and the Class Members.

140.    Plaintiff and Class Members were at all times relevant hereto in privity with Defendants.

141.    Defendants impliedly warranted to Plaintiff, the Class Members and/or their agents that the Windows were merchantable and reasonably fit for their ordinary purpose, and would not cause damages as set forth herein.

142.    Defendants breached the implied warranty of merchantability by selling their Windows that were defective, not fit for their ordinary purpose, including being unsuitable as an exterior building product.

143.    Defendants' Windows were not of merchantable quality and not fit for intended use when they left the factory due to the defects in the Windows described herein.

144.    The defects have caused damage to the Windows themselves and to other property, including adjacent building components, in Plaintiff and Class Members' homes.

145.    The numerous and serious defects described herein make the Windows unfit and inappropriate for their intended use within structures.

146.    The Windows are also unfit for their particular purpose. Defendants manufactured and distributed their Windows in climates with multiple seasons and geographic locations, including locations that experience extreme cold in the winter such as Wisconsin.

147.    Defendants knew, or should have known, that its Windows would be subjected to varying temperatures and weather conditions, including rain and ice, throughout each year. Due to the defects and resultant leakage, rot, premature degradation, leaking, and other failures, the Windows are unfit for their particular purpose.

148.    Despite having knowledge of the Windows' defects, Defendants have failed to provide an adequate remedy.

149.    As a result, Defendants breached their implied warranties to Plaintiff and Class Members by producing, manufacturing, distributing and selling them a defective product that was unfit for its intended use and for a particular purpose.

150.    As a direct and proximate result of Defendants' breach of the implied warranty on the Windows, the Plaintiff and Class Members have suffered actual and consequential damages.

151.    Plaintiff and Class Members suffered and will continue to suffer losses as alleged herein, in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
(Violation of The Magnuson-Moss Consumer Products Liability Act, on behalf of Plaintiff and the Damages Class)

152.    Plaintiff, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

153.    The Magnuson-Moss Consumer Products Liability Act, 15 U.S.C. § 2301, *et. seq.* ("MMCPWA") provides a private right of action to purchasers of consumer products against retailers who, *inter alia*, fail to comply with the terms of the written warranty, express warranty, and/or implied warranty.  As demonstrated above, Defendants have failed to comply with the terms of its warranties, written, express, and implied, with regard to the Windows that it advertise, distributed, marketed, and/or sold.

154.    Plaintiff and Class Members are "consumers" as defined by MMCPWA.

155.    Defendants have been given a reasonable opportunity by Plaintiff and Class Members to cure such failures to comply and they have repeatedly failed or refused to do so.

156.    By virtue of the foregoing, Plaintiff and Class Members are entitled to an award of damages and other appropriate relief, including attorney's fees.

## FOURTH CAUSE OF ACTION

(Breach of Contract, on behalf of Plaintiff and the Damages Class)

157.    Plaintiff, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

158.    Defendants' Limited Warranty is a contract offered to, and accepted by Plaintiff and Class Members in conjunction with the purchase of the Windows and homes.

159.    Implied in Defendants' Limited Warranty is a covenant of good faith and fair dealing.

160.    Payment for the Windows and homes wherein the Windows are installed was made in consideration for high quality windows and the promise of repair and replacement services under the Limited Warranty.

161.    The Limited Warranty provided for, *inter alia*:

    a)  "[T]hat all PINNACLE Series windows and patio doors will be free from defects in materials and workmanship which significantly impair their operation and proper usage;"

    b)  A component "limited warranty against defects, under normal conditions, for 10 YEARS from the date of manufacture;" and

    c)  In the event of a component failure under Defendants' 10-year warranty, "Windsor will provide replacement parts, free of charge, during the warranty period."

    Exhibit B.

162.   Plaintiff and Class Members satisfied all terms of the Limited Warranty by payment, claims procedure compliance, and meeting all other requirements in order to obtain repair and replacement.

163.   Defendants failed to comply with the terms of the Limited Warranty by failing to provide non-defective Windows, which were installed in Plaintiff and Class Members homes.

164.   Defendants failed to comply with the terms of the Limited Warranty by failing and/or refusing to adequately repair or replace defective Windows with non-defective windows.

165.   Defendants' conduct at all times relevant hereto constitutes a breach of contract, and breach of their duty of good faith and fair dealing.

166.   Defendants' intentionally and purposely conducted themselves in a manner that had the effect of destroying or injuring the right of Plaintiff and Class Members' ability to receive the fruits of the contract, including:

a)   Providing Windows that Defendants knew were defective;

b)   Failing or refusing to repair or replace defective Windows or components;

c)   Concealing known defects;

d)   Denying, or otherwise failing or refusing, to respond to warranty claims without adequately investigating the cause of reported damage; and

e)   Other bad faith or unfair conduct that may be uncovered through discovery.

167.   Defendants' conduct constitutes evasion of the spirit of the bargain; lack of diligence in responding to or investigating warranty claims; willful rendering of imperfect performance; abuse of Defendants' power with regard to specific terms, exclusions and limitations; and failure to cooperate in Plaintiff and Class Members' abilities to comply with claims procedures.

168.    Plaintiff and Class Members have been damaged by Defendants' breaches of contract and implied covenant of good faith and fair dealing.

169.    By virtue of the foregoing, Plaintiff and Class Members are entitled to an award of damages and other appropriate relief, including attorney's fees.

**FIFTH CAUSE OF ACTION**
(Violation of Wisconsin Deceptive Trade Practices Act, on behalf of Plaintiff
and the Damages Class)
*W.S.A. § 100.18*

170.    Plaintiff, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

171.    The conduct described above and throughout this Complaint took place within the State of Wisconsin and constitutes unfair business practices in violation of the Wisconsin Deceptive Trade Practices Act, 100.18 (hereinafter "DTPA").

172.    The DTPA applies to the claims of Plaintiff and all Wisconsin Class Members because the conduct which constitutes violations of the DTPA by Defendants occurred within the State of Wisconsin.

173.    W.S.A. § 100.18(1) provides, in relevant part:

No person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service or anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, . . . shall make, publish, disseminate, circulate, or place before the public, . . . in this state, . . . an advertisement, announcement, statement or representation of any kind to the public relating to such . . . sale . . . or such real estate, merchandise, securities, service or employment . . . , which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

174.    Defendants are a "corporation" under the meaning of the DTPA.

175.   Plaintiff and Wisconsin Class Members constitute the "public" under the meaning of the DTPA.

176.   Defendants' Windows constitute "merchandise" under the meaning of the DTPA.

177.   Defendants engaged in untrue, deceptive or misleading statements of fact in violation of the DTPA when, in selling and advertising the Windows, they knew their Windows suffered from material defects which would cause damage to the public.

178.   Defendants engaged in untrue, deceptive or misleading statement of aforementioned material facts, including such affirmative statements that their Windows were of superior quality, and were compliant with building codes, and industry and testing standards.

179.   Defendants engaged in these statements with the intent that others, such as Plaintiff, Class Members, builders, suppliers, contractors and/or the general public would rely upon the untrue, deceptive or misleading statements of material facts and purchase Defendants' Windows containing said design defect.

180.   Plaintiff, Class Members, builders, suppliers, contractors and/or the general public would not have purchased the Windows had they known or become informed of the material defects in the Windows.

181.   Defendants' untrue, deceptive or misleading statements of material fact as alleged herein constitute fraudulent misrepresentations within the meaning of the DTPA.

182.   Defendants have violated the DTPA by fraudulently misrepresenting the quality and building code, industry standard, and testing compliance of their Windows.

183.   Defendants either knew, or should have known, that the Windows were defectively designed and/or manufactured and would allow water intrusion, which would result

in severe damages to the structures, such that the structures were not as represented to be as alleged herein.

184.    Upon information and belief, Defendants knew that, at the time the Windows left their control, the Windows contained the defect described herein resulting in water intrusion and wood rot. At the time of the sale, the Windows contained design and construction defects. The defects reduced the effectiveness and performance of the Windows and rendered the Windows unable to perform the ordinary purpose for which they are used, as well as caused the resulting damage described herein.

185.    Further, as detailed above, upon Plaintiff's discovery of water intrusion and filing of a warranty claim, Defendants represented that the problems were not caused by the Windows but further represented they would investigate the nature of the warranty claim.  However, Defendants have failed to respond, investigate, act to rectify the problem and/or honor their warranties and, instead, Plaintiff continues to suffer from water intrusion as a result of the defects.

186.    As a direct and proximate cause of the violation of the DTPA, described above, Plaintiff and members of the Class have been injured in that they have purchased homes or other structures with the defective Windows based on nondisclosure of material facts alleged above. Had Plaintiff and Class Members known the defective nature of the Windows used on their structures, they would not have purchased the Windows or their homes, or would have paid a lower price for the Windows or their homes.

187.    Defendants engaged in untrue and deceptive methods of advertising and trade practices in conducting their businesses, which violates the DTPA. This unlawful conduct is continuing, with no indication that Defendants will cease.

188.    As a direct and proximate result of Defendants' unfair and deceptive methods of advertising and trade practices, Plaintiff and other Class Members will suffer damages, which include, without limitation, costs to inspect, repair or replace their Windows and other property, in an amount to be determined at trial.

189.    As a direct and proximate result of Defendants' violation of Wis. Stat. § 100.18, Plaintiff and the Class Members have suffered and continue to suffer damages. Plaintiff and the Class Members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

### SIXTH CAUSE OF ACTION
(Fraudulent Misrepresentation, on behalf of Plaintiff and the Damages Class)

190.    Plaintiff, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

191.    Defendants falsely and fraudulently represented to Plaintiff, the Class Members, purchasers, and consumers in general that Defendants' Windows would be free from defects and fit for their customary and normal use.

192.    Defendants falsely represented to Plaintiff, Class Members, purchasers, and consumers in general that the Windows were warranted against defects in material and workmanship when, in fact, the limited warranty was so limited as to prevent and preclude any warranty protection against the known defect in the Windows.

193.    Defendants falsely represented to Plaintiff, Class Members, purchasers, and consumers in general that the Windows were superior products, and were building code, industry standard and testing compliant.

194.    Defendants falsely represented to Plaintiff and Class Members that damage, which was the subject of their warranty claim, was not caused by the Windows themselves but due to another source of water or moisture infiltration.

195.    When Defendants made the aforementioned uniform and material representations, they knew or should have known those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

196.    The aforementioned representations were made by Defendants with the intent to defraud and deceive Plaintiff, Class Members and/or the consuming public, all of which evinced reckless, willful, indifference to the safety and welfare of Plaintiff and Class Members. *See* Exhibit A.

197.    At the time the aforesaid representations were made by Defendants, Plaintiff and the Class Members were unaware of the falsity of said representations and reasonably believed them to be true.

198.    In reliance upon said representations, Defendants' Windows were installed and used on Plaintiff's and Class Members' properties, thereby causing Plaintiff and the Class Members to sustain damages and injury to their property and/or to be at an increased risk of sustaining damage and injury in the future.

199.    Defendants knew and were aware, or should have been aware, that their Windows were defective and not fit for their customary and normal use.

200.    Defendants knew, or should have known, that Defendants' Windows had a potential to, could, and would cause severe damage and injury to property owners.

201.    Defendants brought their Windows to the market and acted fraudulently, wantonly and maliciously, to the detriment of the Plaintiff and the Class Members.

202.    By reason of the foregoing, Plaintiff and the Class Members suffered, and continue to suffer property loss, financial damage, and injury.

## SEVENTH CAUSE OF ACTION
(Fraudulent Concealment, on behalf of Plaintiff and the Damages Class)

203.    Plaintiff, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

204.    Defendants knew or should have known that the Windows were defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Defendants nor the reasonable expectations of ordinary consumers.

205.    Defendants fraudulently concealed from and/or intentionally failed to disclose to Plaintiff and the Class that the Windows contained material defects existing at the point the Windows left Defendants' manufacturing facilities.

206.    Defendants had exclusive knowledge of the defective nature of the Windows at the time of sale. Plaintiff or Class Members, in the exercise of reasonable diligence, could have discovered the defect independently prior to purchase—even though the defects cause substantial damage, the damage is not evident until the symptoms of the defect manifest over time.

207.    Defendants had the capacity to, and did, deceive Plaintiff and Class Members into believing that they were purchasing Windows free from defects.

208.    Defendants undertook active and ongoing steps to conceal the defect. Plaintiff is aware of nothing in Defendants' advertising, publicity or marketing materials that disclosed the truth about the defect, despite Defendants' awareness of the problem.

209.    Defendants continued to conceal the defect by both:

    a.   failing to acknowledge that the damage giving rise to warranty claims was caused by the Windows themselves; and

    b.   making affirmative misrepresentations that the damage was caused by other sources in an effort to conceal the defects and Defendants liability for selling a defective product.

210.    The facts concealed and/or not disclosed by Defendants to Plaintiff and the Class Members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Windows from their builders.

211.    Defendants intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiff and the Class to act thereon.

212.    Further, upon notification from Plaintiff about water intrusion, Defendants failed to inform Plaintiff of the defect, misrepresented the cause of the damage, failed to otherwise respond to warranty claims, and failed to rectify the problem.

213.    Plaintiff and the Class justifiably acted or relied upon the concealed and/or undisclosed facts to their detriment, as evidenced by their purchase of the Windows and subsequently, their inability to recognize that the Windows were defective until after the warranty expired.

214.    Plaintiff and Class Members suffered property and financial loss in an amount to be proven at trial as a result of Defendants' fraudulent concealment and nondisclosure because:

    a.   they would not have purchased the Windows on the same terms if the true facts concerning the defective Windows had been known;

    b.   they paid a price premium due to the fact that they would be free from defects; and

    c.   the Windows did not perform as promised. Plaintiff also would have initiated this suit earlier had the defect been disclosed to them.

215.    By reason of the foregoing, Plaintiff and Class Members suffered, and continue to suffer, property loss, financial damage and injury.

**EIGHTH CAUSE OF ACTION**
(Strict Liability, on behalf of Plaintiff and the Damages Class)

216.    Plaintiff, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

217.    At all times relevant to this Complaint, Defendants were in the business of designing, manufacturing, marketing, distributing and/or selling Windows and had a statutory duty of care.

218.    Defendants breached this duty because their Windows are defectively designed and manufactured and are unreasonably dangerous in that:

    a.    they allow water to intrude into the interior of residences or buildings, resulting in damage to the Windows and consequential damage to the structure into which the Windows are installed;

    b.    they rot, degrade, and otherwise fail, thereby allowing air and water to intrude into the interior of the residence and cause damage to the Windows and consequential damage to the structure into which the Windows are installed; and

    c.    the perpetual water, air, and moisture penetration leads to deterioration and the loss of structural integrity of the window and adjacent building components, and otherwise do not protect the interior habitable space from the outside elements.

219.    Were the defects known at the time of design and manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed and manufactured in that manner.

220.    Feasible alternatives existed to make the Windows safer for intended use at the time of design. Defendants were knowledgeable about the products and aware or should have been aware that feasible alternatives existed which would maintain the usefulness of the Windows and eliminate the harm.

221.    The Windows reached the Plaintiff and Class Members, and were intended to reach the Plaintiff and Class Members, without substantial change in the condition in which they were sold.

222.    The defect in the Windows was present when it left the Defendants' control.

223.    Defendants are strictly liable for having designed, manufactured, marketed, distributed, and sold the Windows, which were defective, to the Plaintiff and Class Members.

224.    As a direct, foreseeable, and proximate result of the sale of the defective Windows to Plaintiff and Class Members, the Plaintiff and Class Members have suffered significant physical damage to their properties, other contamination and deterioration, as well as diminution in the value of the properties.

## NINTH CAUSE OF ACTION
(Declaratory and Injunctive Relief, on behalf of Plaintiff and the National Injunctive Relief Class)

225.    Plaintiff, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

226.    There is an actual controversy between Defendants and class members concerning the existence of defects in the Windows.

227.    Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

228.    Plaintiff and class members seek a declaration that the Windows have the common defects alleged herein in their design, manufacture, and/or materials existing at the point of sale of the Windows.

229.    Defendants designed, manufactured, produced, tested, inspected, marketed, distributed, and sold Windows that contain material defects as described above.

230.    Defendants continue to market, distribute, and sell the Windows that contain these material defects and has done nothing to remove the Windows from the market or from the homes of class members.

231.    The defects herein pose an imminent risk of property damage to consumers and the class members.

232.    Defendants have taken no corrective action concerning the defects alleged herein, nor have they issued any warnings regarding the defects.  Instead, Defendants wrongfully deny warranty claims and insist that the symptoms of the defects are the fault of the individual class members.

233.    Plaintiff and class members suffered actual property damage, and are at immediate risk of sustaining additional property damage due to the defects alleged herein.

234.    Defendants should be required to take corrective action to avoid the serious property damage that could result due to the defects as alleged herein, including: issuing a recall, replacement, or retrofit of the windows to address the defects; issuing warnings or notices to consumer regarding the risk of property damage posed by the Windows; and immediately continuing the manufacture, sale, and distribution of the defective Windows.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of others similarly situated, pray for a judgment against Defendants as follows:

1.    For an Order certifying the Classes, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiff as representatives of the Classes, and appointing the undersigned law firms representing Plaintiff as counsel for the Classes;

2.    For compensatory damages sustained by Plaintiff and the Damages Class;

3.    For an Order requiring Defendants to engage in a recall, replacement, or retrofit program of all defective Windows currently installed in class members' homes, to issue warnings regarding the defects, and to stop the manufacture, distribution, and sale of the defective Windows;

4.    For payment of costs of suit herein incurred;

5.    For both pre-judgment and post-judgment interest on any amounts awarded;

6.    For punitive damages;

7.    For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

8.    For such other and further relief as the Court may deem just and proper.


## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury as to all issues so triable.

Dated: February 16, 2016

Respectfully submitted,

/s/ Kara A. Elgersma
Kara A. Elgersma
Wisconsin Bar No. 1082121
WEXLER WALLACE LLP
55 West Monroe St., Suite 3300
Chicago, IL 60603
Tel. 312.346.2222
Fax 312.346.2222
kae@wexlerwallace.com

Edward A. Wallace
Amy E. Keller
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Tel. 312.346.2222

41

Fax 312.346.2222
eaw@wexlerwallace.com
aek@wexlerwallace.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NEW YORK WESTERN DISTRICT
## (BUFFALO DIVISION)

| | | |
|---|---|---|
| TODD AND MARIA FORSTER,<br>on behalf of themselves and all others<br>similarly situated, | ) ) ) | |
| | ) | Case No. _____ |
| Plaintiffs, | ) ) | |
| v. | ) ) | **COMPLAINT**<br>(Class Action - Product Liability) |
| | ) | |
| WINDSOR WINDOW COMPANY d/b/a<br>WINDSOR WINDOWS AND DOORS,<br>and WOODGRAIN MILLWORK, INC., | ) ) ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) ) | |
| _____ | ) | |

Plaintiffs, Todd and Maria Forster ("Forsters" or "Plaintiffs"), by and through their undersigned counsel, individually and on behalf of all other persons and entities similarly situated, allege against Defendants, Windsor Window Company d/b/a Windsor Windows and Doors ("Windsor") and Woodgrain Millwork, Inc. ("Woodgrain") (collectively, "Defendants") the following facts and claims upon knowledge as to matters relating to themselves and upon information and belief as to all other matters and, by way of this class action Complaint, aver as follows:

### INTRODUCTION

1.      This is a proposed class action brought by Plaintiffs, individually and on behalf of the below-defined Classes against Defendants, to obtain damages arising from and relating to their purchase and installation of defective wood clad windows ("Windows") designed, manufactured, advertised, sold, and distributed by Defendants.

**EXHIBIT H**
**Page 1 of 35**

2.      This class action arises out of Defendants' design, manufacture, advertisement, sale, and distribution of Windows that leak, deteriorate, degrade, and otherwise prematurely fail. Defendants' Windows fail to comply with the building codes in place at all times relevant, and industry standards such as AAMA, ASTM, WDMA, I.S.4, and others, and have also breached their express and implied warranties with respect to their Windows.

3.      At the time the Windows leave the manufacturing plant, they contain a latent defect that allows water to infiltrate and pass through the Windows' frame corners, glazing pocket, and aluminum cladding, leading to deterioration of the wood components of the window and water and air leakage into the interior of the home damaging the interior wall cavity, trim, drywall, framing components, and other property.

4.      The wood preservative applied to the wood components of the Windows is also inadequate in its composition and application, further accelerating the rate of the deterioration.

5.      Plaintiffs, Class Members, or their contractors would not have purchased or installed the Windows if they knew of such defects or that their Windows would prematurely fail.

6.      Defendants' acts and omissions in connection with its design, manufacture, warranty, sale and delivery of these defective Windows constitute breach of express warranty, breach of contract and the implied covenant of good faith and fair dealing, fraudulent misrepresentation, fraudulent concealment, and strict liability.

7.      Defendants have repeatedly failed to comply with the terms of their warranties by distributing defective Windows, and also by denying or otherwise failing to remedy or repair defective Windows in Plaintiffs and Class Members' homes.

2

8.      Defendants' failure to comply with the terms of the warranty have made the Windows less valuable, notwithstanding the loss of value resulting from the latent defects leading to premature product failure.

9.      Plaintiffs, Class Members, and contractors would have paid significantly less for the Windows, or not purchased them at all, had they known Defendants would not have honored their warranty, or that the products contained defects and caused severe damage to other property.

## PARTIES

1.      Plaintiffs were and are, at all relevant times hereto, residents and citizens of the State of New York.  Specifically, Plaintiffs own a home at 7112 Cole Road, Colden, Erie County, New York, in which Windsor wood clad, Pinnacle Series Windows were installed.  The Windows were purchased at the time of construction of their home, and installed in or about June of 2001.

10.     Defendant Windsor was and is a company organized and existing under the laws of the State of Idaho, with a principal place of business in the State of Iowa. At all times relevant herein, Windsor transacted and conducted business in New York.

11.     Defendant Woodgrain was and is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business in the State of Idaho.

12.     At all times relevant herein, Woodgrain was the parent company of Windsor, provided Window components and materials to Windsor, and jointly transacted and conducted business in New York.

13.     Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the Windows at issue.

3

14.     At all times relevant herein, the Defendants were actual and/or *de facto* joint ventures in the design, development, manufacture, marketing, and sales of the Windows at issue.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, as there is complete diversity of citizenship and corporate domicile; the amount in controversy exceeds $5,000,000.00, without interest and costs; and there are at least 100 members of the proposed Class.

16.     Venue is proper pursuant to 28 U.S.C. § 1391, as Plaintiffs reside in this district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district. At all times relevant herein, Defendants conducted and/or transacted business in this district and, therefore, are subject to personal jurisdiction in this district and reside here for venue purposes.

## THE WINDOWS

17.     This case arises from Defendants' defective design and manufacture of wood clad Pinnacle and Legend Series Windows, and their failure to disclose defects to purchasers and owners of the Windows, or to comply with the terms of the Windows' warranties.

18.     Upon information and belief, both Series share the same or similar relevant design functions, manufacturing process, and wood preservative treatment.

19.     Both Series prematurely fail in the same or similar manner, and resulting in the same or similar damage throughout the Windows.

20.     Specifically, as a result of the defects, the Windows have and will continue to prematurely fail.  The wood rot has and will progress to other wood components in the window

4

and adjoining structure, as well as permit air and water leakage due to loss of structural integrity unless the Windows are repaired and replaced. The leakage through window frame corners, at the glazing pockets, and other areas has and will cause damage to areas adjacent to the window, including the wall cavity, trim, framing, drywall, and other property in the home.

21.     Given the latent nature of the defect and damage, the deterioration occurs over such a period of time that it does not become visible until it has advanced to irreparable damage, and is also masked by cladding and window components (i.e. back dam, meeting rail, trim, etc.). It is likely that, although the premature failure begins during the warranty period, the wood deterioration will not manifest itself until after Defendants' warranty has expired.

22.     At all times relevant hereto, Defendants and their agents held themselves out to Plaintiffs, Class Members, the construction industry, and the public at large as manufacturing superior, quality, and durable products, including the subject Windows.

23.     At all times relevant herein, Defendants were engaged in the marketing, sale, supply and delivery of windows in the State of New York and across the United States.

24.     At the time of sale, Windsor warranted that each Window was fit for the ordinary purpose for which such goods were used and were free from defects in materials and workmanship.

25.     At all times relevant herein, including at the time the Windows were sold to Plaintiffs and Class Members, the Windows are moveable goods as defined by the Uniform Commercial Code. The Windows are shipped as individual units by the manufacturer to the project, and later installed in the home. Windows are capable of being removed from the home after construction.

26.     Unknown to Plaintiffs and Class Members, the Windows are defective and fail to perform at Plaintiffs' residence and at Class Members' residences by permitting water intrusion through unsealed or inadequately sealed areas of the Windows' frames and sashes, and into the interior of the residences.

27.     The Windows are defective and prematurely failing at Plaintiffs' residence and at Class Members' residences by permitting water to penetrate the wood components of the Windows, wherein it is absorbed by wood members, and causes rot, premature degradation, leaking, and failure of the wood.   The wood preservative applied is defective in its composition and application, which fails to protect the wood components and accelerates the rate of deterioration.

28.     The defects in the Windows lead to failure well in advance of the expected useful lives of the Windows, under both the limited 10-year warranty period and industry standard of 20-25-years.

29.     Degradation of the wood components permits additional water and air infiltration into the home in an accelerated cycle.

30.     The water intrusion and above-described damage resulting from the defective Windows constitutes "occurrences" resulting in "property damage" to property other than Defendants' "product" as those terms are commonly defined and used in the typical commercial general liability insurance policy.

31.     The above-described defects are due to design, engineering, and manufacturing errors, all of which should have been within Defendants' expertise.

**EXHIBIT H**
**Page 6 of 35**

32.     Because the Windows prematurely fail and permit water and air intrusion, they violate the building codes, industry and testing standards, and amount to a breach of the Windows' warranties.

33.     The defects exist at the time the Windows leave the factory.

34.     Failure of the Windows begins upon installation and continues during repeated and prolonged exposure to weather.

35.     Because of their touted expertise in window design and manufacturing, Defendants knew or should have known that the defects were present at the time the products left their control.

36.     Defendants represented to Plaintiffs and the public at large that water intrusion is caused by other sources.  In fact, Defendants' website states that only "[R]arely, a product may be defective."

37.     Defendants knew or should have known the Windows would prematurely fail, but did not adequately correct the defective design or manufacturing process which leads to damage in the homes in which the Windows are installed.

38.     Defendants failed to warn purchasers, installers or users of the above-described risks of failures, which would have been material and instrumental in the decision to purchase the Windows.

39.     The purchase of Defendants' Windows comes with a written express warranty, which forms part of the basis of the bargain between Defendants and the purchaser.

40.     The Windows' written express warranty also forms part of the basis of the bargain between the seller of the home and homebuyers, including Plaintiffs and Class Members.

41.   The typical purchase agreement for the sale and/or construction of Class Members' homes likely contains one or more provisions transferring or assigning manufacturers' and suppliers' warranties to them at the time of purchase or conveyance.

42.   The transfer or assignment of the manufacturers' and suppliers' warranties, which would include the Window warranties, forms part of the basis of the bargain at the time Plaintiffs and Class Members purchased their homes.

43.   Even where a manufacturer or supplier warranty transfer provision is not present, the average homeowner expects, at the time of purchase, his or her home comes with such warranties, including a window warranty against defects.

44.   Defendants also expressly and implicitly represent in documents available to the public that their warranty is part of the product being sold, and that the written warranties apply to the owners of the homes containing the Windows.

45.   Defendants' warranty expressly applies to subsequent purchasers.

46.   Defendants' warranties explicitly apply to future performance, and Defendants represent in their express warranty and documents available to the public that the Windows will be free from defective materials and workmanship for at least 10 years.

47.   Defendants' warranties expressly provide that adequate repair or replacement for defective components, including cladding, glazing pockets, frame corners, wood components, and other components, will be made pursuant to the 10 year warranty.

48.   Plaintiffs and putative Class Members relied upon these warranties and other representations when they purchased the Windows and/or structures containing the Windows.

49.   Plaintiffs and putative Class Members reasonably expected and expect that the Windows would last longer than ten (10) years.

8

50.    Plaintiffs and putative Class Members reasonably expected that any repairs or replacements under the warranty would be adequate, and that replacement product would not be defective.

51.    Defendants' representations, expressly and impliedly, through their website, brochures and marketing materials, that the Windows are suitable and free from defects, were intended to, and likely did, affect the market by inducing builders, contractors, suppliers and others to purchase the Windows.

52.    Plaintiffs and other homeowners across the United States put defendants on notice of defects and resultant damage in the Windows.

53.    Defendants' shipping of the Windows with actual or constructive knowledge of the defects, or with negligent or reckless disregard of the presence of defects, constituted a breach of their express warranty, and makes the limitations of the express warranty unconscionable in all respects, and, therefore, void *ab initio*.

54.    The published written warranties include the following unconscionable limitations and exclusions:

a)    The warranty requires that the homeowner be able to identify a "defect" in the Windows;

b)    The warranty is ambiguous with regard to coverage of components;

c)    The warranty limits coverage of wood warping;

d)    The warranty excludes damages caused by design of the Windows;

e)    The warranty excludes the cost of labor for repair or replacement arising from defects;

f)    The warranty excludes the cost of repainting or refinishing arising from defects;

9

g)    The warranty places unreasonable time limitations on notifying Defendants of defects, including Defendants' unilateral determination of when the homeowner should have "reasonably" discovered a defect;

h)    The warranty shortens the warranty period by beginning from the date of manufacture, regardless of when the Window is purchased, installed and put into use and operation;

i)    The warranty gives Defendants the final determination of whether or not a defect exists;

j)    The warranty potentially requires payment of a field service fee for inspecting the Windows;

k)    The warranty requires the homeowner to produce information that may not be accessible or otherwise readily understandable, including IGU and/or glass codes;

l)    The warranty purports to limit Defendants' responsibility by providing a remedy of repair, replacement, or refund a portion of the original purchase price, solely at Defendants' option;

m)    The warrant purports to exclude any liability for consequential, incidental, or punitive damages;

n)    The warranty purports to exclude any liability in excess of the original purchase price of the product;

o)    The warranty limits repair and replacement parts and products to the remainder of the original warranty period;

p)    The warranty purports to disclaim all warranties, expressed or implied, including implied warranties of merchantability or fitness for a particular purpose;

q)    The warranty purports to disclaim performance ratings identified by the AAMA and NFRC ratings affixed to the Windows by the Defendants;

r)    The warranty purports to disclaim any obligation to comply with building standards, including applicable building codes, and industry and testing standards;

s)    The warranty purports to allow Defendants to inconsistently apply the warranty at their own discretion;

10

t)      The warranty's 10-year limitation is in and of itself unconscionable;

u)      The warranty states it is voided by a number of conditions unilaterally determined by Defendants, including "improper" installation; and

v)      In all other ways revealed during discovery, and/or otherwise determined at trial.

55.     The warranty is non-negotiable and is so one-sided that no reasonable person would ever knowingly agree to its terms if properly disclosed.

56.     Defendants' current online claims procedure directs owners of their windows to contact a local distributor if they believe they need to file a warranty claim.

57.     However, there is not a local distributor within 25 miles of Plaintiffs and most Class Members' homes.

58.     In fact, the closest distributor to Plaintiffs' home is in Ohio, 170 miles away.

59.     Further, upon information and belief, Defendants have engaged in a pattern and practice of failing to honor or discouraging warranty claims by representing that damage is not caused by the Windows themselves, by failing to respond to homeowners at all, by requiring the owner to pay for an inspection of the Windows, and/or by requiring the homeowner to pay for all costs associated with repair or replacement of the Windows, including the labor for such repair or replacement.

60.     The above described pattern and practice by Defendants has the effect of pushing warranty claims past the expiration date, discouraging defect claims, and/or continuing to pursue remedies through Defendants.

61.     Moreover, during contact with Plaintiffs and Class Members, Defendants concealed their knowledge of the defects in the Windows in the Class Members' residences and

**EXHIBIT H**
**Page 11 of 35**

otherwise failed to acknowledge that the Windows themselves cause the damage to the Windows and the homes.

62.    As Defendants have known or should have known of their Windows' defects and have failed to timely honor their warranty, the warranty has failed its essential purpose and the limitations therein are null and void, and Plaintiffs and Class Members have otherwise not received the value for which they, their builders, or their contractors bargained for at the time the Windows were purchased or transferred to homeowners.

63.    The defects in Defendants' Windows also make the Windows unfit for their intended use.

64.    Given the leaking, rotting, premature degradation and failure of the Windows, the Windows have a reduced life expectancy and require unexpected maintenance, repair, and replacement by Plaintiffs and Class Members.

65.    The Windows' defects and resultant damages have caused a diminution in the value of the homes.

66.    The Plaintiffs and Class Members have and will suffer a loss of use related to the Window related damage, and repair or replacement that has or will occur at the Windows.

67.    Defendants knew or should have known that the Windows did not and do not satisfy industry or testing standards.

68.    Defendants knew or should have known that the Windows were not a suitable exterior building product, in that they were not capable of withstanding the weather conditions in which the Windows were distributed and installed.

69.    Defendants knew or should have known that their Windows were defective in design and manufacture; not fit for their ordinary and intended use; not merchantable; and failed

12

to perform in accordance with the advertisements, brochures, representations, marketing materials, and warranties disseminated by Defendants.

70. The Windows failed to conform to the reasonable life, performance, or other expectations of ordinary consumers such as Plaintiffs and Class Members.

71. Because the Windows leak, and allow for increased water absorption, water penetration, rot, degradation, cause reduced life expectancy, and otherwise fail, the Windows are neither durable no suitable for use as an exterior building product.

72. The above-described defective conditions of the Windows and resultant damages are present in Plaintiffs's home and are common among Class Members.

73. Plaintiffs and Class Members have been proximately harmed by the Windows' above-described defective condition(s) and Defendants' above-described conduct.

## FORSTERS' EXPERIENCE

74. In 2001, Forsters began construction of their home in Colden, New York. Thirty-one (31) wood clad, Pinnacle Series Windsor windows were purchased and installed in or about June of 2001. Construction of the home was completed in October of 2001, at which time the family moved in.

75. At the time the windows were selected for purchase, the Forsters' contractor recommended Windsor windows because the contractor considered them good quality and had them in his own home.

76. The Forsters relied on the expertise of the contractor, and the Defendants' wood clad windows were selected and installed.

77. The Forsters constructed and paid for the home containing Defendants' windows based upon the representations of the contractor, and belief that the Windows were superior

products, the Windows were free of defects, the Windows were suitable for upstate New York, and that the Windows were compliant with building codes and industry standards.

78.    Unknown to Forsters, the Windows were defective in that they allowed moisture, water, and air to penetrate through the Window components, causing condensation, mold, fungal growth, staining, and water damage to the trim, drywall, sheeting, ceiling, flooring, rugs, and windows themselves.

79.    The characteristics of the Window defects were present in the Windows when they left the factory, and were part of the Window by design and manufacture.

80.    Forsters have wood deterioration and other damage to the Windows, and damage to adjacent building components and to personal property.  They have also incurred expenses resulting from removal of brick, windows, and other exterior components.

81.    In or about the spring of 2004, a leak manifested at ganged windows in a bedroom.  The Forsters replaced these windows under the Defendants' warranty.  The Forsters believed the replacements remedied the issue; however, Plaintiffs did not know that these or all of their windows suffered from the same defective condition.

82.    Unbeknownst to the Forsters, their replacement product was also defective.

83.    In 2006, the Forsters experienced additional leaking which caused damage to drywall in the dining room ceiling.  The contractor made several repairs to the window and damaged components, and Defendants sent out a representative to inspect the Windows.

84.    Defendants inspected the windows and represented to the Forsters that the Windows themselves were not leaking and that the water intrusion must be due to installation errors or condensation caused by failure to control the interior humidity of the home.

**EXHIBIT H
Page 14 of 35**

85.     Defendants' representative did not test the windows, but based the representation that the Windows were not leaking on a visual inspection.

86.     As a result of Defendants' representations, the Forsters continued to believe their Windows were free of defects, and had their brick veneer removed and replaced in 2007 order to identify the installation errors.   This cost the Forsters $15,500.00 for brick removal, drywall repair, and mold remediation.

87.     It was not until 2015, when the Forsters realized their windows might be defective when they began to notice what appeared to be seal failures causing secondary problems such as fogging at numerous other windows.

88.     As a result of seal failures the Forsters inventoried their windows and discovered water damage on or around numerous other windows.

89.     A recent inventory of their windows revealed at least 15 with *visible* signs of damage.  There is likely additional latent damage that cannot be seen due to coverage by window and adjacent components.

90.     Upon performing Internet research by the Forsters, they discovered that numerous other homeowners were experiencing the same or similar problems as they had been.

91.     As a result of Defendants' previous representations that the Windows were not defective and leaking, the Forsters did not put Defendants on notice that they became aware that all of their windows were defective, but instead filed the instant action.

92.     Defendants knew or should have known of the defect in the Windows at the time Forsters made their warranty claims because of similar warranty claims and complaints from customers throughout the country.

**EXHIBIT H**
**Page 15 of 35**

93.     Defendants knew or should have known that the Windows were the cause of the damage to the home, and not installation errors.  At the very minimum, Defendants should have tested the windows to ensure that no leakage was coming through the product itself; however, Defendants failed to even do that.

## CLASS ALLEGATIONS

94.     Plaintiffs bring this action individually and as representatives of all those similarly situated pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4) are met with respect to the Classes (collectively, "Class" or "Classes") defined below:

### DAMAGES CLASS

All persons and entities in the State of New York who are current or former owners of a structure on which Defendants' Pinacle and Legend Series windows are installed and whose windows have exhibited wood rot.

### NATIONAL INJUNCTIVE RELIEF CLASS

All persons and entities in the United States, who own or owned homes in which Defendants' wood clad windows are installed.

Excluded from the Classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants' companies and their legal representatives, assigns, and successors of Defendants; and (c) all persons who properly execute and file a timely request for exclusion from the Classes.

Plaintiffs proposes that the Class be divided into subclasses if and as necessary to align Class interests.

16

95.    The Classes are composed of thousands or more persons geographically dispersed throughout the State of New York and the Country, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Classes are ascertainable and identifiable from Defendants' sales records, distributor records, identifying marks on the Windows, and AAMA labels.

96.    The critical questions of law and fact common to the Classes that will materially advance the litigation is whether the Windows are inherently defective at the time they leave the factory, causing damage to Plaintiffs and Class Members' homes, contrary to the representations of Defendants and the expectations of the ordinary homeowner.

97.    Additional questions of law and fact common to the Classes that exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes include the following:

a)    Whether Defendants were negligent in their design and manufacture of the Windows;

b)    Whether the Windows contain design and manufacturing defects;

c)    Whether the Windows have not performed or will not perform in accordance with the reasonable expectations of ordinary consumers; and industry standard defined useful life of 20-25 years;

d)    Whether Defendants knew or should have known about the Window defects;

e)    Whether Defendants concealed from consumers and/or failed to disclose to consumers the defects;

f)    When Defendants knew or should have known about the defects;

g)    Whether Defendants concealed and/or failed to disclose the defective condition of the Windows to consumers;

h)    Whether Defendants' warranties are unconscionable and void *ab initio*;

17

EXHIBIT A - Page 254 of 349

i)  Whether Defendants breached their express warranty that the Windows were free of defects in material and workmanship;

j)  Whether Defendants breached implied warranties of merchantability by designing, manufacturing and selling defective Windows; were not fit for the ordinary purpose of exterior windows; and did not conform with the representations, promises, and affirmations Defendants made concerning the Windows;

k)  Whether Defendants' limited warranty contained limitations, exclusions, and disclaimers such as to cause it to fail of its essential purpose;

l)  Whether Plaintiffs and Class Members are entitled to compensatory damages;

m)  Whether Plaintiffs and the Class Members are entitled to replacement of their defective Windows with non-defective windows, and damages related to loss of use;

n)  Whether Plaintiffs and the Class Members are entitled to restitution and/or disgorgement;

o)  Whether Defendants falsely advertised and marketed its products to consumers;

p)  Whether the Windows conform to the applicable New York building codes, and industry and testing standards;

q)  Whether the Windows damage other property within Plaintiffs' and Class Members' homes;

r)  Whether Defendants concealed the defective nature of the Windows;

s)  Whether Defendants' limited warranty adequately disclaimed its liability;

t)  Whether Plaintiffs are entitled to prejudgment interest, attorneys' fees, and costs from Defendants; and

u)  Whether Defendants' conduct was negligent, reckless, willful, wanton, intentional, fraudulent or the like, entitling Plaintiffs and Class Members to statutory or punitive damages from Defendants.

98.  Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising,

warranting and selling the defective Windows and Defendants' conduct in concealing the defects in the Windows to owners, contractors, developers, and suppliers.

99.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class given that Plaintiffs are members of the Class they also seek to represent. Plaintiffs have retained counsel experienced and competent in product liability, complex litigation, and consumer class actions.

100.    This case is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable.

101.    Should individual Class Members be required to bring separate actions, this Court and/or courts throughout New York would be confronted with hundreds if not thousands of lawsuits clogging the court system, while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will lead to judicial inefficiency, and undue delay and expense to all parties and the court system, this class action allows for a single adjudication, judicial efficiency, and comprehensive supervision by a single court.

102.    Moreover, Plaintiffs does not foresee any difficulty in the management of this action as a class action and the amount of money at stake for each Class Member is not sufficient for each member to hire his or her own counsel, engineering and damage experts, or to incur additional out of pocket expenses to bring their own action.

**EQUITABLE ESTOPPEL**
(Statute of Limitations)

103.    Plaintiffs and Class Members are within the applicable statute of limitations for the claims presented hereunder because Plaintiffs and Class Members did not discover the defect, and could not have discovered the latent defects sooner than when they put Defendants' on notice of defects and damages.

104.    Due to the concealed location of deterioration and other leak locations, Plaintiffs are often unaware of the wood rot, degradation, and other failures until the end or expiration of Defendants' warranty period.

105.    Observation of damage at a small number or fraction of Windows could not have put Plaintiffs or Class Members on notice that *all* windows were suffering from design or manufacturing defects.

106.    Defendants made misrepresentations other than those that provide the basis for the underlying claims in this case, including that the damage observed was caused by things other than the Windows themselves, such as installation errors and condensation.

107.    Defendants represent on their website to Plaintiffs and the public at large that defects are "rare."

108.    Plaintiffs and Class Members relied on those representations in attempting remedies other than filing suit against Defendants, and incurred significant expense in repairing the wrong building components.

109.    Defendants are aware, or should have been aware of the defects because of the numerous warranty claims and complaints alleging similar defects and asserted against them throughout the United States, including numerous other lawsuits relating to the same Windows.

**EXHIBIT H**
**Page 20 of 35**

EXHIBIT A - Page 257 of 349

110.    Defendants are estopped from relying on any statutes of limitation or repose by virtue of their affirmative misrepresentations and their acts of concealment, which include Defendants' concealment from Plaintiffs, Class Members, and the general public that their Windows were and are defective, while continually marketing the Windows as a durable, suitable, and even superior product.

111.    Defendants had a duty to adequately investigate warranty claims, verify the representations made to Plaintiffs and Class Members with regard to the cause of damage suffered, and not misrepresent the cause of such damage.

112.    Defendants had a duty to disclose that their Windows were defective, unreliable, and inherently flawed in design and/or manufacture.

113.    Defendants had a duty to acknowledge damage to homeowner's windows and homes were a result of the Windows themselves.

114.    Plaintiffs and Class Members had no knowledge of, and no reasonable way of discovering, the latent defects found in Defendants' Windows at the time they purchased the product or their homes, residences, buildings, and other structures.

115.    Defendants did not notify, inform, or disclose to Plaintiffs and Class Members that there were defects in the Windows, or that damage caused to the Windows or homes were caused by defects.

116.    Because Defendants failed in their duties to investigate, verify, provide accurate representations regarding warranty claims, and notify Plaintiffs and Class Members that their product was defective, the statute of limitations should be tolled on Plaintiffs and Class Members' claims.

**EQUITABLE ESTOPPEL**
(Warranty Limitations and Exclusions)

117.    Defendants are estopped from relying on any warranty limitation or disclaimer as a defense to Plaintiffs and Class Members' claims.

118.    By virtue of Defendants' acts, the Windows installed in Plaintiffs' and Class Members' residences have not lived up to Defendants' warranties or representations, and given the defective condition of the Windows and the premature deterioration of the Windows, the Windows are significantly less valuable than what was purchased.

119.    Defendants knew or should have known that their Windows were defective in design and/or manufacture, and that said Windows were not fit for their ordinary and intended use, were not merchantable, and failed to perform in accordance with representations made, marketing materials and warranties disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiffs and Class Members.

120.    In fact, Defendants' warranty even purports to disclaim any performance grade (identifying whether the Window complies with applicable building codes) indicated by the labels attached to the Windows.

121.    Accordingly, any warranty provided by Defendants fails its essential purpose because it purports to warrant that the Windows will be free from defects for a prescribed period of time when, in fact, said Windows fall far short of the applicable warranty period.

122.    Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available under Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

123.    As a result, any time limitations, exclusions, or disclaimers, which restrict the remedies encompassed within Defendants' warranties, are unconscionable and unenforceable, and, therefore, Defendants are estopped from relying on the same.

## COUNT I
(Breach of Express Warranty)

124.    Plaintiffs, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

125.    After putting their Windows into the stream of commerce, Defendants expressly represented and warranted that the Windows were appropriate for their intended use and were free from defects and that they conformed to all applicable building codes, and industry and testing standards.

126.    Specifically Defendants provided that their Windows and components would "free from defects in materials and workmanship which significantly impair their operation and proper usage."

127.    The express warranty is a warranty of future performance for a time period of no less than 10-years.

128.    Defendants entered into contracts with Plaintiffs, Class Members, retailers, builders, suppliers and/or contractors to sell Windows to be installed at Plaintiffs and Class Members' properties.

129.    Plaintiffs and Class Members were intended third-party beneficiaries of the contract between Defendants and Plaintiffs and Class Members' respective builders.

130.    The representations and warranties made by Defendants in marketing and selling their Windows formed part of the basis of the bargain between Defendants and the purchasers of the Windows at the time of the sale.

131.    Plaintiffs and other Class Members selected and purchased the Windows being installed in their homes.  Additionally, the typical purchase agreement for the construction or sale of residences or structures contained provisions transferring or assigning the manufacturers' warranties, including window warranties. Such provisions are valid transfers and assignments, and the transferred and assigned warranties formed part of the basis of the bargain at the time the home was purchased.

132.    Further, Defendants' warranty expressly provides for transfer to a subsequent purchaser of a home.

133.    Defendants' warranty certifies that they will replace or repair components of their products found to be defective for at least 10-years.

134.    Upon information and belief, all of Defendants' written warranties applicable to Class Members contain the same or similar provisions.

135.    Through their written warranties, brochures, marketing materials, website, and other representations regarding the performance, durability, and quality of the Windows, Defendants created express warranties for the benefit of Plaintiffs and Class Members.

136.    Thus, Defendants' express warranties and representations are applicable to the Windows installed in Plaintiffs' and Class Members' residences and/or structures.

137.    Specifically, Defendants expressly warranted to Plaintiffs and Class Members that the Windows purchased by Plaintiffs and Class Members were free from defects in materials and workmanship that substantially impair their operation or performance and that they would last at least ten years.

138.   However, despite Defendants' assurances, as described in detail *supra*, the Windows contain the aforementioned defects and do not conform to all applicable building codes, industry and testing standards, and are not free from defects.

139.   These aforementioned defects are present when the Windows leave Defendants' control.

140.   Defendants breached the express warranty by selling Windows that were defective and not reasonably fit for their ordinary and intended purpose and did not conform to Defendants' express representations and/or warranties. Further, contrary to Defendants' representations and warranties, the Windows were not free from design and material defects for at least 10-years.

141.   By their conduct and defective products, Defendants have breached their express warranty with Plaintiffs and members of the Class.

142.   In addition, Defendants have breached their express warranties by not providing Plaintiffs and Class Members with Windows that were free from defects and/or by suppressing warranty claims.

143.   Defendants' written warranties are also unconscionable and fail their essential purpose because they purport to warrant that the Windows will be free from manufacturer defects for at least ten years when, in fact, the Windows fall far short of the applicable warranty period. To the contrary, due to the leakage in the Windows, Defendants' Windows begin failing after only a few years' (or less) use.

144.   Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available in Defendants'

warranties are limited to such an extent that they do not provide a minimum adequate remedy. Further, the warranty is inadequate because by its 10-year limitation alone, Defendants seeks to reduce the reasonable expected life of the product.

145.    Defendants breached their warranties by failing to adequately investigate the warranty claim.

146.    Defendants breached their warranties by misrepresenting the cause of damage to Plaintiffs and Class Members' homes.

147.    Defendants breached their warranties by failing to adequately repair or replace under the terms of the warranties.

148.    Plaintiffs and Class Members put Defendants on notice of their warranty claims and the issues with their Windows.

149.    Defendants refused Plaintiffs and Class Members' warranty claims and refused to repair or replace the Windows or damage caused by the defective Windows.

150.    Defendants even made material misrepresentations to Plaintiffs and Class Members about the cause of damages at issue in the warranty claim in an effort to conceal the defects and prevent Plaintiffs and Class Members from receiving the benefit of the warranty, and also prevent them from discovering the Windows are defective.

151.    Plaintiffs and Class Members adequately met all pre-suit notice requirements for their warranty claims.

152.    Defendants have denied, failed to pay in full, and/or failed to respond to warranty Claims.

153.    Accordingly, the limitations on remedies and the exclusions in Defendants' warranties are unconscionable and unenforceable.

154. As a result of Defendants' breaches of express warranties, Plaintiffs and Class Members have suffered actual damages in that they purchased the Windows, and also homes, residences, buildings, and other structures containing defective Windows that have failed or are failing prematurely due to leakage and premature degradation of the wood components. This failure has required or is requiring Plaintiffs and Class Members to incur significant expenses in repairing or replacing their Windows. Repair and replacement is necessary to remedy the damage to the homes, and to prevent on-going and future damage to the underlying structures or interiors of Plaintiffs and Class Members' residences.

155. Thus, as a direct and proximate result of Defendants' breach of the express warranty on the Windows, Plaintiffs and Class Members have suffered actual and consequential damages.

## **COUNT II**
### (Breach of Contract)

156. Plaintiffs, individually and on behalf of all others similarly situated, re-allege and incorporate by reference all foregoing allegations as though fully set forth herein.

157. Defendants' Limited Warranty is a contract offered to, and accepted by Plaintiffs and Class Members in conjunction with the purchase of the Windows and homes.

158. Implied in Defendants' Limited Warranty is a covenant of good faith and fair dealing.

159. Payment for the Windows and homes wherein the Windows are installed, was made in consideration for high quality windows and the promise of repair and replacement services under the Limited Warranty.

160. The Limited Warranty provided for, *inter alia*:

a) That the Windows would be free from defects in materials and workmanship;

b) The Windows come with coverage against insulated glass seal failures for 20 years and coverage for workmanship and materials for 10 years; and

c) In the event of a component failure under Defendants' 10-year warranty, Defendants will provide no-charge replacement parts, under the terms of the warranty, against defects under normal conditions for 10 years.

161.    Plaintiffs and Class Members satisfied all terms of the Limited Warranty by payment, claims procedure compliance, and meeting all other requirements in order to obtain repair and replacement.

162.    Defendants failed to comply with the terms of the Limited Warranty by failing to provide non-defective Windows, which were installed in Plaintiffs and Class Members homes.

163.    Defendants failed to comply with the terms of the Limited Warranty by failing and/or refusing to adequately repair or replace defective Windows with non-defective windows or components.

164.    Defendants' conduct at all times relevant hereto constitutes a breach of contract, and breach of their duty of good faith and fair dealing.

165.    Defendants' intentionally and purposely conducted themselves in a manner that had the effect of destroying or injuring the right of Plaintiffs and Class Members' ability to receive the fruits of the contract, including:

a) Providing Windows that Defendants knew were defective;

b) Failing or refusing to repair or replace defective Windows or components;

c) Concealing known defects;

28

    d)   Denying, or otherwise failing or refusing, to respond to warranty claims without adequately investigating the cause of reported damage; and

    e)   Other bad faith or unfair conduct that may be uncovered through discovery.

166.    Defendants' conduct constitutes evasion of the spirit of the bargain; lack of diligence in responding to or investigating warranty claims; willful rendering of imperfect performance; abuse of Defendants' power with regard to specific terms, exclusions and limitations; and failure to cooperate in Plaintiffs and Class Members' abilities to comply with claims procedures.

167.    Plaintiffs and Class Members have been damaged by Defendants' breaches of contract and implied covenant of good faith and fair dealing.

168.    By virtue of the foregoing, Plaintiffs and Class Members are entitled to an award of damages and other appropriate relief, including attorney's fees.

## COUNT III
### (Fraudulent Misrepresentation)

169.    Plaintiffs, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

170.    Defendants falsely and fraudulently represented to Plaintiffs, the Class Members, purchasers, and consumers in general that Defendants' Windows would be free from defects and fit for their customary and normal use.

171.    Defendants falsely represented to Plaintiffs, Class Members, purchasers, and consumers in general that the Windows were warranted against defects in material and workmanship when, in fact, the limited warranty was so limited as to prevent and preclude any warranty protection against the known defect in the Windows.

**EXHIBIT H**
**Page 29 of 35**

172.     Defendants falsely represented to Plaintiffs, Class Members, purchasers, and consumers in general that the Windows were superior products, and were building code, industry standard and testing compliant.

173.     Defendants falsely represented to Plaintiffs, Class Members, and other purchasers that the Windows were suitable exterior building products, and could withstand the climates at the locations where the Windows were distributed and installed.

174.     When Defendants made the aforementioned representations, they knew or should have known those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

175.     The aforementioned representations were made by Defendants with the intent to defraud and deceive Plaintiffs, Class Members and/or the consuming public, all of which evinced reckless, willful, indifference to the safety and welfare of Plaintiffs and Class Members.

176.     At the time the aforesaid representations were made by Defendants, Plaintiffs and the Class Members were unaware of the falsity of said representations and reasonably believed them to be true.

177.     In reliance upon said representations, Defendants' Windows were installed and used on Plaintiffs and Class Members' properties, thereby causing Plaintiffs and the Class Members to sustain damages and injury to their property and/or to be at an increased risk of sustaining damage and injury in the future.

178.     Defendants knew and were aware, or should have been aware, that their Windows were defective and not fit for their customary and normal use.

179.     Defendants knew, or should have known, that Defendants' Windows had a potential to, could, and would cause severe damage and injury to property owners.

**EXHIBIT H**
**Page 30 of 35**

180.    Defendants brought their Windows to the market and acted fraudulently, wantonly and maliciously, to the detriment of the Plaintiffs and the Class Members.

181.    By reason of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer property loss, financial damage, and injury.

## COUNT IV
### (Fraudulent Concealment)

182.    Plaintiffs, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

183.    Defendants knew or should have known that the Windows were defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Defendants nor the reasonable expectations of ordinary consumers.

184.    Defendants fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that the Windows were defective.

185.    Defendants had exclusive knowledge of the defective nature of the Windows at the time of sale. The defect is latent and not something that Plaintiffs or Class Members, in the exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible.

186.    Defendants had the capacity to, and did, deceive Plaintiffs and Class Members into believing that they were purchasing Windows free from defects.

187.    Defendants undertook active and ongoing steps to conceal the defect. Plaintiffs are aware of nothing in Defendants' advertising, publicity or marketing materials that disclosed the truth about the defect, despite Defendants' awareness of the problem.

31

188.   Defendants continued to conceal the defect by failing to acknowledge that the damage giving rise to warranty claims was caused by the Windows themselves; and

189.   The facts concealed and/or not disclosed by Defendants to Plaintiffs and the Class Members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Windows from their builders.

190.   Defendants intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiffs and the Class to act thereon.

191.   Further, upon notification from Plaintiffs about water intrusion, Defendants failed to inform Plaintiffs of the defect, misrepresented the cause of the damage, failed to otherwise respond to warranty claims, and failed to rectify the problem.

192.   Plaintiffs and the Class justifiably acted or relied upon the concealed and/or undisclosed facts to their detriment, as evidenced by their purchase of the Windows and subsequently, their inability to recognize that the Windows were defective until after the warranty expired.

193.   Plaintiffs and Class Members suffered property and financial loss in an amount to be proven at trial as a result of Defendants' fraudulent concealment and nondisclosure because:

   a.   they would not have purchased the Windows on the same terms if the true facts concerning the defective Windows had been known;

   b.   they paid a price premium due to the fact that they would be free from defects; and

   c.   the Windows did not perform as promised. Plaintiffs also would have initiated this suit earlier had the defect been disclosed to them.

194.   By reason of the foregoing, Plaintiffs and Class Members suffered, and continue to suffer, property loss, financial damage and injury.

## COUNT V
(Strict Liability)

195.    Plaintiffs, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

196.    At all times relevant to this Complaint, Defendants were in the business of designing, manufacturing, marketing, distributing and/or selling Windows and had a statutory duty of care.

197.    Defendants breached this duty because their Windows are defectively designed and manufactured and are unreasonably dangerous in that:

   a.    they allow water to intrude into the interior of residences or buildings, resulting in damage to the Windows and consequential damage to the structure into which the Windows are installed;

   b.    they rot, degrade, and otherwise fail, thereby allowing air and water to intrude into the interior of the residence and cause damage to the Windows and consequential damage to the structure into which the Windows are installed; and

   c.    the perpetual water, air, and moisture penetration leads to deterioration and the loss of structural integrity of the window and adjacent building components, and otherwise do not protect the interior habitable space from the outside elements.

198.    Were the defects known at the time of design and manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed and manufactured in that manner.

199.    Feasible alternatives existed to make the Windows safer for intended use at the time of design. Defendants were knowledgeable about the products and aware or should have been aware that feasible alternatives existed which would maintain the usefulness of the Windows and eliminate the harm.

33

200.    The Windows reached the Plaintiffs and Class Members, and were intended to reach the Plaintiffs and Class Members, without substantial change in the condition in which they were sold.

201.    The defect in the Windows was present when it left the Defendants' control.

202.    Defendants are strictly liable for having designed, manufactured, marketed, distributed, and sold the Windows, which were defective, to the Plaintiffs and Class Members.

203.    As a direct, foreseeable, and proximate result of the sale of the defective Windows to Plaintiffs and Class Members, the Plaintiffs and Class Members have suffered significant physical damage to their properties, other contamination and deterioration, as well as diminution in the value of the properties.

WHEREFORE, Plaintiffs, individually and on behalf of others similarly situated, pray for a judgment against Defendants as follows:

1.    For an Order certifying the Classes, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiffs as representatives of the Classes, and appointing the law firms representing Plaintiffs as counsel for the Classes;

2.    For compensatory damages sustained by Plaintiffs and the Damages Class;

3.    For payment of costs of suit herein incurred;

4.    For both pre-judgment and post-judgment interest on any amounts awarded;

5.    For punitive damages;

6.    For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

**EXHIBIT H**
**Page 34 of 35**

7.      For such other and further relief as the Court may deem just and proper.

Dated: March 29, 2016                            Respectfully submitted,

                                                SQUITIERI & FEARON, LLP

                                                By: /s/ Stephen J. Fearon, Jr.
                                                        Stephen J. Fearon, Jr.
                                                32 East 57th Street – 12th Floor
                                                New York, New York 10022
                                                Tel: (212) 421-6492
                                                Fax: (212) 421-6553
                                                Email: stephen@sfclasslaw.com

35

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**(INDIANAPOLIS DIVISION)**

| | | |
|---|---|---|
| WALTER and STEPHANIE CLARK, | ) | |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | **Case No.  1:16-cv-721** |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| WINDSOR WINDOW COMPANY d/b/a | ) | |
| WINDSOR WINDOWS AND DOORS, | ) | |
| and WOODGRAIN MILLWORK, INC. | ) | |
| | ) | |
| DEFENDANTS. | ) | |

**CLASS ACTION COMPLAINT**
**(JURY TRIAL DEMANDED)**

Plaintiffs, Walter and Stephanie Clark, by and through his undersigned counsel, on behalf of themselves and all other persons and entities similarly situated, alleges:

**INTRODUCTION AND SUMMARY OF ACTION**

1.      Plaintiffs, Walter and Stephanie Clark ("Plaintiffs"), bring this action both individually and as a proposed class action against Defendants Windsor Window Company d/b/a Windsor Windows and Doors, and Woodgrain Millwork, Inc. ("Defendants " or collectively "Windsor"), on behalf of themselves and all other similarly situated persons and entities, who currently have wood or wood clad windows manufactured by Windsor, installed in their homes.

2.      Plaintiffs and the Class are purchasers and owners of structures that contain Pinnacle and Legend Series wood and wood clad windows (hereinafter the "Windows").

3.      For decades, Windsor has manufactured, advertised, sold, and distributed the Windows throughout the United States for installation on homes or other structures.

**EXHIBIT I**
**Page 1 of 38**

4.     At all times relevant hereto, Defendants marketed themselves as being the manufacturers of windows with the "highest" quality, strong, durable, and otherwise a superior building product.

5.     However, unbeknownst to Plaintiffs and Class Members, the Windows contain latent defects, which cause damage to the homes, personal property, and Windows themselves.

6.     Specifically, at the time the Windows leave the manufacturing plant, they contain a latent defect that allows water to infiltrate and pass through the Windows' frame corners, glazing pocket, and aluminum cladding, leading to deterioration of the wood components of the window and water and air leakage into the interior of the home damaging the interior wall cavity, trim, drywall, framing components, and other property.

7.     The wood preservative applied to the wood components of the Windows is also inadequate in its composition and application, further accelerating the rate of the deterioration.

8.     Accordingly, Defendants' Windows fail to comply with the building codes in place at all times relevant, and industry standards such as AAMA, ASTM, WDMA, I.S.4, and others, and have also breached their express and implied warranties with respect to their Windows.

9.     Windsor knew about the defects at the time the Windows leave the factory, continuing to place the Windows into the market.

10.     When Plaintiffs and Class Members notify Windsor and/or its Agents upon discovery of damage, Windsor fails to notify the customers of known defects, fails to perform any actual investigation of the issues, denies the claims and/or fails to respond at all.

11.     Windsor has repeated perpetrated fraud on Plaintiffs and Class Members through its representations regarding the quality of the Windows, that the Windows do not contain

**EXHIBIT I**
**Page 2 of 38**

defects causing damage to the home, that other things such as installation and condensation are the cause of defects, and other such representations.

12.     Windsor's acts and omissions in connection with its design, manufacture, warranty, sale, and delivery constitute violations of warranties—both express and implied, negligence and negligent misrepresentation, violations of state consumer protection and strict liability laws, breach of contract, and fraudulent concealment.

## PARTIES

13.     Plaintiffs Walter and Stephanie Clark are, and at all times relevant hereto, have been citizens and residents of Indiana. Specifically, Plaintiffs reside in Pendleton, Madison County, Indiana. Construction of Plaintiffs' home was completed in October of 2001, wherein Windsor Pinnacle Windows are installed.

14.     Defendant Windsor Window Company d/b/a Windsor Windows and Doors was and is a company organized and existing under the laws of the State of Idaho, with a principal place of business in the State of Iowa. At all times relevant herein, Windsor transacted and conducted business in Indiana.

15.     Defendant Woodgrain was and is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business in the State of Idaho.

16.     At all times relevant herein, Woodgrain was the parent company of Windsor, provided Window components and materials to Windsor, and jointly transacted and conducted business in Indiana.

17.     Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the Windows at issue.

3

**EXHIBIT I**
**Page 3 of 38**

EXHIBIT A - Page 275 of 349

18.     At all times relevant herein, the Defendants were actual and/or *de facto* joint ventures in the design, development, manufacture, marketing, and sales of the Windows at issue.

19.     At all times relevant herein, Defendants utilized local distributors as their agents and representatives in responding to warranty claims.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and cost, and because Defendants are citizens of other States.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiffs and members of the proposed Class reside in this District. Furthermore, Defendants regularly transact and solicit business in this District.

## COMMON FACTUAL ALLEGATIONS

22.     Windsor is a leading manufacturer of high end, residential windows distributed throughout North America.

23.     Windsor has sold, directly or indirectly (through distribution/trade partners), Pinnacle and Legend Series windows that have been installed in tens of thousands of homes in the United States and the State of Indiana.

24.     Pinnacle and the hybrid Legend Series windows are aluminum wood clad windows, which include various types such as double hung, transom, fixed, casements, awning, and glide-by.

25.     At all times relevant herein, including at the time the Windows were sold to Plaintiffs and Class Members, the Windows are moveable goods as defined by the Uniform Commercial Code.   The Windows are shipped as individual units by the manufacturer to the

4

**EXHIBIT I**
**Page 4 of 38**

EXHIBIT A - Page 276 of 349

project, and later installed in the home.  Windows are capable of being removed from the home after construction.

26.    Through various forms of media (including, by way of example, television, print ads, brochures, the Internet, on-site brochures and promotional documents, catalogs, and/or product labeling) as well as by oral affirmations that were available to Plaintiffs and the general public, Windsor marketed, advertised and warranted that the Pinnacle and Legend Series windows were merchantable, fit for the ordinary purpose for which such goods were used and was free from defects in materials and workmanship.

27.    Windsor's marketing and advertising strategy is to represent the Windows as superior, "high quality" residential windows. Further, Windsor marketed and advertised that its Windows would last at least 10 years without any defects.

28.    Through sales brochures, internet websites and marketing literature, which were widely distributed to building professionals and were available to Plaintiffs, Class Members, builders, contractors, and the general public, Windsor represented that their Windows are strong, durable, reliable, long-lasting, compliant with industry standards and building codes, and suitable for its intended use as an exterior building product.

29.    Consistent with this marketing strategy, Windsor charges a price for the Windows, which is in excess of the average prices charged for other residential windows.

30.    Despite knowing that the Windows contained latent defects which lead to failure prior to the warranted period and the average life expectancy of a window per industry standards, Defendants failed to disclose such defects to purchasers of its Windows, the builders of the purchasers' structures, and owners of the Windows.

31.    Specifically, Defendants failed to disclose that the Windows were defective in

**EXHIBIT I**
**Page 5 of 38**

material and workmanship as a result of the design and manufacturing practices of the Defendants.  As a result of the defect there is a high probability the Windows will fail, and likely have developed wood rot in the Window sashes and frames.  Unless the entire window is replaced, the wood rot will progress to adjoining building structures.

32.     The Windows specifically suffer from the following defects:

a.   Inadequate water management design which permits leakage through frame corner seals, weatherstripping, and glazing;

b.   Inadequate wood preservative which fails to prevent wood components from prematurely rotting, promoting fungal growth, and otherwise leading to water intrusion and air leakage into the home.

33.     The defects is created by the Defendants' design and manufacturing process, causing the following effects and damages:

a.   Resulting wood rot, leakage, and deterioration to be masked by cladding of the Windows on the exterior;

b.   Resulting wood rot, leakage, and deterioration to be masked by adjacent building and window components, such as trim, sash railing, lock systems, and other components.

34.     The wood deterioration begins as initial moisture penetration, retention, and saturation, which takes an extended period of time to advance to the stage in which it becomes visible upon ordinary inspection.

35.     The defects and damage are so latent that the nature and extent of both require identification by industry experts.

36.     The defects in the Windows lead to failure well in advance of the expected useful

6

**EXHIBIT I**
**Page 6 of 38**

lives of the Windows, under both the limited 10-year warranty period and industry standard of 20-25-years.

37.    The water intrusion and above-described damage resulting from the defective Windows constitute "occurrences" resulting in "property damage" to property other than Defendants' "product" as those terms are commonly defined and used in the typical commercial general liability insurance policy.

38.    The above-described defects are due to design, engineering, and manufacturing errors, all of which should have been within Defendants' expertise.

39.    Defendants represented to Plaintiffs and the public at large that water intrusion is caused by other sources.  In fact, Defendants' website states that only "[R]arely, a product may be defective."

40.    Plaintiffs, Plaintiffs' builders, Plaintiffs' subcontractors, and/or agents, as well as Class Members, Class Members' builders, contractors, subcontractors, and/or agents, relied upon Windsor's representations, marketing and warranties when purchasing the Windows.

41.    Because the Windows prematurely fail and permit water and air intrusion, they violate the building codes, industry and testing standards, and amount to a breach of the Windows' warranties.

42.    The defects exist at the time the Windows leave the factory.

43.    Failure of the Windows begins upon installation and continues during repeated and prolonged exposure to weather.

44.    Because of their touted expertise in window design and manufacturing, Defendants knew or should have known that the defects were present at the time the products left their control.

**EXHIBIT I**
**Page 7 of 38**

45.     Defendants knew or should have known the Windows would prematurely fail, but did not adequately correct the defective design or manufacturing process which leads to damage in the homes in which the Windows are installed.

46.     Defendants failed to warn purchasers, installers or users of the above-described risks of failures, which would have been material and instrumental in the decision to purchase the Windows.

47.     The purchase of Defendants' Windows comes with a written express warranty, which forms part of the basis of the bargain between Defendants and the purchaser.

48.     The Windows' written express warranty also forms part of the basis of the bargain between the seller of the home and homebuyers, including Plaintiffs and Class Members.

49.     The typical purchase agreement for the sale and/or construction of Class Members' homes likely contains one or more provisions transferring or assigning manufacturers' and suppliers' warranties to them at the time of purchase or conveyance.

50.     The transfer or assignment of the manufacturers' and suppliers' warranties, which would include the Window warranties, forms part of the basis of the bargain at the time Plaintiffs and Class Members purchased their homes.

51.     Even where a manufacturer or supplier warranty transfer provision is not present, the average homeowner expects, at the time of purchase, his or her home comes with such warranties, including a window warranty against defects.

52.     Defendants also expressly and implicitly represent in documents available to the public that their warranty is part of the product being sold, and that the written warranties apply to the owners of the homes containing the Windows.

53.     Defendants' warranty expressly applies to subsequent purchasers.

**EXHIBIT I**
**Page 8 of 38**

54.     Defendants' warranties explicitly apply to future performance, and Defendants represent in their express warranty and documents available to the public that the Windows will be free from defective materials and workmanship for at least 10 years.

55.     Defendants' warranties expressly provide that adequate repair or replacement for defective components, including cladding, glazing pockets, frame corners, wood components, and other components, will be made pursuant to the 10-year warranty.

56.     Plaintiffs and putative Class Members relied upon these warranties and other representations when they purchased the Windows and/or structures containing the Windows.

57.     Plaintiffs and putative Class Members reasonably expected and expect that the Windows would last longer than ten (10) years.

58.     Plaintiffs and putative Class Members reasonably expected that any repairs or replacements under the warranty would be adequate, and that replacement product would not be defective.

59.     Defendants' representations, expressly and impliedly, through their website, brochures and marketing materials, that the Windows are suitable and free from defects, were intended to, and likely did, affect the market by inducing builders, contractors, suppliers and others to purchase the Windows.

60.     Plaintiffs and other homeowners across the United States put Defendants on notice of defects and resultant damage in the Windows.

61.     Defendants' shipping of the Windows with actual or constructive knowledge of the defects, or with negligent or reckless disregard of the presence of defects, constituted a breach of their express warranty, and makes the limitations of the express warranty unconscionable in all respects, and, therefore, void *ab initio*.

9

**EXHIBIT I**
**Page 9 of 38**

EXHIBIT A - Page 281 of 349

62.     The published written warranties include the following unconscionable limitations and exclusions:

a.  The warranty requires that the homeowner be able to identify a "defect" in the Windows;

b.  The warranty is ambiguous with regard to coverage of components;

c.  The warranty limits coverage of wood warping;

d.  The warranty excludes damages caused by design of the Windows;

e.  The warranty excludes the cost of labor for repair or replacement arising from defects;

f.  The warranty excludes the cost of repainting or refinishing arising from defects;

g.  The warranty places unreasonable time limitations on notifying Defendants  of defects, including Defendants' unilateral determination of when the homeowner should have "reasonably" discovered a defect;

h.  The warranty shortens the warranty period by beginning from the date of manufacture, regardless of when the Window is purchased, installed and put into use and operation;

i.  The warranty gives Defendants the final determination of whether or not a defect exists;

j.  The warranty potentially requires payment of a field service fee for inspecting the Windows;

k.  The warranty requires the homeowner to produce information that may not be accessible or otherwise readily understandable, including IGU and/or glass codes;

l.  The warranty purports to limit Defendants' responsibility by providing a remedy of repair, replacement, or refund a portion of the original purchase price, solely at Defendants' option;

m.  The warrant purports to exclude any liability for consequential, incidental, or punitive damages;

n.  The warranty purports to exclude any liability in excess of the original purchase price of the product;

**EXHIBIT I**
**Page 10 of 38**

EXHIBIT A - Page 282 of 349

o.  The warranty limits repair and replacement parts and products to the remainder of the original warranty period;

p.  The warranty purports to disclaim all warranties, expressed or implied, including implied warranties of merchantability or fitness for a particular purpose;

q.  The warranty purports to disclaim performance ratings identified by the AAMA and NFRC ratings affixed to the Windows by the Defendants;

r.  The warranty purports to disclaim any obligation to comply with building standards, including applicable building codes, and industry and testing standards;

s.  The warranty purports to allow Defendants to inconsistently apply the warranty at their own discretion;

t.  The warranty's 10-year limitation is in and of itself unconscionable;

u.  The warranty states it is voided by a number of conditions unilaterally determined by Defendants, including "improper" installation; and

v.  In all other ways revealed during discovery, and/or otherwise determined at trial.

63. The warranty is non-negotiable and is so one-sided that no reasonable person would ever knowingly agree to its terms if properly disclosed.

64. Defendants' current online claims procedure directs owners of their windows to contact a local distributor if they believe they need to file a warranty claim.

65.    These local distributors act as agents of Windsor in fielding, responding, and making determinations regarding homeowners' warranties.  Accordingly, the agents' acts, omissions, and representations are binding upon Windsor.

66.    Further, upon information and belief, Defendants have engaged in a pattern and practice of failing to honor or discouraging warranty claims by representing that damage is not caused by the Windows themselves, by failing to respond to homeowners at all, by requiring the owner to pay for an inspection of the Windows, and/or by requiring the homeowner to pay for all costs associated with repair or replacement of the Windows, including the labor for such repair

11

EXHIBIT I
Page 11 of 38

EXHIBIT A - Page 283 of 349

or replacement.

67.    The above described pattern and practice by Defendants have the effect of pushing warranty claims past the expiration date, discouraging defect claims, and/or continuing to pursue remedies through Defendants.

68.    Moreover, during contact with Plaintiffs and Class Members, Defendants concealed their knowledge of the defects in the Windows in the Class Members' residences and otherwise failed to acknowledge that the Windows themselves cause the damage to the Windows and the homes.

69.    As Defendants have known or should have known of their Windows' defects and have failed to timely honor their warranty, the warranty has failed its essential purpose and the limitations therein are null and void, and Plaintiffs and Class Members have otherwise not received the value for which they, their builders, or their contractors bargained for at the time the Windows were purchased or transferred to homeowners.

70.    The defects in Defendants' Windows also make the Windows unfit for their intended use.

71.    Given the leaking, rotting, premature degradation and failure of the Windows, the Windows have a reduced life expectancy and require unexpected maintenance, repair, and replacement by Plaintiffs and Class Members.

72.    The Windows' defects and resultant damages have caused a diminution in the value of the homes.

73.    The Plaintiffs and Class Members have and will suffer a loss of use related to the Window related damage, and repair or replacement that has or will occur at the Windows.

74.    Defendants knew or should have known that the Windows did not and do not

**EXHIBIT I**
**Page 12 of 38**

satisfy industry or testing standards.

75.    Defendants knew or should have known that the Windows were not a suitable exterior building product, in that they were not capable of withstanding the weather conditions in which the Windows were distributed and installed.

76.    Defendants knew or should have known that their Windows were defective in design and manufacture; not fit for their ordinary and intended use; not merchantable; and failed to perform in accordance with the advertisements, brochures, representations, marketing materials, and warranties disseminated by Defendants.

77.    The Windows failed to conform to the reasonable life, performance, or other expectations of ordinary consumers such as Plaintiffs and Class Members.

78.    Because the Windows leak, and allow for increased water absorption, water penetration, rot, degradation, cause reduced life expectancy, and otherwise fail, the Windows are neither durable no suitable for use as an exterior building product.

79.    The above-described defective conditions of the Windows and resultant damages are present in Plaintiffs' home and are common among Class Members.

80.    Plaintiffs and Class Members have been proximately harmed by the Windows' above-described defective condition(s) and Defendants' above-described conduct.

## WALTER AND STEPHANIE CLARK

81.    In 2001, Walter and Stephanie Clark began construction of their home in Pendleton, Indiana.  Over thirty (30) wood clad, Pinnacle Series Windsor windows were purchased and installed during construction of the home.  Construction of the home was completed in October of 2001, at which time the family moved in.

**EXHIBIT I**
**Page 13 of 38**

82.    At the time the windows were selected for purchase, the Clarks specified wood clad windows to be installed.  The general contractor selected Windsor windows for installation as a high quality residential window.

83.    The Clarks relied on the expertise of the contractor, and the Defendants' wood clad windows were selected and installed.

84.    The Clarks constructed and paid for the home containing Defendants' windows based upon the representations of the contractor, and belief that the Windows were free of defects, the Windows were suitable for the Indiana climate, and that the Windows were compliant with building codes and industry standards.

85.    Unknown to the Clarks, the Windows were defective in that they allowed moisture, water, and air to penetrate through the Window components, causing severe leaking, mold, fungal growth, staining, and water damage to the trim, drywall, sheeting, insulation, and framing components.

86.    The characteristics of the Window defects were present in the Windows when they left the factory, and were part of the Window by design and manufacture.

87.    The Clarks have wood deterioration and other damage to the Windows, and significant damage to adjacent building components, including structural framing, and to personal property.  They have also incurred thousands of dollars in expenses to repair the Windows, framing, and other effected areas of the home.

88.    Within the first year of moving in the Clarks noticed water staining, which appeared to be running from under a window all the way down to the baseboard.

14

**EXHIBIT I**
**Page 14 of 38**

EXHIBIT A - Page 286 of 349

89.     Upon belief that a window was leaking the Clarks called their window supplier, Windows & Kitchens of Indiana, an authorized distributor and agent of Windsor, and notified it of a potential leak.

90.     A representative of Windows & Kitchens of Indiana was deployed to the Clarks' home to inspect the window.  After a brief visual inspection, the representative told the Clarks that the window was not leaking.

91.     Based on these representations, the Clarks believed the water to be a fluke and simply repainted the baseboard.

92.     Sometime thereafter, the Clarks noticed that the water staining had reappeared. Again they contacted the, representatives from Windows & Kitchens of Indiana.  Again, the representative reiterated that the windows were not causing the leaks and effectively denied replacement under the warranty.

93.     The Clarks contacted their homeowners insurance company to inspect the water staining below the window.  The inspector sent from the insurance company told the Clarks that the window was not leaking.

94.     The Clarks later consulted a contractor, who removed the MDF trimboard from under the window and replaced it with wood trim.   The Clarks believed they had remedied all damage and issues with this window.

95.     The Clarks relied on the representations of Windsor and their homeowner's insurance representative, and consequently did not believe their windows were defective or causing damage.  Further, based upon their reliance of these representations, the Clarks did not seek repair, replacement, or any other remedy from Windsor associated with the windows.

**EXHIBIT I**
**Page 15 of 38**

96.     Defendants' representative never tested the windows or performed a destructive examination, but based the representations that the Windows were not leaking on a visual inspection.

97.     Separately and unrelated from the above-mentioned windows, the Clarks *purchased* six (6) replacement Windsor Windows in approximately 2004 related to IGU failures and fogging.

98.     Unbeknownst to the Clarks, the replacement product contained the same latent defects as the rest of the Windows, which permit leakage and rot.

99.     In 2014, the Clarks purchased an additional replacement window for their Great Room, from Windows & Doors of Indiana (the successor-in-interest to Windows & Kitchens of Indiana).  This replacement was also due to fogging and IGU failures.

100.    Like the other replacements, this window suffers from the same latent defects as the rest of the Windows, which permit leakage and rot.

101.    Windows & Doors of Indiana is at all times relevant hereto an authorized distributor and representative of Windsor.

102.    In 2015, the Clarks began to renovate their home.  When they pulled up the carpet in the guest bedroom as part of the renovation they discovered extensive water intrusion, which had significantly damaged portions of the home including the drywall, insulation, floorboards, electrical wiring, and other building components.

103.    When it was determined that a window needed to be replaced as part of the repair, Mrs. Clark contacted Windsor's representative, Windows & Doors of Indiana to order a replacement.

16

**EXHIBIT I**
**Page 16 of 38**

EXHIBIT A - Page 288 of 349

104.    Following additional destructive examination of the home, it became evident that the windows might be causing or contributing to the extensive damage to the home.

105.    Accordingly, on September 1, 2015, Mrs. Clark wrote to Windsor's representative and asked that they inspect the window during replacement to determine whether the window was "bad."   She further indicated that if the inspection revealed the window was defective, she would request a replacement free of charge.  Mrs. Clark reiterated that if the damage was truly the result of a faulty window, it could have caused the electrical short discovered, putting her family at risk and causing the rot discovered under the floorboards.

106.    Mrs. Clark's request for Windsor's representative to truly inspect the window, clearly and unequivocally indicates that as of September 2015, she still had not discovered the windows were in fact defective and that Windsor's agents had fraudulently covered up the defects and resultant damage to the Clarks' home through their representations.

107.    Windsor's representative responded by denying an inspection or replacement product, and instead ordered another Windsor replacement window.

108.    Further destructive examination and repairs at the end of 2015, revealed that it was in fact the window causing and contributing to the extensive damage to the home, carpet, floor boards, exterior sheathing, framing components, and other parts of the building.  In fact, when the window in the guest room was being removed it simply fell out of the rough opening.

109.    It was not until then that the Clarks knew the windows were defective, and that Windsor's agents had perpetrated a fraud by representing the windows were not leaking or causing damage, by effectively denying their warranty claim, by inducing them to make repairs that would not correct the defective windows or resultant damage, by inducing them to purchase

EXHIBIT I
Page 17 of 38

more Windsor windows despite their knowledge of defects, and by delaying their discovery of defects and fraud until such time as the warranty had expired and into 2016.

110.   After an additional review of their windows, at least one (1) other window is showing *visible* signs of damage. There is likely additional latent damage that cannot be seen due to coverage by window and adjacent components.

111.   Upon performing Internet research by the Clarks, they discovered that numerous other homeowners were experiencing the same or similar problems as they had been.

112.   Defendants knew or should have known of the defect in the Windows at the time Clarks made their warranty claims because of similar warranty claims and complaints from customers throughout the country.

113.   Defendants knew or should have known that the Windows were the cause of the damage to the home, and not other issues.  At the very minimum, Defendants should have tested the windows to ensure that no leakage was coming through the product itself; however, Defendants failed to even do that.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS/REPOSE

114.   Windsor is estopped from relying on any statutes of limitation or repose by virtue of its affirmative fraudulent misrepresentations, acts, and concealment.

115.   Windsor knew or reasonably should have known its Windows were defective before sale. Windsor intentionally concealed material information and the truth concerning the Windows from Plaintiffs, Class Members and the general public while continuing to assert that the Windows were durable, long-lasting products.

116.   Windsor affirmatively represented to the general public that the Windows carried

18

**EXHIBIT I**
**Page 18 of 38**

EXHIBIT A - Page 290 of 349

a 10-year limited warranty. Through these representations, Windsor created a reasonable expectation, among ordinary consumers, that the Windows would have a useable life of at least 10 years.

117.    Windsor has actively concealed from purchasers/owners of the Windows and/or failed to alert the purchasers/owners of the defective nature of the Windows and that the Defect would result in the Windows deteriorating well before their expected life-time.

118.    Windsor had a duty to inform Plaintiffs and Class Members of the Defect described herein, which it knew or should have known. Notwithstanding its duty, Windsor never disclosed the Defect to Plaintiffs, the Class Members and/or the general public.

119.    Windsor, itself and through its agents and representatives, fraudulently represented through warranty responses that damages to Plaintiffs' and Class Members' homes were not caused by the Windows, were caused by other issues including installation, other construction defects, condensation, and various other things.

120.    Windsor made these representations with knowledge of defects, and for the purpose of inducing Plaintiffs and Class Members to drop their warranty claims until such time as the warranty had expired.

121.    Through reckless disregard for the truth, Windsor made these arguments without conducting any investigation, destructive examination, or water testing which would have revealed the Windows' defects.

122.    Despite exercising reasonable diligence, Plaintiffs and the Class Members could not have discovered the defective condition of the Windows as they are not industry experts and the defects are not open and obvious.

123.    Based upon Windsor's misrepresentations and concealment of this non-public

**EXHIBIT I**
**Page 19 of 38**

information about the defective Windows – information over which it had exclusive control – and because Plaintiffs and the Class Members therefore could not reasonably have known that the Windows were defective, Windsor is equitably estopped from relying on any statutes of limitations and/or repose that might otherwise be applicable to the claims asserted herein.

124.    In addition, the doctrine of equitable tolling also prevents Windsor from relying upon statutes of limitations and/or the statute of repose.

125.    Alternatively, to the extent Windsor made statements that induced Plaintiffs and Class Members to await whether Windsor would provide a remedy for the failure of the Windows, Windsor is equitably estopped from asserting a statute of limitations/repose defense.

## CLASS ALLEGATIONS

126.    Plaintiffs brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following Classes:

> **All persons and entities in the United States, who own homes in which Defendants' wood and wood clad windows, are installed.**

127.    Alternatively, or in addition to the nationwide class claims, Plaintiffs proposes a class consisting of the following:

> **All persons and entities in the State of Indiana who are current or former owners of a structure in which Defendants' wood and wood clad windows are installed and whose windows have caused leaking and rot.**

128.    As defined above, this complaint collectively refers to these proposed classes as "the Class."

129.    Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Windsor and any entity in which Windsor has a controlling interest or which has a controlling interest in Windsor and its legal representatives,

20

**EXHIBIT I**
**Page 20 of 38**

assigns and successors of Windsor and Windsor employees; and (c) all persons who properly execute and file a timely request for exclusion from the Class or are currently in litigation with Windsor.

130.   Plaintiffs proposes the Class be divided into subclasses if and as necessary to align class interests.

131.   Plaintiffs reserve the right to re-define the Class or Subclasses prior to class certification.

132.   *Numerosity*:   The Class is composed of thousands of persons geographically dispersed throughout the United States and the State of Indiana, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Class is reasonably ascertainable and identifiable from Windsor records, Windsor's customer records, and/or identifying marks on the Windows.

133.   *Commonality*: Additional questions of law and fact common to the Classes that exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes include the following:

a)   Whether Defendants were negligent in their design and manufacture of the Windows;

b)   Whether the Windows contain design and manufacturing defects;

c)   Whether the Windows have not performed or will not perform in accordance with the reasonable expectations of ordinary consumers; and industry standard defined useful life of 20-25 years;

d)   Whether Defendants knew or should have known about the Window defects;

e)   Whether Defendants concealed from consumers and/or failed to disclose to consumers the defects;

21

**EXHIBIT I**
**Page 21 of 38**

EXHIBIT A - Page 293 of 349

f)      When Defendants knew or should have known about the defects;

g)      Whether Defendants concealed and/or failed to disclose the defective condition of the Windows to consumers;

h)      Whether Defendants' warranties are unconscionable and void *ab initio*;

i)      Whether Defendants breached their express warranty that the Windows were free of defects in material and workmanship;

j)      Whether Defendants breached implied warranties of merchantability by designing, manufacturing and selling defective Windows; were not fit for the ordinary purpose of exterior windows; and did not conform with the representations, promises, and affirmations Defendants made concerning the Windows;

k)      Whether Defendants' limited warranty contained limitations, exclusions, and disclaimers such as to cause it to fail of its essential purpose;

l)      Whether Plaintiffs and Class Members are entitled to compensatory damages;

m)      Whether Plaintiffs and the Class Members are entitled to replacement of their defective Windows with non-defective windows, and damages related to loss of use;

n)      Whether Plaintiffs and the Class Members are entitled to restitution and/or disgorgement;

o)      Whether Defendants falsely advertised and marketed its products to consumers;

p)      Whether the Windows conform to the applicable Indiana building codes, and industry and testing standards;

q)      Whether the Windows damage other property within Plaintiffs' and Class Members' homes;

r)      Whether Defendants concealed the defective nature of the Windows;

s)      Whether Defendants' limited warranty adequately disclaimed its liability;

t)      Whether Plaintiffs are entitled to prejudgment interest, attorneys' fees, and costs from Defendants ; and

**EXHIBIT I**
**Page 22 of 38**

u)    Whether Defendants' conduct was negligent, reckless, willful, wanton, intentional, fraudulent or the like, entitling Plaintiffs and Class Members to statutory or punitive damages from Defendants .

134.    *Typicality*:    Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Windsor's conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective Windows, Windsor's conduct in concealing the defective condition of the Windows, and Plaintiffs' and Class Members' purchasing the defective Windows.

135.    *Adequate Representation*:    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class. Plaintiffs have retained counsel experienced in the prosecution of construction defect claims and complex litigation, including consumer class actions involving product liability and product design defects.  Plaintiffs and his counsel are committed to prosecuting this action vigorously on behalf of the Class they represent, and have the financial resources to do so.

136.    *Predominance and Superiority*:    This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class Members be required to bring separate actions, this Court and Courts throughout the United States and/or Indiana would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management

**EXHIBIT I**
**Page 23 of 38**

difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

137.    Class certification is appropriate because Windsor engaged in a uniform and common practice. All Class Members have the same legal right to and interest in redress for damages associated with the defective Windows.

138.    All conditions precedent for the filing of this action have been met.

## COUNT I
## NEGLIGENCE

139.    Plaintiffs reallege and incorporate each of the preceding allegations as though fully set forth herein.

140.    Windsor was under a duty to exercise reasonable care to test, design, manufacture, warranty, market and distribute Windows for its intended use.

141.    Windsor breached its duty and was negligent in its testing, designing, warranting, manufacturing, distributing and/or marketing of their Windows as described herein.

142.    Windsor knew or should have known that the Windows were defective, that they would fail prematurely, contained the defects, were not suitable as an exterior product and that otherwise did not conform to Windsor's warranties and representations.

143.    Because of Windsor's negligence, Plaintiffs and the Class suffered damages, including but not limited to damage to underlying structures or adjoining property caused by the deterioration or failure of the Windows, and any other compensatory or consequential damages.

24

**EXHIBIT I**
**Page 24 of 38**

EXHIBIT A - Page 296 of 349

144.    Plaintiffs and the Class have suffered damages in the need to remove and replace the Windows.

145.    As a direct, proximate, reasonably probable and foreseeable consequence of Windsor's negligent acts and/or omissions in connection with its testing, design, manufacture and distribution of its Windows, Plaintiffs and the Class Members have suffered and will continue to suffer loss and damage to their residences, structures, and property.

**COUNT II**
**VIOLATION OF INDIANA'S DECEPTIVE CONSUMER SALES ACT**
**Ind. Code § 24-5-0.5, _et seq._**

146.    Plaintiffs reallege and incorporate each of the preceding allegations as though fully set forth herein.

147.    Defendants' conduct, including but not limited to, designing, manufacturing, marketing, promoting the Windows as described throughout this Complaint was unfair, unlawful, and a fraudulent business practice in violation of the Indiana's Deceptive Consumer Sales Act, Ind. Code § 24-2-5-0.5, _et seq._ ("IDCSA"), and materially similar consumer protection statutes of other states.

148.    Defendants' concealment, intentional and negligent misrepresentation, and breach of express and implied warranties constitute unfair, unlawful, and fraudulent business acts and practices in violation of IDCSA.

149.    Defendants committed unfair or deceptive acts and practices through misrepresentations about the durability and reliability of the Windows, their suitability and effectiveness,  need for maintenance, and anticipated useful life, among other representations. These representations were deceptive in that:

a.    Defendants represented that the Windows had uses, benefits, or performance

25

**EXHIBIT I**
**Page 25 of 38**

characteristics they do not have.

    b.   Defendants represented that the Windows were of a particular quality or grade when they were not, or that they met a particular standard when they did not.

150.    Defendants committed unfair or deceptive acts and practices through misrepresentations about the operation of its warranties. These include, but are not limited to, representations discounting the effect or operation of express warranties in its advertising and marketing literature; representations regarding the institution or effect of purported "limited warranties"; and representations that obfuscated the duration of the warranty and the scope of warranty coverage.

151.    Defendants engaged in unconscionable acts and practices by continuing to market the Windows after they knew or had reason to know the Windows was defective. Because the Windows was not suitable for its ordinary use, Defendants had reason to know that:

    a.   The Windows were priced substantially in excess of the price for similar products.

    b.   Plaintiffs and Class members would not substantially benefit from the Windows.

    c.   Defendants knowingly made misleading statements of opinion, upon which Plaintiffs and Class members were likely to rely to their detriment.

152.    Because of Defendants' violations of IDCSA, Plaintiffs and the Class suffered damages, including but not limited to any damage to underlying structures or adjoining property caused by the deterioration or failure of the Windows, and any other compensatory or consequential damages.

153.    Plaintiffs and Class Members demand all damages, in addition to costs, interest and fees, including attorney's fees, to which they are entitled under Indiana law.

**EXHIBIT I**
**Page 26 of 38**

## COUNT III
## STRICT PRODUCTS LIABILITY—DEFECTIVE DESIGN & MANUFACTURE

154.     Plaintiffs reallege and incorporate each of the preceding allegations as though fully set forth herein.

155.     The Windows were designed, manufactured, marketed, promoted, sold, and introduced into the stream of commerce by Defendants.

156.     When they left the control of Defendants, the Windows were expected to, and did reach Plaintiffs and Class Members without substantial change from the condition in which they left Defendants' control.

157.     The Windows were defective when they left Defendants' control and were placed in the stream of commerce, in that there were foreseeable defects in the design and/or manufacture of the product.

158.     Specifically, the Windows were unfit for their intended use, and contained defects which caused the product to leak, degrade, rot, and damage the trim, wall cavity, framing components, and on Plaintiffs' and the Class Members' residences/structures.

159.     Plaintiffs and Class Members used and installed the Windows in substantially the same condition they were in when they left the control of Defendants, and in the manner intended.

160.     Defendants' Windows fail to perform in accordance with the reasonable expectation of Plaintiffs, the Class, and ordinary consumers, and the benefits of the Windows do not outweigh the risk of their failure.

161.     As a direct and proximate result of Defendants' defective design and/or manufacture of Windows, Plaintiffs and Class Members suffered damages and economic loss.

EXHIBIT I
Page 27 of 38

162.    Defendants are strictly liable to Plaintiffs and Class Members for all damages and economic losses resulting from its defective design and/or manufacture of Windows.

## COUNT IV
## BREACH OF CONTRACT

163.    Plaintiffs reallege and incorporate each of the preceding allegations as though fully set forth herein.

164.    Plaintiffs and Class members, upon purchasing Windows, entered into a contract and warranty agreement with Defendants.

165.    Defendants have uniformly breached their contracts and warranty agreement with Plaintiffs and members of the Class by failing to supply a product that was of merchantable quality and fit for the use for which it was intended and by failing to repair and/or replace defects in the Windows.

166.    Likewise, Defendants breached their covenant of good faith and fair dealing which accompanied the warranty agreement.

167.    As a proximate result of the aforementioned wrongful conduct and breach committed by Defendants, Plaintiffs and the Class members have suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.  Plaintiffs and Class members are entitled to damages and injunctive and declaratory relief as claimed below.

## COUNT V
## BREACH OF EXPRESS WARRANTY

168.    Plaintiffs reallege and incorporate each of the preceding allegations as though fully set forth herein.

28

EXHIBIT I
Page 28 of 38

169.    Defendants marketed and sold the Windows into the stream of commerce with the intent that the Windows would be purchased by homeowners, contractors, subcontractors, and other consumers for installation in structures owned and bought by Plaintiffs and the Class.

170.    Defendants expressly warranted that their Windows were well-suited as residential windows material with a useful life of at least 10 years. For purchasers of the Windows or of structures with the Windows, these warranties became part of the basis of the bargain.

171.    Defendants created express warranties for the Windows through sales brochures and marketing materials. These warranties have full force and effect, notwithstanding any limitations in the "limited warranty" from Defendants.

172.    Defendants breached their express warranties because the Windows do not perform as promised. The Windows contain defects and are not suitable for use as an exterior building product.

173.    Defendants' purported "limited warranty" fails of its essential purpose because it purportedly warrants that the Windows will perform as promised for at least twenty years, when in fact, the Windows do not last for this period.

174.    Defendants' purported "limited warranty" also fails of its essential purpose in that it limits recovery to piecemeal replacement of individual boards of the Windows, as well as excluding the cost of labor. Such limitations are inadequate to redress failure of the Windows or any resulting damage to the underlying structure. As a result, the "limited warranty" does not provide a minimum adequate remedy.

175.    The limitations and exclusions in Defendants' warranties are unconscionable and unenforceable.

EXHIBIT I
Page 29 of 38

176.    Defendants denied or failed to pay all costs and damages associated with replacing the Windows.

177.    Plaintiffs and the Class have relied on Defendants' express warranties to their detriment.

178.    Because of Defendants' breach of warranty, Plaintiffs and the Class suffered damages, including but not limited to any damage to underlying structures or adjoining property caused by the deterioration or failure of the Windows, and any other compensatory or consequential damages. Plaintiffs and the Class reserve their right to seek all damages available by statute or law.

179.    Plaintiffs and the Class demand judgment against Defendants for an amount to be determined at trial.

## COUNT VI
## BREACH OF IMPLIED WARRANTIES

180.    Plaintiffs reallege and incorporate each of the preceding allegations as though fully set forth herein.

181.    When Defendants designed, manufactured, marketed, sold, and distributed Windows for use by the Plaintiffs and Class Members, Defendants knew of the use for which they were intended and impliedly warranted the product to be of merchantable quality and fit for such use and that design, manufacture, labeling, and marketing complied with all applicable requirements.

30

**EXHIBIT I**
**Page 30 of 38**

EXHIBIT A - Page 302 of 349

182.    Plaintiffs and Class Members reasonably relied upon the Defendants' representations of the product's merchantable quality and that it was safe for its intended use, and upon Defendants' implied warranty, including that it was in compliance with all applicable requirements.

183.    Contrary to such implied warranties, Windows are not of merchantable quality or fit for intended use pursuant to Ind. Code Ann. §26-1-2-314, because the product is defective, as described herein, and it is unsuitable for use as an exterior product.

184.    As a direct and proximate result of Defendants' breach of warranty, Plaintiffs and Class Members have been damaged, and are entitled to all damages, in addition to costs, interest and fees, including attorney's fees as allowed by law.

## COUNT VII
## FRAUDULENT MISREPRENTATION

185.    Plaintiffs reallege and incorporate each of the preceding allegations as though fully set forth herein.

186.    Throughout Defendants' advertising and marketing materials, Defendants falsely and fraudulently represented to Plaintiffs, the Class members, and the consuming public in general that Windows would be free from defects and fit for their customary and normal use.

187.    When responding to warranty claims, Defendants routinely told customers that there were no problems with their windows and that the damages experienced were not caused by the window, but other issues.

188.    Those representations made by Defendants were, in fact, false.

189.    When said representations were made by Defendants, upon information and belief, it knew those representations to be false and it willfully, wantonly, and recklessly

**EXHIBIT I**
**Page 31 of 38**

disregarded whether the representations were true. Further, Defendants actively concealed and/or omitted material facts regarding the Windows and the defects.

190.     These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiffs, the Class members and the consuming public.

191.     At the time the representations were made by Defendants, Plaintiffs and the Class members were unaware of the falsity of said representations and reasonably believed them to be true.

192.     In reliance upon said representations, Windows were purchased, installed and used on Plaintiffs' and the Class members' homes, thereby causing them to sustain damage and/or being at an increased risk of sustaining damage in the future.

193.     In further reliance, Plaintiffs and Class Members dropped their warranty claims, and often purchased additional defective product.

194.     Defendants knew and were aware, or should have been aware, that Windows were defective and not fit for customary and normal use.

195.     Defendants knew, or should have known, that Windows had a potential to, could, and would cause damage to Plaintiffs' and the Class members' properties.

196.     Defendants brought Windows to the market and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiffs and the Class members.

197.     By reason of the foregoing, Plaintiffs and the Class members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorney's fees as allowed by law.

## COUNT VIII
## FRAUDULENT CONCEALMENT AND TOLLING

**EXHIBIT I**
**Page 32 of 38**

198.    Plaintiffs reallege and incorporate each of the preceding allegations as though fully set forth herein.

199.    The Defendants actively concealed the fact that the Windows were defective. The defective nature of the Windows caused (or will cause) injury to the property of the Plaintiffs and Class.

200.    The Defendants took active and affirmative steps to prevent Plaintiffs from learning about the defective nature of the Windows, including keeping their internal knowledge and communications about the Windows secret and non-public.

201.    At all times mentioned herein, Defendants had a duty and obligation to disclose to Plaintiffs the true facts concerning the Windows; that is that Windows were defective, would prematurely fail, and otherwise were not as warranted and represented by Defendants.

202.    The Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiffs and with the intent to defraud as herein alleged.

203.    Plaintiffs exercised reasonable diligence under the circumstances, but were unable—given the Defendants' concealment—to discover the defective nature of the Windows and the wrongful conduct of the Defendants.

204.    As a direct and proximate result of the Defendants' fraudulent concealment, the Plaintiffs and the Class sustained the damages set forth in this complaint. Indeed, the concealment caused a delay in discovering the defective nature of the Windows.

205.    As a further direct and proximate result of the Defendants' fraudulent concealment, the Plaintiffs and Class were unable to discover their injuries or learn of their cause of action. As such, under the doctrine of equitable tolling, the statute of limitations and/or repose for each claim alleged in this complaint did not begin to run until that date.

**EXHIBIT I**
**Page 33 of 38**

## COUNT IX
## NEGLIGENT MISREPRESENTATION

206.    Plaintiffs reallege and incorporate by reference herein each of the allegations set forth in this Complaint as though fully set forth herein.

207.    Defendants falsely represented to Plaintiffs, the Class members, and the consuming public in general that Windows would be free from defects and fit for customary and normal use.

208.    These representations made by Defendants were, in fact, false.

209.    The Defendants made the foregoing representations without any reasonable ground for believing them to be true.

210.    These representations were made directly by Defendants, by sales representatives and other authorized agents of Defendants, and in publications and other written materials directed to the public, with the intention of inducing reliance and the purchase, installation, and use of the Windows.

211.    In reliance of the misrepresentations by the Defendants, and each of them, Plaintiffs and Class Members were induced to purchase and install Windows.  If Plaintiffs and Class Members had known of the true facts and the facts concealed by the Defendants, Plaintiffs and Class Members would not have purchased or installed Windows.

212.    The reliance of Plaintiffs and Class Members upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

213.    As a result of the foregoing negligent misrepresentations by Defendants, Plaintiffs and Class Members suffered injuries and damages as alleged herein, and are entitled to all

34

**EXHIBIT I**
**Page 34 of 38**

EXHIBIT A - Page 306 of 349

damages, in addition to costs, interest and fees, including attorney's fees as allowed by law.

**COUNT X**
**UNJUST ENRICHMENT**
**(Pleading in the Alternative)**

214.    Plaintiffs incorporate by reference herein each of the allegations set forth in this Complaint as though fully set forth herein.

215.    Pleading in the alternative of their contract-based claims, Plaintiffs and Class Members conferred a benefit on Defendants by purchasing Windows.

216.    Plaintiffs and Class Members, however, did not receive effective or ordinarily fit materials for which they paid.

217.    Plaintiffs and the Class have conferred substantial benefits on Defendants and Defendants have appreciated these benefits.

218.    It would be inequitable for the Defendants to retain this money, because Plaintiffs and Class Members did not, in fact, receive materials fit for ordinary use.

219.    By virtue of the wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of Plaintiffs and Class Members, who hereby seek the disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**COUNT XI**
**VIOLATION OF MAGNUSON-MOSS ACT**

220.    Plaintiffs, individually and on behalf of all others similarly situated, reallege and incorporate by reference all foregoing allegations as though fully set forth herein.

**EXHIBIT I**
**Page 35 of 38**

221.    The Magnuson-Moss Consumer Warranty Act, 15 U.S.C §2301, et seq. ("MMCWA" or the "Act") provides a private right of action to purchasers of consumer products against retailers who*, inter alia*, fail to comply with the terms of a written warranty, express warranty and/or implied warranty. As demonstrated herein, Defendants have failed to comply with the terms of their warranties, written, express and implied, with regard to the Windows that they advertised, distributed, marketed and/or sold.

222.    Plaintiffs and the members of the Class are "consumers" under the MMCWA.

223.    Defendants have been given a reasonable opportunity by Plaintiffs and other Class Members to cure such failures to comply and have repeatedly failed to do so.

224.    By virtue of the foregoing, Plaintiffs and other members of the Class are entitled to an award of damages and other appropriate relief, including attorneys' fees.

## COUNT XII
## DECLARATORY RELIEF

225.    Plaintiffs, individually and on behalf of all others similarly situated, reallege and incorporate by reference all foregoing allegations as though fully set forth herein.

226.    Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

227.    Plaintiffs and the Class seek declaratory relief as to the following:

a.    Whether the Windows are defective.

b.    Whether Defendants knew or had reason to know that the Windows were defective.

36

EXHIBIT I
Page 36 of 38

c. Whether limitations in Defendants' purported "limited warranty" are unconscionable or unenforceable.

d. Whether Defendants have made deceptive or false representations regarding the characteristics or benefits of the Windows.

e. Whether Defendants have handled previous warranty claims in a manner consistent with the terms of its warranties, and if not, what procedures are necessary to audit or reexamine previous warranty claims.

f. Whether procedures are needed to preserve the rights of Class members who face prospective failure of the Windows.

228.   The aforementioned described declaration concerns an actual controversy between the parties, and such a declaration will materially advance the litigation for the Plaintiffs and putative class members.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Walter and Stephanie Clark, on behalf of themselves and all others similarly situated in the United States (or, alternatively, in the State of Indiana), pray the Court enter judgment against Windsor as follows:

(a)   for an order certifying the Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Class, and appointing the undersigned law firm representing Plaintiffs as counsel for the Class;

(b)    for actual and compensatory damages;

(c)   for punitive damages;

(d)   for equitable and/or injunctive relief;

(e)   for payment of costs of suit herein incurred;

**EXHIBIT I**
**Page 37 of 38**

(f)      for both pre-judgment and post-judgment interest on any amounts awarded;

(g)      for payment of reasonable attorneys' fees and expenses as may be allowable under applicable law; and

(h)      for such other and further relief as the Court may deem just and proper.

## <u>REQUEST FOR JURY TRIAL</u>

Plaintiffs, Walter and Stephanie Clark, demand a jury trial on all issues and claims so triable.

Dated: March 31, 2016                    Respectfully submitted,


                                         */s/ Glenn D. Bowman*
                                         Glenn D. Bowman (Atty. No. 4085-49)
                                         Donn H. Wray (Atty. No. 1643-49)
                                         The Emelie Building
                                         334 North Senate Avenue
                                         Indianapolis, Indiana  46204-1708
                                         Telephone:  (317) 464-1100
                                         Facsimile:  (317) 464-1111

                                         *Attorneys for Plaintiffs and the Putative Class*

**EXHIBIT I**
**Page 38 of 38**

EXHIBIT A - Page 310 of 349

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## (COLUMBUS DIVISION)

| | |
|---|---|
| CHARLES and GINA PLEDGER, on behalf of themselves and all others similarly situated, | Case No. 2:16-cv-938 |
| Plaintiffs, | **COMPLAINT** (Class Action - Product Liability) |
| v. | |
| WINDSOR WINDOW COMPANY d/b/a WINDSOR WINDOWS AND DOORS, and WOODGRAIN MILLWORK, INC., | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiffs, Charles and Gina Pledger ("Pledgers" or "Plaintiffs"), by and through their undersigned counsel, individually and on behalf of all other persons and entities similarly situated, allege against Defendants, Windsor Window Company d/b/a Windsor Windows and Doors ("Windsor") and Woodgrain Millwork, Inc. ("Woodgrain") (collectively, "Defendants"), the following facts and claims upon knowledge as to matters relating to themselves and upon information and belief as to all other matters and, by way of this class action Complaint, aver as follows:

### INTRODUCTION

1.      This is a proposed class action brought by Plaintiffs, individually and on behalf of the below-defined Classes against Defendants, to obtain damages arising from and relating to their purchase and installation of defective wood clad windows ("Windows") designed, manufactured, advertised, sold, and distributed by Defendants.

**EXHIBIT J**
**Page 1 of 39**

2.       This class action arises out of Defendants' design, manufacture, advertisement, sale, and distribution of Windows that leak, deteriorate, degrade, and otherwise prematurely fail. Defendants' Windows fail to comply with the building codes in place at all times relevant, and industry standards such as AAMA, ASTM, WDMA, I.S.4, and others, and have also breached their express and implied warranties with respect to their Windows.

3.       At the time the Windows leave the manufacturing plant, they contain a latent defect that allows water to infiltrate and pass through the Windows' frame corners, glazing pocket, and aluminum cladding, leading to deterioration of the wood components of the window and water and air leakage into the interior of the home damaging the interior wall cavity, trim, drywall, framing components, and other property.

4.       The wood preservative applied to the wood components of the Windows is also inadequate in its composition and application, further accelerating the rate of the deterioration.

5.       Plaintiffs, Class Members, or their contractors would not have purchased or installed the Windows if they knew of such defects or that their Windows would prematurely fail.

6.       Defendants' acts and omissions in connection with its design, manufacture, warranty, sale and delivery of these defective Windows constitute breach of express warranty, breach of contract and the implied covenant of good faith and fair dealing, fraudulent misrepresentation, fraudulent concealment, and strict liability.

7.       Defendants have repeatedly failed to comply with the terms of their warranties by distributing defective Windows, and also by denying or otherwise failing to remedy or repair defective Windows in Plaintiffs and Class Members' homes.

2

8.      Defendants' failure to comply with the terms of the warranty have made the Windows less valuable, notwithstanding the loss of value resulting from the latent defects leading to premature product failure.

9.      Plaintiffs, Class Members, and contractors would have paid significantly less for the Windows, or not purchased them at all, had they known Defendants would not have honored their warranty, or that the products contained defects and caused severe damage to other property.

## PARTIES

10.      Plaintiffs were and are, at all relevant times hereto, residents and citizens of the State of Ohio.  Specifically, Plaintiffs own a home at 6450 Lake Trail Drive, Westerville, Delaware County, Ohio.  The Windows were purchased at the time of construction of their home, and installed in late 2002.

11.      Defendant Windsor was and is a company organized and existing under the laws of the State of Idaho, with a principal place of business in the State of Iowa. At all times relevant herein, Windsor transacted and conducted business in Ohio.

12.      Defendant Woodgrain was and is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business in the State of Idaho.

13.      At all times relevant herein, Woodgrain was the parent company of Windsor, provided Window components and materials to Windsor, and jointly transacted and conducted business in Ohio.

14.      Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the Windows at issue.

3

15.    At all times relevant herein, the Defendants were actual and/or *de facto* joint ventures in the design, development, manufacture, marketing, and sales of the Windows at issue.

## JURISDICTION AND VENUE

16.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, as there is complete diversity of citizenship and corporate domicile; the amount in controversy exceeds $5,000,000.00, without interest and costs; and there are at least 100 members of the proposed Class.

17.    Venue is proper pursuant to 28 U.S.C. § 1391, as Plaintiffs reside in this district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district. At all times relevant herein, Defendants conducted and/or transacted business in this district and, therefore, are subject to personal jurisdiction in this district and reside here for venue purposes.

## THE WINDOWS

18.    This case arises from Defendants' defective design and manufacture of wood clad Pinnacle and Legend Series Windows, and their failure to disclose defects to purchasers and owners of the Windows, or to comply with the terms of the Windows' warranties.

19.    Upon information and belief, both Series share the same or similar relevant design functions, manufacturing process, and wood preservative treatment.

20.    Both Series prematurely fail in the same or similar manner, and resulting in the same or similar damage throughout the Windows.

21.    Specifically, as a result of the defects, the Windows have and will continue to prematurely fail.  The wood rot has and will progress to other wood components in the window

and adjoining structure, as well as permit air and water leakage due to loss of structural integrity unless the Windows are repaired and replaced. The leakage through window frame corners, at the glazing pockets, and other areas has and will cause damage to areas adjacent to the window, including the wall cavity, trim, framing, drywall, and other property in the home.

22.     Given the latent nature of the defect and damage, the deterioration occurs over such a period of time that it does not become visible until it has advanced to irreparable damage, and is also masked by cladding and window components (i.e. back dam, meeting rail, trim, etc.). It is likely that, although the premature failure begins during the warranty period, the wood deterioration will not manifest itself until after Defendants' warranty has expired.

23.     At all times relevant hereto, Defendants and their agents held themselves out to Plaintiffs, Class Members, the construction industry, and the public at large as manufacturing superior, quality, and durable products, including the subject Windows.

24.     At all times relevant herein, Defendants were engaged in the marketing, sale, supply and delivery of windows in the State of Ohio and across the United States.

25.     At the time of sale, Windsor warranted that each Window was fit for the ordinary purpose for which such goods were used and were free from defects in materials and workmanship.

26.     At all times relevant herein, including at the time the Windows were sold to Plaintiffs and Class Members, the Windows are moveable goods as defined by the Uniform Commercial Code. The Windows are shipped as individual units by the manufacturer to the project, and later installed in the home. Windows are capable of being removed from the home after construction.

27.     Unknown to Plaintiffs and Class Members, the Windows are defective and fail to perform at Plaintiffs' residence and at Class Members' residences by permitting water intrusion through unsealed or inadequately sealed areas of the Windows' frames and sashes, and into the interior of the residences.

28.     The Windows are defective and prematurely failing at Plaintiffs' residence and at Class Members' residences by permitting water to penetrate the wood components of the Windows, wherein it is absorbed by wood members, and causes rot, premature degradation, leaking, and failure of the wood.   The wood preservative applied is defective in its composition and application, which fails to protect the wood components and accelerates the rate of deterioration.

29.     The defects in the Windows lead to failure well in advance of the expected useful lives of the Windows, under both the limited 10-year warranty period and industry standard of 20-25-years.

30.     Degradation of the wood components permits additional water and air infiltration into the home in an accelerated cycle.

31.     The water intrusion and above-described damage resulting from the defective Windows constitutes "occurrences" resulting in "property damage" to property other than Defendants' "product" as those terms are commonly defined and used in the typical commercial general liability insurance policy.

32.     The above-described defects are due to design, engineering, and manufacturing errors, all of which should have been within Defendants' expertise.

33.     Because the Windows prematurely fail and permit water and air intrusion, they violate the building codes, industry and testing standards, and amount to a breach of the Windows' warranties.

34.     The defects exist at the time the Windows leave the factory.

35.     Failure of the Windows begins upon installation and continues during repeated and prolonged exposure to weather.

36.     Because of their touted expertise in window design and manufacturing, Defendants knew or should have known that the defects were present at the time the products left their control.

37.     Defendants represented to Plaintiffs and the public at large that water intrusion is caused by other sources.  In fact, Defendants' website states that only "[R]arely, a product may be defective."

38.     Defendants knew or should have known the Windows would prematurely fail, but did not adequately correct the defective design or manufacturing process which leads to damage in the homes in which the Windows are installed.

39.     Defendants failed to warn purchasers, installers or users of the above-described risks of failures, which would have been material and instrumental in the decision to purchase the Windows.

40.     The purchase of Defendants' Windows comes with a written express warranty, which forms part of the basis of the bargain between Defendants and the purchaser.

41.     The Windows' written express warranty also forms part of the basis of the bargain between the seller of the home and homebuyers, including Plaintiffs and Class Members.

42.    The typical purchase agreement for the sale and/or construction of Class Members' homes likely contains one or more provisions transferring or assigning manufacturers' and suppliers' warranties to them at the time of purchase or conveyance.

43.    The transfer or assignment of the manufacturers' and suppliers' warranties, which would include the Window warranties, forms part of the basis of the bargain at the time Plaintiffs and Class Members purchased their homes.

44.    Even where a manufacturer or supplier warranty transfer provision is not present, the average homeowner expects, at the time of purchase, his or her home comes with such warranties, including a window warranty against defects.

45.    Defendants also expressly and implicitly represent in documents available to the public that their warranty is part of the product being sold, and that the written warranties apply to the owners of the homes containing the Windows.

46.    Defendants' warranty expressly applies to subsequent purchasers.

47.    Defendants' warranties explicitly apply to future performance, and Defendants represent in their express warranty and documents available to the public that the Windows will be free from defective materials and workmanship for at least 10 years.

48.    Defendants' warranties expressly provide that adequate repair or replacement for defective components, including cladding, glazing pockets, frame corners, wood components, and other components, will be made pursuant to the 10 year warranty.

49.    Plaintiffs and putative Class Members relied upon these warranties and other representations when they purchased the Windows and/or structures containing the Windows.

50.    Plaintiffs and putative Class Members reasonably expected and expect that the Windows would last a minimum of 20-25 years, an expectation which is supported by industry standards.

51.    Plaintiffs and putative Class Members reasonably expected that any repairs or replacements under the warranty would be adequate, and that replacement product would not be defective.

52.    Defendants' representations, expressly and impliedly, through their website, brochures and marketing materials, that the Windows are suitable and free from defects, were intended to, and likely did, affect the market by inducing builders, contractors, suppliers and others to purchase the Windows.

53.    Plaintiffs and other homeowners across the United States put defendants on notice of defects and resultant damage in the Windows.

54.    Defendants' shipping of the Windows with actual or constructive knowledge of the defects, or with negligent or reckless disregard of the presence of defects, constituted a breach of their express warranty, and makes the limitations of the express warranty unconscionable in all respects, and, therefore, void *ab initio*.

55.    The published written warranties include the following unconscionable limitations and exclusions:

    a)    The warranty requires that the homeowner be able to identify a "defect" in the Windows;

    b)    The warranty is ambiguous with regard to coverage of components;

    c)    The warranty limits coverage of wood warping;

    d)    The warranty excludes damages caused by design of the Windows;

e)      The warranty excludes the cost of labor for repair or replacement arising from defects;

f)      The warranty excludes the cost of repainting or refinishing arising from defects;

g)      The warranty places unreasonable time limitations on notifying Defendants of defects, including Defendants' unilateral determination of when the homeowner should have "reasonably" discovered a defect;

h)      The warranty shortens the warranty period by beginning from the date of manufacture, regardless of when the Window is purchased, installed and put into use and operation;

i)      The warranty gives Defendants the final determination of whether or not a defect exists;

j)      The warranty potentially requires payment of a field service fee for inspecting the Windows;

k)      The warranty requires the homeowner to produce information that may not be accessible or otherwise readily understandable, including IGU and/or glass codes;

l)      The warranty purports to limit Defendants' responsibility by providing a remedy of repair, replacement, or refund a portion of the original purchase price, solely at Defendants' option;

m)      The warrant purports to exclude any liability for consequential, incidental, or punitive damages;

n)      The warranty purports to exclude any liability in excess of the original purchase price of the product;

o)      The warranty limits repair and replacement parts and products to the remainder of the original warranty period;

p)      The warranty purports to disclaim all warranties, expressed or implied, including implied warranties of merchantability or fitness for a particular purpose;

q)      The warranty purports to disclaim performance ratings identified by the AAMA and NFRC ratings affixed to the Windows by the Defendants;

**EXHIBIT J**
**Page 10 of 39**

      r)    The warranty purports to disclaim any obligation to comply with building standards, including applicable building codes, and industry and testing standards;

      s)    The warranty purports to allow Defendants to inconsistently apply the warranty at their own discretion;

      t)    The warranty's 10-year limitation is in and of itself unconscionable;

      u)    The warranty states it is voided by a number of conditions unilaterally determined by Defendants, including "improper" installation; and

      v)    In all other ways revealed during discovery, and/or otherwise determined at trial.

56.    The warranty is non-negotiable and is so one-sided that no reasonable person would ever knowingly agree to its terms if properly disclosed.

57.    Further, Defendants have engaged in a pattern and practice of failing to honor or discouraging warranty claims by representing that damage is not caused by the Windows themselves, by failing to respond to homeowners at all, by requiring the owner to pay for an inspection of the Windows, by requiring the homeowner to pay for all costs associated with repair or replacement of the Windows, including the labor for such repair or replacement, and/or by denying claims where the damage is discovered outside of the 10-year warranty regardless of whether the damage began to manifest within the warranty period.

58.    The above described pattern and practice by Defendants has the effect of pushing warranty claims past the expiration date, discouraging defect claims, and/or continuing to pursue remedies through Defendants.

59.    Moreover, during contact with Plaintiffs and Class Members, Defendants concealed their knowledge of the defects in the Windows in the Class Members' residences and otherwise failed to acknowledge that the Windows themselves cause the damage to the Windows and the homes.

11

60.     As Defendants have known or should have known of their Windows' defects and have failed to timely honor their warranty, the warranty has failed its essential purpose and the limitations therein are null and void, and Plaintiffs and Class Members have otherwise not received the value for which they, their builders, or their contractors bargained for at the time the Windows were purchased or transferred to homeowners.

61.     The defects in Defendants' Windows also make the Windows unfit for their intended use.

62.     Given the leaking, rotting, premature degradation and failure of the Windows, the Windows have a reduced life expectancy and require unexpected maintenance, repair, and replacement by Plaintiffs and Class Members.

63.     The Windows' defects and resultant damages have caused a diminution in the value of the homes.

64.     The Plaintiffs and Class Members have and will suffer a loss of use related to the Window related damage, and repair or replacement that has or will occur at the Windows.

65.     Defendants knew or should have known that the Windows did not and do not satisfy industry or testing standards.

66.     Defendants knew or should have known that the Windows were not a suitable exterior building product, in that they were not capable of withstanding the weather conditions in which the Windows were distributed and installed.

67.     Defendants knew or should have known that their Windows were defective in design and manufacture; not fit for their ordinary and intended use; not merchantable; and failed to perform in accordance with the advertisements, brochures, representations, marketing materials, and warranties disseminated by Defendants.

12

68.    The Windows failed to conform to the reasonable life, performance, or other expectations of ordinary consumers such as Plaintiffs and Class Members.

69.    Because the Windows leak, and allow for increased water absorption, water penetration, rot, degradation, cause reduced life expectancy, and otherwise fail, the Windows are neither durable no suitable for use as an exterior building product.

70.    The above-described defective conditions of the Windows and resultant damages are present in Plaintiffs' home and are common among Class Members.

71.    Plaintiffs and Class Members have been proximately harmed by the Windows' above-described defective condition(s) and Defendants' above-described conduct.

## PLEDGERS' EXPERIENCE

72.    In 2002, the Pledgers began construction of their home in Westerville, Ohio. Forty-nine (49) wood clad, Pinnacle Series Windsor windows were purchased and installed in late 2002.  Construction of the home was completed in January of 2003, at which time the family moved in.

73.    At the time the windows were selected for purchase, the Pledgers' contractor offered the windows as an "upgrade" to other window products available.

74.    The Pledgers relied on the contractor's statements regarding the quality and durability of the windows and the Defendants' various documents and other materials, including the warranty, in selecting the windows for their home.

75.    The Pledgers constructed and paid for the home containing Defendants' windows based upon the representations of the contractor, and belief that the Windows were superior products, the Windows were free of defects, the Windows were suitable for environments like

theirs in Ohio, and that the Windows were compliant with all applicable building codes and industry standards.

76.    Unknown to the Pledgers, the Windows were defective in that they allowed moisture, water, and air to penetrate through the Window components, causing moisture, mold, fungal growth, staining, and water damage to the Windows themselves and to adjacent building components such as the wall cavity, exterior sheathing, interior trim, drywall, and other framing components.

77.    The characteristics of the Window defects were present in the Windows when they left the factory, and were part of the Window by design and manufacture.

78.    The damage began to manifest during the warranty period; however, it was latent damage masked by the window cladding, sill, jamb liners, wall cavity, exterior cladding and other components.

79.    For years, unbeknownst to them, the Pledgers' windows and home was damaged by wood deterioration and other water-related damage to the Windows, adjacent building components, and to their personal property.

80.    In or about November of 2013, Mrs. Pledger noticed staining on the front of their home in the vicinity of a second story window. The Pledgers believed the staining was only cosmetic, normal wear and tear that indicated the home was due to be painted. They contacted a contractor who painted and caulked the entire home as a part of routine maintenance, which seemed to resolve the staining.

81.    In October 2014, the Pledgers remodeled their unfinished basement. In the process, they identified two windows with severe damage on the interior wood. They had no

choice but to replace those basement windows to prevent further damage to their home. At the time, the Pledgers believed the problem was isolated to these basement windows.

82.    In June 2016, the Pledger's noticed damage to the exterior trim below each of the three levels of the seven (7) family room windows overlooking the deck as they prepared to have the deck cleaned and painted.  Upon pulling the exterior trim off to perform another replacement, it quickly became apparent that there was significant damage to the underlying structure.

83.    At that time, the Pledgers hired a contractor who exposed a section of the wall beneath the bottom windows and discovered severe rot in the 2x6 stud framing of the load-bearing wall. Since then, multiple contractors have indicated the sill plate has likely been compromised.  If the sill plate has been compromised, the contractors each informed the Pledgers that entire wall must be replaced.  The full extent of the damage cannot be identified until the deck is removed and the entire sill plate exposed.

84.    In July 2016, the Pledgers inspected the remaining windows and discovered widespread water damage throughout their home as a direct result of the defective windows.

85.    There is evidence that the attic window has leaked progressively despite having been caulked and sealed numerous times as part of the homeowner's ordinary maintenance. Additionally, there is evidence that two (2) large picture windows on the stair landings have also leaked and caused damage to the ceiling and damage the trim below the windows.

86.    The Pledgers contacted a representative from the now defunct general contractor, Trueberry Group ("Trueberry"), to notify them of the damage.

87.    The Trueberry representative informed the Pledgers that they stopped installing Windsor windows sometime after they completed the Pledgers' home, and that the company had tremendous issues with Windsor's windows leaking.  Trueberry's former VP of Construction and

15

Warranty confided to the Pledgers upon inspection of the damage in June 2016 that Trueberry had engaged Windsor to resolve the issues it was experiencing with numerous other homeowners' Windsor windows.  After months of field testing and working with Windsor to resolve the issues in other neighborhoods, Trueberry decided to use a different window manufacturer moving forward.

88.    Currently, the Pledgers have observed thirteen (13) additional windows with *visible* signs of damage. There is likely additional latent damage that cannot be seen due to damage being obscured by the window and adjacent components.

89.    The Pledgers noticed that the majority of the windows in the house have increasingly worsened and begun allowing air intrusion since they originally purchased the home.  In some cases, the wind can be heard and felt blowing through and around the windows. Exterior trim around multiple windows has been replaced because of rot where the trim rotted from the underside.

90.    The Pledgers have obtained three (3) separate quotes from contractors, each of which estimate at least $20,000.00 to begin performing work.  The Pledgers have been told the total estimate of the damage cannot be determined until the deck has been removed which will permit the adjacent exterior cladding to be removed exposing the sill plate.

91.    The Pledgers filed a warranty claim with Windsor regarding the issues noted herein. Windsor has rejected the Pledgers' claim as outside of the applicable warranty period.

92.    Due to the representations of Defendants, including specifications, brochures, warranties, and other materials, the Pledgers and their builder believed that the Windows were of superior quality and free of defects.  Based upon their reliance on Windsor's fraudulent representations of quality and suitability for installation in their home, the Pledgers had no

reason to suspect that their windows suffered from latent defects and latent damage, which manifested during the warranty period, but went unnoticed until the warranty had expired.

93.   After the Pledgers performed research on the internet, they discovered that numerous other homeowners experienced the same or similar problems as they had.

94.   The defects and damage has resulted in a significantly reduced service life of the Windows, which at a minimum should be 20-25 years based on ASTM E2136.   These windows failed within the 10-year warranty period, with the significant damage having been discovered well before 20-25 years.

95.   Defendants knew or should have known that the defects in the windows would impair the service life of the windows.

## CLASS ALLEGATIONS

96.   Plaintiffs bring this action individually and as representatives of all those similarly situated pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4) are met with respect to the Classes (collectively, "Class" or "Classes") defined below:

### DAMAGES CLASS

> All persons and entities in the State of Ohio who are current or former owners of a structure on which Defendants' Pinnacle and Legend Series windows are installed.

### NATIONAL INJUNCTIVE RELIEF CLASS

> All persons and entities in the United States, who own or owned homes in which Defendants' wood clad windows are installed.

Excluded from the Classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants' companies and their legal

17

representatives, assigns, and successors of Defendants; and (c) all persons who properly execute and file a timely request for exclusion from the Classes.

Plaintiffs proposes that the Class be divided into subclasses if and as necessary to align Class interests.

97.     The Classes are composed of thousands or more persons geographically dispersed throughout the State of Ohio and the Country, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Classes are ascertainable and identifiable from Defendants' sales records, distributor records, identifying marks on the Windows, and AAMA labels.

98.     The critical questions of law and fact common to the Classes that will materially advance the litigation is whether the Windows are inherently defective at the time they leave the factory, causing damage to Plaintiffs and Class Members' homes, contrary to the representations of Defendants and the expectations of the ordinary homeowner.

99.     Additional questions of law and fact common to the Classes that exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes include the following:

    a)    Whether Defendants were negligent in their design and manufacture of the Windows;

    b)    Whether the Windows contain design and manufacturing defects;

    c)    Whether the Windows have not performed or will not perform in accordance with the reasonable expectations of ordinary consumers; and industry standard defined useful life of 20-25 years;

    d)    Whether Defendants knew or should have known about the Window defects;

    e)    Whether Defendants concealed from consumers and/or failed to disclose to consumers the defects;

18

f)      When Defendants knew or should have known about the defects;

g)      Whether Defendants concealed and/or failed to disclose the defective condition of the Windows to consumers;

h)      Whether Defendants' warranties are unconscionable and void *ab initio*;

i)      Whether Defendants breached their express warranty that the Windows were free of defects in material and workmanship;

j)      Whether Defendants breached implied warranties of merchantability by designing, manufacturing and selling defective Windows; were not fit for the ordinary purpose of exterior windows; and did not conform with the representations, promises, and affirmations Defendants made concerning the Windows;

k)      Whether Defendants' limited warranty contained limitations, exclusions, and disclaimers such as to cause it to fail of its essential purpose;

l)      Whether Plaintiffs and Class Members are entitled to compensatory damages;

m)      Whether Plaintiffs and the Class Members are entitled to replacement of their defective Windows with non-defective windows, and damages related to loss of use;

n)      Whether Plaintiffs and the Class Members are entitled to restitution and/or disgorgement;

o)      Whether Defendants falsely advertised and marketed its products to consumers;

p)      Whether the Windows conform to the applicable Ohio building codes, and industry and testing standards;

q)      Whether the Windows damage other property within Plaintiffs' and Class Members' homes;

r)      Whether Defendants concealed the defective nature of the Windows;

s)      Whether Defendants' limited warranty adequately disclaimed its liability;

t)      Whether Plaintiffs are entitled to prejudgment interest, attorneys' fees, and costs from Defendants; and

**EXHIBIT J**
**Page 19 of 39**

u)    Whether Defendants' conduct was negligent, reckless, willful, wanton, intentional, fraudulent or the like, entitling Plaintiffs and Class Members to statutory or punitive damages from Defendants.

100.    Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective Windows and Defendants' conduct in concealing the defects in the Windows to owners, contractors, developers, and suppliers.

101.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class given that Plaintiffs are members of the Class they also seek to represent. Plaintiffs have retained counsel experienced and competent in product liability, complex litigation, and consumer class actions.

102.    This case is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable.

103.    Should individual Class Members be required to bring separate actions, this Court and/or courts throughout Ohio would be confronted with hundreds if not thousands of lawsuits clogging the court system, while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will lead to judicial inefficiency, and undue delay and expense to all parties and the court system, this class action allows for a single adjudication, judicial efficiency, and comprehensive supervision by a single court.

104.    Moreover, Plaintiffs does not foresee any difficulty in the management of this action as a class action and the amount of money at stake for each Class Member is not sufficient for each member to hire his or her own counsel, engineering and damage experts, or to incur additional out of pocket expenses to bring their own action.

**EQUITABLE ESTOPPEL**
(Statute of Limitations)

105.    Plaintiffs and Class Members are within the applicable statute of limitations for the claims presented hereunder because Plaintiffs and Class Members did not discover the defect, and could not have discovered the latent defects sooner than when they put Defendants' on notice of defects and damages.

106.    Due to the concealed location of deterioration and other leak locations, Plaintiffs are often unaware of the wood rot, degradation, and other failures until the end or expiration of Defendants' warranty period.

107.    Observation of damage at a small number or fraction of Windows could not have put Plaintiffs or Class Members on notice that *all* windows were suffering from design or manufacturing defects.

108.    Defendants made omissions and misrepresentations that precluded Plaintiffs and class members from suspecting that their windows contained defects and were manifesting damage prior to the expiration of the 10-year warranty, or before the end of the reasonably expected service life of 20-25 years.

109.    Defendants represent on their website to Plaintiffs and the public at large that defects are "rare."

110.    Plaintiffs and Class Members relied on those representations in attempting remedies other than filing suit against Defendants, and incurred significant expense in repairing the wrong building components.

111.    Defendants are aware, or should have been aware of the defects because of the numerous warranty claims and complaints alleging similar defects and asserted against them throughout the United States, including numerous other lawsuits relating to the same Windows.

112.    Defendants are estopped from relying on any statutes of limitation or repose by virtue of their affirmative misrepresentations and their acts of concealment, which include Defendants' concealment from Plaintiffs, Class Members, and the general public that their Windows were and are defective, while continually marketing the Windows as a durable, suitable, and even superior product.

113.    Defendants had a duty to adequately investigate warranty claims, verify the representations made to Plaintiffs and Class Members with regard to the cause of damage suffered, and not misrepresent the cause of such damage.

114.    Defendants had a duty to disclose that their Windows were defective, unreliable, and inherently flawed in design and/or manufacture.

115.    Defendants had a duty to acknowledge damage to homeowner's windows and homes were a result of the Windows themselves.

116.    Plaintiffs and Class Members had no knowledge of, and no reasonable way of discovering, the latent defects found in Defendants' Windows at the time they purchased the product or their homes, residences, buildings, and other structures.

**EXHIBIT J**
**Page 22 of 39**

117.   Defendants did not notify, inform, or disclose to Plaintiffs and Class Members that there were defects in the Windows, or that damage caused to the Windows or homes were caused by defects.

118.   Because Defendants failed in their duties to investigate, verify, provide accurate representations regarding warranty claims, and notify Plaintiffs and Class Members that their product was defective, the statute of limitations should be tolled on Plaintiffs and Class Members' claims.

### EQUITABLE ESTOPPEL
(Warranty Limitations and Exclusions)

119.   Defendants are estopped from relying on any warranty limitation or disclaimer as a defense to Plaintiffs and Class Members' claims.

120.   By virtue of Defendants' acts, the Windows installed in Plaintiffs' and Class Members' residences have not lived up to Defendants' warranties or representations, and given the defective condition of the Windows and the premature deterioration of the Windows, the Windows are significantly less valuable than what was purchased.

121.   Defendants knew or should have known that their Windows were defective in design and/or manufacture, and that said Windows were not fit for their ordinary and intended use, were not merchantable, and failed to perform in accordance with representations made, marketing materials and warranties disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiffs and Class Members.

122.   In fact, Defendants' warranty even purports to disclaim any performance grade (identifying whether the Window complies with applicable building codes) indicated by the labels attached to the Windows.

23

123.    Accordingly, any warranty provided by Defendants fails its essential purpose because it purports to warrant that the Windows will be free from defects for a prescribed period of time when, in fact, said Windows fall far short of the applicable warranty period.

124.    Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available under Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

125.    As a result, any time limitations, exclusions, or disclaimers, which restrict the remedies encompassed within Defendants' warranties, are unconscionable and unenforceable, and, therefore, Defendants are estopped from relying on the same.

## COUNT I
### (Negligence)

126.    Plaintiffs reallege and incorporate each of the preceding allegations as though fully set forth herein.

127.    Defendants were under a duty to exercise reasonable care to test, design, manufacture, warranty, market and distribute the Windows for their intended use.

128.    Defendants breached their duty and were negligent in its testing, designing, warranting, manufacturing, distributing and/or marketing of its Windows as described herein.

129.    Defendants knew or should have known that the Windows were defective, that they would fail prematurely, that they contained a defect which resulted in a reduced service life, that they were not suitable as an exterior product and that they otherwise did not conform to Defendants' warranties and representations.

130.    Because of Defendants' negligence, Plaintiffs and the Class suffered damages, including but not limited to damage to underlying structures or adjoining property caused by the deterioration or failure of the Windows, and any other compensatory or consequential damages.

131.    Plaintiffs and the Class have suffered damages in the need to remove and replace the Windows.

132.    As a direct, proximate, reasonably probable and foreseeable consequence of Defendants' negligent acts and/or omissions in connection with its testing, design, manufacture and distribution of their Windows, Plaintiff and the Class Members have suffered and will continue to suffer loss and damage to their residences, structures, and property.

## COUNT II
### (Ohio Revised Code §2307.71 et seq.)

133.    Plaintiffs reallege and incorporate each of the preceding allegations as though fully set forth herein.

134.    Defendants conduct violates the Ohio Products Liability Act, Ohio Rev. Code § 2307.71 et seq.

135.    Defendants are the manufacturers of the Windows.

136.    The Windows are products, and are discrete and distinguishable from the structure on which they were installed.

137.    Defendants defectively manufactured, designed or constructed the Windows and are liable under the Ohio Products Liability Act for the defects in its manufacture and construction.

138.    Defendants defectively designed or formulated the Windows and are liable under the Ohio Products Liability Act for defects in its design or formulation.

25

139.    Defendants did not supply adequate warnings or instructions regarding deficiencies, leaking, premature deterioration, and reduced service life of the Windows, as well as the attendant risk of harm that such deficiencies and deterioration poses to the underlying structure and other adjoining property, and is liable under the Ohio Products Liability Act for inadequate warning or instruction

140.    The Windows do not conform to Defendants' representations about the Windows, including but not limited to Defendants' statements regarding the durability of the Windows, compliance with building codes and standards, and its anticipated useful life.

141.    Defendants are liable under the Ohio Products Liability Act for failure of the Windows to conform to the representations made by Defendants.

142.    Because of Defendants violations of the Ohio Products Liability Act, Plaintiffs and the Class suffered damages, including but not limited to any damage to underlying structures or adjoining property caused by the deterioration or failure of the Windows, and any other compensatory or consequential damages. Plaintiffs and the Class reserve their right to seek all damages available by statute or law.

143.    Plaintiffs and the Class demand judgment against Defendant for an amount to be determined at trial.

## COUNT III
### (Violation of Ohio Consumer Sales Practices Act)

144.    Plaintiffs incorporate by reference each paragraph of this Complaint as if set forth fully here, and further allege as follows.

145.    Defendants' conduct violates the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 et seq.

146.    For the purposes of this count, Defendants are suppliers of the Windows.

147.    Plaintiffs and other original owners acquired Defendants' warranty as part of the purchase or construction of the home.

148.    Consistent with Defendants' representations as to the transferability of its 10-year warranty, Defendants' assigned or transferred the services and benefits arising under their warranty to subsequent purchaser class members upon acquisition of the home.

149.    Because the Windows are installed in their personal residence, Plaintiff acquired the Windows primarily for personal, family, or household purposes.

150.    Defendants committed unfair or deceptive acts and practices through misrepresentations about the durability and reliability of the Windows, its suitability and effectiveness, and its anticipated useful life, among other representations. These representations were deceptive in that:

a. Defendants represented that the Windows had uses, benefits, or performance characteristics that it does not have.

b. Defendants represented that the Windows were of a particular quality or grade when it was not, or that it met a particular standard when it did not.

151.    Defendants committed unfair or deceptive acts and practices through misrepresentations about the operation of its warranties. These include, but are not limited to, representations discounting the effect or operation of express warranties in its advertising and marketing literature; representations regarding the institution or effect of purported "limited warranties"; and representations that obfuscated the duration of the warranty and the scope of warranty coverage.

152.    Defendants engaged in unconscionable acts and practices by continuing to market the Windows after it knew or had reason to know the Windows were defective.  Because the

Windows were not suitable for its ordinary use, Defendant had reason to know that:

      a.   The Windows were marketed and priced as superior residential products, compared to similar residential windows;

      b.   Plaintiffs and Class members would not substantially benefit from the Windows;

      c.   Defendants knowingly made misleading statements of opinion, upon which Plaintiffs and Class members were likely to rely to their detriment.

153.    Because of Defendants' violations of the Ohio Consumer Sales Protection Act, Plaintiff and the Class suffered damages, including but not limited to any damage to underlying structures or adjoining property caused by the deterioration or failure of the Windows, and any other compensatory or consequential damages.

154.    Plaintiffs and the Class demand judgment against Defendants for an amount to be determined at trial.

## <u>COUNT IV</u>
### (Breach of Express Warranty)

155.    Plaintiffs, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

156.    After putting their Windows into the stream of commerce, Defendants expressly represented and warranted that the Windows were appropriate for their intended use and were free from defects and that they conformed to all applicable building codes, and industry and testing standards.

157.    Specifically Defendants provided that their Windows and components would "free from defects in materials and workmanship which significantly impair their operation and proper usage."

158.    The express warranty is a warranty of future performance for a time period of no less than 10-years.

159.    Defendants entered into contracts with Plaintiffs, Class Members, retailers, builders, suppliers and/or contractors to sell Windows to be installed at Plaintiffs and Class Members' properties.

160.    Plaintiffs and Class Members were intended third-party beneficiaries of the contract between Defendants and Plaintiffs and Class Members' respective builders.

161.    The representations and warranties made by Defendants in marketing and selling their Windows formed part of the basis of the bargain between Defendants and the purchasers of the Windows at the time of the sale.

162.    Plaintiffs and other Class Members selected and purchased the Windows being installed in their homes.  Additionally, the typical purchase agreement for the construction or sale of residences or structures contained provisions transferring or assigning the manufacturers' warranties, including window warranties. Such provisions are valid transfers and assignments, and the transferred and assigned warranties formed part of the basis of the bargain at the time the home was purchased.

163.    Further, Defendants' warranty expressly provides for transfer to a subsequent purchaser of a home.

164.    Defendants' warranty certifies that they will replace or repair components of their products found to be defective for at least 10-years.

165.    Upon information and belief, all of Defendants' written warranties applicable to Class Members contain the same or similar provisions.

166.    Through their written warranties, brochures, marketing materials, website, and other representations regarding the performance, durability, and quality of the Windows, Defendants created express warranties for the benefit of Plaintiffs and Class Members.

167.    Thus, Defendants' express warranties and representations are applicable to the Windows installed in Plaintiffs' and Class Members' residences and/or structures.

168.    Specifically, Defendants expressly warranted to Plaintiffs and Class Members that the Windows purchased by Plaintiffs and Class Members were free from defects in materials and workmanship that substantially impair their operation or performance and that they would last at least ten years.

169.    However, despite Defendants' assurances, as described in detail *supra*, the Windows contain the aforementioned defects and do not conform to all applicable building codes, industry and testing standards, and are not free from defects.

170.    These aforementioned defects are present when the Windows leave Defendants' control.

171.    Defendants breached the express warranty by selling Windows that were defective and not reasonably fit for their ordinary and intended purpose and did not conform to Defendants' express representations and/or warranties. Further, contrary to Defendants' representations and warranties, the Windows were not free from design and material defects for at least 10-years.

172.    By their conduct and defective products, Defendants have breached their express warranty with Plaintiffs and members of the Class.

**EXHIBIT J**
**Page 30 of 39**

173.    In addition, Defendants have breached their express warranties by not providing Plaintiffs and Class Members with Windows that were free from defects and/or by suppressing warranty claims.

174.    Defendants' written warranties are also unconscionable and fail their essential purpose because they purport to warrant that the Windows will be free from manufacturer defects for at least ten years when, in fact, the Windows fall far short of the applicable warranty period. To the contrary, due to the leakage in the Windows, Defendants' Windows begin failing after only a few years' (or less) use.

175.    Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available in Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy. Further, the warranty is inadequate because by its 10-year limitation alone, Defendants seeks to reduce the reasonable expected life of the product.

176.    Defendants breached their warranties by failing to adequately investigate warranty claims, or otherwise denying claims where the latent damage wasn't discovered until after the 10-year warranty despite the damage beginning to manifest within the warranty period.

177.    Defendants breached their warranties by misrepresenting the cause of damage to Plaintiffs and Class Members' homes.

178.    Defendants breached their warranties by failing to adequately repair or replace under the terms of the warranties.

179.    Plaintiffs and Class Members put Defendants on notice of their warranty claims and the issues with their Windows.

180.    Defendants breached their warranties by failing or refusing to repair or replace the Windows or damage caused by the defective Windows.

181.    Plaintiffs and Class Members adequately met all pre-suit notice requirements for their warranty claims.

182.    Defendants have denied, failed to pay in full, and/or failed to respond to warranty Claims.

183.    Accordingly, the limitations on remedies and the exclusions in Defendants' warranties are unconscionable and unenforceable.

184.    As a result of Defendants' breaches of express warranties, Plaintiffs and Class Members have suffered actual damages in that they purchased the Windows, and also homes, residences, buildings, and other structures containing defective Windows that have failed or are failing prematurely due to leakage and premature degradation of the wood components. This failure has required or is requiring Plaintiffs and Class Members to incur significant expenses in repairing or replacing their Windows. Repair and replacement is necessary to remedy the damage to the homes, and to prevent on-going and future damage to the underlying structures or interiors of Plaintiffs and Class Members' residences.

185.    Thus, as a direct and proximate result of Defendants' breach of the express warranty on the Windows, Plaintiffs and Class Members have suffered actual and consequential damages.

## COUNT V
### (Breach of Contract)

186.    Plaintiffs, individually and on behalf of all others similarly situated, re-allege and incorporate by reference all foregoing allegations as though fully set forth herein.

187.   Defendants' Limited Warranty is a contract offered to, and accepted by Plaintiffs and Class Members in conjunction with the purchase of the Windows and homes.

188.   Implied in Defendants' Limited Warranty is a covenant of good faith and fair dealing.

189.   Payment for the Windows and homes wherein the Windows are installed, was made in consideration for high quality windows and the promise of repair and replacement services under the Limited Warranty.

190.   The Limited Warranty provided for, *inter alia*:

    a)  That the Windows would be free from defects in materials and workmanship;

    b)  The Windows come with coverage against insulated glass seal failures for 20 years and coverage for workmanship and materials for 10 years; and

    c)  In the event of a component failure under Defendants' 10-year warranty, Defendants will provide no-charge replacement parts, under the terms of the warranty, against defects under normal conditions for 10 years.

191.   Plaintiffs and Class Members satisfied all terms of the Limited Warranty by payment, claims procedure compliance, and meeting all other requirements in order to obtain repair and replacement.

192.   Defendants failed to comply with the terms of the Limited Warranty by failing to provide non-defective Windows, which were installed in Plaintiffs and Class Members homes.

193.   Defendants failed to comply with the terms of the Limited Warranty by failing and/or refusing to adequately repair or replace defective Windows with non-defective windows or components.

194.   Defendants' conduct at all times relevant hereto constitutes a breach of contract, and breach of their duty of good faith and fair dealing.

195.   Defendants' intentionally and purposely conducted themselves in a manner that had the effect of destroying or injuring the right of Plaintiffs and Class Members' ability to receive the fruits of the contract, including:

    a)  Providing Windows that Defendants knew were defective;

    b)  Failing or refusing to repair or replace defective Windows or components;

    c)  Concealing known defects;

    d)  Denying, or otherwise failing or refusing, to respond to warranty claims without adequately investigating the cause of reported damage; and

    e)  Other bad faith or unfair conduct that may be uncovered through discovery.

196.   Defendants' conduct constitutes evasion of the spirit of the bargain; lack of diligence in responding to or investigating warranty claims; willful rendering of imperfect performance; abuse of Defendants' power with regard to specific terms, exclusions and limitations; and failure to cooperate in Plaintiffs and Class Members' abilities to comply with claims procedures.

197.   Plaintiffs and Class Members have been damaged by Defendants' breaches of contract and implied covenant of good faith and fair dealing.

198.   By virtue of the foregoing, Plaintiffs and Class Members are entitled to an award of damages and other appropriate relief, including attorney's fees.

## <u>COUNT VI</u>
**(Fraudulent Misrepresentation)**

199.    Plaintiffs, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

200.    Defendants falsely and fraudulently represented to Plaintiffs, the Class Members, purchasers, and consumers in general that Defendants' Windows would be free from defects and fit for their customary and normal use.

201.    Defendants falsely represented to Plaintiffs, Class Members, purchasers, and consumers in general that the Windows were warranted against defects in material and workmanship when, in fact, the limited warranty was so limited as to prevent and preclude any warranty protection against the known defect in the Windows.

202.    Defendants falsely represented to Plaintiffs, Class Members, purchasers, and consumers in general that the Windows were superior products, and were building code, industry standard and testing compliant.

203.    Defendants falsely represented to Plaintiffs, Class Members, and other purchasers that the Windows were suitable exterior building products, and could withstand the climates at the locations where the Windows were distributed and installed.

204.    When Defendants made the aforementioned representations, they knew or should have known those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

205.    The aforementioned representations were made by Defendants with the intent to defraud and deceive Plaintiffs, Class Members and/or the consuming public, all of which evinced reckless, willful, indifference to the safety and welfare of Plaintiffs and Class Members.

206.    At the time the aforesaid representations were made by Defendants, Plaintiffs and the Class Members were unaware of the falsity of said representations and reasonably believed them to be true.

35

207.    In reliance upon said representations, Defendants' Windows were installed and used on Plaintiffs and Class Members' properties, thereby causing Plaintiffs and the Class Members to sustain damages and injury to their property and/or to be at an increased risk of sustaining damage and injury in the future.

208.    Defendants knew and were aware, or should have been aware, that their Windows were defective and not fit for their customary and normal use.

209.    Defendants knew, or should have known, that Defendants' Windows had a potential to, could, and would cause severe damage and injury to property owners.

210.    Defendants brought their Windows to the market and acted fraudulently, wantonly and maliciously, to the detriment of the Plaintiffs and the Class Members.

211.    By reason of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer property loss, financial damage, and injury.

## COUNT VII
### (Fraudulent Concealment)

212.    Plaintiffs, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

213.    Defendants knew or should have known that the Windows were defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Defendants nor the reasonable expectations of ordinary consumers.

214.    Defendants fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that the Windows were defective.

215.    Defendants had exclusive knowledge of the defective nature of the Windows at the time of sale. The defect is latent and not something that Plaintiffs or Class Members, in the

exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible.

216.    Defendants had the capacity to, and did, deceive Plaintiffs and Class Members into believing that they were purchasing Windows free from defects.

217.    Defendants undertook active and ongoing steps to conceal the defect. Plaintiffs are aware of nothing in Defendants' advertising, publicity or marketing materials that disclosed the truth about the defect, despite Defendants' awareness of the problem.

218.    Defendants continued to conceal the defect by failing to acknowledge that the damage giving rise to warranty claims was caused by the Windows themselves; and

219.    The facts concealed and/or not disclosed by Defendants to Plaintiffs and the Class Members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Windows from their builders.

220.    Defendants intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiffs and the Class to act thereon.

221.    Further, upon notification from homeowners about water intrusion, Defendants failed to inform Plaintiffs of the defect, misrepresented the cause of the damage, failed to otherwise respond to warranty claims, and failed to rectify the problem.

222.    Plaintiffs and the Class justifiably acted or relied upon the concealed and/or undisclosed facts to their detriment, as evidenced by their purchase of the Windows and subsequently, their inability to recognize that the Windows were defective until after the warranty expired.

223.    Plaintiffs and Class Members suffered property and financial loss in an amount to be proven at trial as a result of Defendants' fraudulent concealment and nondisclosure because:

    a.   they would not have purchased the Windows on the same terms if the true facts concerning the defective Windows had been known;

    b.   they paid a price premium due to the fact that they would be free from defects; and

    c.   the Windows did not perform as promised. Plaintiffs also would have initiated this suit earlier had the defect been disclosed to them.

224.   By reason of the foregoing, Plaintiffs and Class Members suffered, and continue to suffer, property loss, financial damage and injury.

WHEREFORE, Plaintiffs, individually and on behalf of others similarly situated, pray for a judgment against Defendants as follows:

1.   For an Order certifying the Classes, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiffs as representatives of the Classes, and appointing the law firms representing Plaintiffs as counsel for the Classes;

2.   For compensatory damages sustained by Plaintiffs and the Damages Class;

3.   For payment of costs of suit herein incurred;

4.   For both pre-judgment and post-judgment interest on any amounts awarded;

5.   For punitive damages;

6.   For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

7.   For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all causes of action so triable.

Dated: September 29, 2016       Respectfully submitted,

                       s/Jack Landskroner
                       Jack Landskroner (0059227)
                       Drew Legando (0084209)
                       **Landskroner Grieco Merriman, LLC**
                       1360 West 9th Street, Suite 200

Cleveland, Ohio 44113
P. 216 / 522-9000
F. 216 / 522-9007
E. jack@lgmlegal.com
     drew@lgmlegal.com


s/ Panagiotis "Pete" V. Albanis
Panagiotis "Pete" V. Albanis
**Morgan & Morgan – Complex Litigation Group**
12800 University Drive Suite 600
Fort Myers, FL 33907
Telephone: (239) 432-6605
Facsimile: (239) 433-6836
PAlbanis@forthepeople.com
Florida Bar No. 0077354

**EXHIBIT J**
**Page 39 of 39**